**Case No. 26-10286**


# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT


Conghua Yan,

v.

Plaintiff-Appellant

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State Bar of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. DeAngelis, in Individual Capacity, as member of the State Bar of Texas and Official Capacity as Associate Judge; Tarrant County; U.S. Bank,

Defendants-Appellees


On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division Civil Action No. 4:23-CV-00758-Y, The Hon. Terry R. Means, Presiding


**ADDENDUM TO BRIEF**


Respectfully submitted:

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Appellant

# Appendix A

1. Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006) .................... APP.3

2. 15 U.S. Code § 2 - Monopolizing trade a felony; penalty .................................................. APP.4

3. 15 U.S. Code § 15(a) - Suits by persons injured; amount of recovery .............................. APP.5

4. 15 U.S. Code § 26 - Injunctive relief for private parties; exception; costs........................ APP.7

5. 18 U.S. Code § 664 - Theft or embezzlement from employee benefit plan ....................... APP.8

6. 18 U.S. Code § 1027 - False statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974 ....................................................... APP.9

7. 18 U.S. Code § 1341 - Frauds and swindles...................................................................... APP.10

8. 18 U.S. Code § 1343 - Fraud by wire, radio, or television ............................................... APP.12

9. 18 U.S. Code § 1349 - Attempt and conspiracy ............................................................... APP.13

10. 18 U.S. Code § 1956 - Laundering of monetary instruments ......................................... APP.14

11. 18 U.S. Code § 1961 - Definitions.................................................................................. APP.23

12. 18 U.S. Code § 1962 - Prohibited activities.................................................................... APP.27

13. 18 U.S. Code § 1964 - Civil remedies ............................................................................ APP.29

14. 28 U.S. Code § 636 - Jurisdiction, powers, and temporary assignment ......................... APP.31

15. 28 U.S. Code § 1291 - Final decisions of district courts ................................................ APP.37

16. 28 U.S. Code § 2106 - Determination............................................................................. APP.38

17. 29 U.S. Code § 1001(a) - Congressional findings and declaration of policy ................. APP.39

18. 29 U.S. Code § 1056 - Form and payment of benefits .................................................... APP.41

19. 29 U.S. Code § 1132 - Civil enforcement....................................................................... APP.59

20. 29 U.S. Code § 1144 - Other laws .................................................................................. APP.70

21. 42 U.S. Code § 1983 - Civil action for deprivation of rights.......................................... APP.75

22. 42 U.S. Code § 1988 - Proceedings in vindication of civil rights .................................. APP.76

23. Tex. Civ. Prac. & Rem. Code § 30.017 - Claims Against Certain Judges...................... APP.78

24. Tex. Fam. Code Chapter 9 - Post-Decree Proceedings (selected cited provisions)........ APP.79

25. Tex. Fam. Code § 201.017 - Immunity........................................................................... APP.84

26. Tex. R. Disciplinary P. 17.09 - Immunity...................................................................... APP.85

## 1. Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006)

PL 109–280, August 17, 2006, 120 Stat 780

UNITED STATES PUBLIC LAWS

109th Congress - Second Session

Convening January 7, 2005

Additions and Deletions are not identified in this database.

Vetoed provisions within tabular material are not displayed

PL 109–280 (HR 4)

August 17, 2006
PENSION PROTECTION ACT OF 2006

An Act To provide economic security for all Americans, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

## 2.**15 U.S. Code § 2 - Monopolizing trade a felony; penalty**

United States Code Annotated

Title 15. Commerce and Trade

Chapter 1. Monopolies and Combinations in Restraint of Trade (Refs & Annos)

15 U.S.C.A. § 2

§ 2. Monopolizing trade a felony; penalty

Effective: June 22, 2004

Currentness

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

### CREDIT(S)

(July 2, 1890, c. 647, § 2, 26 Stat. 209; July 7, 1955, c. 281, 69 Stat. 282; Pub.L. 93-528, § 3, Dec. 21, 1974, 88 Stat. 1708; Pub.L. 101-588, § 4(b), Nov. 16, 1990, 104 Stat. 2880; Pub.L. 108-237, Title II, § 215(b), June 22, 2004, 118 Stat. 668.)

15 U.S.C.A. § 2, 15 USCA § 2
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 3.**15 U.S. Code § 15(a) - Suits by persons injured; amount of recovery**

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 1. Monopolies and Combinations in Restraint of Trade (Refs & Annos)

15 U.S.C.A. § 15

§ 15. Suits by persons injured [Statutory Text & Notes of Decisions subdivisions I to V]

Currentness

<Notes of Decisions for 15 USCA § 15 are displayed in multiple documents.>

**(a) Amount of recovery; prejudgment interest**

Except as provided in subsection (b), any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. The court may award under this section, pursuant to a motion by such person promptly made, simple interest on actual damages for the period beginning on the date of service of such person's pleading setting forth a claim under the antitrust laws and ending on the date of judgment, or for any shorter period therein, if the court finds that the award of such interest for such period is just in the circumstances. In determining whether an award of interest under this section for any period is just in the circumstances, the court shall consider only--

**(1)** whether such person or the opposing party, or either party's representative, made motions or asserted claims or defenses so lacking in merit as to show that such party or representative acted intentionally for delay, or otherwise acted in bad faith;

**(2)** whether, in the course of the action involved, such person or the opposing party, or either party's representative, violated any applicable rule, statute, or court order providing for sanctions for dilatory behavior or otherwise providing for expeditious proceedings; and

**(3)** whether such person or the opposing party, or either party's representative, engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost thereof.

**(b) Amount of damages payable to foreign states and instrumentalities of foreign states**

**(1)** Except as provided in paragraph (2), any person who is a foreign state may not recover under subsection (a) an amount in excess of the actual damages sustained by it and the cost of suit, including a reasonable attorney's fee.

**(2)** Paragraph (1) shall not apply to a foreign state if--

**(A)** such foreign state would be denied, under section 1605(a)(2) of Title 28, immunity in a case in which the action is based upon a commercial activity, or an act, that is the subject matter of its claim under this section;

**(B)** such foreign state waives all defenses based upon or arising out of its status as a foreign state, to any claims brought against it in the same action;

**(C)** such foreign state engages primarily in commercial activities; and

**(D)** such foreign state does not function, with respect to the commercial activity, or the act, that is the subject matter of its claim under this section as a procurement entity for itself or for another foreign state.

**(c) Definitions**

For purposes of this section--

**(1)** the term "commercial activity" shall have the meaning given it in section 1603(d) of Title 28, and

**(2)** the term "foreign state" shall have the meaning given it in section 1603(a) of Title 28.

### CREDIT(S)

(Oct. 15, 1914, c. 323, § 4, 38 Stat. 731; Pub.L. 96-349, § 4(a)(1), Sept. 12, 1980, 94 Stat. 1156; Pub.L. 97-393, Dec. 29, 1982, 96 Stat. 1964.)

15 U.S.C.A. § 15, 15 USCA § 15
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 4.**15 U.S. Code § 26 - Injunctive relief for private parties; exception; costs**

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 1. Monopolies and Combinations in Restraint of Trade (Refs & Annos)

15 U.S.C.A. § 26

§ 26. Injunctive relief for private parties; exception; costs

Currentness

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided*, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit for injunctive relief against any common carrier subject to the jurisdiction of the Surface Transportation Board under subtitle IV of Title 49. In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

### CREDIT(S)

(Oct. 15, 1914, c. 323, § 16, 38 Stat. 737; Pub.L. 94-435, Title III, § 302(3), Sept. 30, 1976, 90 Stat. 1396; Pub.L. 104-88, Title III, § 318(3), Dec. 29, 1995, 109 Stat. 949.)

15 U.S.C.A. § 26, 15 USCA § 26
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 5.**18 U.S. Code § 664 - Theft or embezzlement from employee benefit plan**

United States Code Annotated
 Title 18. Crimes and Criminal Procedure (Refs & Annos)
  Part I. Crimes (Refs & Annos)
   Chapter 31. Embezzlement and Theft (Refs & Annos)

18 U.S.C.A. § 664

§ 664. Theft or embezzlement from employee benefit plan

Effective: December 29, 2022

Currentness

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

### CREDIT(S)

(Added Pub.L. 87-420, § 17(a), Mar. 20, 1962, 76 Stat. 41; amended Pub.L. 93-406, Title I, § 112(a)(2)(A), formerly § 111(a)(2)(A), Sept. 2, 1974, 88 Stat. 851, renumbered § 112(a)(2)(A), Pub.L. 117-328, Div. T, Title III, § 320(a)(1), Dec. 29, 2022, 136 Stat. 5354; amended Pub.L. 103-322, Title XXXIII, § 330016(1)(L), Sept. 13, 1994, 108 Stat. 2147.)

18 U.S.C.A. § 664, 18 USCA § 664
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 6.18 U.S. Code § 1027 - False statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 47. Fraud and False Statements (Refs & Annos)

18 U.S.C.A. § 1027

§ 1027. False statements and concealment of facts in relation to documents required by the Employee Retirement Income Security Act of 1974

Effective: December 29, 2022

Currentness

Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified, shall be fined under this title, or imprisoned not more than five years, or both.

## CREDIT(S)

(Added Pub.L. 87-420, § 17(c), Mar. 20, 1962, 76 Stat. 42; amended Pub.L. 93-406, Title I, § 112(a)(2)(B)(i), (ii), formerly § 111(a)(2)(B)(i), (ii), Sept. 2, 1974, 88 Stat. 851, renumbered § 112(a)(2)(B)(i), (ii), Pub.L. 117-328, Div. T, Title III, § 320(a)(1), Dec. 29, 2022, 136 Stat. 5354; amended Pub.L. 103-322, Title XXXIII, § 330016(1)(L), Sept. 13, 1994, 108 Stat. 2147.)

18 U.S.C.A. § 1027, 18 USCA § 1027
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 7.**18 U.S. Code § 1341 - Frauds and swindles**

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 63. Mail Fraud and Other Fraud Offenses (Refs & Annos)

18 U.S.C.A. § 1341

§ 1341. Frauds and swindles [Statutory Text & Notes of Decisions subdivisions I to X]

Effective: January 7, 2008

Currentness

<Notes of Decisions for 18 USCA § 1341 are displayed in multiple documents.>

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

### CREDIT(S)

(June 25, 1948, c. 645, 62 Stat. 763; May 24, 1949, c. 139, § 34, 63 Stat. 94; Pub.L. 91-375, § 6(j)(11), Aug. 12, 1970, 84 Stat. 778; Pub.L. 101-73, Title IX, § 961(i), Aug. 9, 1989, 103 Stat. 500; Pub.L. 101-647, Title XXV, § 2504(h), Nov. 29, 1990, 104 Stat. 4861; Pub.L. 103-322, Title XXV, § 250006, Title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 2087, 2147; Pub.L. 107-204, Title IX, § 903(a), July 30, 2002, 116 Stat. 805; Pub.L. 110-179, § 4, Jan. 7, 2008, 121 Stat. 2557.)

18 U.S.C.A. § 1341, 18 USCA § 1341

Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

APP.011

## 8. **18 U.S. Code § 1343 - Fraud by wire, radio, or television**

United States Code Annotated

  Title 18. Crimes and Criminal Procedure (Refs & Annos)

    Part I. Crimes (Refs & Annos)

      Chapter 63. Mail Fraud and Other Fraud Offenses (Refs & Annos)

18 U.S.C.A. § 1343

§ 1343. Fraud by wire, radio, or television

Effective: January 7, 2008

Currentness

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

### CREDIT(S)

(Added July 16, 1952, c. 879, § 18(a), 66 Stat. 722; amended July 11, 1956, c. 561, 70 Stat. 523; Pub.L. 101-73, Title IX, § 961(j), Aug. 9, 1989, 103 Stat. 500; Pub.L. 101-647, Title XXV, § 2504(i), Nov. 29, 1990, 104 Stat. 4861; Pub.L. 103-322, Title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 2147; Pub.L. 107-204, Title IX, § 903(b), July 30, 2002, 116 Stat. 805; Pub.L. 110-179, § 3, Jan. 7, 2008, 121 Stat. 2557.)

18 U.S.C.A. § 1343, 18 USCA § 1343
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 9.**18 U.S. Code § 1349 - Attempt and conspiracy**

United States Code Annotated

Title 18. Crimes and Criminal Procedure (Refs & Annos)

Part I. Crimes (Refs & Annos)

Chapter 63. Mail Fraud and Other Fraud Offenses (Refs & Annos)

18 U.S.C.A. § 1349

§ 1349. Attempt and conspiracy

Effective: July 30, 2002

Currentness

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**CREDIT(S)**

(Added Pub.L. 107-204, Title IX, § 902(a), July 30, 2002, 116 Stat. 805.)

18 U.S.C.A. § 1349, 18 USCA § 1349
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 10.**18 U.S. Code § 1956 - Laundering of monetary instruments**

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 95. Racketeering (Refs & Annos)

18 U.S.C.A. § 1956

§ 1956. Laundering of monetary instruments

Effective: December 23, 2022

Currentness

**(a)(1)** Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--

  **(A)(i)** with the intent to promote the carrying on of specified unlawful activity; or

  **(ii)** with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

  **(B)** knowing that the transaction is designed in whole or in part--

    **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

    **(ii)** to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

**(2)** Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--

  **(A)** with the intent to promote the carrying on of specified unlawful activity; or

  **(B)** knowing that the monetary instrument or funds involved in the transportation, transmission, or

transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part--

**(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

**(ii)** to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

**(3)** Whoever, with the intent--

**(A)** to promote the carrying on of specified unlawful activity;

**(B)** to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

**(C)** to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

**(b) Penalties.--**

**(1) In general.**--Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or section 1957, or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of--

**(A)** the value of the property, funds, or monetary instruments involved in the transaction; or

**(B)** $10,000.

**(2) Jurisdiction over foreign persons.**--For purposes of adjudicating an action filed or enforcing a penalty ordered under this section, the district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and--

**(A)** the foreign person commits an offense under subsection (a) involving a financial transaction that occurs in whole or in part in the United States;

**(B)** the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of forfeiture by a court of the United States; or

**(C)** the foreign person is a financial institution that maintains a bank account at a financial institution in the United States.

**(3) Court authority over assets.**--A court may issue a pretrial restraining order or take any other action necessary to ensure that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section.

**(4) Federal receiver.--**

**(A) In general.**--A court may appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and possession of all assets of the defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982, or a criminal sentence under section 1957 or subsection (a) of this section, including an order of restitution to any victim of a specified unlawful activity.

**(B) Appointment and authority.**--A Federal Receiver described in subparagraph (A)--

**(i)** may be appointed upon application of a Federal prosecutor or a Federal or State regulator, by the court having jurisdiction over the defendant in the case;

**(ii)** shall be an officer of the court, and the powers of the Federal Receiver shall include the powers set out in section 754 of title 28, United States Code; and

**(iii)** shall have standing equivalent to that of a Federal prosecutor for the purpose of submitting requests to obtain information regarding the assets of the defendant--

**(I)** from the Financial Crimes Enforcement Network of the Department of the Treasury; or

**(II)** from a foreign country pursuant to a mutual legal assistance treaty, multilateral agreement, or other arrangement for international law enforcement assistance, provided that such requests are in accordance with the policies and procedures of the Attorney General.

**(c)** As used in this section--

**(1)** the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

**(2)** the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction;

**(3)** the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond,

certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

**(4)** the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

**(5)** the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery;

**(6)** the term "financial institution" includes--

**(A)** any financial institution, as defined in section 5312(a)(2) of title 31, United States Code, or the regulations promulgated thereunder; and

**(B)** any foreign bank, as defined in section 1[1] of the International Banking Act of 1978 (12 U.S.C. 3101);

**(7)** the term "specified unlawful activity" means--

**(A)** any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;

**(B)** with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving--

**(i)** the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);

**(ii)** murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

**(iii)** fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978));[2]

**(iv)** bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;

**(v)** smuggling or export control violations involving--

**(I)** an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or

**(II)** an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730-774);

**(vi)** an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States; or

**(vii)** trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;

**(C)** any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act (21 U.S.C. 848);

**(D)** an offense under section 32 (relating to the destruction of aircraft), section 37 (relating to violence at international airports), section 115 (relating to influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), section 152 (relating to concealment of assets; false oaths and claims; bribery), section 175c (relating to the variola virus), section 215 (relating to commissions or gifts for procuring loans), section 351 (relating to congressional or Cabinet officer assassination), any of sections 500 through 503 (relating to certain counterfeiting offenses), section 513 (relating to securities of States and private entities), section 541 (relating to goods falsely classified), section 542 (relating to entry of goods by means of false statements), section 545 (relating to smuggling goods into the United States), section 549 (relating to removing goods from Customs custody), section 554 (relating to smuggling goods from the United States), section 555 (relating to border tunnels), section 641 (relating to public money, property, or records), section 656 (relating to theft, embezzlement, or misapplication by bank officer or employee), section 657 (relating to lending, credit, and insurance institutions), section 658 (relating to property mortgaged or pledged to farm credit agencies), section 666 (relating to theft or bribery concerning programs receiving Federal funds), section 793, 794, or 798 (relating to espionage), section 831 (relating to prohibited transactions involving nuclear materials), section 844(f) or (i) (relating to destruction by explosives or fire of Government property or property affecting interstate or foreign commerce), section 875 (relating to interstate communications), section 922(l) (relating to the unlawful importation of firearms), section 924(n), 932, or 933 (relating to firearms trafficking), section 956 (relating to conspiracy to kill, kidnap, maim, or injure certain property in a foreign country), section 1005 (relating to fraudulent bank entries), 1006[3] (relating to fraudulent Federal credit institution entries), 1007[3] (relating to Federal Deposit Insurance transactions), 1014[3] (relating to fraudulent loan or credit applications), section 1030 (relating to computer fraud and abuse), 1032[3] (relating to concealment of assets from conservator, receiver, or liquidating agent of financial institution), section 1111 (relating to murder), section 1114 (relating to murder of United States law enforcement officials), section 1116 (relating to murder of foreign officials, official guests, or internationally protected persons), section 1201 (relating to kidnaping), section 1203 (relating to hostage taking), section 1361 (relating to willful injury of Government property), section 1363 (relating to destruction of property within the special maritime and territorial jurisdiction), section 1708 (theft from the mail), section 1751 (relating to Presidential assassination), section 2113 or 2114 (relating to bank and postal robbery and theft), section 2252A (relating to child pornography) where the child pornography contains a visual depiction of an actual minor engaging in sexually explicit conduct, section 2260 (production of certain child pornography for importation into the United States), section 2280 (relating to violence against maritime

APP.018

navigation), section 2281 (relating to violence against maritime fixed platforms), section 2319 (relating to copyright infringement), section 2320 (relating to trafficking in counterfeit goods and services), section 2332 (relating to terrorist acts abroad against United States nationals), section 2332a (relating to use of weapons of mass destruction), section 2332b (relating to international terrorist acts transcending national boundaries), section 2332g (relating to missile systems designed to destroy aircraft), section 2332h (relating to radiological dispersal devices), section 2339A or 2339B (relating to providing material support to terrorists), section 2339C (relating to financing of terrorism), or section 2339D (relating to receiving military-type training from a foreign terrorist organization) of this title, section 46502 of title 49, United States Code, a felony violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals), section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the Controlled Substances Act (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal violations) of the Arms Export Control Act, section 11 (relating to violations) of the Export Administration Act of 1979, section 206 (relating to penalties) of the International Emergency Economic Powers Act, section 16 (relating to offenses and punishment) of the Trading with the Enemy Act, any felony violation of section 15 of the Food and Nutrition Act of 2008 (relating to supplemental nutrition assistance program benefits fraud) involving a quantity of benefits having a value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938, any felony violation of the Foreign Corrupt Practices Act, section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122) (relating to prohibitions governing atomic weapons), or section 104(a) of the North Korea Sanctions Enforcement Act of 2016 (relating to prohibited activities with respect to North Korea);

### ENVIRONMENTAL CRIMES

**(E)** a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act (33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.);

**(F)** any act or activity constituting an offense involving a Federal health care offense; or

**(G)** any act that is a criminal violation of subparagraph (A), (B), (C), (D), (E), or (F) of paragraph (1) of section 9(a) of the Endangered Species Act of 1973 (16 U.S.C. 1538(a)(1)), section 2203 of the African Elephant Conservation Act (16 U.S.C. 4223), or section 7(a) of the Rhinoceros and Tiger Conservation Act of 1994 (16 U.S.C. 5305a(a)), if the endangered or threatened species of fish or wildlife, products, items, or substances involved in the violation and relevant conduct, as applicable, have a total value of more than $10,000;

**(8)** the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

**(9)** the term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

**(d)** Nothing in this section shall supersede any provision of Federal, State, or other law imposing

criminal penalties or affording civil remedies in addition to those provided for in this section.

**(e)** Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General. Violations of this section involving offenses described in paragraph (c)(7)(E) may be investigated by such components of the Department of Justice as the Attorney General may direct, and the National Enforcement Investigations Center of the Environmental Protection Agency.

**(f)** There is extraterritorial jurisdiction over the conduct prohibited by this section if--

  **(1)** the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

  **(2)** the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

**(g)** **Notice of conviction of financial institutions.**--If any financial institution or any officer, director, or employee of any financial institution has been found guilty of an offense under this section, section 1957 or 1960 of this title, or section 5322 or 5324 of title 31, the Attorney General shall provide written notice of such fact to the appropriate regulatory agency for the financial institution.

**(h)** Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

**(i)** **Venue.--(1)** Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in--

  **(A)** any district in which the financial or monetary transaction is conducted; or

  **(B)** any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

**(2)** A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

**(3)** For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means,

shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.

**(j) Seven-year limitation.**--Notwithstanding section 3282, no person shall be prosecuted, tried, or punished for a violation of this section or section 1957 if the specified unlawful activity constituting the violation is the activity defined in subsection (c)(7)(B) of this section, unless the indictment is found or the information is instituted not later than 7 years after the date on which the offense was committed.

### CREDIT(S)

(Added Pub.L. 99-570, Title I, § 1352(a), Oct. 27, 1986, 100 Stat. 3207-18; amended Pub.L. 100-690, Title VI, §§ 6183, 6465, 6466, 6469(a)(1), 6471(a), (b), Title VII, § 7031, Nov. 18, 1988, 102 Stat. 4354, 4375, 4377, 4378, 4398; Pub.L. 101-647, Title I, §§ 105 to 108, Title XII, § 1205(j), Title XIV, §§ 1402, 1404, Title XXV, § 2506, Title XXXV, § 3557, Nov. 29, 1990, 104 Stat. 4791, 4792, 4831, 4835, 4862, 4927; Pub.L. 102-550, Title XV, §§ 1504(c), 1524, 1526(a), 1527(a), 1530, 1531, 1534, 1536, Oct. 28, 1992, 106 Stat. 4055, 4064 to 4067; Pub.L. 103-322, Title XXXII, § 320104(b), Title XXXIII, §§ 330008(2), 330011(l), 330012, 330019, 330021(1), Sept. 13, 1994, 108 Stat. 2111, 2142, 2145, 2146, 2149, 2150; Pub.L. 103-325, Title IV, §§ 411(c)(2)(E), 413(c)(1), (d), Sept. 23, 1994, 108 Stat. 2253 to 2255; Pub.L. 104-132, Title VII, § 726, Apr. 24, 1996, 110 Stat. 1301; Pub.L. 104-191, Title II, § 246, Aug. 21, 1996, 110 Stat. 2018; Pub.L. 104-294, Title VI, §§ 601(f)(6), 604(b)(38), Oct. 11, 1996, 110 Stat. 3499, 3509; Pub.L. 106-569, Title VII, § 709(a), Dec. 27, 2000, 114 Stat. 3018; Pub.L. 107-56, Title III, §§ 315, 317, 318, 376, Title VIII, § 805(b), Title X, § 1004, Oct. 26, 2001, 115 Stat. 308, 310, 311, 342, 378, 392; Pub.L. 107-273, Div. B, Title IV, §§ 4002(a)(11), (b)(5), (c)(2), 4005(d)(1), (e), Nov. 2, 2002, 116 Stat. 1807, 1809, 1812, 1813; Pub.L. 108-458, Title VI, § 6909, Dec. 17, 2004, 118 Stat. 3774; Pub.L. 109-164, Title I, § 103(b), Jan. 10, 2006, 119 Stat. 3563; Pub.L. 109-177, Title III, § 311(c), Title IV, §§ 403(b), (c)(1), 405, 406(a)(2), 409, Mar. 9, 2006, 120 Stat. 242 to 244, 246; Pub.L. 110-234, Title IV, §§ 4002(b)(1)(B), (D), (2)(M), 4115(c)(1)(A)(i), (B)(ii), May 22, 2008, 122 Stat. 1096, 1097, 1109; Pub.L. 110-246, § 4(a), Title IV, §§ 4002(b)(1)(B), (D), (2)(M), 4115(c)(1)(A)(i), (B)(ii), June 18, 2008, 122 Stat. 1664, 1857, 1858, 1870; Pub.L. 110-358, Title II, § 202, Oct. 8, 2008, 122 Stat. 4003; Pub.L. 111-21, § 2(f)(1), May 20, 2009, 123 Stat. 1618; Pub.L. 112-127, § 6, June 5, 2012, 126 Stat. 371; Pub.L. 114-122, Title I, § 105(c), Feb. 18, 2016, 130 Stat. 101; Pub.L. 114-231, Title V, § 502, Oct. 7, 2016, 130 Stat. 956; Pub.L. 117-159, Div. A, Title II, § 12004(a)(4), June 25, 2022, 136 Stat. 1328; Pub.L. 117-263, Div. E, Title LIX, § 5904(a), Dec. 23, 2022, 136 Stat. 3441.)

Footnotes

[1]

So in original. Probably should read "section 1(b)".

[2]

So in original. The second closing parenthesis probably should not appear.

[3]

So in original. Probably should be preceded by "section".

18 U.S.C.A. § 1956, 18 USCA § 1956
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 11.**18 U.S. Code § 1961 - Definitions**

United States Code Annotated

Title 18. Crimes and Criminal Procedure (Refs & Annos)

Part I. Crimes (Refs & Annos)

Chapter 96. Racketeer Influenced and Corrupt Organizations (Refs & Annos)

18 U.S.C.A. § 1961

§ 1961. Definitions

Effective: June 25, 2022

Currentness

As used in this chapter--

**(1)** "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 932 (relating to straw purchasing), section 933 (relating to trafficking in firearms), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the

APP.023

laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), sections 175-178 (relating to biological weapons), sections 229-229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

(2) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof;

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

(6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious

rate is at least twice the enforceable rate;

**(7)** "racketeering investigator" means any attorney or investigator so designated by the Attorney General and charged with the duty of enforcing or carrying into effect this chapter;

**(8)** "racketeering investigation" means any inquiry conducted by any racketeering investigator for the purpose of ascertaining whether any person has been involved in any violation of this chapter or of any final order, judgment, or decree of any court of the United States, duly entered in any case or proceeding arising under this chapter;

**(9)** "documentary material" includes any book, paper, document, record, recording, or other material; and

**(10)** "Attorney General" includes the Attorney General of the United States, the Deputy Attorney General of the United States, the Associate Attorney General of the United States, any Assistant Attorney General of the United States, or any employee of the Department of Justice or any employee of any department or agency of the United States so designated by the Attorney General to carry out the powers conferred on the Attorney General by this chapter. Any department or agency so designated may use in investigations authorized by this chapter either the investigative provisions of this chapter or the investigative power of such department or agency otherwise conferred by law.

### CREDIT(S)

(Added Pub.L. 91-452, Title IX, § 901(a), Oct. 15, 1970, 84 Stat. 941; amended Pub.L. 95-575, § 3(c), Nov. 2, 1978, 92 Stat. 2465; Pub.L. 95-598, Title III, § 314(g), Nov. 6, 1978, 92 Stat. 2677; Pub.L. 98-473, Title II, §§ 901(g), 1020, Oct. 12, 1984, 98 Stat. 2136, 2143; Pub.L. 98-547, Title II, § 205, Oct. 25, 1984, 98 Stat. 2770; Pub.L. 99-570, Title I, § 1365(b), Oct. 27, 1986, 100 Stat. 3207-35; Pub.L. 99-646, § 50(a), Nov. 10, 1986, 100 Stat. 3605; Pub.L. 100-690, Title VII, §§ 7013, 7020(c), 7032, 7054, 7514, Nov. 18, 1988, 102 Stat. 4395, 4396, 4398, 4402, 4489; Pub.L. 101-73, Title IX, § 968, Aug. 9, 1989, 103 Stat. 506; Pub.L. 101-647, Title XXXV, § 3560, Nov. 29, 1990, 104 Stat. 4927; Pub.L. 103-322, Title IX, § 90104, Title XVI, § 160001(f), Title XXXIII, § 330021(1), Sept. 13, 1994, 108 Stat. 1987, 2037, 2150; Pub.L. 103-394, Title III, § 312(b), Oct. 22, 1994, 108 Stat. 4140; Pub.L. 104-132, Title IV, § 433, Apr. 24, 1996, 110 Stat. 1274; Pub.L. 104-153, § 3, July 2, 1996, 110 Stat. 1386; Pub.L. 104-208, Div. C, Title II, § 202, Sept. 30, 1996, 110 Stat. 3009-565; Pub.L. 104-294, Title VI, §§ 601(b)(3), (i)(3), 604(b)(6), Oct. 11, 1996, 110 Stat. 3499, 3501, 3506; Pub.L. 107-56, Title VIII, § 813, Oct. 26, 2001, 115 Stat. 382; Pub.L. 107-273, Div. B, Title IV, § 4005(f)(1), Nov. 2, 2002, 116 Stat. 1813; Pub.L. 108-193, § 5(b), Dec. 19, 2003, 117 Stat. 2879; Pub.L. 108-458, Title VI, § 6802(e), Dec. 17, 2004, 118 Stat. 3767; Pub.L. 109-164, Title I, § 103(c), Jan. 10, 2006, 119 Stat. 3563; Pub.L. 109-177, Title IV, § 403(a), Mar. 9, 2006, 120 Stat. 243; Pub.L. 113-4, Title XII, § 1211(a), Mar. 7, 2013, 127 Stat. 142; Pub.L. 114-153, § 3(b), May 11, 2016, 130 Stat. 382; Pub.L. 117-159, Div. A, Title II, § 12004(a)(3), June 25, 2022, 136 Stat. 1328.)

Footnotes

[1] So in original.

18 U.S.C.A. § 1961, 18 USCA § 1961
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

APP.026

## 12.**18 U.S. Code § 1962 - Prohibited activities**

United States Code Annotated

Title 18. Crimes and Criminal Procedure (Refs & Annos)

Part I. Crimes (Refs & Annos)

Chapter 96. Racketeer Influenced and Corrupt Organizations (Refs & Annos)

18 U.S.C.A. § 1962

§ 1962. Prohibited activities

Currentness

**(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

### CREDIT(S)

(Added Pub.L. 91-452, Title IX, § 901(a), Oct. 15, 1970, 84 Stat. 942; amended Pub.L. 100-690, Title VII, § 7033, Nov. 18, 1988, 102 Stat. 4398.)

18 U.S.C.A. § 1962, 18 USCA § 1962
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 13.**18 U.S. Code § 1964 - Civil remedies**

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 96. Racketeer Influenced and Corrupt Organizations (Refs & Annos)

18 U.S.C.A. § 1964

§ 1964. Civil remedies

Currentness

**(a)** The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

**(b)** The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

**(c)** Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

**(d)** A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

### CREDIT(S)

(Added Pub.L. 91-452, Title IX, § 901(a), Oct. 15, 1970, 84 Stat. 943; amended Pub.L. 98-620, Title IV, § 402(24)(A), Nov. 8, 1984, 98 Stat. 3359; Pub.L. 104-67, Title I, § 107, Dec. 22, 1995, 109 Stat. 758.)

18 U.S.C.A. § 1964, 18 USCA § 1964

Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 14.28 U.S. Code § 636 - Jurisdiction, powers, and temporary assignment

United States Code Annotated

Title 28. Judiciary and Judicial Procedure (Refs & Annos)

Part III. Court Officers and Employees (Refs & Annos)

Chapter 43. United States Magistrate Judges (Refs & Annos)

28 U.S.C.A. § 636

§ 636. Jurisdiction, powers, and temporary assignment

Effective: December 1, 2009

Currentness

**(a)** Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law--

**(1)** all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts;

**(2)** the power to administer oaths and affirmations, issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial, and take acknowledgements, affidavits, and depositions;

**(3)** the power to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section;

**(4)** the power to enter a sentence for a petty offense; and

**(5)** the power to enter a sentence for a class A misdemeanor in a case in which the parties have consented.

**(b)(1)** Notwithstanding any provision of law to the contrary--

**(A)** a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

**(B)** a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the

APP.031

disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial[1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

**(C)** the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

**(2)** A judge may designate a magistrate judge to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate judge to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

**(3)** A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

**(4)** Each district court shall establish rules pursuant to which the magistrate judges shall discharge their duties.

**(c)** Notwithstanding any provision of law to the contrary--

**(1)** Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

**(2)** If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the

parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

**(3)** Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court. The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States.

**(4)** The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection.

**(5)** The magistrate judge shall, subject to guidelines of the Judicial Conference, determine whether the record taken pursuant to this section shall be taken by electronic sound recording, by a court reporter, or by other means.

**(d)** The practice and procedure for the trial of cases before officers serving under this chapter shall conform to rules promulgated by the Supreme Court pursuant to section 2072 of this title.

**(e) Contempt authority.--**

**(1) In general.**--A United States magistrate judge serving under this chapter shall have within the territorial jurisdiction prescribed by the appointment of such magistrate judge the power to exercise contempt authority as set forth in this subsection.

**(2) Summary criminal contempt authority.**--A magistrate judge shall have the power to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice. The order of contempt shall be issued under the Federal Rules of Criminal Procedure.

**(3) Additional criminal contempt authority in civil consent and misdemeanor cases.**--In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge shall have the power to punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, rule, decree, or command. Disposition of such contempt shall be conducted upon notice and hearing under the Federal Rules of Criminal Procedure.

**(4) Civil contempt authority in civil consent and misdemeanor cases.**--In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge may exercise the civil contempt authority of the district court. This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.

**(5) Criminal contempt penalties.**--The sentence imposed by a magistrate judge for any criminal contempt provided for in paragraphs (2) and (3) shall not exceed the penalties for a Class C misdemeanor as set forth in sections 3581(b)(8) and 3571(b)(6) of title 18.

**(6) Certification of other contempts to the district court.**--Upon the commission of any such act--

(A) in any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, or in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, that may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection, or

(B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where--

(i) the act committed in the magistrate judge's presence may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection,

(ii) the act that constitutes a criminal contempt occurs outside the presence of the magistrate judge, or

(iii) the act constitutes a civil contempt,

the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

**(7) Appeals of magistrate judge contempt orders.**--The appeal of an order of contempt under this subsection shall be made to the court of appeals in cases proceeding under subsection (c) of this section. The appeal of any other order of contempt issued under this section shall be made to the district court.

**(f)** In an emergency and upon the concurrence of the chief judges of the districts involved, a United States magistrate judge may be temporarily assigned to perform any of the duties specified in subsection (a), (b), or (c) of this section in a judicial district other than the judicial district for which he has been appointed. No magistrate judge shall perform any of such duties in a district to which he has been temporarily assigned until an order has been issued by the chief judge of such district specifying (1) the emergency by reason of which he has been transferred, (2) the duration of his assignment, and (3) the duties which he is authorized to perform. A magistrate judge so assigned shall not be entitled to additional compensation but shall be reimbursed for actual and necessary expenses incurred in the performance of his duties in accordance with section 635.

**(g)** A United States magistrate judge may perform the verification function required by section 4107 of

title 18, United States Code. A magistrate judge may be assigned by a judge of any United States district court to perform the verification required by section 4108 and the appointment of counsel authorized by section 4109 of title 18, United States Code, and may perform such functions beyond the territorial limits of the United States. A magistrate judge assigned such functions shall have no authority to perform any other function within the territory of a foreign country.

**(h)** A United States magistrate judge who has retired may, upon the consent of the chief judge of the district involved, be recalled to serve as a magistrate judge in any judicial district by the judicial council of the circuit within which such district is located. Upon recall, a magistrate judge may receive a salary for such service in accordance with regulations promulgated by the Judicial Conference, subject to the restrictions on the payment of an annuity set forth in section 377 of this title or in subchapter III of chapter 83, and chapter 84, of title 5 which are applicable to such magistrate judge. The requirements set forth in subsections (a), (b)(3), and (d) of section 631, and paragraph (1) of subsection (b) of such section to the extent such paragraph requires membership of the bar of the location in which an individual is to serve as a magistrate judge, shall not apply to the recall of a retired magistrate judge under this subsection or section 375 of this title. Any other requirement set forth in section 631(b) shall apply to the recall of a retired magistrate judge under this subsection or section 375 of this title unless such retired magistrate judge met such requirement upon appointment or reappointment as a magistrate judge under section 631.

### CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 917; Pub.L. 90-578, Title I, § 101, Oct. 17, 1968, 82 Stat. 1113; Pub.L. 92-239, §§ 1, 2, Mar. 1, 1972, 86 Stat. 47; Pub.L. 94-577, § 1, Oct. 21, 1976, 90 Stat. 2729; Pub.L. 95-144, § 2, Oct. 28, 1977, 91 Stat. 1220; Pub.L. 96-82, § 2, Oct. 10, 1979, 93 Stat. 643; Pub.L. 98-473, Title II, § 208, Oct. 12, 1984, 98 Stat. 1986; Pub.L. 98-620, Title IV, § 402(29)(B), Nov. 8, 1984, 98 Stat. 3359; Pub.L. 99-651, Title II, § 201(a)(2), Nov. 14, 1986, 100 Stat. 3647; Pub.L. 100-659, § 4(c), Nov. 15, 1988, 102 Stat. 3918; Pub.L. 100-690, Title VII, § 7322, Nov. 18, 1988, 102 Stat. 4467; Pub.L. 100-702, Title IV, § 404(b)(1), Title X, § 1014, Nov. 19, 1988, 102 Stat. 4651, 4669; Pub.L. 101-650, Title III, §§ 308(a), 321, Dec. 1, 1990, 104 Stat. 5112, 5117; Pub.L. 104-317, Title II, §§ 201, 202(b), 207, Oct. 19, 1996, 110 Stat. 3848, 3849, 3851; Pub.L. 106-518, Title II, §§ 202, 203(b), Nov. 13, 2000, 114 Stat. 2412, 2414; Pub.L. 107-273, Div. B, Title III, § 3002(b), Nov. 2, 2002, 116 Stat. 1805; Pub.L. 109-63, § 2(d), Sept. 9, 2005, 119 Stat. 1995; Pub.L. 111-16, § 6(1), May 7, 2009, 123 Stat. 1608.)

Footnotes

[1]

So in original. Probably should be "post-trial".

28 U.S.C.A. § 636, 28 USCA § 636
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 15.**28 U.S. Code § 1291 - Final decisions of district courts**

United States Code Annotated

  Title 28. Judiciary and Judicial Procedure (Refs & Annos)

    Part IV. Jurisdiction and Venue (Refs & Annos)

      Chapter 83. Courts of Appeals (Refs & Annos)

28 U.S.C.A. § 1291

§ 1291. Final decisions of district courts

Currentness

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

## **CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; Pub.L. 85-508, § 12(e), July 7, 1958, 72 Stat. 348; Pub.L. 97-164, Title I, § 124, Apr. 2, 1982, 96 Stat. 36.)

28 U.S.C.A. § 1291, 28 USCA § 1291

Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 16.**28 U.S. Code § 2106 - Determination**

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
  Part V. Procedure
    Chapter 133. Review--Miscellaneous Provisions

28 U.S.C.A. § 2106

§ 2106. Determination

Currentness

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 963.)

28 U.S.C.A. § 2106, 28 USCA § 2106
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 17.**29 U.S. Code § 1001 - Congressional findings and declaration of policy**

United States Code Annotated

Title 29. Labor

Chapter 18. Employee Retirement Income Security Program (Refs & Annos)

Subchapter I. Protection of Employee Benefit Rights (Refs & Annos)

Subtitle A. General Provisions

29 U.S.C.A. § 1001

§ 1001. Congressional findings and declaration of policy

Currentness

**(a) Benefit plans as affecting interstate commerce and the Federal taxing power**

The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large volume of the activities of such plans are carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

**(b) Protection of interstate commerce and beneficiaries by requiring disclosure and reporting, setting standards of conduct, etc., for fiduciaries**

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

**(c) Protection of interstate commerce, the Federal taxing power, and beneficiaries by vesting of accrued benefits, setting minimum standards of funding, requiring termination insurance**
It is hereby further declared to be the policy of this chapter to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance.

## CREDIT(S)

(Pub.L. 93-406, Title I, § 2, Sept. 2, 1974, 88 Stat. 832.)

Footnotes
[1]    As amended September 20, 1978.

29 U.S.C.A. § 1001, 29 USCA § 1001
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 18.**29 U.S. Code § 1056 - Form and payment of benefits**

United States Code Annotated

  Title 29. Labor

    Chapter 18. Employee Retirement Income Security Program (Refs & Annos)

      Subchapter I. Protection of Employee Benefit Rights (Refs & Annos)

        Subtitle B. Regulatory Provisions

          Part 2. Participation and Vesting (Refs & Annos)

29 U.S.C.A. § 1056

§ 1056. Form and payment of benefits

Effective: December 29, 2022

Currentness

**(a) Commencement date for payment of benefits**

Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which--

**(1)** occurs the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

**(2)** occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

**(3)** the participant terminates his service with the employer.

In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

**(b) Decrease in plan benefits by reason of increases in benefit levels under Social Security Act or Railroad Retirement Act of 1937**

If--

**(1)** a participant or beneficiary is receiving benefits under a pension plan, or

**(2)** a participant is separated from the service and has non-forfeitable rights to benefits,

APP.041

a plan may not decrease benefits of such a participant by reason of any increase in the benefit levels payable under title II of the Social Security Act or the Railroad Retirement Act of 1937 or any increase in the wage base under such title II, if such increase takes place after September 2, 1974, or (if later) the earlier of the date of first entitlement of such benefits or the date of such separation.

**(c) Forfeiture of accrued benefits derived from employer contributions**

No pension plan may provide that any part of a participant's accrued benefit derived from employer contributions (whether or not otherwise nonforfeitable) is forfeitable solely because of withdrawal by such participant of any amount attributable to the benefit derived from contributions made by such participant. The preceding sentence shall not apply (1) to the accrued benefit of any participant unless, at the time of such withdrawal, such participant has a nonforfeitable right to at least 50 percent of such accrued benefit, or (2) to the extent that an accrued benefit is permitted to be forfeited in accordance with section 1053(a)(3)(D)(iii) of this title.

**(d) Assignment or alienation of plan benefits**

**(1)** Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

**(2)** For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued non-forfeitable benefit and is exempt from the tax imposed by section 4975 of Title 26 (relating to tax on prohibited transactions) by reason of section 4975(d)(1) of Title 26.

**(3)(A)** Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

**(B)** For purposes of this paragraph--

  **(i)** the term "qualified domestic relations order" means a domestic relations order--

    **(I)** which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

    **(II)** with respect to which the requirements of subparagraphs (C) and (D) are met, and

**(ii)** the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which--

**(I)** relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

**(II)** is made pursuant to a State or Tribal domestic relations law (including a community property law).

For purposes of clause (ii)(II), the term "Tribal" with respect to a domestic relations law means such a law which is issued by or under the laws of an Indian tribal government (as defined in section 7701(a)(40) of Title 26), a subdivision of such an Indian tribal government, or an agency or instrumentality of either.

**(C)** A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies--

**(i)** the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

**(ii)** the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

**(iii)** the number of payments or period to which such order applies, and

**(iv)** each plan to which such order applies.

**(D)** A domestic relations order meets the requirements of this subparagraph only if such order--

**(i)** does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

**(ii)** does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

**(iii)** does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

**(E)(i)** A domestic relations order shall not be treated as failing to meet the requirements of clause (i) of subparagraph (D) solely because such order requires that payment of benefits be made to an alternate payee--

**(I)** in the case of any payment before a participant has separated from service, on or after the date on which the participant attains (or would have attained) the earliest retirement age,

**(II)** as if the participant had retired on the date on which such payment is to begin under such order (but taking into account only the present value of benefits actually accrued and not taking into account the present value of any employer subsidy for early retirement), and

**(III)** in any form in which such benefits may be paid under the plan to the participant (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse).

For purposes of subclause (II), the interest rate assumption used in determining the present value shall be the interest rate specified in the plan or, if no rate is specified, 5 percent.

**(ii)** For purposes of this subparagraph, the term "earliest retirement age" means the earlier of--

**(I)** the date on which the participant is entitled to a distribution under the plan, or

**(II)** the later of the date of[1] the participant attains age 50 or the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service.

**(F)** To the extent provided in any qualified domestic relations order--

**(i)** the former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of section 1055 of this title (and any spouse of the participant shall not be treated as a spouse of the participant for such purposes), and

**(ii)** if married for at least 1 year, the surviving former spouse shall be treated as meeting the requirements of section 1055(f) of this title.

**(G)(i)** In the case of any domestic relations order received by a plan--

**(I)** the plan administrator shall promptly notify the participant and each alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders, and

**(II)** within a reasonable period after receipt of such order, the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.

**(ii)** Each plan shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders. Such procedures--

**(I)** shall be in writing,

**(II)** shall provide for the notification of each person specified in a domestic relations order as entitled to payment of benefits under the plan (at the address included in the domestic relations order) of such procedures promptly upon receipt by the plan of the domestic relations order, and

**(III)** shall permit an alternate payee to designate a representative for receipt of copies of notices that are sent to the alternate payee with respect to a domestic relations order.

**(H)(i)** During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall separately account for the amounts (hereinafter in this

subparagraph referred to as the "segregated amounts") which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order.

**(ii)** If within the 18-month period described in clause (v) the order (or modification thereof) is determined to be a qualified domestic relations order, the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons entitled thereto.

**(iii)** If within the 18-month period described in clause (v)--

   **(I)** it is determined that the order is not a qualified domestic relations order, or

   **(II)** the issue as to whether such order is a qualified domestic relations order is not resolved,

then the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons who would have been entitled to such amounts if there had been no order.

**(iv)** Any determination that an order is a qualified domestic relations order which is made after the close of the 18-month period described in clause (v) shall be applied prospectively only.

**(v)** For purposes of this subparagraph, the 18-month period described in this clause is the 18-month period beginning with the date on which the first payment would be required to be made under the domestic relations order.

**(I)** If a plan fiduciary acts in accordance with part 4 of this subtitle in--

   **(i)** treating a domestic relations order as being (or not being) a qualified domestic relations order, or

   **(ii)** taking action under subparagraph (H),

then the plan's obligation to the participant and each alternate payee shall be discharged to the extent of any payment made pursuant to such Act.

**(J)** A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan. Nothing in the preceding sentence shall permit a requirement under section 1301 of this title of the payment of more than 1 premium with respect to a participant for any period.

**(K)** The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

**(L)** This paragraph shall not apply to any plan to which paragraph (1) does not apply.

**(M)** Payment of benefits by a pension plan in accordance with the applicable requirements of a qualified domestic relations order shall not be treated as garnishment for purposes of section 1673(a) of Title 15.

**(N)** In prescribing regulations under this paragraph, the Secretary shall consult with the Secretary of the Treasury.

**(4)** Paragraph (1) shall not apply to any offset of a participant's benefits provided under an employee

pension benefit plan against an amount that the participant is ordered or required to pay to the plan if--

**(A)** the order or requirement to pay arises--

**(i)** under a judgment of conviction for a crime involving such plan,

**(ii)** under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of this subtitle, or

**(iii)** pursuant to a settlement agreement between the Secretary and the participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the participant, in connection with a violation (or alleged violation) of part 4 of this subtitle by a fiduciary or any other person,

**(B)** the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the plan against the participant's benefits provided under the plan, and

**(C)** in a case in which the survivor annuity requirements of section 1055 of this title apply with respect to distributions from the plan to the participant, if the participant has a spouse at the time at which the offset is to be made--

**(i)** either--

**(I)** such spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the plan (or it is established to the satisfaction of a plan representative that such consent may not be obtained by reason of circumstances described in section 1055(c)(2)(B) of this title), or

**(II)** an election to waive the right of the spouse to a qualified joint and survivor annuity or a qualified preretirement survivor annuity is in effect in accordance with the requirements of section 1055(c) of this title,

**(ii)** such spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the plan in connection with a violation of part 4 of this subtitle, or

**(iii)** in such judgment, order, decree, or settlement, such spouse retains the right to receive the survivor annuity under a qualified joint and survivor annuity provided pursuant to section 1055(a)(1) of this title and under a qualified preretirement survivor annuity provided pursuant to section 1055(a)(2) of this title, determined in accordance with paragraph (5).

A plan shall not be treated as failing to meet the requirements of section 1055 of this title solely by reason of an offset under this paragraph.

**(5)(A)** The survivor annuity described in paragraph (4)(C)(iii) shall be determined as if--

**(i)** the participant terminated employment on the date of the offset,

**(ii)** there was no offset,

**(iii)** the plan permitted commencement of benefits only on or after normal retirement age,

**(iv)** the plan provided only the minimum-required qualified joint and survivor annuity, and

**(v)** the amount of the qualified preretirement survivor annuity under the plan is equal to the amount of the survivor annuity payable under the minimum-required qualified joint and survivor annuity.

**(B)** For purposes of this paragraph, the term "minimum-required qualified joint and survivor annuity" means the qualified joint and survivor annuity which is the actuarial equivalent of the participant's accrued benefit (within the meaning of section 1002(23) of this title) and under which the survivor annuity is 50 percent of the amount of the annuity which is payable during the joint lives of the participant and the spouse.

**(e) Limitation on distributions other than life annuities paid by plan**

**(1) In general**

Notwithstanding any other provision of this part, the fiduciary of a pension plan that is subject to the additional funding requirements of section 1083(j)(4) of this title shall not permit a prohibited payment to be made from a plan during a period in which such plan has a liquidity shortfall (as defined in section 1083(j)(4)(E)(i) of this title).

**(2) Prohibited payment**

For purposes of paragraph (1), the term "prohibited payment" means--

**(A)** any payment, in excess of the monthly amount paid under a single life annuity (plus any social security supplements described in the last sentence of section 1054(b)(1)(G) of this title), to a participant or beneficiary whose annuity starting date (as defined in section 1055(h)(2) of this title), that occurs during the period referred to in paragraph (1),

**(B)** any payment for the purchase of an irrevocable commitment from an insurer to pay benefits, and

**(C)** any other payment specified by the Secretary of the Treasury by regulations.

**(3) Period of shortfall**

For purposes of this subsection, a plan has a liquidity shortfall during the period that there is an underpayment of an installment under section 1083(j)(3) of this title by reason of section 1083(j)(4)(A) of this title.

**(4) Coordination with other provisions**

Compliance with this subsection shall not constitute a violation of any other provision of this chapter.

**(f) Missing participants in terminated plans**

In the case of a plan covered by section 1350 of this title, upon termination of the plan, benefits of missing participants shall be treated in accordance with section 1350 of this title.

**(g) Funding-based limits on benefits and benefit accruals under single-employer plans**

**(1) Funding-based limitation on shutdown benefits and other unpredictable contingent event benefits under single-employer plans**

**(A) In general**

If a participant of a defined benefit plan which is a single-employer plan is entitled to an unpredictable contingent event benefit payable with respect to any event occurring during any plan year, the plan shall provide that such benefit may not be provided if the adjusted funding target attainment percentage for such plan year--

**(i)** is less than 60 percent, or

**(ii)** would be less than 60 percent taking into account such occurrence.

**(B) Exemption**

Subparagraph (A) shall cease to apply with respect to any plan year, effective as of the first day of the plan year, upon payment by the plan sponsor of a contribution (in addition to any minimum required contribution under section 1083 of this title) equal to--

**(i)** in the case of subparagraph (A)(i), the amount of the increase in the funding target of the plan (under section 1083 of this title) for the plan year attributable to the occurrence referred to in subparagraph (A), and

**(ii)** in the case of subparagraph (A)(ii), the amount sufficient to result in an adjusted funding target attainment percentage of 60 percent.

**(C) Unpredictable contingent event benefit**

For purposes of this paragraph, the term "unpredictable contingent event benefit" means any benefit payable solely by reason of--

**(i)** a plant shutdown (or similar event, as determined by the Secretary of the Treasury), or

**(ii)** an event other than the attainment of any age, performance of any service, receipt or derivation of any compensation, or occurrence of death or disability.

**(2) Limitations on plan amendments increasing liability for benefits**

**(A) In general**

No amendment to a defined benefit plan which is a single-employer plan which has the effect of increasing liabilities of the plan by reason of increases in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become nonforfeitable

may take effect during any plan year if the adjusted funding target attainment percentage for such plan year is--

**(i)** less than 80 percent, or

**(ii)** would be less than 80 percent taking into account such amendment.

**(B) Exemption**

Subparagraph (A) shall cease to apply with respect to any plan year, effective as of the first day of the plan year (or if later, the effective date of the amendment), upon payment by the plan sponsor of a contribution (in addition to any minimum required contribution under section 1083 of this title) equal to--

**(i)** in the case of subparagraph (A)(i), the amount of the increase in the funding target of the plan (under section 1083 of this title) for the plan year attributable to the amendment, and

**(ii)** in the case of subparagraph (A)(ii), the amount sufficient to result in an adjusted funding target attainment percentage of 80 percent.

**(C) Exception for certain benefit increases**

Subparagraph (A) shall not apply to any amendment which provides for an increase in benefits under a formula which is not based on a participant's compensation, but only if the rate of such increase is not in excess of the contemporaneous rate of increase in average wages of participants covered by the amendment.

**(3) Limitations on accelerated benefit distributions**

**(A) Funding percentage less than 60 percent**

A defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage for a plan year is less than 60 percent, the plan may not pay any prohibited payment after the valuation date for the plan year.

**(B) Bankruptcy**

A defined benefit plan which is a single-employer plan shall provide that, during any period in which the plan sponsor is a debtor in a case under Title 11, or similar Federal or State law, the plan may not pay any prohibited payment. The preceding sentence shall not apply on or after the date on which the enrolled actuary of the plan certifies that the adjusted funding target attainment percentage of such plan (determined by not taking into account any adjustment of segment rates under section 1083(h)(2)(C)(iv) of this title) is not less than 100 percent.

**(C) Limited payment if percentage at least 60 percent but less than 80 percent**

**(i) In general**

A defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage for a plan year is 60 percent or greater but less than 80 percent, the plan may not pay any prohibited payment after the valuation date for the plan year to the extent the amount of the payment exceeds the lesser of--

**(I)** 50 percent of the amount of the payment which could be made without regard to this subsection, or

**(II)** the present value (determined under guidance prescribed by the Pension Benefit Guaranty Corporation, using the interest and mortality assumptions under section 1055(g) of this title) of the maximum guarantee with respect to the participant under section 1322 of this title.

### (ii) One-time application

### (I) In general

The plan shall also provide that only 1 prohibited payment meeting the requirements of clause (i) may be made with respect to any participant during any period of consecutive plan years to which the limitations under either subparagraph (A) or (B) or this subparagraph applies.

### (II) Treatment of beneficiaries

For purposes of this clause, a participant and any beneficiary on his behalf (including an alternate payee, as defined in subsection (d)(3)(K)) shall be treated as 1 participant. If the accrued benefit of a participant is allocated to such an alternate payee and 1 or more other persons, the amount under clause (i) shall be allocated among such persons in the same manner as the accrued benefit is allocated unless the qualified domestic relations order (as defined in subsection (d)(3)(B)(i)) provides otherwise.

## (D) Exception

This paragraph shall not apply to any plan for any plan year if the terms of such plan (as in effect for the period beginning on September 1, 2005, and ending with such plan year) provide for no benefit accruals with respect to any participant during such period.

## (E) Prohibited payment

For purpose[2] of this paragraph, the term "prohibited payment" means--

**(i)** any payment, in excess of the monthly amount paid under a single life annuity (plus any social security supplements described in the last sentence of section 1054(b)(1)(G) of this title), to a participant or beneficiary whose annuity starting date (as defined in section 1055(h)(2) of this title) occurs during any period a limitation under subparagraph (A) or (B) is in effect,

**(ii)** any payment for the purchase of an irrevocable commitment from an insurer to pay benefits, and

**(iii)** any other payment specified by the Secretary of the Treasury by regulations.

Such term shall not include the payment of a benefit which under section 1053(e) of this title may be immediately distributed without the consent of the participant.

### (4) Limitation on benefit accruals for plans with severe funding shortfalls

#### (A) In general

A defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage for a plan year is less than 60 percent, benefit accruals under the plan shall cease as of the valuation date for the plan year.

#### (B) Exemption

Subparagraph (A) shall cease to apply with respect to any plan year, effective as of the first day of the plan year, upon payment by the plan sponsor of a contribution (in addition to any minimum required contribution under section 1083 of this title) equal to the amount sufficient to result in an adjusted funding target attainment percentage of 60 percent.

### (5) Rules relating to contributions required to avoid benefit limitations

#### (A) Security may be provided

##### (i) In general

For purposes of this subsection, the adjusted funding target attainment percentage shall be determined by treating as an asset of the plan any security provided by a plan sponsor in a form meeting the requirements of clause (ii).

##### (ii) Form of security

The security required under clause (i) shall consist of--

**(I)** a bond issued by a corporate surety company that is an acceptable surety for purposes of section 1112 of this title,

**(II)** cash, or United States obligations which mature in 3 years or less, held in escrow by a bank or similar financial institution, or

**(III)** such other form of security as is satisfactory to the Secretary of the Treasury and the parties involved.

##### (iii) Enforcement

Any security provided under clause (i) may be perfected and enforced at any time after the earlier

APP.051

of--

**(I)** the date on which the plan terminates,

**(II)** if there is a failure to make a payment of the minimum required contribution for any plan year beginning after the security is provided, the due date for the payment under section 1083(j) of this title, or

**(III)** if the adjusted funding target attainment percentage is less than 60 percent for a consecutive period of 7 years, the valuation date for the last year in the period.

### (iv) Release of security

The security shall be released (and any amounts thereunder shall be refunded together with any interest accrued thereon) at such time as the Secretary of the Treasury may prescribe in regulations, including regulations for partial releases of the security by reason of increases in the adjusted funding target attainment percentage.

### (B) Prefunding balance or funding standard carryover balance may not be used

No prefunding balance or funding standard carryover balance under section 1083(f) of this title may be used under paragraph (1), (2), or (4) to satisfy any payment an employer may make under any such paragraph to avoid or terminate the application of any limitation under such paragraph.

### (C) Deemed reduction of funding balances

### (i) In general

Subject to clause (iii), in any case in which a benefit limitation under paragraph (1), (2), (3), or (4) would (but for this subparagraph and determined without regard to paragraph (1)(B), (2)(B), or (4)(B)) apply to such plan for the plan year, the plan sponsor of such plan shall be treated for purposes of this chapter as having made an election under section 1083(f) of this title to reduce the prefunding balance or funding standard carryover balance by such amount as is necessary for such benefit limitation to not apply to the plan for such plan year.

### (ii) Exception for insufficient funding balances

Clause (i) shall not apply with respect to a benefit limitation for any plan year if the application of clause (i) would not result in the benefit limitation not applying for such plan year.

### (iii) Restrictions of certain rules to collectively bargained plans

With respect to any benefit limitation under paragraph (1), (2), or (4), clause (i) shall only apply in the case of a plan maintained pursuant to 1 or more collective bargaining agreements between employee representatives and 1 or more employers.

## (6) New plans

Paragraphs (1), (2), and (4) shall not apply to a plan for the first 5 plan years of the plan. For purposes of this paragraph, the reference in this paragraph to a plan shall include a reference to any predecessor plan.

**(7) Presumed underfunding for purposes of benefit limitations**

**(A) Presumption of continued underfunding**

In any case in which a benefit limitation under paragraph (1), (2), (3), or (4) has been applied to a plan with respect to the plan year preceding the current plan year, the adjusted funding target attainment percentage of the plan for the current plan year shall be presumed to be equal to the adjusted funding target attainment percentage of the plan for the preceding plan year until the enrolled actuary of the plan certifies the actual adjusted funding target attainment percentage of the plan for the current plan year.

**(B) Presumption of underfunding after 10th month**

In any case in which no certification of the adjusted funding target attainment percentage for the current plan year is made with respect to the plan before the first day of the 10th month of such year, for purposes of paragraphs (1), (2), (3), and (4), such first day shall be deemed, for purposes of such paragraph, to be the valuation date of the plan for the current plan year and the plan's adjusted funding target attainment percentage shall be conclusively presumed to be less than 60 percent as of such first day.

**(C) Presumption of underfunding after 4th month for nearly underfunded plans**

In any case in which--

**(i)** a benefit limitation under paragraph (1), (2), (3), or (4) did not apply to a plan with respect to the plan year preceding the current plan year, but the adjusted funding target attainment percentage of the plan for such preceding plan year was not more than 10 percentage points greater than the percentage which would have caused such paragraph to apply to the plan with respect to such preceding plan year, and

**(ii)** as of the first day of the 4th month of the current plan year, the enrolled actuary of the plan has not certified the actual adjusted funding target attainment percentage of the plan for the current plan year,

until the enrolled actuary so certifies, such first day shall be deemed, for purposes of such paragraph, to be the valuation date of the plan for the current plan year and the adjusted funding target attainment percentage of the plan as of such first day shall, for purposes of such paragraph, be presumed to be equal to 10 percentage points less than the adjusted funding target attainment percentage of the plan for such preceding plan year.

**(8) Treatment of plan as of close of prohibited or cessation period**

For purposes of applying this part--

**(A) Operation of plan after period**

Unless the plan provides otherwise, payments and accruals will resume effective as of the day following the close of the period for which any limitation of payment or accrual of benefits under paragraph (3) or (4) applies.

**(B) Treatment of affected benefits**

Nothing in this paragraph shall be construed as affecting the plan's treatment of benefits which would have been paid or accrued but for this subsection.

**(9) Terms relating to funding target attainment percentage**

For purposes of this subsection--

**(A) In general**

The term "funding target attainment percentage" has the same meaning given such term by section 1083(d)(2) of this title.

**(B) Adjusted funding target attainment percentage**

The term "adjusted funding target attainment percentage" means the funding target attainment percentage which is determined under subparagraph (A) by increasing each of the amounts under subparagraphs (A) and (B) of section 1083(d)(2) of this title by the aggregate amount of purchases of annuities for employees other than highly compensated employees (as defined in section 414(q) of Title 26) which were made by the plan during the preceding 2 plan years.

**(C) Application to plans which are fully funded without regard to reductions for funding balances**

In the case of a plan for any plan year, if the funding target attainment percentage is 100 percent or more (determined without regard to the reduction in the value of assets under section 1083(f)(4) of this title), the funding target attainment percentage for purposes of subparagraphs (A) and (B) shall be determined without regard to such reduction.

**(10) Secretarial authority for plans with alternate valuation date**

In the case of a plan which has designated a valuation date other than the first day of the plan year, the Secretary of the Treasury may prescribe rules for the application of this subsection which are necessary to reflect the alternate valuation date.

**(11) Repealed. Pub.L. 113-295, Div. A, Title II, § 221(a)(57)(G)(ii), Dec. 19, 2014, 128 Stat. 4047**

**(12) CSEC plans**

This subsection shall not apply to a CSEC plan (as defined in section 1060(f) of this title).

**(h) Special rules applicable to benefit overpayments**

**(1) General rule**

In the case of an inadvertent benefit overpayment by any pension plan, the responsible plan fiduciary shall not be considered to have failed to comply with the requirements of this subchapter merely because such fiduciary determines, in the exercise of its discretion, not to seek recovery of all or part of such overpayment from--

**(A)** any participant or beneficiary,

**(B)** any plan sponsor of, or contributing employer to--

**(i)** an individual account plan, provided that the amount needed to prevent or restore any impermissible forfeiture from any participant's or beneficiary's account arising in connection with the overpayment is, separately from and independently of the overpayment, allocated to such account pursuant to the nonforfeitability requirements of section 1053 of this title (for example, out of the plan's forfeiture account, additional employer contributions, or recoveries from those responsible for the overpayment), or

**(ii)** a defined benefit pension plan subject to the funding rules in part 3 of this subtitle B, unless the responsible plan fiduciary determines, in the exercise of its fiduciary discretion, that failure to recover all or part of the overpayment faster than required under such funding rules would materially affect the plan's ability to pay benefits due to other participants and beneficiaries, or

**(C)** any fiduciary of the plan, other than a fiduciary (including a plan sponsor or contributing employer acting in a fiduciary capacity) whose breach of its fiduciary duties resulted in such overpayment, provided that if the plan has established prudent procedures to prevent and minimize overpayment of benefits and the relevant plan fiduciaries have followed such procedures, an inadvertent benefit overpayment will not give rise to a breach of fiduciary duty.

**(2) Reduction in future benefit payments and recovery from responsible party**

Paragraph (1) shall not fail to apply with respect to any inadvertent benefit overpayment merely because, after discovering such overpayment, the responsible plan fiduciary--

**(A)** reduces future benefit payments to the correct amount provided for under the terms of the plan, or

**(B)** seeks recovery from the person or persons responsible for the overpayment.

**(3) Employer funding obligations**

Nothing in this subsection shall relieve an employer of any obligation imposed on it to make

APP.055

contributions to a plan to meet the minimum funding standards under part 3 of this subtitle B or to prevent or restore an impermissible forfeiture in accordance with section 1053 of this title.

**(4) Recoupment from participants and beneficiaries**

If the responsible plan fiduciary, in the exercise of its fiduciary discretion, decides to seek recoupment from a participant or beneficiary of all or part of an inadvertent benefit overpayment made by the plan to such participant or beneficiary, it may do so, subject to the following conditions:

**(A)** No interest or other additional amounts (such as collection costs or fees) are sought on overpaid amounts for any period.

**(B)** If the plan seeks to recoup past overpayments of a non-decreasing annuity by reducing future benefit payments--

**(i)** the reduction ceases after the plan has recovered the full dollar amount of the overpayment,

**(ii)** the amount recouped each calendar year does not exceed 10 percent of the full dollar amount of the overpayment, and

**(iii)** future benefit payments are not reduced to below 90 percent of the periodic amount otherwise payable under the terms of the plan.

Alternatively, if the plan seeks to recoup past overpayments of a non-decreasing annuity through one or more installment payments, the sum of such installment payments in any calendar year does not exceed the sum of the reductions that would be permitted in such year under the preceding sentence.

**(C)** If the plan seeks to recoup past overpayments of a benefit other than a non-decreasing annuity, the plan satisfies requirements developed by the Secretary of Labor for purposes of this subparagraph.

**(D)** Efforts to recoup overpayments are--

**(i)** not accompanied by threats of litigation, unless the responsible plan fiduciary makes a determination that there is a reasonable likelihood of success to recover an amount greater than the cost of recovery, and

**(ii)** not made through a collection agency or similar third party, unless the participant or beneficiary ignores or rejects efforts to recoup the overpayment following either a final judgment in Federal or State court or a settlement between the participant or beneficiary and the plan, in either case authorizing such recoupment.

**(E)** Recoupment of past overpayments to a participant is not sought from any beneficiary of the participant, including a spouse, surviving spouse, former spouse, or other beneficiary.

**(F)** Recoupment may not be sought if the first overpayment occurred more than 3 years before the participant or beneficiary is first notified in writing of the error, except in the case of fraud or misrepresentation by the participant.

**(G)** A participant or beneficiary from whom recoupment is sought is entitled to contest all or part of the recoupment pursuant to the claims procedures of the plan that made the overpayment to the extent such procedures are consistent with section 1133 of this title and in the case of an inadvertent benefit overpayment from a plan to which paragraph (1) applies that is transferred to an eligible retirement plan (as defined in section 402(c)(8)(B) of Title 26) by or on behalf of a participant or beneficiary--

    **(i)** such plan shall notify the plan receiving the rollover of such dispute,

    **(ii)** the plan receiving the rollover shall retain such overpayment on behalf of the participant or beneficiary (and shall be entitled to treat such overpayment as plan assets) pending the outcome of such procedures, and

    **(iii)** the portion of such overpayment with respect to which recoupment is sought on behalf of the plan shall be permitted to be returned to such plan if it is determined to be an overpayment (and the plans making and receiving such transfer shall be treated as permitting such transfer).

**(H)** In determining the amount of recoupment to seek, the responsible plan fiduciary may take into account the hardship that recoupment likely would impose on the participant or beneficiary.

**(5) Effect of culpability**

Subparagraphs (A) through (F) of paragraph (4) shall not apply to protect a participant or beneficiary who is culpable. For purposes of this paragraph, a participant or beneficiary is culpable if the individual bears responsibility for the overpayment (such as through misrepresentations or omissions that led to the overpayment), or if the individual knew that the benefit payment or payments were materially in excess of the correct amount. Notwithstanding the preceding sentence, an individual is not culpable merely because the individual believed the benefit payment or payments were or might be in excess of the correct amount, if the individual raised that question with an authorized plan representative and was told the payment or payments were not in excess of the correct amount.

**CREDIT(S)**

(Pub.L. 93-406, Title I, § 206, Sept. 2, 1974, 88 Stat. 864; Pub.L. 98-397, Title I, § 104(a), Aug. 23, 1984, 98 Stat. 1433; Pub.L. 99-514, Title XVIII, § 1898(c)(2)(B), (4)(B), (5), (6)(B), (7)(B), Oct. 22, 1986, 100 Stat. 2952 to 2954; Pub.L. 101-239, Title VII, §§ 7891(a)(1), 7894(c)(8), (9)(A), Dec. 19, 1989, 103 Stat. 2445, 2449; Pub.L. 103-465, Title VII, §§ 761(a)(9)(B)(i), 776(c)(2), Dec. 8, 1994, 108 Stat. 5033, 5048; Pub.L. 105-34, Title XV, § 1502(a), Aug. 5, 1997, 111 Stat. 1058; Pub.L. 109-280, Title I, §§ 103(a), 108(a)(9), (10), formerly § 107(a)(9), (10), Title IV, § 410(b), Aug. 17, 2006, 120 Stat. 809, 819, 935, renumbered § 108(a)(9), (10), Pub.L. 111-192, Title II, § 202(a), June 25, 2010, 124 Stat. 1297; Pub.L. 110-458, Title I, § 101(c)(1)(B) to (G), Dec. 23, 2008, 122 Stat. 5097; Pub.L. 111-192, Title II, § 203(a)(1), June 25, 2010, 124 Stat. 1299; Pub.L. 113-97, Title I, § 102(b)(3), Apr. 7, 2014, 128 Stat. 1116; Pub.L. 113-159, Title II, § 2003(c)(2), Aug. 8, 2014, 128 Stat. 1850; Pub.L. 113-295, Div. A, Title II, § 221(a)(57)(E)(ii), (F)(ii), (G)(ii), Dec. 19, 2014, 128 Stat. 4046, 4047; Pub.L. 117-328, Div. T, Title III, §§ 301(a), 339(b), Dec. 29, 2022, 136 Stat. 5335, 5375.)

Footnotes

[1]

So in original. The word "of" probably should not appear.

[2]

So in original. Probably should be ''purposes''.

29 U.S.C.A. § 1056, 29 USCA § 1056
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

APP.058

## 19.**29 U.S. Code § 1132 - Civil enforcement**

United States Code Annotated

Title 29. Labor

Chapter 18. Employee Retirement Income Security Program (Refs & Annos)

Subchapter I. Protection of Employee Benefit Rights (Refs & Annos)

Subtitle B. Regulatory Provisions

Part 5. Administration and Enforcement

29 U.S.C.A. § 1132

§ 1132. Civil enforcement[Statutory Text & Notes of Decisions subdivisions I to V]

Effective: February 3, 2026

Currentness

<Notes of Decisions for 29 USCA § 1132 are displayed in multiple documents.>

**(a) Persons empowered to bring a civil action**

A civil action may be brought--

**(1)** by a participant or beneficiary--

**(A)** for the relief provided for in subsection (c) of this section, or

**(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

**(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

**(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

**(4)** by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of section 1025(c) or 1032(a) of this title;

**(5)** except as otherwise provided in subsection (b), by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;

**(6)** by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), (7), (8), (9), or (13) of subsection (c) or under subsection (i) or (l);

APP.059

**(7)** by a State to enforce compliance with a qualified medical child support order (as defined in section 1169(a)(2)(A) of this title);

**(8)** by the Secretary, or by an employer or other person referred to in section 1021(f)(1) of this title, (A) to enjoin any act or practice which violates subsection (f) of section 1021 of this title, or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection;

**(9)** in the event that the purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under a pension plan with respect to all or any portion of the participant's pension benefit under such plan constitutes a violation of part 4 of this title[1] or the terms of the plan, by the Secretary, by any individual who was a participant or beneficiary at the time of the alleged violation, or by a fiduciary, to obtain appropriate relief, including the posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts provided or to be provided by such insurance contract or annuity, plus reasonable prejudgment interest on such amounts;

**(10)** in the case of a multiemployer plan that has been certified by the actuary to be in endangered or critical status under section 1085 of this title, if the plan sponsor--

**(A)** has not adopted a funding improvement or rehabilitation plan under that section by the deadline established in such section, or

**(B)** fails to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section,

by an employer that has an obligation to contribute with respect to the multiemployer plan or an employee organization that represents active participants in the multiemployer plan, for an order compelling the plan sponsor to adopt a funding improvement or rehabilitation plan or to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section and the funding improvement or rehabilitation plan; or

**(11)** in the case of a multiemployer plan, by an employee representative, or any employer that has an obligation to contribute to the plan, (A) to enjoin any act or practice which violates subsection (k) of section 1021 of this title (or, in the case of an employer, subsection (l) of such section), or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection.

**(b) Plans qualified under Internal Revenue Code; maintenance of actions involving delinquent contributions**

**(1)** In the case of a plan which is qualified under section 401(a), 403(a), or 405(a)[2] of Title 26 (or with respect to which an application to so qualify has been filed and has not been finally determined) the Secretary may exercise his authority under subsection (a)(5) with respect to a violation of, or the enforcement of, parts 2 and 3 of this subtitle (relating to participation, vesting, and funding), only if--

**(A)** requested by the Secretary of the Treasury, or

**(B)** one or more participants, beneficiaries, or fiduciaries, of such plan request in writing (in such manner as the Secretary shall prescribe by regulation) that he exercise such authority on their behalf.

In the case of such a request under this paragraph he may exercise such authority only if he determines that such violation affects, or such enforcement is necessary to protect, claims of participants or beneficiaries to benefits under the plan.

**(2)** The Secretary shall not initiate an action to enforce section 1145 of this title.

**(3)** Except as provided in subsections (c)(9) and (a)(6) (with respect to collecting civil penalties under paragraphs (9) and (13) of subsection (c)), the Secretary is not authorized to enforce under this part any requirement of part 7 against a health insurance issuer offering health insurance coverage in connection with a group health plan (as defined in section 1191b(a)(1) of this title). Nothing in this paragraph shall affect the authority of the Secretary to issue regulations to carry out such part.

**(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form**

**(1)** Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title,,[3] section 1025(a) of this title, or section 1032(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

**(2)** The Secretary may assess a civil penalty against any plan administrator of up to $1,000 a day from the date of such plan administrator's failure or refusal to file the annual report required to be filed with the Secretary under section 1021(b)(1) of this title. For purposes of this paragraph, an annual report that has been rejected under section 1024(a)(4) of this title for failure to provide material information shall not be treated as having been filed with the Secretary.

**(3)** Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary or who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person or who fails to meet the requirements of section 1082(d)(12)(E)[2] of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

**(4)** The Secretary may assess a civil penalty of not more than $1,000 a day for each violation by any person of subsection (j), (k), or (l) of section 1021 of this title or section 1144(e)(3) of this title.

**(5)** The Secretary may assess a civil penalty against any person of up to $1,000 a day from the date of the person's failure or refusal to file the information required to be filed by such person with the Secretary under regulations prescribed pursuant to section 1021(g) of this title.

APP.061

**(6)** If, within 30 days of a request by the Secretary to a plan administrator for documents under section 1024(a)(6) of this title, the plan administrator fails to furnish the material requested to the Secretary, the Secretary may assess a civil penalty against the plan administrator of up to $100 a day from the date of such failure (but in no event in excess of $1,000 per request). No penalty shall be imposed under this paragraph for any failure resulting from matters reasonably beyond the control of the plan administrator.

**(7)** The Secretary may assess a civil penalty against a plan administrator of up to $100 a day from the date of the plan administrator's failure or refusal to provide notice to participants and beneficiaries in accordance with subsection (i) or (m) of section 1021 of this title. For purposes of this paragraph, each violation with respect to any single participant or beneficiary shall be treated as a separate violation.

**(8)** The Secretary may assess against any plan sponsor of a multiemployer plan a civil penalty of not more than $1,100 per day--

**(A)** for each violation by such sponsor of the requirement under section 1085 of this title to adopt by the deadline established in that section a funding improvement plan or rehabilitation plan with respect to a multiemployer plan which is in endangered or critical status, or

**(B)** in the case of a plan in endangered status which is not in seriously endangered status, for failure by the plan to meet the applicable benchmarks under section 1085 of this title by the end of the funding improvement period with respect to the plan.

**(9)(A)** The Secretary may assess a civil penalty against any employer of up to $100 a day from the date of the employer's failure to meet the notice requirement of section 1181(f)(3)(B)(i)(I) of this title. For purposes of this subparagraph, each violation with respect to any single employee shall be treated as a separate violation.

**(B)** The Secretary may assess a civil penalty against any plan administrator of up to $100 a day from the date of the plan administrator's failure to timely provide to any State the information required to be disclosed under section 1181(f)(3)(B)(ii) of this title. For purposes of this subparagraph, each violation with respect to any single participant or beneficiary shall be treated as a separate violation.

**(10) Secretarial enforcement authority relating to use of genetic information**

**(A) General rule**

The Secretary may impose a penalty against any plan sponsor of a group health plan, or any health insurance issuer offering health insurance coverage in connection with the plan, for any failure by such sponsor or issuer to meet the requirements of subsection (a)(1)(F), (b)(3), (c), or (d) of section 1182 of this title or section 1181 or 1182(b)(1) of this title with respect to genetic information, in connection with the plan.

**(B) Amount**

**(i) In general**

The amount of the penalty imposed by subparagraph (A) shall be $100 for each day in the

noncompliance period with respect to each participant or beneficiary to whom such failure relates.

**(ii) Noncompliance period**

For purposes of this paragraph, the term "noncompliance period" means, with respect to any failure, the period--

**(I)** beginning on the date such failure first occurs; and

**(II)** ending on the date the failure is corrected.

**(C) Minimum penalties where failure discovered**

Notwithstanding clauses (i) and (ii) of subparagraph (D):

**(i) In general**

In the case of 1 or more failures with respect to a participant or beneficiary--

**(I)** which are not corrected before the date on which the plan receives a notice from the Secretary of such violation; and

**(II)** which occurred or continued during the period involved;

the amount of penalty imposed by subparagraph (A) by reason of such failures with respect to such participant or beneficiary shall not be less than $2,500.

**(ii) Higher minimum penalty where violations are more than de minimis**

To the extent violations for which any person is liable under this paragraph for any year are more than de minimis, clause (i) shall be applied by substituting "$15,000" for "$2,500" with respect to such person.

**(D) Limitations**

**(i) Penalty not to apply where failure not discovered exercising reasonable diligence**

No penalty shall be imposed by subparagraph (A) on any failure during any period for which it is established to the satisfaction of the Secretary that the person otherwise liable for such penalty did not know, and exercising reasonable diligence would not have known, that such failure existed.

**(ii) Penalty not to apply to failures corrected within certain periods**

No penalty shall be imposed by subparagraph (A) on any failure if--

**(I)** such failure was due to reasonable cause and not to willful neglect; and

**(II)** such failure is corrected during the 30-day period beginning on the first date the person otherwise liable for such penalty knew, or exercising reasonable diligence would have known,

that such failure existed.

### (iii) Overall limitation for unintentional failures

In the case of failures which are due to reasonable cause and not to willful neglect, the penalty imposed by subparagraph (A) for failures shall not exceed the amount equal to the lesser of--

**(I)** 10 percent of the aggregate amount paid or incurred by the plan sponsor (or predecessor plan sponsor) during the preceding taxable year for group health plans; or

**(II)** $500,000.

### (E) Waiver by Secretary

In the case of a failure which is due to reasonable cause and not to willful neglect, the Secretary may waive part or all of the penalty imposed by subparagraph (A) to the extent that the payment of such penalty would be excessive relative to the failure involved.

### (F) Definitions

Terms used in this paragraph which are defined in section 1191b of this title shall have the meanings provided such terms in such section.

**(11)** The Secretary and the Secretary of Health and Human Services shall maintain such ongoing consultation as may be necessary and appropriate to coordinate enforcement under this subsection with enforcement under section 1320b-14(c)(8)[2] of Title 42.

**(12)** The Secretary may assess a civil penalty against any sponsor of a CSEC plan of up to $100 a day from the date of the plan sponsor's failure to comply with the requirements of section 1085a(j)(3) of this title to establish or update a funding restoration plan.

**(13) Secretarial enforcement authority relating to oversight of pharmacy benefit management services**

### (A) Failure to provide information

The Secretary may impose a penalty against a plan administrator of a group health plan, a health insurance issuer offering group health insurance coverage, or an entity providing pharmacy benefit management services on behalf of such a plan or issuer, or an applicable entity (as defined in section 1185$o$(e) of this title) that violates section 1185$o$(a) of this title; an entity providing pharmacy benefit management services on behalf of such a plan or issuer that fails to provide the information required under section 1185$o$(b) of this title; or any person who causes a group health plan to fail to provide the information required under section 1185$o$(c) of this title, in the amount of $10,000 for each day during which such violation continues or such information is not disclosed or reported.

### (B) False information

The Secretary may impose a penalty against a plan administrator of a group health plan, a health

insurance issuer offering group health insurance coverage, an entity providing pharmacy benefit management services, or an applicable entity (as defined in section 1185*o*(e) of this title) that knowingly provides false information under section 1185*o* of this title, in an amount not to exceed $100,000 for each item of false information. Such penalty shall be in addition to other penalties as may be prescribed by law.

### (C) Waivers

The Secretary may waive penalties under subparagraph (A), or extend the period of time for compliance with a requirement of this section, for an entity in violation of section 1185*o* of this title that has made a good-faith effort to comply with the requirements of section 1185*o* of this title.

### (d) Status of employee benefit plan as entity

**(1)** An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. In a case where a plan has not designated in the summary plan description of the plan an individual as agent for the service of legal process, service upon the Secretary shall constitute such service. The Secretary, not later than 15 days after receipt of service under the preceding sentence, shall notify the administrator or any trustee of the plan of receipt of such service.

**(2)** Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

### (e) Jurisdiction

**(1)** Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

**(2)** Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### (f) Amount in controversy; citizenship of parties

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

### (g) Attorney's fees and costs; awards in actions involving delinquent contributions

**(1)** In any action under this subchapter (other than an action described in paragraph (2)) by a participant,

APP.065

beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

**(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

**(A)** the unpaid contributions,

**(B)** interest on the unpaid contributions,

**(C)** an amount equal to the greater of--

**(i)** interest on the unpaid contributions, or

**(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

**(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and

**(E)** such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**(h) Service upon Secretary of Labor and Secretary of the Treasury**

A copy of the complaint in any action under this subchapter by a participant, beneficiary, or fiduciary (other than an action brought by one or more participants or beneficiaries under subsection (a)(1)(B) which is solely for the purpose of recovering benefits due such participants under the terms of the plan) shall be served upon the Secretary and the Secretary of the Treasury by certified mail. Either Secretary shall have the right in his discretion to intervene in any action, except that the Secretary of the Treasury may not intervene in any action under part 4 of this subtitle. If the Secretary brings an action under subsection (a) on behalf of a participant or beneficiary, he shall notify the Secretary of the Treasury.

**(i) Administrative assessment of civil penalty**

In the case of a transaction prohibited by section 1106 of this title by a party in interest with respect to a plan to which this part applies, the Secretary may assess a civil penalty against such party in interest. The amount of such penalty may not exceed 5 percent of the amount involved in each such transaction (as defined in section 4975(f)(4) of Title 26) for each year or part thereof during which the prohibited transaction continues, except that, if the transaction is not corrected (in such manner as the Secretary shall prescribe in regulations which shall be consistent with section 4975(f)(5) of Title 26) within 90 days after notice from the Secretary (or such longer period as the Secretary may permit), such penalty may be in an amount not more than 100 percent of the amount involved. This subsection shall not apply to a transaction with respect to a plan described in section 4975(e)(1) of Title 26.

**(j) Direction and control of litigation by Attorney General**

In all civil actions under this subchapter, attorneys appointed by the Secretary may represent the Secretary (except as provided in section 518(a) of Title 28), but all such litigation shall be subject to the direction and control of the Attorney General.

**(k) Jurisdiction of actions against the Secretary of Labor**

Suits by an administrator, fiduciary, participant, or beneficiary of an employee benefit plan to review a final order of the Secretary, to restrain the Secretary from taking any action contrary to the provisions of this chapter, or to compel him to take action required under this subchapter, may be brought in the district court of the United States for the district where the plan has its principal office, or in the United States District Court for the District of Columbia.

**(l) Civil penalties on violations by fiduciaries**

**(1)** In the case of--

**(A)** any breach of fiduciary responsibility under (or other violation of) part 4 of this subtitle by a fiduciary, or

**(B)** any knowing participation in such a breach or violation by any other person,

the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.

**(2)** For purposes of paragraph (1), the term "applicable recovery amount" means any amount which is recovered from a fiduciary or other person with respect to a breach or violation described in paragraph (1)--

**(A)** pursuant to any settlement agreement with the Secretary, or

**(B)** ordered by a court to be paid by such fiduciary or other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5).

**(3)** The Secretary may, in the Secretary's sole discretion, waive or reduce the penalty under paragraph (1) if the Secretary determines in writing that--

**(A)** the fiduciary or other person acted reasonably and in good faith, or

**(B)** it is reasonable to expect that the fiduciary or other person will not be able to restore all losses to the plan (or to provide the relief ordered pursuant to subsection (a)(9)) without severe financial hardship unless such waiver or reduction is granted.

**(4)** The penalty imposed on a fiduciary or other person under this subsection with respect to any transaction shall be reduced by the amount of any penalty or tax imposed on such fiduciary or other person with respect to such transaction under subsection (i) of this section and section 4975 of Title 26.

## (m) Penalty for improper distribution

In the case of a distribution to a pension plan participant or beneficiary in violation of section 1056(e) of this title by a plan fiduciary, the Secretary shall assess a penalty against such fiduciary in an amount equal to the value of the distribution. Such penalty shall not exceed $10,000 for each such distribution.

### CREDIT(S)

(Pub.L. 93-406, Title I, § 502, Sept. 2, 1974, 88 Stat. 891; Pub.L. 96-364, Title III, § 306(b), Sept. 26, 1980, 94 Stat. 1295; Pub.L. 99-272, Title X, § 10002(b), Apr. 7, 1986, 100 Stat. 231; Pub.L. 100-203, Title IX, §§ 9342(c), 9344, Dec. 22, 1987, 101 Stat. 1330-372, 1330-373; Pub.L. 101-239, Title II, § 2101(a), (b), Title VII, §§ 7881(b)(5)(B), (j)(2), (3), 7891(a)(1), 7894(f)(1), Dec. 19, 1989, 103 Stat. 2123, 2438, 2442, 2445, 2450; Pub.L. 101-508, Title XII, § 12012(d)(2), Nov. 5, 1990, 104 Stat.1388-573; Pub.L. 103-66, Title IV, § 4301(c)(1) to (3), Aug. 10, 1993, 107 Stat. 376; Pub.L. 103-401, §§ 2, 3, Oct. 22, 1994, 108 Stat. 4172; Pub.L. 103-465, Title VII, § 761(a)(9)(B)(ii), Dec. 8, 1994, 108 Stat. 5033; Pub.L. 104-191, Title I, § 101(b), (e)(2), Aug. 21, 1996, 110 Stat. 1951, 1952; Pub.L. 104-204, Title VI, § 603(b)(3)(E), Sept. 26, 1996, 110 Stat. 2938; Pub.L. 105-34, Title XV, § 1503(c)(2)(B), (d)(7), Aug. 5, 1997, 111 Stat. 1062; Pub.L. 107-204, Title III, § 306(b)(3), July 30, 2002, 116 Stat. 783; Pub.L. 108-218, Title I, §§ 102(d), 103(b), 104(a)(2), Apr. 10, 2004, 118 Stat. 602, 603, 606; Pub.L. 109-280, Title I, § 103(b)(2), Title II, § 202(b), (c), Title V, §§ 502(a)(2), (b)(2), 507(b), 508(a)(2)(C), Title IX, § 902(f)(2), Aug. 17, 2006, 120 Stat. 816, 884, 885, 940, 941, 949, 951, 1039; Pub.L. 110-233, Title I, § 101(e), May 21, 2008, 122 Stat. 886; Pub.L. 110-458, Title I, §§ 101(c)(1)(H), 102(b)(1)(H), (I), Dec. 23, 2008, 122 Stat. 5097, 5101; Pub.L. 111-3, Title III, § 311(b)(1)(E), Feb. 4, 2009, 123 Stat. 70; Pub.L. 113-97, Title I, § 102(b)(6), Apr. 7, 2014, 128 Stat. 1117; Pub.L. 113-235, Div. O, Title I, § 111(d), Dec. 16, 2014, 128 Stat. 2793; Pub.L. 117-328, Div. T, Title III, § 342(c), Dec. 29, 2022, 136 Stat. 5378; Pub.L. 119-75, Div. J, Title VII, § 6701(b)(1)(B), Feb. 3, 2026, 140 Stat. 722.)

Footnotes

[1] So in original. Probably should be "subtitle".

[2] See References in Text note set out under this section.

[3] So in original.

29 U.S.C.A. § 1132, 29 USCA § 1132
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 20.**29 U.S. Code § 1144 - Other laws**

United States Code Annotated

Title 29. Labor

Chapter 18. Employee Retirement Income Security Program (Refs & Annos)

Subchapter I. Protection of Employee Benefit Rights (Refs & Annos)

Subtitle B. Regulatory Provisions

Part 5. Administration and Enforcement

29 U.S.C.A. § 1144

§ 1144. Other laws

Effective: August 17, 2006

Currentness

**(a) Supersedure; effective date**

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

**(b) Construction and application**

**(1)** This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

**(2)(A)** Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

**(B)** Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

**(3)** Nothing in this section shall be construed to prohibit use by the Secretary of services or facilities of a State agency as permitted under section 1136 of this title.

**(4)** Subsection (a) shall not apply to any generally applicable criminal law of a State.

APP.070

**(5)(A)** Except as provided in subparagraph (B), subsection (a) shall not apply to the Hawaii Prepaid Health Care Act (Haw.Rev.Stat. §§ 393-1 through 393-51).

**(B)** Nothing in subparagraph (A) shall be construed to exempt from subsection (a)--

   **(i)** any State tax law relating to employee benefit plans, or

   **(ii)** any amendment of the Hawaii Prepaid Health Care Act enacted after September 2, 1974, to the extent it provides for more than the effective administration of such Act as in effect on such date.

**(C)** Notwithstanding subparagraph (A), parts 1 and 4 of this subtitle, and the preceding sections of this part to the extent they govern matters which are governed by the provisions of such parts 1 and 4, shall supersede the Hawaii Prepaid Health Care Act (as in effect on or after January 14, 1983), but the Secretary may enter into cooperative arrangements under this paragraph and section 1136 of this title with officials of the State of Hawaii to assist them in effectuating the policies of provisions of such Act which are superseded by such parts 1 and 4 and the preceding sections of this part.

**(6)(A)** Notwithstanding any other provision of this section--

   **(i)** in the case of an employee welfare benefit plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides--

   **(I)** standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and

   **(II)** provisions to enforce such standards, and

   **(ii)** in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

**(B)** The Secretary may, under regulations which may be prescribed by the Secretary, exempt from subparagraph (A)(ii), individually or by class, multiple employer welfare arrangements which are not fully insured. Any such exemption may be granted with respect to any arrangement or class of arrangements only if such arrangement or each arrangement which is a member of such class meets the requirements of section 1002(1) and section 1003 of this title necessary to be considered an employee welfare benefit plan to which this subchapter applies.

**(C)** Nothing in subparagraph (A) shall affect the manner or extent to which the provisions of this subchapter apply to an employee welfare benefit plan which is not a multiple employer welfare arrangement and which is a plan, fund, or program participating in, subscribing to, or otherwise using a multiple employer welfare arrangement to fund or administer benefits to such plan's participants and beneficiaries.

**(D)** For purposes of this paragraph, a multiple employer welfare arrangement shall be considered fully insured only if the terms of the arrangement provide for benefits the amount of all of which the Secretary determines are guaranteed under a contract, or policy of insurance, issued by an insurance company, insurance service, or insurance organization, qualified to conduct business in a State.

**(7)** Subsection (a) shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title), qualified medical child support orders (within the meaning of section 1169(a)(2)(A) of this title), and the provisions of law referred to in section 1169(a)(2)(B)(ii) of this title to the extent they apply to qualified medical child support orders.

**(8)** Subsection (a) of this section shall not be construed to preclude any State cause of action--

**(A)** with respect to which the State exercises its acquired rights under section 1169(b)(3) of this title with respect to a group health plan (as defined in section 1167(1) of this title), or

**(B)** for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Security Act which would not have been payable if such acquired rights had been executed before payment with respect to such items or services by the group health plan.

**(9)** For additional provisions relating to group health plans, see section 1191 of this title.

**(c) Definitions**

For purposes of this section:

**(1)** The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

**(2)** The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

**(d) Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of the United States prohibited**

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

**(e) Automatic contribution arrangements**

**(1)** Notwithstanding any other provision of this section, this subchapter shall supersede any law of a State which would directly or indirectly prohibit or restrict the inclusion in any plan of an automatic contribution arrangement. The Secretary may prescribe regulations which would establish minimum

standards that such an arrangement would be required to satisfy in order for this subsection to apply in the case of such arrangement.

**(2)** For purposes of this subsection, the term "automatic contribution arrangement" means an arrangement--

**(A)** under which a participant may elect to have the plan sponsor make payments as contributions under the plan on behalf of the participant, or to the participant directly in cash,

**(B)** under which a participant is treated as having elected to have the plan sponsor make such contributions in an amount equal to a uniform percentage of compensation provided under the plan until the participant specifically elects not to have such contributions made (or specifically elects to have such contributions made at a different percentage), and

**(C)** under which such contributions are invested in accordance with regulations prescribed by the Secretary under section 1104(c)(5) of this title.

**(3)(A)** The plan administrator of an automatic contribution arrangement shall, within a reasonable period before such plan year, provide to each participant to whom the arrangement applies for such plan year notice of the participant's rights and obligations under the arrangement which--

**(i)** is sufficiently accurate and comprehensive to apprise the participant of such rights and obligations, and

**(ii)** is written in a manner calculated to be understood by the average participant to whom the arrangement applies.

**(B)** A notice shall not be treated as meeting the requirements of subparagraph (A) with respect to a participant unless--

**(i)** the notice includes an explanation of the participant's right under the arrangement not to have elective contributions made on the participant's behalf (or to elect to have such contributions made at a different percentage),

**(ii)** the participant has a reasonable period of time, after receipt of the notice described in clause (i) and before the first elective contribution is made, to make such election, and

**(iii)** the notice explains how contributions made under the arrangement will be invested in the absence of any investment election by the participant.

## CREDIT(S)

(Pub.L. 93-406, Title I, § 514, Sept. 2, 1974, 88 Stat. 897; Pub.L. 97-473, Title III, §§ 301(a), 302(b), Jan. 14, 1983, 96 Stat. 2611, 2613; Pub.L. 98-397, Title I, § 104(b), Aug. 23, 1984, 98 Stat. 1436; Pub.L. 99-272, Title IX, § 9503(d)(1), Apr. 7, 1986, 100 Stat. 207; Pub.L. 101-239, Title VII, § 7894(f)(2)(A), (3)(A), Dec. 19, 1989, 103 Stat. 2450, 2451; Pub.L. 103-66, Title IV, § 4301(c)(4), Aug. 10, 1993, 107 Stat. 377; Pub.L. 104-191, Title I, § 101(f)(1), Aug. 21, 1996, 110 Stat. 1953; Pub.L. 104-204, Title VI, § 603(b)(3)(G), Sept. 26, 1996, 110 Stat. 2938; Pub.L. 105-200, Title IV, §

401(h)(2)(A)(i), (ii), July 16, 1998, 112 Stat. 668; Pub.L. 109-280, Title IX, § 902(f)(1), Aug. 17, 2006, 120 Stat. 1039.)

29 U.S.C.A. § 1144, 29 USCA § 1144
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# 21.**42 U.S. Code § 1983 - Civil action for deprivation of rights**

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 21. Civil Rights (Refs & Annos)
      Subchapter I. Generally

42 U.S.C.A. § 1983

§ 1983. Civil action for deprivation of rights [Statutory Text & Notes of Decisions subdivisions I to IX]

Effective: October 19, 1996

Currentness

<Notes of Decisions for 42 USCA § 1983 are displayed in multiple documents.>

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## CREDIT(S)

(R.S. § 1979; Pub.L. 96-170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub.L. 104-317, Title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)

42 U.S.C.A. § 1983, 42 USCA § 1983
Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 22.**42 U.S. Code § 1988 - Proceedings in vindication of civil rights**

United States Code Annotated
 Title 42. The Public Health and Welfare
  Chapter 21. Civil Rights (Refs & Annos)
   Subchapter I. Generally

42 U.S.C.A. § 1988

§ 1988. Proceedings in vindication of civil rights

Effective: September 22, 2000

Currentness

**(a) Applicability of statutory and common law**

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

**(b) Attorney's fees**

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

**(c) Expert fees**

In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

## CREDIT(S)

(R.S. § 722; Pub.L. 94-559, § 2, Oct. 19, 1976, 90 Stat. 2641; Pub.L. 96-481, Title II, § 205(c), Oct. 21, 1980, 94 Stat. 2330; Pub.L. 102-166, Title I, §§ 103, 113(a), Nov. 21, 1991, 105 Stat. 1074, 1079; Pub.L. 103-141, § 4(a), Nov. 16, 1993, 107 Stat. 1489; Pub.L. 103-322, Title IV, § 40303, Sept. 13, 1994, 108 Stat. 1942; Pub.L. 104-317, Title III, § 309(b), Oct. 19, 1996, 110 Stat. 3853; Pub.L. 106-274, § 4(d), Sept. 22, 2000, 114 Stat. 804.)

42 U.S.C.A. § 1988, 42 USCA § 1988

Current through P.L. 119-93. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 23. Tex. Civ. Prac. & Rem. Code § 30.017 - Claims Against Certain Judges

Vernon's Texas Statutes and Codes Annotated

Civil Practice and Remedies Code (Refs & Annos)

Title 2. Trial, Judgment, and Appeal

Subtitle B. Trial Matters

Chapter 30. Miscellaneous Provisions

V.T.C.A., Civil Practice & Remedies Code § 30.017

§ 30.017. Claims Against Certain Judges

Effective: September 1, 2025

Currentness

(a) A claim against a district court, statutory probate court, statutory county court, or business court judge that is added to a case pending in the court to which the judge was elected or appointed:

  (1) must be made under oath;

  (2) may not be based solely on the rulings in the pending case but must plead specific facts supporting each element of the claim in addition to the rulings in the pending case; and

  (3) is automatically severed from the case.

(b) The clerk of the court shall assign the claim a new cause number, and the party making the claim shall pay the filing fees.

(c) The presiding judge of the administrative region, the presiding judge of the statutory probate courts, or the administrative presiding judge of the business court shall assign the severed claim to a different judge. The judge shall dismiss the claim if the claim does not satisfy the requirements of Subsection (a)(1) or (2).

**Credits**

Added by Acts 1999, 76th Leg., ch. 608, § 1, eff. Sept. 1, 1999. Amended by Acts 2025, 89th Leg., ch. 912 (H.B. 40), § 8, eff. Sept. 1, 2025.

V. T. C. A., Civil Practice & Remedies Code § 30.017, TX CIV PRAC & REM § 30.017
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 24. Tex. Fam. Code Chapter 9 - Post-Decree Proceedings (selected cited provisions)
FAMILY CODE CHAPTER 9. POST-DECREE PROCEEDINGS

Vernon's Texas Statutes and Codes Annotated

Family Code (Refs & Annos)

Title 1. The Marriage Relationship (Refs & Annos)

Subtitle C. Dissolution of Marriage

Chapter 9. Post-Decree Proceedings

V.T.C.A., Family Code § 9.001

§ 9.001. Enforcement of Decree

Effective: September 1, 2013

Currentness

(a) A party affected by a decree of divorce or annulment providing for a division of property as provided by Chapter 7, including a division of property and any contractual provisions under the terms of an agreement incident to divorce or annulment under Section 7.006 that was approved by the court, may request enforcement of that decree by filing a suit to enforce as provided by this chapter in the court that rendered the decree.

(b) Except as otherwise provided in this chapter, a suit to enforce shall be governed by the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit.

(c) A party whose rights, duties, powers, or liabilities may be affected by the suit to enforce is entitled to receive notice by citation and shall be commanded to appear by filing a written answer. Thereafter, the proceedings shall be as in civil cases generally.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Amended by Acts 2013, 83rd Leg., ch. 242 (H.B. 389), § 5, eff. Sept. 1, 2013.

V. T. C. A., Family Code § 9.001, TX FAMILY § 9.001
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

V.T.C.A., Family Code § 9.002

§ 9.002. Continuing Authority to Enforce Decree

Effective: September 1, 2013

Currentness

The court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided by Chapter 7, including a property division and any contractual provisions under the terms of an agreement incident to divorce or annulment under Section 7.006 that was approved by the court.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Amended by Acts 2013, 83rd Leg., ch. 242 (H.B. 389), § 6, eff. Sept. 1, 2013.

V. T. C. A., Family Code § 9.002, TX FAMILY § 9.002
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

V.T.C.A., Family Code § 9.006

§ 9.006. Enforcement of Division of Property

Effective: September 1, 2013

Currentness

(a) Except as provided by this subchapter and by the Texas Rules of Civil Procedure, the court may render further orders to enforce the division of property made or approved in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order.

(b) The court may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed.

(c) An order of enforcement does not alter or affect the finality of the decree of divorce or annulment being enforced.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Amended by Acts 2013, 83rd Leg., ch. 242 (H.B. 389), § 7, eff. Sept. 1, 2013.

V. T. C. A., Family Code § 9.006, TX FAMILY § 9.006
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

V.T.C.A., Family Code § 9.007

§ 9.007. Limitation on Power of Court to Enforce

Effective: September 1, 2017

Currentness

(a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

(c) The trial court may not render an order to assist in the implementation of or to clarify the property division made or approved in the decree before the 30th day after the date the final judgment is signed. If a timely motion for new trial or to vacate, modify, correct, or reform the decree is filed, the trial court may not render an order to assist in the implementation of or to clarify the property division made or approved in the decree before the 30th day after the date the order overruling the motion is signed or the motion is overruled by operation of law.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Amended by Acts 2017, 85th Leg., ch. 421 (S.B. 1237), § 3, eff. Sept. 1, 2017.

V. T. C. A., Family Code § 9.007, TX FAMILY § 9.007
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

V.T.C.A., Family Code § 9.008

§ 9.008. Clarification Order

(a) On the request of a party or on the court's own motion, the court may render a clarifying order before a motion for contempt is made or heard, in conjunction with a motion for contempt or on denial of a motion for contempt.

(b) On a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property.

(c) The court may not give retroactive effect to a clarifying order.

(d) The court shall provide a reasonable time for compliance before enforcing a clarifying order by contempt or in another manner.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

V. T. C. A., Family Code § 9.008, TX FAMILY § 9.008
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

V.T.C.A., Family Code § 9.012

§ 9.012. Contempt

(a) The court may enforce by contempt an order requiring delivery of specific property or an award of a right to future property.

(b) The court may not enforce by contempt an award in a decree of divorce or annulment of a sum of money payable in a lump sum or in future installment payments in the nature of debt, except for:

  (1) a sum of money in existence at the time the decree was rendered; or

  (2) a matured right to future payments as provided by Section 9.011.

(c) This subchapter does not detract from or limit the general power of a court to enforce an order of the court by appropriate means.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

V. T. C. A., Family Code § 9.012, TX FAMILY § 9.012
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

V.T.C.A., Family Code § 9.102

§ 9.102. Procedure

Currentness

(a) A party to a decree of divorce or annulment may petition the court for a qualified domestic relations order or similar order.

(b) Except as otherwise provided by this code, a petition under this subchapter is governed by the Texas Rules of Civil Procedure that apply to the filing of an original lawsuit.

(c) Each party whose rights may be affected by the petition is entitled to receive notice by citation and shall be commanded to appear by filing a written answer.

(d) The proceedings shall be conducted in the same manner as civil cases generally.

**Credits**

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

V. T. C. A., Family Code § 9.102, TX FAMILY § 9.102
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 25. **Tex. Fam. Code § 201.017 - Immunity**

Vernon's Texas Statutes and Codes Annotated

Family Code (Refs & Annos)

Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)

Subtitle C. Judicial Resources and Services

Chapter 201. Associate Judge (Refs & Annos)

Subchapter A. Associate Judge

V.T.C.A., Family Code § 201.017

§ 201.017. Immunity

Currentness

An associate judge appointed under this subchapter has the judicial immunity of a district judge. All existing immunity granted an associate judge by law, express or implied, continues in full force and effect.

**Credits**

Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995.

V. T. C. A., Family Code § 201.017, TX FAMILY § 201.017
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## 26. **Tex. R. Disciplinary P. 17.09 - Immunity**

## 17.09. Immunity

Vernon's Texas Rules Annotated
  Rules of Disciplinary Procedure
    Part XVII. Miscellaneous Provisions

TX Rules Disc.P. 17.09

17.09. Immunity

Currentness

No lawsuit may be instituted against any Complainant or witness predicated upon the filing of a Grievance or participation in the attorney disciplinary and disability system. All members of the Commission, the Chief Disciplinary Counsel (including Special Assistant Disciplinary Counsel appointed by the Commission and attorneys employed on a contract basis by the Chief Disciplinary Counsel), all members of Committees, all members of the Board of Disciplinary Appeals, all members of the District Disability Committees, all officers and Directors of the State Bar, and the staff members of the aforementioned entities are immune from suit for any conduct in the course of their official duties. The immunity is absolute and unqualified and extends to all actions at law or in equity.

**Credits**

Adopted by orders of Feb. 26, 1991, and Oct. 9, 1991, eff. May 1, 1992. Amended by order of June 15, 1994, as corrected by order of Sept. 12, 1994, eff. Oct. 1, 1994. Renumbered from Rule 15.11 and amended by order of Dec. 29, 2003, eff. Jan. 1, 2004. Renumbered from Rule 15.09 by order of Aug. 28, 2018, eff. June 1, 2018.

Rules Disc. P. 17.09, TX R DISC P 17.09
Current with amendments received through April 15, 2026. Some rules may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.