# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Conghua Yan,
Plaintiff-Appellant

v.

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State Bar of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. DeAngelis, in Individual Capacity, as Member of the State Bar of Texas and Official Capacity as Associate Judge; Tarrant County; U.S. Bank,
Defendants-Appellees

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division Civil Action No. 4:23-CV-00758-Y, The Hon. Terry R. Means, Presiding

## OPENING BRIEF OF APPELLANT

Respectfully submitted:

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Appellant

## Certificate of Interested Persons

Appellant certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1)    **Plaintiff-Appellant:** Conghua Yan

2)    **Defendants-Appellees:** State Bar of Texas; Barrows Firm; Leslie Starr Barrows; William Albert Pigg; Samantha Ybarra; Luis Jesus Marin; Daniel Eulalio Martinez; Rachel Ann Craig; Lori L. DeAngelis; Tarrant County; U.S. Bank.

3)    **Counsel for Defendants-Appellees:** Amanda Marie Kates; Michael G. Graham; Royce A. Lemoine; Katherine Elizabeth Owens; Melvin Keith Ogle; Caroline Cyrier; Jon-William Nathaniel James; Roland K. Johnson; Melissa Hill; Tyler James Hill; William Albert Pigg.

*/s/ Conghua Yan*
Conghua Yan, Pro Se Appellant

## Statement Regarding Oral Argument

Yan requests oral argument because this appeal presents recurring issues of federal jurisdiction, ERISA preemption, immunity, abstention, amendment, sanctions, access restrictions, and civil RICO.

# Table of Contents

Certificate of Interested Persons ..........................................................................................................2

Statement Regarding Oral Argument ....................................................................................................2

Table of Contents ..................................................................................................................................3

Table of Authorities ..............................................................................................................................6

Jurisdictional Statement ......................................................................................................................12

Introduction..........................................................................................................................................13

Issues Presented ...................................................................................................................................17

    I.    Global Reversible Errors (Issues 1–9) .........................................................................17

        A.     ERISA controls the alleged non-QDRO transfer ....................................................17

        B.     *Younger* abstention does not apply...........................................................................18

        C.     The district court answered a different case............................................................18

        D.     Premature foreclosure of amendment and merits review........................................19

    II.    Defendant-Specific Errors (Issues 10–16) ...................................................................20

        A.     Pittman's April 2024 Sherman Act § 2 recasting ...................................................20

        B.     DeAngelis ................................................................................................................20

        C.     SBTX Defendants ...................................................................................................21

        D.     Barrows-Ybarra and Pigg........................................................................................22

        E.     RICO theory mischaracterization............................................................................23

        F.     U.S. Bank ................................................................................................................24

    III.    Sanctions, Access, and Reassignment (Issues 17–19) ................................................25

        G.     Sanctions and access restrictions ...........................................................................25

Statement of the Case...........................................................................................................................26

    A.    The district court dismissed a substituted case, not the federal case Yan actually pleaded, before factual clarification or meaningful amendment. ..................................................................26

    Table 1: Summary of Defendant Dismissals in the District Court Proceedings .....................................31

    B.    After remand, Yan promptly sought reconsideration, supplementation, and amendment, but the court again shut every corrective path ....................................................................................32

Statement of Facts................................................................................................................................33

    Table 2: Documented Factual Core.......................................................................................................35

    **The Relabeling Sequence in the Record's Own Words**.................................................................36

        **Contemporaneous communications** ............................................................................................36

        **Pigg's July 21 letter**..............................................................................................................37

**U.S. Bank's stated alternatives** ...................................................................................... 37

**QDRO-type order language** ............................................................................................ 37

**Wang's sworn corroboration** ......................................................................................... 37

**Dismissal-order characterization** .................................................................................. 37

**Preserved distinction** ..................................................................................................... 38

Summary of the Argument ..................................................................................................... 38

Standard of Review ................................................................................................................ 41

Argument and Authorities ...................................................................................................... 43

I. The district court dismissed a substituted case, not Yan's ERISA case; this global error independently requires vacatur. ............................................................................................... 43

A. The threshold rulings rest on a substituted premise because ERISA, not domestic-relations labeling, controls the alleged use of retirement assets for an attorney-fee objective through purported support papers (Issues 1 and 2). ...................................................................... 44

B. *Younger* abstention cannot stand because the district court skipped *Sprint's* gatekeeping step, dismissed with prejudice instead of deferring, and ignored ERISA's preemptive federal remedial path (Issues 3 and 4). ............................................................................................. 55

C. The Rule 12 dismissal cannot stand because the district court answered a materially different case by recasting ERISA diversion as a domestic-relations grievance and substituting unbriefed theories for Yan's pleaded § 664 and § 2 claims (Issue 5). ...................................... 58

Table 3: Substituted Theories Decided by the District Court .................................................. 58

Table 4: Record-Based Examples of Premise Substitution ..................................................... 62

D. The court terminated this case prematurely because it imposed an unauthorized amendment restriction, failed to construe Yan's later pro se filings according to substance, and denied Rule 15(a)(2) leave on the wrong pleading (Issues 6 through 9)........................................................ 62

E. At minimum, the March 10 blanket judgment must be modified to preserve the without-prejudice status of the earlier Rule 12(b)(1) dismissals. ....................................................... 67

II. The defendant-specific dismissals carry forward the same premise substitution and add distinct legal errors. ............................................................................................................... 68

A. The antitrust dismissal cannot stand because Pittman's April 2024 order recast Yan's pleaded Sherman Act § 2 consumer-injury theory as an unbriefed competitor-dispute theory and, as to SBTX, supplied a sua sponte Rule 12(b)(6) merits ground after recognizing that the RICO and antitrust claims survived Rule 12(b)(1) (Issue 10). ................................................ 69

B. The DeAngelis dismissal requires claim- and relief-specific analysis because the court applied immunity in bulk without deciding the character of the challenged function or the scope of delegated authority (Issue 11 and sub-issues 11(a) through 11(d)). ...................................... 72

C. The SBTX and disciplinary-defendant dismissals cannot stand because Yan was not a disciplinary respondent, did not seek review of any disciplinary judgment, and pleaded later bar conduct as post-notice shielding of an ERISA-fund diversion, not grievance dissatisfaction (Issue 12 and sub-issues 12(a) through 12(c)). ...................................................................... 77

4

D. The Barrows-Ybarra and Pigg dismissals cannot stand because the complaint pleaded altered-order and coordinated diversion conduct beyond ordinary advocacy, and Pigg's post-remand dismissal reused prior reasoning without Pigg-specific merits review (Issues 13 and 14 and sub-issues 13(a) through 13(c)). ...................................................................................................................... 81

E. The RICO dismissals and RICO futility ruling cannot stand because the district court treated Yan's § 664 predicate as a standalone criminal claim, mischaracterized the pleaded § 664 plan-asset-diversion theory as money laundering without analyzing that predicate, applied the wrong § 1962(d) standard, and then denied leave without testing the materially more specific RICO allegations in the PFAC. (Issue 15 and sub-issues 15(a) through 15(c)). .......................................................... 86

F. The U.S. Bank dismissal cannot stand because the complaint pleaded notice, the Unresolved-Alternatives Letter, and a subsequent ERISA-fund distribution, not a routine ministerial transaction (Issue 16 and sub-issues 16(a) through 16(c)). .................................................................... 92

III. The limited pre-filing injunction must be vacated, and reassignment is warranted to ensure fresh review on remand. .................................................................................................................... 96

A. The limited pre-filing injunction must be vacated because it was imposed sua sponte without the process *Qureshi* requires (Issues 17–18). ............................................................................ 96

B. Reassignment is warranted to ensure fresh review on remand (Issue 19). .................................... 97

Conclusion ........................................................................................................................................ 99

CERTIFICATE OF SERVICE ......................................................................................................... 100

CERTIFICATE OF COMPLIANCE ................................................................................................. 100

APPELLANT'S APPENDIX ............................................................................................................. 100

# Table of Authorities

## Cases

*Ankenbrandt v. Richards, 504 U.S. 689 (1992)* ................................................................. *49*

*Apple Inc. v. Pepper, 587 U.S. 273 (2019)* .................................................................... *70*

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med., 103 F.4th 383 (5th Cir. 2024)* ............................................................................................ *63*

*Ballard v. Wilson, 856 F.2d 1568 (5th Cir. 1988)* .......................................................... *57*

*Bauer v. Texas, 341 F.3d 352 (5th Cir. 2003)* ........................................ *20, 31, 39, 73*

*Bazrowx v. Scott, 136 F.3d 1053 (5th Cir. 1998)* ..................................................... *63, 65*

*Beck v. Prupis, 529 U.S. 494 (2000)* ............................................................................. *91*

*Bishop v. State Bar of Tex., 791 F.2d 435 (5th Cir. 1986)* ..................................... *77–78*

*Blue Shield of Va. v. McCready, 457 U.S. 465 (1982)* .................................................. *70*

*Boddie v. Connecticut, 401 U.S. 371 (1971)* ................................................................. *71*

*Boggs v. Boggs*, 520 U.S. 833 (1997) .......................................................................... 14

*Book People, Inc. v. Wong, 91 F.4th 318 (5th Cir. 2024)* ............................................. *79*

*Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1872)* ......................................................... *75*

*Cantey Hanger, LLP v. Byrd, 467 S.W.3d 477 (Tex. 2015)* .......................................... *82*

*Carver v. Atwood, 18 F.4th 494 (5th Cir. 2021)* .......................................................... *68*

*Castro v. United States, 540 U.S. 375 (2003)* ............................................................... *60*

*Chaney v. Dreyfus Serv. Corp., 595 F.3d 219 (5th Cir. 2010)* ..................................... *91*

*Clark v. Sweeney, 607 U.S. 7 (2025) (per curiam)* ...................................................... *61*

*Cooper v. Sheriff, Lubbock Cnty., 929 F.2d 1078 (5th Cir. 1991)* ........................... *64–65*

*Dalton v. Dalton, 551 S.W.3d 126 (Tex. 2018)* ................................................ *48, 74, 94*

*Daves v. Dallas Cnty., 64 F.4th 616 (5th Cir. 2023) (en banc)* ............................... *41, 56*

*Davoodi v. Austin Indep. Sch. Dist., 755 F.3d 307 (5th Cir. 2014)* .............................. *70*

*Deakins v. Monaghan, 484 U.S. 193 (1988)* ................................................................. *57*

*Dennis v. Sparks, 449 U.S. 24 (1980)* ......................................................................... *85*

*Doe v. Dynamic Physical Therapy, LLC*, 607 U.S. 11 (2025) (per curiam).......................................... 80, 83

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam)..................................................... 60

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) ...................................53–54, 57

*Ex parte Young*, 209 U.S. 123 (1908)...............................................................22, 78–80

*Foman v. Davis*, 371 U.S. 178 (1962) ..............................................................19, 62–63

*Forrester v. White*, 484 U.S. 219 (1988) ........................................................ 74

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) ............................................. 69

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) ....................... 41

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ...................................... 53

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) ............................ 66

*Haywood v. Drown*, 556 U.S. 729 (2009) ................................................... 80, 83

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) ................................... 48

*Healthy Vision Ass'n v. Abbott*, 138 F.4th 385 (5th Cir. 2025)............................ 79

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)................................... 15

*Holloway v. Walker*, 765 F.2d 517 (5th Cir. 1985) ...............................31, 75–76

*Hoskins v. Bekins Van Lines*, 343 F.3d 769 (5th Cir. 2003) .............................. 41

*Howard v. King*, 707 F.2d 215 (5th Cir. 1983)........................................64–65

*Howlett v. Rose*, 496 U.S. 356 (1990) .................................................. 80, 83

*In re DaimlerChrysler Corp.*, 294 F.3d 697 (5th Cir. 2002) ......................... 42, 98

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) ............................... 94

*Krempp v. Dobbs*, 775 F.2d 1319 (5th Cir. 1985) .................................77–78

*Lewis v. Beddingfield*, 20 F.3d 123 (5th Cir. 1994) ................................. 57

*Liedtke v. State Bar of Tex.*, 18 F.3d 315 (5th Cir. 1994) .........................77–78

*Lozano v. Schubert*, 41 F.4th 485 (5th Cir. 2022)................................... 64

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ..............................23–24, 86

*Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453 (3d Cir. 2019) ........................ 56

*Marshall v. Marshall*, 547 U.S. 293 (2006) ..........................................49–50

*McKinley v. Abbott*, 643 F.3d 403 (5th Cir. 2011) ............................................................ 15, 39, 72, 76

*M.D. ex rel. Stukenberg v. Abbott*, 119 F.4th 373 (5th Cir. 2024) ........................................ 43, 98

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ........................... 39, 55–56

*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) .............................................................. 79

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ...................................................................... 16, 72

*NetChoice, L.L.C. v. Paxton*, 121 F.4th 494 (5th Cir. 2024) ........................................................ 72

*Ogbebor v. Hardy*, No. 24-30403, 2025 WL 586822 (5th Cir. Feb. 24, 2025) (per curiam) (unpublished)

............................................................................................................... 64–65

*PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267 (Tex. 2012) .......................................................... 48

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ............................................................ 57

*Qureshi v. United States*, 600 F.3d 523 (5th Cir. 2010) ...................................................... 25, 41–42, 96–97

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ................................................................... 70–71

*Riascos v. U.S. Marshals Serv.*, 76 F.3d 93 (5th Cir. 1996) ...................................................... 65

*Ricks v. Khan*, 135 F.4th 296 (5th Cir. 2025) ...................................................................... 63

*Salinas v. United States*, 522 U.S. 52 (1997) .................................................................. 24, 40, 88

*Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006) ..................................................... 53

*Smith v. United States*, 568 U.S. 106 (2013) ...................................................................... 90

*Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444 (5th Cir. 2023) .................................................. 68

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) .......................................... 18, 39, 55–56, 81

*Steury v. Cardinal Health, Inc.*, 625 F.3d 262 (5th Cir. 2010) .................................................... 65

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000) ................................................. 65

*Stump v. Sparkman*, 435 U.S. 349 (1978) ...................................................................... 74–76

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) ........................................... 79

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ................................................................ 22, 82–83

*Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495 (5th Cir. 2021) ..................................................... 56

*Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586 (5th Cir. 2016) ................................................ 42, 65

*United States v. Bailey*, 115 F.3d 1222 (5th Cir. 1997) .......................................................... 51

*United States v. Delgado, 401 F.3d 290 (5th Cir. 2005)* .............................................................. *91*

*United States v. Elliott, 571 F.2d 880 (5th Cir. 1978)* ........................................................ *24, 88*

*United States v. Perry, 35 F.4th 293 (5th Cir. 2022)* ...................................................... *40, 89–90*

*United States v. Posada-Rios, 158 F.3d 832 (5th Cir. 1998)* ...................................................... *89*

*United States v. Shows Urquidi, 71 F.4th 357 (5th Cir. 2023)* ................................................... *89*

*United States v. Sineneng-Smith, 590 U.S. 371 (2020)* ....................................................... *60, 70*

*Willey v. Harris Cnty. Dist. Att'y, 27 F.4th 1125 (5th Cir. 2022)* ............................................ *42–43*

*Williams v. Reed, 604 U.S. 168 (2025)* ........................................................................... *80, 83*

*Wyatt v. Cole, 504 U.S. 158 (1992)* ................................................................................. *23, 83*

*Younger v. Harris, 401 U.S. 37 (1971)* ............................... *18, 22, 27–28, 31, 39, 41, 43–45, 55–57, 61, 80*

*Youngkin v. Hines, 546 S.W.3d 675 (Tex. 2018)* .................................................................... *82*

## Statutes

15 U.S.C. § 2 ........................................................ 13, 16, 19–20, 26, 32, 38–39, 58–62, 67–72, 85

15 U.S.C. § 15(a) ...................................................................................................... 71

18 U.S.C. § 1027 ...................................................................................................... 87

18 U.S.C. § 1341 ................................................................................................. 26, 87

18 U.S.C. § 1343 ................................................................................................. 26, 87

18 U.S.C. § 1349 ...................................................................................................... 87

18 U.S.C. § 1956 ...................................................................................................... 38

18 U.S.C. § 1961(1) ........................................................................................... 23, 59, 87

18 U.S.C. § 1962 ............................................................................................... 26, 46, 91

18 U.S.C. § 1962(a) .................................................................................................... 88

18 U.S.C. § 1962(b) .................................................................................................... 88

18 U.S.C. § 1962(c) ................................................................................................. 89–91

18 U.S.C. § 1962(d) ................................................................................. 23–24, 68, 84, 86, 88–91

18 U.S.C. § 1964 ........................................................................................... 47, 59, 87, 89, 91

18 U.S.C. § 1964(c) ........................................................................................... 87, 89, 91

18 U.S.C. § 664 ............................................................16, 23, 26, 38, 40, 46, 49, 52, 58–62, 67–68, 84, 86–89, 91

28 U.S.C. § 1291 ...................................................................................................... 12

28 U.S.C. § 1331 ...................................................................................................... 12

28 U.S.C. § 2106 ................................................................................................. 25, 42

28 U.S.C. § 636(b)(1) ............................................................................................... 30

29 U.S.C. § 1001(a) .................................................................................................. 14

29 U.S.C. § 1056(d)(1) ......................................................................................... 45, 50

29 U.S.C. § 1056(d)(3) .............................................................................................. 25

29 U.S.C. § 1056(d)(3)(A) ........................................................................................ 45

29 U.S.C. § 1056(d)(3)(B)(i) ..................................................................................... 45

29 U.S.C. § 1056(d)(3)(B)(ii) ..................................................................... 17, 45, 50, 94

29 U.S.C. § 1056(d)(3)(B)(ii)(II) ............................................................................... 25

29 U.S.C. § 1056(d)(3)(H)(i) ................................................................... 25, 38, 40, 92, 94, 96

29 U.S.C. § 1056(d)(3)(K) ................................................................................... 18, 51

29 U.S.C. § 1104(a)(1)(D) ........................................................................................ 94

29 U.S.C. § 1109(a) .................................................................................................. 92

29 U.S.C. § 1132(a)(2) .............................................................................................. 92

29 U.S.C. § 1132(a)(3) ................................................................... 18, 49, 52–54, 65, 92

29 U.S.C. § 1132(e)(1) .............................................................................................. 52

29 U.S.C. § 1144(a) .................................................................................................. 44

42 U.S.C. § 1983 ........................................13, 21–24, 26–27, 32, 49, 57, 70, 76–78, 80–81, 83–86, 95

Tex. Fam. Code § 7.001 ............................................................................................ 74

Tex. Fam. Code ch. 9 ................................................................................... 20–21, 74, 76

Tex. Fam. Code §§ 9.101–.105 .................................................................................. 74

Tex. Fam. Code § 201.007 ........................................................................................ 76

Tex. Fam. Code § 201.017 ............................................................................ 21, 31, 39, 72

## Rules

5th Cir. R. 28.2.1 .......................................................................................................................... 2

Fed. R. App. P. 3(c)(4) ............................................................................................................... 12

Fed. R. App. P. 4(a)(1)(A) .......................................................................................................... 12

Fed. R. App. P. 25(b), (c) ........................................................................................................... 100

Fed. R. App. P. 32(a)(5) ............................................................................................................. 100

Fed. R. App. P. 32(a)(6) ............................................................................................................. 100

Fed. R. App. P. 32(f) .................................................................................................................. 100

Fed. R. Civ. P. 7(b)(1)(B) ........................................................................................................... 70

Fed. R. Civ. P. 8(b)(1)(A) ........................................................................................................... 70

Fed. R. Civ. P. 9(b) ..................................................................................................................... 89

Fed. R. Civ. P. 11 ................................................................................................................... 33, 97

Fed. R. Civ. P. 12 ........................................... 13, 16, 18, 38, 44, 48–49, 58, 67, 72, 87–88, 98

Fed. R. Civ. P. 12(b) .................................................................................................................... 70

Fed. R. Civ. P. 12(b)(1) .................................. 19–20, 28–30, 39, 41, 67–70, 78, 99

Fed. R. Civ. P. 12(b)(6) .................................. 20, 27–28, 31, 39, 41–43, 63, 67–70, 78, 81, 83

Fed. R. Civ. P. 12(c) ....................................... 23, 27, 30–32, 39–41, 43, 65, 67, 81, 84–86

Fed. R. Civ. P. 15 ........................................... 38, 44, 66–67, 72, 86, 91–92

Fed. R. Civ. P. 15(a)(2) ................................. 19, 62, 85, 99

Fed. R. Civ. P. 15(d) .................................................................................................................... 64

Fed. R. Civ. P. 54(b) .................................................................................................................... 29

Fed. R. Civ. P. 58 ............................................................................................................... 28, 30, 67

Fed. R. Civ. P. 59(e) ............................................................................................................... 27, 29

Tex. R. Civ. P. 99 ......................................................................................................................... 66

Tex. R. Disciplinary P. 17.09 ................................................................................................. 21, 79–80

## Other Authorities

Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 ........................................ 13

<h1 style="text-align:center">Jurisdictional Statement</h1>

The district court had federal-question jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 because the March 10, 2026 final judgment disposed of all claims and parties. ROA.3064–3065. Yan timely appealed on March 30, 2026. ROA.3070–3071; Fed. R. App. P. 4(a)(1)(A). Under Fed. R. App. P. 3(c)(4), the appeal encompasses the earlier sanctions-motion filing restriction. ROA.1671–1672.

## Introduction

"*To provide **economic security** for **all Americans**, and for other purposes*."
Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780.

1)      Yan pleaded civil RICO based on alleged ERISA-fund diversion, Sherman Act § 2 based on alleged legal-services consumer injury, and § 1983 based on alleged Fourteenth Amendment violations. The district court dismissed those claims as spousal-support "grievances of a disgruntled litigant." ROA.2377. That reframing is the central Rule 12 error.

2)      Yan alleged that Barrows supported a family-court attorney's-fee request with billing records that included charges from Wang's separate municipal criminal case, in which Ybarra represented Wang; that DeAngelis directed withdrawal or borrowing from Yan's ERISA-protected account; that Pigg was designated to receive $25,000 despite allegedly filing no fee petition or supporting evidence; that later papers allegedly facially altered the rendered attorney-fee basis by inserting a "spousal support" recital to evade ERISA's anti-alienation rule and reach the 401(k); and that U.S. Bank allegedly distributed funds despite acknowledging a possible direct conflict. Barrows later wrote that the order had to say "spousal support" for "us to obtain our attorney's fees" because there was "no way around it." The PFAC and Wang affidavit later alleged that the completed $25,000 transfer passed through Wang before payment to Barrows.

3) The court recast that pleaded case as spousal-support relitigation and a money-laundering theory.

4) The prior appeal decided finality only: Pigg's liability had not been adjudicated. It did not decide Yan's ERISA, RICO, antitrust, or immunity theories.

5) The district court did not test that claim. It replaced it.

6) The question matters beyond one Texan and his Minnesota 401(k). Congress declared employee-benefit-plan security a "national public interest." 29 U.S.C. § 1001(a). ERISA protection cannot turn on state labels or paperwork. An ERISA ruling "must be consistent with the congressional scheme to assure the security of plan participants and their families in every State." *See Boggs v. Boggs*, 520 U.S. 833, 840–41 (1997).

7) If paperwork fiction can defeat ERISA protection, then ERISA protects only funds that have not yet been relabeled.

8) Yan's case supplies the concrete example. On April 13, 2022, an associate-judge report directed Yan "to withdraw or borrow $50,000" from his U.S. Bank "retirement account": $25,000 for opposing counsel Barrows and $25,000 for Yan's own counsel Pigg. ROA.1198. "Mr. Yan is responsible for the cost of QDRO." ROA.1198. The report directed Yan personally, as the Plan participant; it did not direct the Plan to distribute benefits to an alternate payee.

9) Yan alleged that DeAngelis acted in the clear absence of jurisdiction or authority by directing retirement-account payments through an interim, pre-decree QDRO-type path allegedly unavailable under Texas law. Separately, he alleged that later papers facially altered the rendered attorney-fee basis by inserting an unpleaded and unheard "spousal support" recital. ROA.1065–1066 ¶¶ 40, 44, 49; ROA.1070 ¶ 70; ROA.1067 ¶¶ 55–56; ROA.1076–1077 ¶¶ 94–98; ROA.1114–1115 ¶¶ 281–284.

10) The attached April 13 report and later QDRO-type paper illustrate the alleged mismatch. ROA.1198, 1200. Yan preserved the clear-absence-of-jurisdiction argument in his objections. ROA.1707 ¶¶ 12–13.

11) The pleaded wrong was the extraction mechanism, capped by post-transfer institutional shielding, not ordinary family-law fee litigation: relabeling supplied the channel, not an entitlement.

12) The Third Amended Complaint ("TAC") alleged recurrence, not an isolated event, and attached an additional family-court example. ROA.1085 ¶ 125. The Proposed Fourth Amended Complaint ("PFAC") later consolidated additional pattern and continuity allegations under *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989). ROA.2717–2719 ¶¶ 126–135.

13) The DeAngelis dismissal also cited *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), for a state-judge Eleventh Amendment proposition it does not contain. ROA.2085. That proposition cannot carry affirmance.

14) This appeal therefore asks whether Rule 12 permits dismissal by reframing: an alleged mechanism for evading ERISA's anti-alienation rule becomes mere spousal-support dissatisfaction; § 664 ERISA-plan predicate acts are mischaracterized as money laundering; Pittman's April 2024 order recasts the Sherman Act § 2 legal-services consumer-monopoly theory as a competitor dispute; defendant-specific conduct is reduced to boilerplate immunity analysis; and amendment is deemed futile by measuring the wrong pleading.

15) As the court of first view, the district court had to test the pleaded case before reframing it.

16) The later authorities reinforce a narrower point: a court must apply the correct legal framework to the theory actually presented. *Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024). The district court did not perform that inquiry here.

17) Strip away every label and one fact survives: Barrows wrote that the order had to say "spousal support" because there was "no way around it." ROA.1139. Across two rounds of dismissal, no court has analyzed that email under ERISA.

18) The judgment should be vacated so the district court can decide the federal claims TAC/PFAC actually pleaded.

<u>Issues Presented</u>

This appeal presents global, defendant-specific, and ancillary errors from dismissal, amendment, sanctions, access restrictions, and reassignment rulings.

I. Global Reversible Errors (Issues 1–9)

A. ERISA controls the alleged non-QDRO transfer

1) Whether the threshold dismissals can stand where ERISA's anti-alienation rule remained applicable unless the later paper qualified as a QDRO, but the district court assumed the paper's validity despite pleaded and exhibit-supported allegations that counsel inserted a "spousal support" recital after the April 13 rendition to obtain an attorney-fee result.

1(a). Whether a later instrument allegedly altered after rendition to insert an unclaimed and unheard "spousal support" cause can satisfy the threshold definition of a "qualified" domestic-relations order, where § 1056(d)(3)(B)(ii) requires that the paper be "made pursuant to" Texas domestic-relations law; and whether the court could proceed to downstream QDRO requirements without first addressing that pleaded State-law-prong defect.

1(b). Whether ERISA permits use of a purported spousal-support distribution as a channel for attorney-fee payment where the completed

17

transfer allegedly passed through Wang and was then used to pay Barrows, and where the attorneys themselves were not statutory alternate payees under § 1056(d)(3)(K).

1(c). Whether § 1132(a)(3) permits prospective relief against continued use, enforcement, or implementation of the alleged non-QDRO mechanism.

2) Whether ERISA's anti-alienation rule permits restoration of funds allegedly extracted from ERISA-protected plan assets.

B. *Younger* abstention does not apply

3) Whether *Younger* bars federal claims for defendants' own ERISA-fund diversion and shielding conduct rather than de facto appellate review of a state judgment.

4) Whether *Sprint* Category 3 applies absent contempt, supersedeas, or comparable judicial-enforcement machinery.

C. The district court answered a different case

5) Whether Rule 12 permitted the court to recast ERISA diversion as domestic-relations dissatisfaction, credit disputed later instruments, mischaracterize pleaded §

664 acts as money laundering, and treat a Sherman Act § 2 claim as a market competitor-dispute theory.

D.  Premature foreclosure of amendment and merits review

6)  Whether dismissal with prejudice under the "best-case" doctrine was error where the court identified no dispositive deficiencies, used unbriefed substituted theories, and counted technical or party-joinder amendments as merits opportunities.

7)  Whether the post-remand denial of leave abused discretion by treating ECF No. 58's "extraordinary circumstances" sentence as a substitute for the Rule 15(a)(2) and *Foman* inquiry.

8)  Whether denial of ECF No. 181 requires vacatur because Yan expressly sought reconsideration and amendment or supplementation treatment, but the court did not construe his later pro se filings according to substance or identify which relief it rejected.

9)  Whether denial of ECF No. 210 abused discretion because futility had to be tested against the PFAC and Wang affidavit, not the superseded TAC.

> 9(a). Whether the March 10 blanket judgment must, at minimum, be modified to clarify that the earlier Rule 12(b)(1) dismissals remain without prejudice.

II. Defendant-Specific Errors (Issues 10–16)

A.  Pittman's April 2024 Sherman Act § 2 recasting

10)  Whether the district court erred when Pittman's April 2024 order recast Yan's Sherman Act § 2 consumer-monopoly claim as a market competitor-dispute theory and, as to the State Bar of Texas ("SBTX"), entered Rule 12(b)(6) dismissal after declining to dismiss the RICO and antitrust claims under Rule 12(b)(1), even though SBTX never sought Rule 12(b)(6) dismissal of the pleaded § 2 claim.

B.  DeAngelis

11)  Whether DeAngelis's dismissal must be vacated because the court applied judicial-immunity and no-adversity doctrines without analyzing the challenged function, authority, criminal-case fee source, non-QDRO ERISA transfer, or fabricated "spousal support" label.

11(a). Whether an associate judge may invoke QDRO-type process to reach ERISA retirement funds pre-decree and outside Chapter 9's decree-based framework.

11(b). Whether *Bauer*'s no-adversity rule applies to an associate judge's report directing retirement-account withdrawals for private attorneys where Yan alleged that the report became the first step in a pre-decree QDRO-type mechanism outside Chapter 9's decree-based framework.

20

11(c). Whether blanket judicial immunity was proper without the required function-by-function analysis of alleged temporary QDRO-type conduct outside Chapter 9 authority and whether that conduct fell within jurisdiction under Texas law.

11(d). Whether § 201.017 can enlarge federal common-law immunity or bar federal causes of action.

C.    SBTX Defendants

12)    Whether the remaining SBTX Defendants' dismissals must be vacated because Yan was not a disciplinary respondent, did not seek review of a disciplinary judgment, and pleaded the grievance sequence as notice, enforcement connection, and post-notice shielding of ERISA-fund diversion, yet the district court failed to conduct claim-, capacity-, and officer-specific analysis of the non-RICO and non-antitrust claims.

12(a). Whether Tex. R. Disciplinary P. 17.09 may operate as an automatic federal bar to the remaining § 1983 claims and prospective official-capacity relief without claim-, capacity-, and function-specific analysis under the governing federal immunity rules.

12(b). Whether *Younger*, disciplinary recasting, or standing defeats claims challenging SBTX Defendants' later conduct preserving the alleged diversion's consequences, not the original extraction itself.

12(c). Whether the court erred by rejecting *Ex parte Young* without officer-by-officer and function-by-function analysis of prospective relief against continued disciplinary shielding.

D.      Barrows-Ybarra and Pigg

13)     Whether the Barrows-Ybarra dismissals must be vacated because the court treated the complaint as ordinary advocacy despite pleaded false-fee proof, altered-order conduct, knowing § 1983 false-label conduct through support relabeling, and coordinated ERISA-fund diversion.

13(a). Whether attorney immunity applies without deciding whether alleged false-fee proof, altered-order conduct, or coordinated use of court machinery exceeded ordinary advocacy.

13(b). Whether Texas common-law attorney immunity may be applied automatically to federal statutory claims, including § 1983, RICO, and antitrust, without the statute-specific source-of-law analysis *Taylor* requires.

13(c). Whether *Lugar* and *Wyatt* permit the § 1983 claim against Barrows for allegedly using state machinery to extract ERISA retirement funds.

14)  Whether Pigg's Rule 12(c) dismissal must be vacated because the post-remand ruling imported prior boilerplate rather than adjudicating Pigg's distinct federal claims.

E.  RICO theory mischaracterization

15)  Whether the RICO dismissals and futility ruling must be vacated because the court mischaracterized Yan's pleaded § 664 ERISA-plan predicate as money laundering without analyzing that predicate, applied the wrong § 1962(d) standard, and denied leave without testing the PFAC.

15(a). Whether the court erred by treating § 664 as lacking a standalone civil cause of action when Yan pleaded it as a RICO predicate under § 1961(1), not an independent claim, and RICO predicates are criminal statutes by statutory design.

15(b). Whether the court erred by mischaracterizing pleaded § 664 ERISA-plan predicate acts as money laundering without analyzing § 664, where the instruments allegedly used ERISA-protected funds for an attorney-fee objective through papers reciting support.

15(c). Whether the court misapplied § 1962(d) by requiring each alleged conspirator to satisfy an individual pattern requirement, contrary to *Elliott* and *Salinas*, without identifying which of the TAC's two alleged enterprises or which unlawful objective it was testing, and without cumulatively evaluating the pleaded circumstances supporting a tacit agreement.

F.    U.S. Bank

16)    Whether U.S. Bank's dismissal must be vacated because the court treated the transaction as routine despite pleaded notice, the Unresolved-Alternatives Letter, and alleged distribution of ERISA funds.

16(a). Whether the court disregarded U.S. Bank-specific allegations, misapplied § 1962(d), and treated alleged post-acknowledgment distribution as a single lawful transaction rather than the final step in the pleaded predicate chain.

16(b). Whether U.S. Bank was plausibly alleged as a § 1983 co-conspirator under *Lugar* identifying unresolved alternatives yet allegedly releasing ERISA funds.

16(c). Whether U.S. Bank breached ERISA/QDRO duties under § 1056(d)(3), including the conjunctive State-domestic-relations-law requirement in § 1056(d)(3)(B)(ii)(II) and the separate-accounting duty in § 1056(d)(3)(H)(i), by allegedly distributing after identifying unresolved alternatives without resolving whether the purported order qualified under ERISA.

### III. Sanctions, Access, and Reassignment (Issues 17–19)

### G. Sanctions and access restrictions

17) Whether the limited pre-filing injunction must be vacated because the court imposed it sua sponte without notice that an immediate filing restriction was under consideration and without an opportunity to be heard.

18) Whether the earlier warning that future frivolous sanctions motions could lead to sanctions satisfied *Qureshi*'s notice-and-hearing requirement for the filing restriction later imposed.

19) Whether, if vacatur is ordered, reassignment is warranted under 28 U.S.C. § 2106 because the cumulative procedural path, including the omitted Pigg adjudication, the post-remand reuse of prior reasoning, and the repeated omission of the pleaded alteration theory, might reasonably cause an objective observer to

question whether fresh review will occur, while reassignment would impose little duplication because no trial occurred and discovery remained incomplete.

<u>Statement of the Case</u>

A.      <u>The district court dismissed a substituted case, not the federal case Yan actually pleaded, before factual clarification or meaningful amendment.</u>

1.      On July 21, 2023, Yan filed his original complaint. ROA.31. The operative TAC asserts 18 U.S.C. § 1962 RICO claims on alleged violations of 18 U.S.C. §§ 664, 1341, and 1343; 15 U.S.C. § 2 antitrust claims; and 42 U.S.C. § 1983 claims. ROA.1054.

2.      The defendants were the SBTX; the Barrows Firm (the "Firm"); Barrows and Ybarra (the "Barrows-Ybarra Defendants"); Pigg; Marin, Martinez, and Craig (the "Disciplinary Defendants"); DeAngelis; U.S. Bank; and Tarrant County. This brief uses "SBTX Defendants" for SBTX and the Disciplinary Defendants, "Attorney Defendants" for the Barrows-Ybarra Defendants and Pigg, and "RICO Defendants" and "Antitrust Defendants" only when discussing those claims. The TAC separately identified RICO persons and enterprises. ROA.1088–1089 ¶¶ 140–141. Yan sought

monetary relief and multiple forms of prospective relief under the RICO, antitrust, and official-capacity § 1983 counts[1].

3.     This brief calls the December 28, 2023 FCR and April 23, 2024 order the "Pittman Decisions." It cites ECF numbers only for docket sequence and the ROA for facts.

4.     Dismissal roadmap. The court's path ran from court-compelled technical refiling, to the amendment lock, first FCR, April 2024 dismissal order and judgment, Yan's Rule 59(e)/54(b) warning that Pigg had been omitted, the Fifth Circuit remand, the post-remand FCR, Pittman's recusal, and final judgment. The same domestic-relations premise carried through standing, *Younger*, immunity, Rule 12(b)(6), Rule 12(c), and amendment.

   i.     ECF Nos. 42, 46, 47, and 48: court-compelled technical refiling. The court converted a filing-mechanics issue into an amendment event by striking separately filed exhibits and stating, "Plaintiff must seek leave to file an amended complaint at this stage in the proceedings." ROA.9, 560. The defect was separate exhibit filing, not merits pleading. Yan complied by filing a Second Amended Complaint consolidating exhibits, not repleading merits.

---

[1] ROA.1100 ¶¶ 186–195; ROA.1101 ¶¶ 196–198; ROA.1111 ¶¶ 251–256; ROA.1112–1113 ¶¶ 257–269; ROA.1116 ¶ 290; ROA.1123 ¶ 347; ROA.1125 ¶ 367; ROA.1128 ¶ 387.

Later "best-case" reasoning counted that technical compliance as a merits opportunity. ROA.2990–2991.

ii. ECF No. 58: amendment lock. The magistrate judge granted leave to file the TAC but added that no further amendment would be allowed absent "extraordinary circumstances." ROA.10–11. That became the amendment-lock gate later used against the leave motion, and the February 19 FCR later quoted and relied on the same language. ROA.2990–2991.

iii. ECF No. 121: December 28, 2023 FCR. The December 28, 2023 FCR recommended dismissal of DeAngelis, Tarrant County, SBTX Defendants and Barrows-Ybarra Defendants. It did not adjudicate Pigg and did not include U.S. Bank's later motion. It supplied the first dismissal map: standing, immunity, *Younger*, attorney immunity, and Rule 12(b)(6) RICO/antitrust sufficiency. ROA.1682–1699.

iv. ECF No. 148: April 23, 2024 order. Judge Pittman accepted the December 28 FCR in part, adjusted prejudice treatment, and separately decided U.S. Bank's ECF No. 126 motion. This became the central trial-court roadmap order: it grouped Rule 12(b)(1) dismissals and Rule 12(b)(6) dismissals, then ordered the civil action dismissed. ROA.2078–2095.

v. ECF No. 149: April 23, 2024 judgment. The court entered a Rule 58 judgment "pursuant to" the April 23 order and dismissed the civil action. That judgment

purported to close the case, but it was defective because Pigg had not been adjudicated. ROA.2096, 2186–2187.

vi. ECF Nos. 150 and 153: Rule 59(e)/54(b) warning and unexplained denial. Yan promptly explained that Pigg had answered and had not moved under Rule 12(b)(1) or 12(b)(6), so the judgment disposed of fewer than all claims. Because no final judgment existed, Rule 54(b) supplied a revision vehicle regardless of the Rule 59(e) label. The court denied relief without adjudicating Pigg; the Fifth Circuit later confirmed that exact defect. ROA.19, 2097–2104, 2186–2187.

vii. Fifth Circuit remand and ECF Nos. 174 and 175. The Fifth Circuit dismissed the first appeal for lack of jurisdiction because Pigg answered but his liability "was not adjudicated, or even addressed." The remand confirms that ECF Nos. 148 and 149 did not adjudicate Pigg. ROA.2186–2187.

viii. ECF Nos. 181 and 185: reconsideration denied with amendment request unresolved. After remand, Yan moved under Rule 54(b) to reconsider interlocutory orders, including the April 23 order, and asked that the contemporaneous papers and exhibits be construed as amendments or supplements. ECF No. 185 denied reconsideration without explaining

whether it rejected reconsideration, amendment/supplement treatment, or both.[2]

ix.    ECF No. 214: February 19, 2026 FCR. The FCR recommended granting Pigg's Rule 12(c) motion and denying leave to file the PFAC. It imported the April 23 RICO and antitrust reasoning, added limited Pigg-specific comments, and did not test the PFAC separately. ROA.2981–2992.

x.    ECF Nos. 215 and 216: Pittman recusal and reassignment. After Yan moved to recuse Judge Pittman, the case was reassigned to Senior Judge Terry R. Means. ROA.28. 28 U.S.C. § 636(b)(1) required de novo determination of specifically objected-to portions of the February 19 FCR.

xi.    ECF No. 224: March 10, 2026 adoption order. Judge Means denied leave, granted Pigg's Rule 12(c) motion, and ordered that "this case is DISMISSED with prejudice in accordance with" Rule 12(c). The order supplied no separate merits reasoning. ROA.3064.

xii.    ECF No. 225: March 10, 2026 final judgment. The court entered Rule 58 final judgment dismissing the case with prejudice. That judgment is the appealable final judgment and merges the prior interlocutory rulings. To the extent the March 10, 2026 order and judgment converted earlier Rule 12(b)(1)

---

[2] ROA.24, 2365–2367 ¶¶ 1–4.

dismissals without prejudice into a blanket dismissal with prejudice, that disposition cannot stand. Pigg's Rule 12(c) motion concerned Pigg alone and supplied no merits basis for converting jurisdictional dismissals of other defendants into dismissals with prejudice. ROA.2558–2566, 3064–3065.

5. Taken together, the sequence converted technical filing compliance into amendment history, used that history to support the amendment lock, and then treated the court-created omitted-Pigg appellate detour as delay against Yan. That detour could not fairly count against the first true post-remand merits amendment. Table 1 maps the defendant-specific rulings; the post-remand chronology follows.

Table 1: Summary of Defendant Dismissals in the District Court Proceedings

| Defendant (s) | Relevant Rulings | Grounds | Disposition |
|---|---|---|---|
| DeAngelis | ROA.1682–1699, 2078–2095 | No case or controversy under *Bauer*; judicial immunity under § 201.017 and *Holloway*; *Younger* alternative. | Without prejudice. |
| SBTX Defendants | ROA.1682–1699, 2078–2095. | Immunity as to non-RICO/non-antitrust claims; Rule 12(b)(6) insufficiency as to RICO and antitrust. | Without prejudice: immunity claims. With prejudice: RICO and antitrust. |
| Barrows, Firm, and Ybarra | ROA.1682–1699, 2078–2095. | Attorney immunity as to non-RICO claims; The April 23 order excepted only RICO from that lane but later dismissed "RICO/antitrust claims" under Rule 12(b)(6), leaving antitrust treatment unexplained. | Without prejudice: immunity lane. With prejudice: later RICO/antitrust merits lane. |

| Defendant (s) | Relevant Rulings | Grounds | Disposition |
|---|---|---|---|
| U.S. Bank | ROA.2078–2095. | No civil remedy under cited criminal statutes; no RICO pattern; no state action; no pleaded fiduciary-breach facts. | With prejudice. |
| Pigg | ROA.2981–2992, 3064–3065. | Rule 12(c): no RICO pattern; no antitrust intent or agreement; no state action or meeting of minds. | With prejudice; final closure of case. |

**B.    After remand, Yan promptly sought reconsideration, supplementation, and amendment, but the court again shut every corrective path**

6.    The Wang affidavit had been executed on October 18, 2025. ROA.2538–2540.

7.    In his supporting brief, Yan squarely invoked the remand frame: the Fifth Circuit had "correctly summarized" the suit as alleging a "decade-long and widespread pattern" of "racketeering activity," unlike the April 23 order's disgruntled-litigant frame. ROA.2377 ¶ 1. The court nevertheless summarily denied the post-remand motion without explanation. ROA.24.

8.    On December 30, 2025, Yan filed the motion for leave to amend, with the PFAC and exhibits attached. Pigg objected on January 4, 2026; Yan replied the same day; and U.S. Bank responded on January 20, 2026. ROA.27.

9.    The February 19, 2026 recommendation incorporated Judge Pittman's earlier RICO and antitrust analysis and applied it to Pigg. It separately found no nonconclusory facts showing Pigg's specific intent or agreement under § 2; no time, date, circumstances of formation, or meeting of minds supporting § 1983 joint

action; and no basis for leave because amendment was delayed, futile, and unnecessary after Yan had pleaded his "best case." ROA.2985–2991.

10.  The court imposed a limited pre-filing injunction on future sanctions motions without prior notice or a hearing[3].

11.  Yan filed Rule 11 motions against counsel and later refiled motions after the safe-harbor period[4]. The magistrate judge warned that future frivolous sanctions motions could lead to a recommendation of sanctions. ROA.1643.

12.  When adopting the later FCR, the district court found that threshold already crossed and enjoined Yan from filing future sanctions motions without leave. ROA.1671–1672. Before imposing that restriction, the court did not notify Yan that an immediate injunction was under consideration or allow him to address necessity, scope, or tailoring.

Statement of Facts

*For efficiency, this brief uses the following short record handles: Billing-Records, April-13-Report, Five-Instrument Sequence, Unresolved-Alternatives Letter, No-Way-Around-It Email, Would-Not-Be-True Email, Have-To-Lie Email, BODA-*

---

[3] ROA.1643, 1671–1672.
[4] ROA.274, 477, 1208, 1262, 1414.

*Reversals, and Pattern-Orders. Table 2 identifies each record item and its ROA citation.*

13. The Billing-Records accompanied Barrows's March 3, 2022 motion for interim attorney's fees. The affidavit characterized the billed work as divorce-suit fees. Yan alleged that the attached records included charges from municipal criminal case No. E0129990-1, in which Ybarra represented Wang and Yan was not a party, and showed only approximately $11,000 outstanding after prior payments even counting those criminal-case entries. ROA.1074–1076.

14. The April-13-Report directed Yan personally, as the Plan participant, to withdraw or borrow $50,000 from his U.S. Bank retirement account: $25,000 for opposing counsel Barrows and $25,000 for Yan's counsel Pigg. ROA.1198. The TAC alleged an out-of-state account and Minnesota administrator. ROA.1076. Yan alleged that Pigg filed no fee petition and presented no supporting evidence. ROA.1070 ¶ 70.

15. Yan alleged that Barrows drafted and transmitted the April 26 and May 26 instruments within the Five-Instrument Sequence, Pigg signed them, and Ybarra received the communications and consented or cooperated. Those instruments recast the April-13-Report attorney-fee ruling as "spousal support" to Wang, with disbursement supervised by Barrows. ROA.1071, 1077–1078, 1200–1202.

16. Pigg's July 21 letter on Yan's behalf objected to QDRO treatment, attached the April-13-Report, and stated that it concerned attorney's fees, not child support; Yan later concurred in writing. The Unresolved-Alternatives Letter stated that the later paper either appeared "in direct conflict" with and to supersede the April-13-Report **or** imposed an additional, separate obligation, but U.S. Bank allegedly distributed funds anyway. After that objection, Barrows sent Pigg the No-Way-Around-It-Proposal, copying Ybarra. In separate emails to Yan, Pigg made the Would-Not-Be-True-Admission and Have-To-Lie-Suggestion. ROA.1139–1141, 2030–2031, 2034–2035, 2925–2926.

17. The TAC also alleged that the BODA-Reversals concerned the initial grievance-classification decisions for Barrows and Pigg; the PFAC later consolidated additional Texas family-court examples as Pattern-Orders supporting formal pattern allegations. ROA.1082–1084, 2717–2727.

18. The factual core was documentary, not speculative. Table 2 identifies the principal records and corresponding ROA citations.

Table 2: Documented Factual Core

| Handle | Document / Event | ROA |
|---|---|---|
| **Billing-Records** | Barrows affidavit and billing records; alleged criminal-case charges; approximately $11,000 shown due after prior payments. | ROA.1157–1193 |

| Handle | Document / Event | ROA |
|---|---|---|
| **April-13-Report** | Associate-judge report directing withdrawal or borrowing of $50,000 from Yan's 401(k): $25,000 to Barrows and $25,000 to Pigg. | ROA.1198 |
| **Five-Instrument Sequence** | PFAC-identified sequence of three orders and two writs reflected in the state-court docket history; the TAC pleaded the April 26 and May 26 instruments. April 26–July 14, 2022. | ROA.1200–1202, 2325–2351, 2667 |
| **Unresolved-Alternatives Letter** | U.S. Bank stated that the papers appeared in direct conflict: either the later paper superseded the April-13-Report, or the April-13-Report served as an additional, separate order to Yan with respect to the Plan. | ROA.2034–2035 |
| **No-Way-Around-It-Proposal** | Barrows → Pigg, Ybarra copied: fees "must" be called support because "there is no way around it." | ROA.1139 |
| **Would-Not-Be-True-Admission** | Pigg → Yan: the proposed QDRO "would not be true." | ROA.1140 |
| **Have-To-Lie-Suggestion** | Pigg → Yan: "we either have to lie and accept the QDRO." | ROA.1141 |
| **BODA-Reversals** | BODA reversals of the initial grievance-classification decisions. | ROA.1146–1147 |
| **Pattern-Orders** | TAC example and additional PFAC-consolidated Texas family-court QDRO-type examples. | ROA.1085 ¶ 125, 1203–1204, 2717–2727, 2933–2980 |

## The Relabeling Sequence in the Record's Own Words

### Contemporaneous communications

*"In order for **us** to **obtain our attorney's fees**, the order **must** say that the **fees** are for **spousal support**. There is **no way around it**."* ROA.1139.

*"Leslie **tried** to **get her 25k via a QDRO**, claiming it was for **spousal support** - not **attorney's fees as ordered**."* ROA.1140.

*". . . we either have to lie and accept the QDRO . . . ."* ROA.1141.

**Pigg's July 21 letter**

*"The order at issue . . . was issued **in connection with Ms. Wang's request for attorney's fees** — **not in connection with the provision of child support**."* ROA.2030–2031.

**U.S. Bank's stated alternatives**

*"Logic suggests that either the Associate Judge's Report is in direct conflict with the Order . . . or it serves as an order to Mr. Yan that is in addition to, and separate from, the Order with respect to the Plan . . . ."* ROA.2034–2035.

**QDRO-type order language**

*"On April 13, 2022, the Court heard Respondent's request for Spousal Support inter alia. . . . WHEREAS . . . Participant, Conghua Yan, was ordered/required to pay **spousal support** to Fuyan Wang, which is currently is in the balance of $25,000.00."* ROA.1200.

**Wang's sworn corroboration**

*"I personally attended the hearing for the motion for interim **attorney's fees** . . . [and] Judge Lori DeAngelis ordered that $50,000 from Conghua Yan's 401(k) . . . be used to pay **attorney's fees**: $25,000 to my counsel (Leslie Barrows) and $25,000 to Mr. Yan's counsel (William Pigg)."* ROA.2925 ¶ 4.

*"I **received a check** . . . **from U.S. Bank** . . . to pay my **attorney's fees**."* ROA.2925 ¶ 5.

*"I personally visited Leslie Barrows's office . . . and paid my outstanding **attorney's fees**."* ROA.2926 ¶ 6.

**Dismissal-order characterization**

*"Liberally construed, Yan alleges that the Attorney Defendants were privy to a larger conspiratorial scheme to launder money and protect against market competition"* ROA.2091–2092.

*"It's a hard row to hoe when **attempting to allege** a plausible claim that members of the Texas judiciary teamed up with attorneys, **federal judges**, members of the*

*Texas State Bar, and private entities to **launder money** via various court orders.''* ROA.2093.

*"But a release of **spousal support** funds is not a RICO violation."* ROA.2094.

*"He appeals to certain fund-sequestration statutes, e.g., 29 U.S.C. § 1056(d)(3)(H)(i), but **never articulates** any facts that would suggest U.S. Bank violated its fiduciary duty (under that statute or otherwise)."* ROA.2094.

**Preserved distinction**

*"**This Court should note** that 'laundering of monetary instruments' U.S.C. § 1956 is distinguished from 'embezzlement from employee benefit plan' U.S.C. § 664. On the face of the record, the legal term 'launder money' or 'U.S.C. § 1956' **never appears** in Plaintiff's pleading."* ROA.2124 ¶ 75.

<u>Summary of the Argument</u>

19.     Rule 12 required the district court to test the complaint Yan pleaded. Instead, the court substituted a different case: ERISA-plan diversion became divorce dissatisfaction; the pleaded § 664 predicate became money laundering; and the Sherman Act § 2 consumer-monopoly theory became generalized market-competition reasoning. Each substitution changed the elements, injury, and available relief. ROA.2084–2085, 2091–2092.

20.     ERISA controls. Its anti-alienation rule remained operative unless the challenged paper qualified as a QDRO; a support recital did not establish qualification. The domestic-relations exception did not bar independent federal claims seeking restoration and prospective equitable relief. The TAC governs Rule 12; the PFAC governs Rule 15 futility.

21. *Younger* fails at the gateway. *Sprint* requires one of three exceptional categories before *Middlesex* considerations matter. The alternative ruling identified none. ROA.2085 n.3. Even if abstention applied, it could not support dismissal of damages claims or a with-prejudice merits termination.

22. The amendment rulings independently require vacatur. The court counted technical refiling as a merits opportunity, relied on an extra-textual amendment lock, did not construe Yan's express amendment-or-supplementation request according to substance, and tested futility against the TAC rather than the PFAC. ROA.9–11, 2367 ¶ 4, 2990–2991. At minimum, Pigg's Rule 12(c) motion supplied no basis to convert earlier Rule 12(b)(1) dismissals into dismissals with prejudice. ROA.2081, 3064–3065.

23. The antitrust dismissal presents framework and procedural errors. The April 2024 order reframed Yan's § 2 consumer-monopoly theory without testing its elements and, as to SBTX, entered a Rule 12(b)(6) merits dismissal after stating that the claim ordinarily would survive Rule 12(b)(1). ROA.2090–2093. The DeAngelis dismissal likewise required function- and authority-specific analysis: *Bauer* did not resolve the challenged pre-decree QDRO-type conduct; § 201.017 supplied immunity parity, not expanded authority; and *McKinley* does not contain the proposition attributed to it. ROA.2083–2086.

24. The remaining dismissals also required separation. The TAC pleaded the grievance sequence as post-notice shielding of the alleged diversion. ROA.1082–1084. The SBTX claims required officer-, capacity-, function-, and relief-specific analysis; a state disciplinary rule could not automatically bar federal claims. Texas common-law attorney immunity likewise could not replace the federal inquiry. Pigg's Rule 12(c) motion required review of Pigg-specific allegations rather than imported reasoning. ROA.2086–2093, 2985–2989.

25. The RICO ruling requires vacatur. As to U.S. Bank, the April 2024 order treated enumerated criminal predicates as though Yan sought standalone civil remedies. ROA.2093. More broadly, the court did not analyze the pleaded § 664 plan-asset-diversion predicate and substituted money-laundering terminology. ROA.1089–1096 ¶¶ 142–167; ROA.2093–2094. Under *Salinas* and *Perry*, a conspirator need not personally commit two predicates or independently satisfy a full pattern requirement; agreement may be inferred circumstantially. Futility also had to be tested against the PFAC. ROA.2093–2094, 2985–2991.

26. The U.S. Bank issue is statutory. If QDRO status remained under determination, § 1056(d)(3)(H)(i) required separate accounting. U.S. Bank stated that the papers either conflicted or imposed separate obligations. ROA.2034–2035. Neither branch resolved whether the paper was made pursuant to Texas domestic-

relations law or qualified under ERISA. The court had to address that threshold process before adopting the alternate-payee premise. ROA.2095.

27. The limited pre-filing injunction independently requires vacatur. Under *Qureshi*, an immediate sua sponte filing restriction required notice and an opportunity to be heard. ROA.1643, 1671–1672. Reassignment is warranted on remand because of the omitted Pigg adjudication, reuse of prior reasoning, repeated omission of the pleaded alteration theory, and limited duplication at the pleading stage.

<u>Standard of Review</u>

28. This Court reviews de novo a dismissal under Rule 12(b)(6) or Rule 12(c), accepting well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002). Rule 12(b)(1) dismissals turning on legal conclusions are likewise reviewed de novo. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003).

29. Although the ultimate abstention decision under *Younger v. Harris*, 401 U.S. 37 (1971), is reviewed for abuse of discretion, whether the prerequisites for *Younger* abstention are satisfied is reviewed de novo. *Daves v. Dallas Cnty.*, 64 F.4th 616, 623 (5th Cir. 2023) (en banc).

30. Denial of leave to amend is reviewed for abuse of discretion; futility is reviewed de novo under the Rule 12(b)(6) standard. *Thomas v. Chevron U.S.A., Inc.,* 832 F.3d 586, 590 (5th Cir. 2016). A court abuses its discretion when it relies on clearly erroneous factual findings, erroneous legal conclusions, or a misapplication of law to facts. *Id.*

31. A pre-filing injunction is reviewed for abuse of discretion, with underlying legal questions reviewed de novo. *Qureshi v. United States*, 600 F.3d 523, 524 (5th Cir. 2010). When imposed sua sponte, notice and a hearing are mandatory. *Id.* at 525–26.

32. A request for reassignment on remand is governed by 28 U.S.C. § 2106, which authorizes this Court to require further proceedings "as may be just under the circumstances." Reassignment is an extraordinary and rarely invoked remedy. *Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125, 1137–38 (5th Cir. 2022). The Fifth Circuit uses two substantially overlapping tests. The first considers whether the original judge may have substantial difficulty putting aside previously expressed views, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment would cause disproportionate waste or duplication. The second, more lenient test asks whether the facts might reasonably cause an objective observer to question impartiality. *In re DaimlerChrysler Corp.*, 294 F.3d 697, 700–01 (5th Cir.

2002); *M.D. ex rel. Stukenberg v. Abbott*, 119 F.4th 373, 386–87 (5th Cir. 2024).

Because the appearance-of-justice factor substantially overlaps with the objective-observer inquiry, the two tests may be analyzed together. *Willey*, 27 F.4th at 1137–38.

Argument and Authorities

I. The district court dismissed a substituted case, not Yan's ERISA case; this global error independently requires vacatur.

33.    Section I supplies the shortest path to decision. The district court began from a substituted domestic-relations premise and carried it through standing, *Younger*, immunity, Rule 12(b)(6), Rule 12(c), and amendment. Because the court did not test the pleaded ERISA-centered injury, the judgment should be vacated. The defendant-specific sections preserve additional errors, but this Court need not resolve every defendant-specific issue to vacate and remand.

34.    The complaint challenges alleged ERISA-fund diversion, not review of a divorce, custody, or property decree. The district court instead treated alleged false fee proof, altered QDRO-type papers, and a fabricated "spousal support" label as a domestic-relations grievance.

A. The threshold rulings rest on a substituted premise because ERISA, not domestic-relations labeling, controls the alleged use of retirement assets for an attorney-fee objective through purported support papers (Issues 1 and 2).

35.    The premise error begins even before ERISA. At Rule 12 and Rule 15, the district court had to accept the pleaded and exhibit-supported allegation that the later papers altered the April-13-Report by converting attorney-fee awards into "spousal support." That allegation was not peripheral. 29 U.S.C. § 1144(a) preempts state laws that "relate to" employee benefit plans; no domestic-relations label overrides that preemption where the order fails ERISA's QDRO requirements. Judicial immunity, attorney immunity, *Younger*, the "single lawful transaction" theory for U.S. Bank, and the replacement of "ERISA" with "launder money" each depended on treating the later papers as genuine state-court instruments rather than as the pleaded mechanism of diversion[5]. Because the court could not assume genuineness against the complaint and attached exhibits at Rule 12, the alteration premise supplies a global reason to vacate the threshold dismissals.

36.    The certified records make the substitution concrete. The April-13-Report reflects a hearing and ruling on interim attorney's fees: $25,000 to Barrows and $25,000 to Pigg from Yan's 401(k). The April 26 QDRO-type order then recites that

---

[5] ROA.2082, 2091, 2093, 2122–2124.

44

the April 13 hearing was on "Respondent's request for Spousal Support." Those records cannot both describe the same hearing accurately. ROA.1185, 1200.

37.  The April 23 order never analyzed that pleaded alteration. It treated the later label as a genuine support adjudication and built standing, immunity, *Younger*, RICO, antitrust, and ERISA conclusions on that assumed fact; the April 23 judgment then dismissed pursuant to the April 23 order without additional reasoning. ROA.2078–2096. The error is not the absence of a trial finding. It is threshold dismissal on the opposite of a material pleaded fact.[6]

38.  ERISA's sequence matters. Its anti-alienation rule applies to a purported domestic-relations order unless the order is determined to be a QDRO. 29 U.S.C. § 1056(d)(1), (3)(A). A QDRO must create or recognize an alternate payee's right to receive Plan benefits, or assign such a right. *Id.* § 1056(d)(3)(B)(i). The underlying domestic-relations order also must relate to qualifying support, alimony, or marital-property rights and be "made pursuant to" State domestic-relations law. *Id.* § 1056(d)(3)(B)(ii). The April-13-Report did not itself supply that pathway: it named no alternate payee and directed Yan personally, as the Plan participant, to withdraw or borrow funds. ROA.1198. The QDRO-cost reference anticipated paperwork; it did not itself create a Plan-payment right in Wang. Given the pleaded post-rendition

<hr />

[6] ROA.1070, 1077–1081, 1136, 1139–1142.

alteration, the court could not treat the inserted support label as conclusive, bypass the State-law prong, and assume a valid QDRO pathway. Only after the alteration allegation is rejected on a proper record could the later paper itself supply the premise for downstream QDRO analysis.

39. **The district court's premise substitution had three legal consequences.** First, it displaced the ERISA framework. Second, it distorted the standing and abstention analysis. Third, it caused the court to evaluate a recast controversy rather than the pleaded one. The April 23 order's operative analysis of Claims 1 through 8 spans ROA.2079–2091. That analysis does not contain the words "ERISA," "pension fund," or "QDRO"; nor does it cite § 664 or § 1962. ROA.2079–2091. That omission was central.

40. The complaint pleaded an ERISA-centered federal case: a protected retirement plan, concrete loss of plan assets, alleged diversion through conduct incorporating § 664, and at least 20 forms of federal relief. ROA.1099–1102.

41. The Pittman Decisions omitted ERISA from the premise and recast the case as a generic domestic dispute[7].

---

[7] ROA.2078–2095, 2981–2992.

42. The consequences extend beyond one litigant. The complaint alleges injuries cognizable under § 1964 arising from a broader, statewide, decade-long pattern of using court process to divert ERISA-protected assets. The complaint also alleges a two-tier scheme: Attorney Defendants, DeAngelis, and U.S. Bank formed the extraction tier: they moved the funds. SBTX Defendants formed the shielding tier: they allegedly protected the channel after exposure.[8]

43. Recasting that structure as a divorce dispute obscured the alleged ERISA injury and the pleaded absence of an effective state corrective process: state machinery itself allegedly protected the enterprise. Dismissal without engaging that premise foreclosed adjudication of whether the alleged mechanism violates federal protections shielding retirement assets from unlawful alienation[9].

44. That consequence is amplified by the alleged mechanism. The April-13-Report operated against Yan personally, as the Plan participant: it directed him to withdraw or borrow $50,000, or as much as allowed, to fund two $25,000 attorney-fee awards. ROA.1198. The later papers did not merely implement that directive. Whether they purported to supersede the report or impose an additional obligation, they purported to change every operative feature: the payor shifted from Yan

---

[8] ROA.1083–1086, 1090–1092, 2187.
[9] ROA.1083–1086, 2078–2095.

personally to the Plan; the stated recipients shifted from the two attorneys awarded fees to Wang as the named payee; the $50,000 personal directive was recast as a $25,000 Plan-directed payment instruction; and the stated legal basis shifted from attorney's fees to purported spousal support. ROA.1200–1202, 2034–2035. Barrows's email supplies the alleged reason for that transformation: the order "must say" support "for us to obtain our attorney's fees"; there was "no way around it." ROA.1139. The alleged relabeling was the ERISA-bypass mechanism, not a minor wording dispute.

45.     The domestic-relations framing assumed away a disputed fact. Defendants could invoke the QDRO exception only if the later paper satisfied ERISA's requirements. Yan instead alleged that materially altered papers recast an attorney-fee result as support. The PFAC and Wang affidavit later alleged that the completed transfer passed through Wang before payment to Barrows. At Rule 12, the TAC's allegation alone sufficed.

46.     A judicial signature did not resolve whether the paper qualified under ERISA. The alleged procurement defect may make the order subject to direct attack, and the label could not establish QDRO force beyond Texas and ERISA authority. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274–77 (Tex. 2012); *Dalton v. Dalton*, 551 S.W.3d 126, 141–42 (Tex. 2018). *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322

U.S. 238, 246 (1944), confirms the institutional point: "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."[10]

47.    That substitution obscured the pleaded § 664 predicate, which protects plan assets regardless of the state-court setting, and caused the standing, abstention, immunity, and Rule 12 analyses to address a domestic dispute rather than the ERISA-centered controversy pleaded. *See infra* Section II.E; ROA.1070–1081, 2078–2095.

*1. ERISA preemption and § 1132(a)(3) prospective relief supplied the governing federal premise for enforcing ERISA's anti-alienation protections*

48.    ERISA preemption and § 1132(a)(3) prospective relief supplied the governing federal premise because Congress reserved to federal courts the authority to enforce ERISA's anti-alienation protections against the conduct alleged here. The domestic-relations exception has no application here. *Ankenbrandt* held that the exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *See Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Yan does not ask this Court to issue any such decree. He asks for ERISA restoration, RICO damages, and § 1983 relief for an alleged conversion of 401(k) assets.[11] *Marshall*

---

[10] ROA.1065–1070, 1077–1081, 1136, 1139–1142.
[11] ROA.1054–1055, 1100, 1129–1132.

confirmed the exception is that narrow and no broader. *See Marshall v. Marshall, 547 U.S. 293, 307–08 (2006)*.

49.     That narrow jurisdictional rule is different from ERISA's separate statutory treatment of support-related pension distributions. ERISA's default rule is anti-alienation: pension benefits "may not be assigned or alienated." § 1056(d)(1). Congress then created a limited statutory carveout for a qualified domestic relations order, and it defined a domestic relations order as a state judgment, decree, or order that relates to "child support, alimony payments, or marital property rights" for a spouse, former spouse, child, or other dependent. § 1056(d)(3)(B)(ii).

50.     ERISA reaches support-related pension distributions only on Congress's terms. Even accepting defendants' label, the statute permits qualified support distributions, not an attorney-fee demand that allegedly included charges from Wang's separate municipal-court matter.

51.     Whether Texas process could reach Yan's Minnesota 401(k) was a federal preemption question. The Decisions bypassed it by recasting ERISA-protected plan assets as "certain funds under his control."

52.     The complaint challenges a pre-decree transfer of ERISA assets through a temporary QDRO-type instrument, despite the pleaded post-decree framework and the alleged absence of any support pleading or hearing. ERISA limits an alternate

payee to a spouse, former spouse, child, or dependent. § 1056(d)(3)(K). Yan alleged that Wang's support label was used as a channel for an attorney-fee objective. The PFAC and Wang affidavit later alleged that Wang paid Barrows. A private fee demand does not become ERISA-payable merely because the distribution papers recite support.[12]

53.     The Fifth Circuit's jurisdictional rule points the same way. In *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997), the court held that the domestic-relations exception "has no application" where there is an independent basis for federal jurisdiction, because the exception derives from the diversity jurisdiction statute. If the exception does not bar a federal-question case merely because the underlying order has a family-law character, then a federal ERISA challenge alleging diversion of pension assets to satisfy opposing counsel's private fee demand is not barred by the domestic-relations exception.

54.     The complaint further tied that fund loss to the federal wrong it actually pleaded. The RICO theory did not rest on a generic allegation of "launder[ing] money." It alleged, *inter alia*, theft or embezzlement from an employee benefit plan

---

[12] ROA.1065–1070, 1077–1081, 1136, 1139–1142, 2925–2926.

under § 664, meaning wrongful diversion of assets from an ERISA-protected retirement plan.[13]

55. Once ERISA is restored to the premise, the source of injury, source of law, and source of relief align. The injury was the loss of ERISA-protected plan assets. The pleaded federal wrong was diversion of those plan assets, including through § 664-incorporated racketeering allegations. And ERISA itself supplied a distinctive federal remedial scheme: a participant or beneficiary may sue to enjoin acts or practices that violate ERISA or the plan and to obtain other appropriate equitable relief, with federal jurisdiction under 29 U.S.C. § 1132(e)(1). *See id.* § 1132(a)(3).

56. The complaint's prayer followed that same ERISA-centered path. It sought declaratory relief, injunctive relief, damages, and related matters, and it specifically requested statewide audit, victim identification, notice, reimbursement, and injunctions to halt continuing misconduct. Those requests were not incidental. They were part of the relief structure Yan pleaded from the outset.[14]

57. Yan also preserved that same point in the district court arguments and prior Fifth Circuit brief. He argued that the Decisions ignored pleaded ERISA prospective relief, including the request to "identify all the victims" and "inform every one of

_____

[13] ROA.1070–1071, 1118–1132.
[14] ROA.1087–1092, 1100.

them," and presented that notice request as part of the forward-looking equitable relief already pleaded. The premise was thus pleaded, briefed, and argued, not invented on appeal.[15]

*2. ERISA's anti-alienation rule required the court to treat the diverted 401(k) funds as protected plan assets; the label "spousal support" cannot convert a private attorney-fee demand into a lawful QDRO payable to opposing counsel*

58.     *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1104 (5th Cir. 1991), supplies the restoration principle: "The State received monies from the ERISA plans to which it was not entitled. The funds must be returned. The parties are to be restored to the status quo ante." The court also required consideration of lost use. Yan invokes that principle as the minimum equitable remedy for funds allegedly diverted through a non-QDRO mechanism.

59.     The restoration claim is equitable, not legal, under the Supreme Court's framework. In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14 (2002), the Court stated that equitable restitution generally seeks "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." In *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362–63 (2006), the Court held that § 1132(a)(3) permits equitable relief when the plaintiff seeks specifically identifiable funds within the defendant's

---

[15] ROA.1087–1092, 1704–1707, 2384–2386.

possession or control. Here, the complaint identifies a specific ERISA fund, Yan's Minnesota 401(k), and specific diverted amounts, $25,000 and $25,000, within RICO Defendants' possession or control. This is not a claim for money in the abstract. It is a claim to restore specifically identified plan monies allegedly diverted through unlawful process.

60.     The complaint also pleaded later acts of concealment, institutional shielding, and continued nonreturn of the funds. Those later acts matter not as a substitute for the original ERISA injury, but as allegations that the same deprivation was prolonged and that prospective ERISA relief, including audit, notice, and injunctive measures, remained necessary.[16]

61.     The restoration theory is also defendant-specific. The complaint does not seek undifferentiated monetary relief from all appellees. It alleges direct receipt as to Barrows and claimed entitlement or designation as payee as to Pigg, who were each designated to receive $25,000 from the 401(k). Those allegations, if proved, support restoration from the alleged recipients and prospective equitable relief against the entity that carried the transfer forward after notice. *See E-Systems*, 929 F.2d at 1104; § 1132(a)(3).

---

[16] ROA.1083–1087, 1090–1092.

62. ERISA, not domestic-relations labels, supplies the governing framework.

B. *Younger* abstention cannot stand because the district court skipped *Sprint's* gatekeeping step, dismissed with prejudice instead of deferring, and ignored ERISA's preemptive federal remedial path (Issues 3 and 4).

63. Yan does not seek appellate review of a state-court judgment; he challenges defendants' own alleged ERISA-fund diversion and shielding conduct. A state-proceeding label cannot insulate an independent federal injury claim. Yan preserved that source-of-injury distinction below.[17]

*1. The district court never identified a Sprint category; Middlesex cannot supply the missing gateway.*

64. The Pittman Decisions' alternative *Younger* footnote repeats the error rejected in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). The court reasoned that abstention was "clearly appropriate" because the divorce dispute remained ongoing, implicated Texas family-law interests, and gave Yan state-court avenues to raise challenges. ROA.2085 n.3. Those are *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), considerations. They are not a freestanding abstention test.

65. *Sprint* states the gateway directly: "We have not applied *Younger* outside these three 'exceptional' categories." 571 U.S. at 78. Those categories are: (1) an ongoing

---

[17] ROA.1704–1707, 1727–1728, 1741–1742, 2384–2386.

criminal prosecution; (2) a civil enforcement proceeding akin to a criminal prosecution; or (3) a civil proceeding involving orders uniquely in furtherance of the state courts' ability to perform their judicial functions. *See Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 508–09 (5th Cir. 2021). The district court identified none.

66.     Categories 1 and 2 plainly do not apply. Yan challenges conduct arising from a private divorce and private attorney-fee dispute, not a criminal prosecution or a State-initiated enforcement action seeking sanctions. Category 3 is equally inapplicable. It is narrow and process-specific; it does not convert every state-court order into a *Younger*-protected proceeding merely because a judge signed it. *See Daves*, 64 F.4th at 625–30. Ordinary family-court payment orders are outputs of judicial functions, not orders protecting the courts' ability to perform those functions. *See Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462–63 (3d Cir. 2019). Yan challenges an alleged ERISA-fund-diversion mechanism, not contempt, supersedeas-bond enforcement, or comparable judicial-enforcement machinery.

67.     The district court skipped *Sprint's* gateway and applied *Middlesex* as the test. That error independently requires vacatur.

*2. Even if Younger applied, the with-prejudice merits dismissal was independently wrong.*

68.     *Younger* is a deferral doctrine, not a merits doctrine. It does not decide whether the federal claims are valid; it only determines whether a federal court should defer

while a qualifying state proceeding runs its course. A with-prejudice dismissal is therefore incompatible with abstention because it extinguishes claims rather than postponing federal adjudication. The district court did the opposite: it dismissed with prejudice the RICO damages, antitrust treble-damages, ERISA-relief, and § 1983 claims. The error is clearest as to damages: even when *Younger* applies, the court "has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *See Deakins v. Monaghan, 484 U.S. 193, 202–03 (1988)*; *Lewis v. Beddingfield, 20 F.3d 123, 125 (5th Cir. 1994)*; *Ballard v. Wilson, 856 F.2d 1568, 1572 (5th Cir. 1988)*. *Quackenbush* states the broader boundary: federal courts may dismiss or remand based on abstention principles "only where the relief sought is equitable or otherwise discretionary." *See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 719–31 (1996)*. If any injunctive or declaratory relief required deferral, the remedy was claim-specific deferral or dismissal without prejudice after a proper category analysis, not a global merits bar.[18]

*3. ERISA independently defeats any adequate-state-forum fallback.*

69.    Even past the gateway, ERISA defeats the district court's adequate-forum assumption. *E-Systems* held that ERISA preemption warranted federal relief even against a strong state tax-collection interest. If preemption defeated abstention there,

---

[18] ROA.2078–2095, 3064–3065.

a divorce docket cannot automatically supply an adequate forum for deciding whether ERISA-protected plan assets were routed through a non-QDRO mechanism for an attorney-fee objective, for the reasons set out in Part I.A. Nor could that docket supply the federal remedies pleaded here. Abstention had to be justified claim by claim and remedy by remedy.[19]

C. The Rule 12 dismissal cannot stand because the district court answered a materially different case by recasting ERISA diversion as a domestic-relations grievance and substituting unbriefed theories for Yan's pleaded § 664 and § 2 claims (Issue 5).

70.     Issue 5 is the Rule 12 version of the same error. Rule 12 tests the complaint as pleaded, not a substituted complaint assembled from judicial labels, later paperwork, or defendants' characterizations. The order even added federal-judge participation that the TAC did not allege.[20] Table 3 identifies the principal substitutions. Table 4, at the end of this section, shows the same mismatch in the record's own words.

Table 3: Substituted Theories Decided by the District Court

---

[19] ROA.2085 n.3, 2078–2095, 3064–3065.
[20] ROA.1053–1133, 2093, 2123.

| Pleaded theory | District court answered | Why that is reversible |
|---|---|---|
| ERISA/non-QDRO use of protected 401(k) assets for an attorney-fee objective through purported support papers | Domestic-relations dissatisfaction with state divorce rulings | Wrong source of injury; the federal question was whether ERISA permitted the alleged transfer mechanism and required qualification procedures |
| RICO predicates centered on 18 U.S.C. § 664 conversion of employee-benefit-plan assets | Money-laundering characterization without § 664 analysis | Wrong predicate statute; § 664 protects plan assets even when the surrounding paperwork uses domestic-relations labels |
| § 664 as a RICO predicate under § 1961(1) | § 664 as a standalone civil cause of action dismissed because it is a criminal statute | Category error. RICO predicates are criminal statutes by design; § 1961(1) supplies the predicate and § 1964 supplies the civil remedy. |
| Sherman Act § 2 legal-services consumer-monopoly/predatory-conduct theory | Pittman's April 2024 market-competition and competitor-injury reasoning | Wrong antitrust framework; Yan pleaded consumer injury from monopolized legal-service machinery, not a competitor dispute |

71.     The § 664 error is the cleanest example. Yan does not seek a standalone civil remedy under § 664 or the other cited criminal statutes. He pleaded § 664 as an enumerated RICO predicate under § 1961(1), and separately invoked ERISA remedies. The April 23 order instead held that the criminal statutes create no civil causes of action, answering a claim Yan did not plead. ROA.2093.

72.     The factual abstraction is equally clear. The complaint says "401(k)." The dismissal says "funds under his control." That is not a paraphrase; it is the

substitution. The complaint identified the fund, amount, recipients, ERISA protection, alleged non-QDRO route, support relabeling, conflict notice, and alleged later distribution.[21]

73.    The court's invocation of liberal construction made the substitution worse, not better. A pro se complaint must be read less stringently than a counseled pleading. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A court may look beyond an inartful label. *Castro v. United States*, 540 U.S. 375, 381–82 (2003). But liberal construction is protective, not transformative: the parties frame the issues, and courts serve as neutral arbiters. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–77 (2020). Here, the reconstruction altered the pleaded case. The FCR reduced the expressly pleaded ERISA-protected 401(k) to "certain funds under his control," ROA.1683, and the April 23 order recast the pleaded theory as a "larger conspiratorial scheme to launder money and protect against market competition." ROA.2091. That reconstruction abstracted away ERISA, displaced § 664 analysis *with* money-laundering terminology, and replaced claim-specific analysis of the pleaded Sherman Act § 2 theory *with* generalized competition language. *Compare* ROA.1089–1096 ¶¶ 142–167, *with* ROA.2091–2092.

---

[21] ROA.1065–1081, 1129–1133, 2034–2035, 2925–2926.

74. *Clark v. Sweeney*, 607 U.S. 7, 9–10 (2025) (per curiam), is squarely on point. *Clark* held that the lower court "devised a new one" and that its "radical transformation" violated the party-presentation principle. *Id*. As *Clark* put it, courts "call balls and strikes"; they do not get a turn at bat. *Id*. at 9. Although *Clark* involved relief rather than dismissal, the same party-presentation defect is present here. The order did the same here: it faulted Yan for failing to plausibly allege a "launder money" scheme involving "federal judges," ROA.2093, when he pleaded neither; he pleaded § 664 diversion of ERISA-protected plan assets. ROA.1088–1095. The "hard row to hoe" difficulty the order described was its own making. ROA.2093.

75. The participant emails reinforce the pleaded frame in the participants' own words. ROA.1139–1141.

76. The substituted premise then controlled every threshold ruling: judicial immunity assumed ordinary judicial action; attorney immunity assumed ordinary advocacy; *Younger* assumed a legitimate state-court enforcement interest; U.S. Bank's "single, discrete and otherwise lawful" transaction theory assumed a lawful support release; and the antitrust dismissal omitted the pleaded § 2 consumer-injury framework. The complaint alleged otherwise.

77. Vacatur is required without this Court deciding the merits in the first instance. The correct frame is ERISA plan-asset diversion, § 664 predicate acts, a Sherman

Act § 2 consumer-monopoly theory, and defendant-specific conduct. Table 4 shows the mismatch in the district court's own terms.

Table 4: Record-Based Examples of Premise Substitution

| What Yan Actually Alleged | What the Pittman Decisions Substituted | ROA |
|---|---|---|
| ERISA-protected pension fund / 401(k) | "certain funds under his control" | ROA.1683 |
| § 664 employee-benefit-plan-diversion predicate | "launder money via various court orders" | ROA.2093 |
| Sherman Act § 2 consumer-monopoly theory | "protect against market competition" | ROA.2091–2092 |
| Temporary, pre-decree QDRO-type instrument despite the pleaded post-decree framework | "interim order" within authority | ROA.2082, ROA.2084 |
| RICO § 664 theory | Generic racketeering framing | ROA.2089–2091 |
| **Altered** court order as usurpation | Zealous advocacy in contentious divorce | ROA.2087 |
| Associate judge **without** jurisdiction | DeAngelis acting within authority | ROA.2082, ROA.2125 |

D. The court terminated this case prematurely because it imposed an unauthorized amendment restriction, failed to construe Yan's later pro se filings according to substance, and denied Rule 15(a)(2) leave on the wrong pleading (Issues 6 through 9).

78. Yan does not rely on a freestanding appellate challenge to ECF No. 58. The later error is that the Rule 15(a)(2) ruling treated the "extraordinary circumstances" sentence in that case-management order as replacing the governing *Foman* inquiry. Rule 15(a)(2) states that "[t]he court should freely give leave when justice so

requires." *Foman v. Davis, 371 U.S. 178, 182 (1962)*. *Foman* states the merits principle directly: "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* A court may not replace that rule with a categorical restriction. *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med., 103 F.4th 383, 395 (5th Cir. 2024)*. The February 19 FCR nevertheless relied on ECF No. 58's extra-textual threshold when denying leave.[22]

79. The amendment history did not show repeated failure to cure. The First Amended Complaint corrected a caption; the Second consolidated exhibits because the court directed that attachments be refiled with the complaint; and the TAC added U.S. Bank. Those were technical or party-joinder events, not failed efforts to cure specific merits defects after notice.[23] The "best-case" rationale therefore cannot stand. A district court generally should not dismiss a pro se complaint under Rule 12(b)(6) without permitting amendment unless the record makes clear that the plaintiff has pleaded his best case. *Ricks v. Khan, 135 F.4th 296, 300–01 (5th Cir. 2025)*; *Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998)*.

---

[22] ROA.10–11, 2981, 2990–2992.
[23] ROA.560, 3023–3024.

80.     The first true post-dismissal cure request came after remand. Yan had raised the omitted-Pigg defect in his postjudgment motion, and this Court later agreed that Pigg was "not adjudicated, or even addressed."[24] When the mandate returned on October 20, 2025, Yan filed ECF No. 181 that same day and expressly requested amendment or supplementation treatment for his later materials. ROA.2367 ¶ 4. To the extent those materials concerned post-pleading events, Rule 15(d) provided the supplementation vehicle. ECF No. 185 denied reconsideration without identifying whether it rejected reconsideration, amendment, supplementation, or all three.[25]

81.     That omission matters independently. In *Lozano v. Schubert*, 41 F.4th 485, 490–91 (5th Cir. 2022), this Court held that a later pro se filing containing new allegations should have been construed and accepted as a proposed amended complaint. *Lozano* relied on *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983), and *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1081 (5th Cir. 1991): a court must look beyond the formal complaint and, where appropriate, construe later pro se materials as amendments or requests to amend. *Lozano*, 41 F.4th at 490. *Ogbebor v. Hardy*, No. 24-30403, 2025 WL 586822, at *3 (5th Cir. Feb. 24, 2025) (per curiam) (unpublished), likewise held that failure to construe pro se objections as a motion to amend and consider the new allegations was an abuse of discretion. The rule is not

---

[24] ROA.2097–2104, 2186–2188.
[25] ROA.24, 2097–2104, 2186–2188, 2365–2369.

that every later filing automatically amends a complaint. It is that a court cannot ignore a clearly stated, substance-based amendment or supplementation request before entering dismissal with prejudice. Yan's request was express. *See Bazrowx*, 136 F.3d at 1054; *Howard*, 707 F.2d at 220; *Cooper*, 929 F.2d at 1081; *Thomas*, 832 F.3d at 590–91; *Riascos v. U.S. Marshals Serv.*, 76 F.3d 93, 94–95 (5th Cir. 1996); *Ogbebor*, 2025 WL 586822, at *3.

82.     Even apart from ECF No. 181, ECF No. 210 formally sought leave and attached the PFAC and exhibits. ROA.2665–2670. Futility therefore had to be tested against the PFAC, not the superseded TAC. *See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000)*. But the FCR denied leave as futile "for the same reasons" given in its Rule 12(c) analysis of Pigg's motion, without analyzing the PFAC's materially added allegations. ROA.2981–2992. *See Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010)*.

83.     Those additions mattered. The PFAC consolidated the Table 2 records and **Wang's affidavit** and pleaded a § 1132(a)(3) transferee-restitution theory.[26] Yan also submitted **clerk-certified copies** of the April-13-Report, the garnishment-orders, the prejudgment-writs. His **§ 1746 declaration** identified Exhibits 2–9 as certified

---

[26] ROA.2704, 2717–2727, 2763–2766, 2925–2926.

copies obtained from the official district-clerk records.[27] The PFAC also added greater procedural specificity: OCA materials allegedly treated a post-judgment QDRO petition as an original filing requiring a filing fee, a new cause number, and Rule 99 citation and service. ROA.2720 ¶ 138. Those allegations mattered to Rule 15 futility; they did not retroactively alter the TAC lane. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000), recognizes restitution from a transferee of ill-gotten plan assets with actual or constructive knowledge of the circumstances rendering the transaction unlawful. Whether the PFAC adequately alleged the antecedent ERISA violation and equitable relief required analysis, not automatic futility. Wang corroborated that the April-13-Report proceeding and U.S. Bank payment concerned attorney's fees, not support.[28]

84.   The delay rationale does not cure the error. The case remained on appeal until the mandate returned on October 20, 2025; Wang's affidavit was executed on October 18; Yan requested amendment or supplementation treatment on October 20; and ECF No. 210 formally presented the PFAC approximately seventy days later and before adjudication.[29] The FCR identified no concrete prejudice from that

---

[27] ROA.2196–2197, 2325–2351.
[28] ROA.2925–2926.
[29] ROA.2183–2188, 2365–2369, 2538–2540, 2665–2670.

interval.[30] Its specific delay rationale also was not presented by Pigg; the objections explained why measuring from August 2024 ignored the remand chronology.[31]

85. The cure target also shifted. The April 23 order never identified missing facts under the pleaded § 664 predicate or § 2 theory. ROA.2092–2093. Technical amendments could not count as failed opportunities to cure unidentified defects.

86. At minimum, the denial of ECF Nos. 181 and 210 and the with-prejudice dismissal should be vacated so the district court can evaluate the amendment and supplementation requests under Rule 15 and test futility against the PFAC under the Rule 12 standard.

E. At minimum, the March 10 blanket judgment must be modified to preserve the without-prejudice status of the earlier Rule 12(b)(1) dismissals.

87. The April 23 order distinguished Rule 12(b)(1) dismissals without prejudice from Rule 12(b)(6) merits dismissals. ROA.2080–2081. The March 10 adoption order granted Pigg's Rule 12(c) motion but ordered that "this case is DISMISSED with prejudice," and the Rule 58 judgment repeated that blanket disposition. ROA.3064–3065. Pigg's defendant-specific motion supplied no merits basis to convert earlier jurisdictional dismissals against other defendants into dismissals with

---

[30] ROA.2981–2992, 3023–3026.
[31] ROA.1077–1081, 1136, 1139–1142, 2538–2540, 3023–3026.

prejudice. Whatever the disposition of the claims dismissed under Rule 12(b)(6), the judgment must be vacated or modified to preserve the without-prejudice status of each Rule 12(b)(1) dismissal. *See Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021); *Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 448–49 (5th Cir. 2023).

II. <u>The defendant-specific dismissals carry forward the same premise substitution and add distinct legal errors.</u>

88. Section II shows that the dismissals also fail defendant by defendant. Pittman's antitrust ruling recast Yan's § 2 consumer-monopoly theory as generalized competition reasoning; the DeAngelis ruling applied blanket immunity without function-specific analysis; the disciplinary-defendant rulings treated post-notice shielding as grievance adjudication; the Barrows-Ybarra rulings treated altered-order conduct as advocacy; the RICO rulings recast § 664 plan-asset diversion as money laundering and applied the wrong § 1962(d) standard; and the U.S. Bank ruling treated notice, acknowledged conflict, and distribution as routine.[32]

---

[32] ROA.2078–2095, 2981–2992.

A. The antitrust dismissal cannot stand because Pittman's April 2024 order recast Yan's pleaded Sherman Act § 2 consumer-injury theory as an unbriefed competitor-dispute theory and, as to SBTX, supplied a sua sponte Rule 12(b)(6) merits ground after recognizing that the RICO and antitrust claims survived Rule 12(b)(1) (Issue 10).

89.     The antitrust appeal presents a framework error. Yan did not challenge SBTX's sovereign regulation of admission or discipline as such. He pleaded consumer-property injury from an alleged legal-services fee-extraction channel: SBTX members allegedly used court-controlled process to compel additional fee payments from legal-services consumers, while disciplinary machinery later insulated that channel from correction after notice.[33] *Goldfarb v. Va. State Bar*, 421 U.S. 773, 787 (1975), supplies the threshold principle: "The nature of an occupation, standing alone, does not provide sanctuary from the Sherman Act." *Goldfarb* also recognizes that exchanging legal services for money is commerce. *Id.* at 788.

90.     Pittman's April 2024 order did not analyze that theory under § 2. It recast the alleged scheme as one to "protect against market competition," called Yan's monopoly allegations a legal-market "policy grievance," and dismissed the combined "RICO/antitrust claims" under generalized plausibility language. ROA.2091–2093. That competitor-market framing did not test the pleaded consumer-property injury. A consumer's monetary injury is not categorically outside

---

[33] ROA.1070–1087, 1090–1092.

antitrust law merely because the consumer is not a competitor. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339–40 (1979); *Blue Shield of Va. v. McCready*, 457 U.S. 465, 481–84 (1982); *Apple Inc. v. Pepper*, 587 U.S. 273, 279–80 (2019).

91. The procedural error is especially clear as to SBTX. Its amended motion **expressly invoked Rule 12(b)(6)** against the **RICO** and **§ 1983** claims but presented **no claim-specific challenge** to Yan's antitrust consumer-injury theory. ROA.1350, 1365–1370. The FCR **recommended** dismissal under **Rule 12(b)(1)**. ROA.1691–1693. Pittman acknowledged that "[o]rdinarily, Yan's claim would survive dismissal under Rule 12(b)(1)," but called that survival a "Pyrrhic victory" because the court would **dismiss** the RICO and **antitrust claims** under Rule **12(b)(6)**. ROA.2090. The claim-specific antitrust advocacy thus came from the court, not SBTX; under *Clark*, that was the court's "turn at bat." *Clark*, 607 U.S. at 9.

92. That sequence matters because the Rules operate claim by claim. Rule 12(b) refers to a defense "to a claim for relief"; Rule 8(b)(1)(A) requires defenses "to each claim asserted"; and Rule 7(b)(1)(B) required SBTX's motion to state its grounds "with particularity." Fed. R. Civ. P. 7(b)(1)(B), 8(b)(1)(A), 12(b). A court may raise an unbriefed Rule 12(b)(6) ground sua sponte, but it must provide notice and an opportunity to respond before dismissing with prejudice. *See Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310–11 (5th Cir. 2014); *Sineneng-Smith, 590 U.S.*

*at 375–77*. Neither SBTX's motion nor the court gave Yan notice of a claim-specific § 2 merits ground.

93.     The structural context matters. Yan alleged direct consumer-property injury from a coordinated fee-collection channel: DeAngelis allegedly directed $25,000 from Yan's 401(k) to Pigg despite no pleaded fee claim or billing proof, while Barrows allegedly used the same court-controlled channel to collect a legal-services demand that included criminal-case charges for services to Yan's wife in a proceeding to which Yan was not a party. *Boddie v. Connecticut*, 401 U.S. 371, 374–75 (1971), recognizes the State's monopolization of the means for legally dissolving a marriage. On Yan's pleaded theory, that exclusive forum made the alleged extraction channel difficult for a consumer to avoid or correct. *Reiter* states the narrow injury point directly: "[M]onetary injury, standing alone, may be injury in one's 'property' within the meaning of § 4." 442 U.S. at 339; *see* 15 U.S.C. § 15(a). Those points do not establish market definition or monopoly power. They explain why the pleaded theory could not be dismissed as a competitor dispute.

94.     Yan does not contend that consumer injury alone completes a Sherman Act § 2 claim. The theory still requires a relevant market; monopoly power for monopolization, or a dangerous probability of achieving it for attempted monopolization; exclusionary conduct; antitrust injury; causation; and, for

conspiracy to monopolize, agreement and specific intent. The district court tested

none of those elements against the pleaded theory and did not permit a targeted cure.

Nor should affirmance rest on a new, fact-intensive § 2 analysis supplied for the first

time on appeal. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024); *NetChoice,*

*L.L.C. v. Paxton*, 121 F.4th 494, 498 (5th Cir. 2024). The proper remedy is claim-

specific Rule 12 and Rule 15 analysis on remand.

B. The DeAngelis dismissal requires claim- and relief-specific analysis because the court applied immunity in bulk without deciding the character of the challenged function or the scope of delegated authority (Issue 11 and sub-issues 11(a) through 11(d)).

95.     The DeAngelis ruling should be vacated because the court did not perform the

function- and jurisdiction-specific immunity analysis federal law requires, relied on

*McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), for a state-judge Eleventh

Amendment proposition the opinion does not contain, and treated Texas Family

Code § 201.017 as though immunity parity supplied statutory authority.[34]

96.     (Issue 11(a)) The complaint alleged category-level defects, not merely an

erroneous fee calculation within ordinary divorce adjudication. Barrows supported

her fee request with billing records allegedly including charges from municipal

criminal case No. E0129990-1, in which Ybarra represented Wang and Yan was not

---

[34] ROA.2081–2082, 2084–2085.

a party; the TAC alleged that only approximately $11,000 remained outstanding even counting those entries. Pigg, by contrast, allegedly filed no fee pleading, asserted no fee claim, and presented no supporting evidence. Yet the April-13-Report directed Yan to withdraw or borrow $50,000 from his 401(k): $25,000 for Barrows and $25,000 for Pigg. Separately, later papers allegedly drafted by Barrows and signed by Pigg facially altered that rendered attorney-fee basis by inserting a "spousal support" recital although no support motion, hearing, or order existed.[35]

97.     (Issue 11(b)) *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003), does not resolve the pleaded theory. Yan challenges an alleged pre-decree mechanism routing ERISA assets to private attorneys through a fabricated support label, not merely a judge's neutral adjudication of a statute.

98.     The pleaded injury was concrete: loss and continued restraint of identified ERISA-protected 401(k) assets. The alleged temporary instrument was a causal step in the transfer mechanism because it directed the retirement withdrawal later relabeled as "spousal support." Yan sought relief addressing the alleged non-QDRO mechanism and its continuing consequences, not appellate review of a divorce

---

[35] ROA.1070, 1074–1075, 1198–1200.

decree. Whether judicial immunity limits a particular remedy is distinct from whether Article III standing existed to challenge the alleged federal injury.

99. (Issue 11(c)) *Forrester v. White*, 484 U.S. 219, 229 (1988), states the governing inquiry directly: "it was the nature of the function performed, not the identity of the actor who performed it, that informed our immunity analysis." The challenged act was judicial in form: DeAngelis allegedly issued an order. Yan therefore invokes *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978), and its clear-absence-of-all-jurisdiction exception, not the nonjudicial-act exception. The relevant category is not temporary divorce relief or interim attorney fees generally. Texas law divides the estate in the decree, Tex. Fam. Code § 7.001, and Chapter 9 provides a post-decree QDRO route for retirement benefits previously divided by a decree or other final property-division order. *Id.* §§ 9.101–.105; *Dalton*, 551 S.W.3d at 137–42.

100. The TAC alleged no decree and a temporary, pre-decree QDRO-type instrument despite Chapter 9's post-decree petition framework. ROA.1065–1066 ¶¶ 45–49. Yet DeAngelis allegedly used the temporary, pre-decree instrument as a step in a mechanism reaching ERISA-protected assets for an attorney-fee objective.

101. Yan explained that theory before and after dismissal. In response to DeAngelis's motion, he argued that the own-counsel fee directive lacked a pleading,

claim, fee evidence, and an adversarial fee dispute before the court; he separately identified the criminal-case charges. ROA.1330–1331, 1338–1339. After Pittman stated that Yan had not plainly explained the alleged unlawfulness, Yan again identified no decree, no QDRO petition or claim, no notice or hearing on spousal support, and no Texas statute authorizing a pre-divorce QDRO. ROA.2127–2130. The theory was not unexplained; it was unaddressed.

102. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52 (1872), and *Stump* illustrate the distinction between an act in excess of jurisdiction and an act in the clear absence of jurisdiction. Yan does not contend that an erroneous, procedurally defective, or even bad-faith judicial act necessarily defeats immunity. The strongest counterargument is that the family court possessed general subject-matter jurisdiction over temporary support and attorney-fee matters, making any defect an excess of jurisdiction under *Stump*. The narrower question is whether the particular alleged function remained within the associate judge's delegated authority or instead used a distinct pre-decree DRO-type mechanism to reach ERISA assets after a rendition that did not award support. The district court did not decide that question.

103. *Holloway* confirms that conspiracy allegations alone do not defeat immunity for otherwise protected judicial acts. Yan therefore seeks remand for category-specific analysis, not an immunity exception based merely on alleged conspiracy.

Any injunctive relief against a judicial officer must also satisfy § 1983's limits: a declaratory decree was violated or declaratory relief was unavailable. Yan's requests for declaratory and prospective relief required separate redressability analysis. *See Holloway v. Walker, 765 F.2d 517, 522 (5th Cir. 1985)*.

104. (Issue 11(d)) Section 201.017 supplies immunity parity; it does not enlarge an associate judge's delegated authority under § 201.007 or create a Chapter 9 proceeding where none existed. Abstract divorce jurisdiction does not answer whether a limited statutory officer could bypass Chapter 9's decree-based, petition-and-citation framework. The district court conducted no category-specific analysis. ROA.2084–2085.

105. The court's *McKinley* citation is a self-contained defect in the stated rationale. The order cited *McKinley*, 643 F.3d at 406, for a state-judge Eleventh Amendment proposition that *McKinley* does not contain. *McKinley* involved the Eleventh Amendment bar to state-law claims against the Texas Attorney General; page 406 did not analyze immunity for state judges, associate-judge authority, Chapter 9, QDROs, or ERISA. That proposition cannot carry affirmance. ROA.2085.

106. The proper remedy is claim- and relief-specific remand. The district court should determine whether the alleged act was an immune exercise of judicial authority, whether *Stump*'s clear-absence exception applies, and whether any

declaratory or prospective relief remains available subject to § 1983's limits. ROA.2078–2095.

C. The SBTX and disciplinary-defendant dismissals cannot stand because Yan was not a disciplinary respondent, did not seek review of any disciplinary judgment, and pleaded later bar conduct as post-notice shielding of an ERISA-fund diversion, not grievance dissatisfaction (Issue 12 and sub-issues 12(a) through 12(c)).

107. The SBTX and disciplinary-defendant issue is a wrong-injury issue. The underlying injury was not dissatisfaction with a divorce ruling or a grievance disposition. Yan pleaded consumer-property injury from an alleged legal-services fee-extraction channel reflected in the Billing-Records, April-13-Report, and Five-Instrument Sequence. ROA.1157–1202. Yan was not a disciplinary respondent, did not seek review of a disciplinary judgment, and did not ask the federal court to compel attorney discipline. He pleaded the later grievance sequence as notice, knowledge, enforcement connection, and post-notice shielding of the consumer ERISA injury.[36]

108. *Liedtke* does not decide this theory. *Liedtke* and *Bishop* involved attorneys challenging their own disciplinary proceedings; *Krempp* concerned the unauthorized-practice apparatus. Yan was not the respondent, target, or party in any disciplinary case, and he does not seek review of a disciplinary judgment. The

---

[36] ROA.1082–1086, 1145–1155.

grievance record is pleaded as notice, knowledge, enforcement connection, and post-notice shielding of an ERISA/RICO injury. Treating that theory as a barred grievance appeal repeats the district court's premise substitution. The categorical immunity in those cases does not reach disciplinary actors' alleged post-notice shielding of a third-party ERISA-fund diversion from corrective process. *See Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994); *Krempp v. Dobbs*, 775 F.2d 1319, 1321 & n.1 (5th Cir. 1985); *Bishop v. State Bar of Tex.*, 791 F.2d 435, 438 (5th Cir. 1986). ROA.1083–1086, 2088.

109. Correctly framed, the claim is not a grievance appeal: after written notice and the BODA-Reversals, disciplinary actors allegedly preserved the ERISA extraction's consequences. The separate RICO and antitrust errors are addressed in Sections II.A and II.E; this section addresses the remaining § 1983 and *Ex parte Young* issues.

110. The April 23 order did not dismiss the SBTX Defendants' RICO or antitrust claims on immunity grounds. It stated that Yan's objection on that point "holds water," that those claims ordinarily would survive Rule 12(b)(1), and that their threshold survival was a "Pyrrhic victory" because the court would dismiss them under Rule 12(b)(6). ROA.2088–2091. The remaining immunity issues concern the non-RICO and non-antitrust claims against the State Bar Defendants. Those claims required capacity- and officer-specific analysis of personal conduct, any applicable

federal immunity defense, and, for prospective relief, the required enforcement connection.

111. That connection was not inferred from titles alone. The TAC alleged that Marin and Martinez dismissed the Barrows and Pigg grievances; after the BODA-Reversals, Craig dismissed both again.[37] The February 19 FCR likewise states that SBTX dismissed Yan's complaints "initially and on reconsideration." ROA.2982. Those pleaded exercises of authority required an officer-by-officer inquiry into whether a proper official possessed the particular enforcement connection and demonstrated willingness to exercise it that *Ex parte Young*, 209 U.S. 123, 157 (1908), requires. *See Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734–37 (1980); *Book People, Inc. v. Wong*, 91 F.4th 318, 334–35 (5th Cir. 2024); *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325, 330–32 (5th Cir. 2024). Recent Fifth Circuit law states the threshold directly: "Plaintiffs need only show a 'scintilla of enforcement by the relevant state official.'" *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025). Whether the pleaded exercises satisfied that standard required analysis; the district court conducted none.

112. Separately, the State Bar motion invoked Tex. R. Disciplinary P. 17.09, and the December 28 FCR adopted the motion's alternative absolute- and qualified-

---

[37] ROA.1082–1084, 1145–1155.

immunity theories by reference. ROA.1693 n.4. Rule 17.09 does not itself establish an automatic federal bar. A State "has no power to confer immunity from federal causes of action." *Doe v. Dynamic Physical Therapy, LLC*, 607 U.S. 11, 11 (2025) (per curiam). *Howlett* states the source-of-law rule directly: "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990); *see also Haywood v. Drown*, 556 U.S. 729, 737–42 (2009). *Williams v. Reed*, 604 U.S. 168, 174 (2025), applies the same rule to § 1983: "This Court's precedents do not permit States to immunize state officials from § 1983 suits in that way." The court therefore had to identify and apply federal grounds claim by claim, capacity by capacity, and function by function.

113.   The lanes remain separate. SBTX entity damages, individual-capacity claims against Marin, Martinez, and Craig, and official-capacity prospective relief are not interchangeable. *Doe* forecloses automatic reliance on a state-conferred immunity rule; it does not eliminate federal functional immunity, Eleventh Amendment limits, causation, standing, or the *Ex parte Young* enforcement-connection requirement.

114.   *Younger* likewise does not bar these claims. The alleged injury flows from the defendants' own post-notice shielding and enforcement connection, not from a

pending disciplinary prosecution against Yan. No *Sprint* category was identified, and no disciplinary judgment against Yan was being reviewed.[38]

115.  The remedy is claim-specific vacatur: determine whether the pleaded later conduct states a federal claim, then analyze actor, capacity, function, immunity, and prospective relief separately. The case cannot be dismissed merely by relabeling it as grievance dissatisfaction.

D. The Barrows-Ybarra and Pigg dismissals cannot stand because the complaint pleaded altered-order and coordinated diversion conduct beyond ordinary advocacy, and Pigg's post-remand dismissal reused prior reasoning without Pigg-specific merits review (Issues 13 and 14 and sub-issues 13(a) through 13(c)).

116.  The Attorney Defendants must be separated by claim and actor because the April 23 order used different procedural lanes. For Barrows, Ybarra, and the Firm, the RICO and antitrust claims were ultimately addressed under Rule 12(b)(6), while Barrows's § 1983 claim appears to have remained in the non-RICO immunity lane. For Pigg, the question is whether the post-remand Rule 12(c) dismissal supplied the defendant-specific review the Fifth Circuit remand required. ROA.1682–1699, 2086–2093, 2981–2992.

117.  The pleaded acts must be separated. Barrows allegedly submitted the mixed billing affidavit and transmitted the later papers; Ybarra allegedly represented Wang

---

[38] ROA.1083–1086, 2085 n.3.

in the separate municipal matter and received or participated in related communications; and the Firm was tied to Barrows's fee-extraction conduct[39].

118.  *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018), protects conduct of the kind an attorney performs in representing a client. Yan does not dispute that a law firm may invoke Texas attorney immunity where the doctrine applies. But the inquiry remains act-specific and claim-specific. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 479, 482 (Tex. 2015), does not resolve the pleaded conduct: the allegations concern pre-decree papers that allegedly transformed an interim attorney-fee award into "spousal support" to reach ERISA assets for private fee claimants, not merely documents ancillary to implementing an existing divorce decree.

119.  (Issue 13(b)) Texas common-law attorney immunity could not be applied automatically to Yan's federal statutory claims. *Taylor v. Tolbert*, 644 S.W.3d 637, 653–56 & n.103 (Tex. 2022), required a statute-specific inquiry under the governing federal source of law. The district court described Texas attorney immunity as "wide-ranging and robust," ROA.2087, but that breadth did not answer the federal source-of-law question. *Taylor* states the source-of-law point directly: "[Q]uite simply, a state's common-law defense does not apply to federal statutes." 644 S.W.3d at 655–

---

[39] ROA.1074–1079, ¶¶ 87–90, 96, 98, 101.

56. Yan preserved and renewed that point below: his objections quoted *Taylor* and objected that the FCR automatically applied attorney immunity without analyzing the particular federal statute, and his supplemental objections responded that *Taylor* was not limited to the federal wiretap statute.[40]

120. The April 23 order did not resolve that objection. It sustained Yan's immunity objection only "vis-à-vis his RICO claim," then dismissed the Attorney Defendants' "RICO/antitrust claims" under Rule 12(b)(6) without explaining the antitrust shift or separately analyzing Barrows's § 1983 claim under federal state-action, causation, and deprivation standards. ROA.2084–2093. Yan's preserved objection required federal-source and act-specific analysis. *Doe*, *Howlett*, *Haywood*, and *Williams* supply that rule; *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992), rejects automatic qualified immunity for private parties invoking state seizure machinery. Ybarra and the Firm required separate analysis under the claims pleaded against them.

121. Texas attorney immunity did not create an Article III standing defect. Even if the doctrine may defeat a particular claim on the face of the pleadings, its application required claim-specific analysis of the challenged conduct and the governing federal source of law.

---

[40] ROA.1709–1711, 1740–1741.

122. Yan does not seek reinstatement of any state-law claim that Texas attorney immunity bars on the face of the pleadings. His narrower point is that a state common-law immunity rule cannot replace the federal-element analysis for RICO, antitrust, or § 1983. Each federal claim still must be tested actor by actor and element by element.

123. (Issue 14) As to Pigg, the prior appeal established only that the April 2024 judgment was nonfinal because Pigg, who had answered, had not been adjudicated. ROA.2186–2188. After remand, the FCR entered a Rule 12(c) recommendation by incorporating prior RICO and antitrust reasoning directed to other defendants and adding limited Pigg-specific discussion. Incorporation is not inherently improper, but it cannot substitute for testing Pigg-specific allegations against each element of each claim. ROA.2981–2992.

124. That single sentence of incorporation constituted the FCR's entire RICO analysis for Pigg. The FCR identified no predicate acts attributed to Pigg, named no predicate statute, and performed no pattern analysis: no relatedness inquiry and no continuity inquiry. It did not apply the governing § 1962(d) conspiracy standard, did not engage the enterprise standard, and did not address the § 664 predicate Yan actually pleaded against Pigg. ROA.2981–2992.

125. The February 19 FCR's separate Pigg antitrust ruling identified specific-intent and agreement deficiencies. The documentary chain may support alleged coordination, but it does not by itself establish the market elements or specific intent required by the particular § 2 theory. To the extent the FCR relied on newly articulated Pigg-specific deficiencies, the proper question was whether targeted amendment could cure them. The court instead dismissed with prejudice while denying leave without testing the PFAC under Rule 15(a)(2).

126. The § 1983 analysis against Pigg likewise ignored the Pigg-specific documentary chain. TAC alleged that the April-13-Report designated $25,000 for Pigg despite no fee petition, testimony, or evidence and characterized the award as "$25,000 in exchange for his cooperation" in not appealing the unlawful order.[41] TAC alleged that Pigg "consented to this unlawful proposed order," one of the Five-Instrument Sequence; and the No-Way-Around-It-Proposal was sent to Pigg.[42] At Rule 12(c), those dated documents plausibly supported willful participation in joint action with the State without a transcript of the agreement's formation. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), supplies the line: "merely resorting to the courts and being on the winning side" is not enough, but a private defendant acts under color of law when he is "a willful participant in joint action with the State or its

---

[41] ROA.1070 ¶ 70, 1198.
[42] ROA.1076 ¶ 93, 1139, 1200–1202.

agents." Judicial immunity does not shield the alleged private participant. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982). Those documents did not eliminate the need to plead the relevant state actor, the specific joint act, the constitutional deprivation, and Pigg's causal role. The FCR stated the joint-action standard but did not test that chain. ROA.2981–2992.

127. Vacatur is required so the district court can perform the omitted claim-specific analysis: apply the correct federal merits standards to the Attorney Defendants' RICO and antitrust claims; determine Barrows's § 1983 claim under the governing federal source of law rather than automatic Texas immunity; and decide Pigg's distinct Rule 12(c) posture from Pigg's own pleadings rather than borrowed reasoning.[43]

E. The RICO dismissals and RICO futility ruling cannot stand because the district court treated Yan's § 664 predicate as a standalone criminal claim, mischaracterized the pleaded § 664 plan-asset-diversion theory as money laundering without analyzing that predicate, applied the wrong § 1962(d) standard, and then denied leave without testing the materially more specific RICO allegations in the PFAC. (Issue 15 and sub-issues 15(a) through 15(c)).

128. The RICO ruling requires vacatur because the district court treated the pleaded § 664 predicate as a standalone claim, analyzed the wrong predicate statute, and applied the wrong conspiracy standard. The Rule 15 futility ruling repeated that error

---

[43] ROA.1682–1699, 2086–2093, 2981–2992.

by recycling TAC analysis after the PFAC pleaded the enterprise, agreement, communications, injury path, and continuity allegations more specifically. ROA.2078–2095.

129. The order's own sequence exposes the predicate error. It first stated that Yan attempted to sue U.S. Bank under §§ 664, 1027, 1341, 1343, and 1349, then concluded: "Those are criminal statutes and do not create civil causes of action. Thus, those claims are DISMISSED with prejudice." ROA.2093. But Yan pleaded § 664, mail fraud, and wire fraud as predicate acts within a civil RICO theory. Section 1961(1) expressly enumerates § 664, § 1341, and § 1343 as racketeering predicates; § 1964(c) supplies the civil remedy. The problem is not merely that the order rejected standalone claims under criminal statutes. It is that the ensuing RICO analysis never tested § 664 as an enumerated predicate. That omission followed the adverse reconstruction described above.[44]

130. That category error mattered because it displaced the pleaded factual premise before the Rule 12 analysis began. The December 28 FCR reduced the ERISA-protected 401(k) to "certain funds under his control," ROA.1683, and the April 23 order later stated: "But a release of spousal support funds is not a RICO violation." ROA.2094. Yet Yan alleged that later papers used a support recital as an attorney-

---

[44] *See supra* Section I.C; ROA.1683, 2091–2094.

fee routing mechanism, as the No-Way-Around-It-Proposal confirms. ROA.1139. At Rule 12, the court had to test whether that pleaded routing mechanism plausibly implicated § 664, not assume that the later support recital conclusively established a lawful support release.

131. The order instead recast the alleged scheme as an effort "to launder money via various court orders." ROA.2093. Whether the pleaded facts would satisfy a money-laundering theory does not answer whether they plausibly alleged theft or embezzlement from an employee benefit plan under § 664. The stated rationale therefore cannot sustain dismissal of the pleaded § 664 theory. Any alternative affirmance theory must identify the specific RICO element the pleadings fail to satisfy.

132. The order also applied the wrong § 1962(d) standard. Section 1962(d) separately makes it unlawful to conspire to violate § 1962(a), (b), or (c). *Salinas v. United States*, 522 U.S. 52, 65 (1997), supplies the precise rule: a conspirator must intend to further an endeavor that, if completed, would satisfy the substantive offense, but "it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." He may agree to facilitate only some acts leading to the offense. *Id.*; *see United States v. Elliott*, 571 F.2d 880, 902–03 (5th Cir. 1978). A RICO conspiracy requires an agreement to commit a substantive RICO offense and knowledge of and

agreement to its overall objective. Those elements "may be established by circumstantial evidence." *United States v. Perry*, 35 F.4th 293, 317–18 (5th Cir. 2022). More specifically, "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances." *Id.* at 318 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)); *see also United States v. Shows Urquidi*, 71 F.4th 357, 371 (5th Cir. 2023). The district court instead converted an endeavor-level requirement into a defendant-by-defendant personal-pattern requirement. ROA.2078–2095.

133. The inquiry must remain element-specific. For each claimed RICO person and enterprise, the court had to test person-enterprise distinctness; operation or management for § 1962(c); the asserted predicate acts; Rule 9(b) particulars for any mail- or wire-fraud predicates; relatedness and continuity; § 1962(d) agreement; injury to business or property; and proximate causation under § 1964(c). The § 664 theory did not depend on proving every fraud predicate. The district court did not perform that map against either the TAC or the PFAC.

134. The pleading map matters. The TAC identified two alleged enterprises, the Barrows Firm and SBTX, ROA.1088–1089. The FCR never identified which alleged enterprise, unlawful objective, or pattern it tested. The TAC alleged facts supporting

the § 1962(d) theory: an extraction layer involving Barrows, Ybarra, Pigg, and DeAngelis[45]; a post-notice shielding tier involving SBTX, Marin, Martinez, and Craig, ROA.1082–1086, 1145–1155; and a separate U.S. Bank count incorporating the preceding allegations and invoking § 1962(c), (d), ROA.1129–1132. The pleaded circumstances had to be evaluated cumulatively. The court could not isolate each act, demand an express admission of agreement, and dismiss because no single allegation independently proved conspiracy. *Perry*, 35 F.4th at 317–18. Table 2 identifies the Billing-Records, April-13-Report, Five-Instrument Sequence, No-Way-Around-It-Proposal, Would-Not-Be-True-Admission, Have-To-Lie-Suggestion, Unresolved-Alternatives Letter, and alleged distribution. Together, that documentary sequence plausibly alleged coordinated steps by which plan assets moved from ERISA protection through an attorney-fee routing mechanism. For any actor plausibly alleged to have joined, "[p]assive nonparticipation in the continuing scheme is not enough"; withdrawal requires "affirmative action . . . to disavow or defeat the purpose" of the conspiracy. *Smith v. United States*, 568 U.S. 106, 112–13 (2013).

135. The TAC and PFAC alleged "open-ended continuity" and "closed-ended continuity." [46] The PFAC made that chain stronger, not weaker. It tied that documentary chain, Wang's corroboration, and Pattern-Orders to the RICO elements

---

[45] ROA.1070–1081, 1139–1141, 1198–1202.
[46] ROA.1097–1098 ¶¶ 172–174, ROA.2719–2720 ¶¶ 134–137.

appellees attacked: enterprise purpose, agreement, predicate acts, causation, injury, relatedness, and continuity. Whether those allegations ultimately prove a RICO violation is not the Rule 15 question. The question was whether amendment was plainly futile. On this record, it was not. ROA.2717–2727 ¶¶ 123–140.

136.   That defendant-specific § 1962(d) analysis never occurred. For § 1962(c), the court had to test person, enterprise, conduct, pattern, and injury. For § 1962(d), the court had to test agreement to the overall objective, not each conspirator's personal predicates. *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000), confirms the civil limitation: a § 1964(c) plaintiff may sue "co-conspirators who might not themselves have violated one of the substantive provisions of § 1962," but the injury-causing act must be racketeering activity or otherwise unlawful under RICO. Yan alleged direct injury from the pleaded § 664 mechanism. *See United States v. Delgado*, 401 F.3d 290, 296–97 (5th Cir. 2005); *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). Before rejecting the claims for lack of a pattern, the court had to identify which alleged enterprise it was testing, the contemplated substantive RICO offense, and the agreement theory. It never decided whether the asserted pattern related to the Barrows Firm, SBTX, or both.[47]

---

[47] ROA.1070–1087, 1088–1089, 1129–1132, 1203–1204, 2078–2095, 2717–2727, 2933–2980.

137.   Those substitutions require vacatur. The district court, not this Court, should decide enterprise, pattern, injury, and agreement under the correct standards. At minimum, Rule 15 futility had to be tested against the PFAC, not the TAC. ROA.2078–2095.

F. The U.S. Bank dismissal cannot stand because the complaint pleaded notice, the Unresolved-Alternatives Letter, and a subsequent ERISA-fund distribution, not a routine ministerial transaction (Issue 16 and sub-issues 16(a) through 16(c)).

138.   The cleanest U.S. Bank theory is ERISA's qualification-determination and separate-accounting duties, enforced through an appropriate ERISA civil-remedy route. The TAC alleged the duty under § 1056(d)(3)(H)(i). ROA.1130–1132 ¶¶ 402–411. The PFAC later expressly invoked § 1132(a)(2), § 1109(a), and § 1132(a)(3). ROA.2763 ¶ 306. Any remedy must remain within those statutory routes.

139.   U.S. BANK 401(k) SAVINGS PLAN ("PLAN"), Section 2.1 at ROA.1879 provides that, during any period when QDRO status "is being determined by the Committee," the Committee must cause the Plan to account separately for the amount that would be payable if the order qualified. PLAN also required notice, comment, an initial determination, an appeal period, a final determination, and payment only after qualification and expiration of the comment and appeal periods. ROA.1879–1881. The district court had to determine whether the pleaded conflict

and objections placed the order within that process and whether U.S. Bank was an appropriate defendant under the invoked ERISA remedy.

140. The role analysis must be precise. PLAN assigns QDRO determination and separate accounting to the Committee. ROA.1879–1881. Yan's claim against U.S. Bank survives only to the extent the pleadings plausibly allege that U.S. Bank was the relevant fiduciary, acted through or for the Committee, or is otherwise an appropriate defendant under the invoked ERISA remedy. The district court did not identify that role before dismissing the claim.

141. The completed-transfer allegation also must be stated accurately. The PFAC and Wang affidavit later alleged that Wang received a check from U.S. Bank and then paid Barrows. ROA.2925–2926. The TAC lane does not depend on an allegation that U.S. Bank wrote a Plan check directly to an attorney; it rests on the alleged use of papers reciting support as the channel for an attorney-fee objective while qualification remained disputed.

142. The Unresolved-Alternatives Letter and Yan's objections plausibly alleged that qualification remained disputed. U.S. Bank stated that the later paper either appeared "in direct conflict" with and to supersede the April-13-Report or imposed an additional, separate obligation. ROA.2034–2035. The key word is "or." Neither branch supplied a self-executing answer to ERISA qualification. If a statutory

determination period existed, § 1056(d)(3)(H)(i) required separate accounting while qualification was determined.

143. The § 1056(d)(3)(H)(i) theory was pleaded and preserved. U.S. Bank converted TAC ¶ 407 into an admission that it followed QDRO procedures. ROA.1771–1772. But ¶ 407 alleged a determination failure: despite the stated conflict, U.S. Bank treated the later paper as qualified. ROA.1130. Yan's opposition sharpened the same point. It quoted the unresolved fork and argued that neither a superseding order nor a separate order was made in accordance with Texas domestic-relations law. ROA.2020–2021 ¶¶ 76–82. The order nevertheless adopted the alternate-payee premise "[a]s U.S. Bank's Motion notes." ROA.2095. It answered a downstream defense, not the pleaded threshold breach.

144. U.S. Bank invoked *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009), and the April 23 order accepted the plan-document rule as an alternative reason. ROA.2074–2075, 2095. But that rule is conditional: fiduciaries follow plan instruments only "insofar as such documents and instruments are consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D); *Kennedy*, 555 U.S. at 300. A domestic-relations order must be "made pursuant to" State domestic-relations law. § 1056(d)(3)(B)(ii). *Dalton, 551 S.W.3d at 138–39, confirms the threshold: ERISA does not grant a state court authority to issue an order state law does not authorize.*

*Yan alleged that the temporary, pre-decree instrument departed materially from the April-13-Report and functioned as a fee-payment device despite its support label.*[48] The court did not decide whether either branch satisfied the state-law prong or whether separate accounting remained required during determination.

145.   That statutory theory is independent of the harder § 1983 fallback. U.S. Bank may argue that it was only processing a court order. The Plan documents, however, assigned QDRO determination and separate accounting to the Committee. The district court had to decide whether the alleged conflict and objections invoked that process and whether U.S. Bank was an appropriate ERISA defendant.[49]

146.   The RICO and § 1983 theories against U.S. Bank are alternative and more demanding. Post-notice processing may support the ERISA process theory, but it does not by itself establish a RICO agreement or willful joint action under § 1983. Those fallback theories survive only if the pleadings plausibly allege participation beyond ministerial processing, including the relevant agreement or joint act, the state actor, injury, and causation. The district court should test those allegations separately rather than collapse them into a "single, discrete and otherwise lawful" payment. ROA.2094.

---

[48] ROA.1067–1068, 1076, 1139–1141, 2034–2035.
[49] ROA.1879–1881, 2034–2035.

147. The same error infected the "single, discrete and otherwise lawful" rationale. The complaint alleged a multi-step alteration-and-distribution scheme, not an ordinary support payment. *See supra* Table 2. The court could not deem that sequence lawful without addressing QDRO qualification and post-notice segregation. ROA.2094; § 1056(d)(3)(H)(i).

148. On remand, the district court should address preserved exhaustion, traceability, defendant-role, and equitable-remedy questions under ERISA.

III. The limited pre-filing injunction must be vacated, and reassignment is warranted to ensure fresh review on remand.

A. The limited pre-filing injunction must be vacated because it was imposed sua sponte without the process *Qureshi* requires (Issues 17–18).

149. The district court denied Yan's sanctions motion, found his repeated sanctions motions vexatious, and required leave before any future sanctions motion. ROA.1667–1674. The restriction was limited, but it was still a pre-filing injunction.

150. *Qureshi, 600 F.3d at 525–26*, holds that notice and a hearing are required before a district court imposes a pre-filing injunction sua sponte. The earlier FCR warned only that future frivolous sanctions motions could lead to a recommendation of sanctions. ROA.1643–1650. It did not notify Yan that an immediate leave requirement was under consideration or give him an opportunity to address necessity, scope, or tailoring. The limited scope may bear on tailoring after notice

and a hearing; it does not cure the missing process. *See Qureshi*, 600 F.3d at 525–26 & n.2.

151.   Yan does not ask this Court to decide whether his Rule 11 motions had merit. Under *Qureshi*, the injunction must be vacated and any renewed consideration must follow notice and a hearing. *Id.* at 526.

B. Reassignment is warranted to ensure fresh review on remand (Issue 19).

152.   The April 2024 judgment omitted Pigg entirely. ROA.2183–2188. After this Court remanded because Pigg's liability had not been adjudicated, the February 2026 FCR incorporated prior RICO and antitrust reasoning directed to other defendants and added limited Pigg-specific discussion. ROA.2981–2992. The successor district judge then adopted that recommendation over specific objections without additional analysis and dismissed the entire case with prejudice. ROA.3023–3057, 3064–3065.

153.   Reassignment is extraordinary. Yan relies not on adverse rulings or Pittman's recusal alone, but on the cumulative procedural path, repeated omission of a central pleaded theory, and minimal cost of fresh review.

154.   The concern is concrete. The TAC alleged that later papers recast attorney's fees as "spousal support," supported by the No-Way-Around-It-Proposal, Would-Not-Be-True-Admission, Have-To-Lie-Suggestion, and Unresolved-Alternatives Letter. ROA.1139–1141, 2034–2035. Yet the dispositive rulings, including after

remand and after Yan submitted a materially expanded PFAC, treated the disputed support recital as conclusive rather than testing the alteration theory at Rule 12.

155.   The simpler objective-observer test supports reassignment. Whether an order was altered is a factual question, not one requiring legal expertise. An ordinary observer could reasonably question whether fresh review would occur when Yan repeatedly presented the factual alteration issue and expressly objected that the district court failed to address it, yet the case was again dismissed without engagement of that factual premise. ROA.2112–2113 ¶¶ 25–29; ROA.2116–2118 ¶¶ 46–51; ROA.2713 ¶104. That concern does not require a finding of actual bias. *M.D. ex rel. Stukenberg*, 119 F.4th at 386–87.

156.   The three-factor test leads to the same result. First, remand would require reconsideration of conclusions embedded across successive rulings. Second, reassignment would preserve the appearance of justice by ensuring that the TAC, the PFAC, and the defendant-specific claims are evaluated under the correct legal frameworks and on the pleaded factual premise. Third, reassignment would impose little duplication because no trial occurred and discovery remained incomplete. *See DaimlerChrysler*, 294 F.3d at 700–01; *M.D. ex rel. Stukenberg*, 119 F.4th at 386–95.

## Conclusion

157.   This Court should vacate the limited pre-filing injunction, vacate and remand the March 10, 2026 judgment for claim-specific disposition under the correct standards, and order the district court to evaluate the PFAC under Rule 15(a)(2) and test futility against the proposed pleading. Alternatively, at minimum, this Court should modify the judgment to clarify that each Rule 12(b)(1) dismissal remains without prejudice. Yan does not seek reinstatement of Tarrant County.

158.   Yan respectfully requests reassignment on remand to a different Article III district judge and, if the matter is referred, a different magistrate judge.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF SERVICE

This is to certify that the foregoing documents—Appellant's Opening Brief and Appendix A, Statutory Addendum to Opening Brief—have been served in a manner compliant with Fed. R. App. P. 25(b) and (c), on June 22, 2026, on all registered counsel of record, and have been transmitted to the Clerk of the Court.

*/s/ Conghua Yan*
Conghua Yan

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to this Court's prior order granting Appellant's motion to file an extra-length principal brief, this brief complies with the authorized type-volume limitation because:

- this brief contains 17,485 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 Word with a 14-point font named Times New Roman.

*/s/ Conghua Yan*
Conghua Yan

## APPELLANT'S APPENDIX

Tab Document
A. Federal Public Law, Statutes, and Rules (1–24)
B. Texas Statutes and Disciplinary Rule (25–30)

# CERTIFICATE OF SERVICE

I certify that on June 21, 2026, I served 26-10286 Opening Brief and Appendix A, Statutory Addendum to Opening Brief, in Case No. 26-10286, *Conghua Yan v. State Bar of Texas, et al.*, by email courtesy service. Service was made on counsel of record and on Harris, Finley & Bogle, P.C. counsel, who, although not having appeared in this appeal, expressly consented to service by email. The recipients were:

ccyrier@hfblaw.com; lriley@hfblaw.com; rolandjohnson@hfblaw.com; ctucker@hfblaw.com; Michael.Graham@texasbar.com; amanda.kates@texasbar.com; rlemoine@texasbar.com; royce.lemoine@texasbar.com; melissa.hill@morganlewis.com; roberta.leone@morganlewis.com; elizabeth.hong@morganlewis.com; nymanagingclerk@morganlewis.com; tyler.j.hill@morganlewis.com; michele.boerder@morganlewis.com; keowens@tarrantcountytx.gov; maschuit@tarrantcountytx.gov; wapigg@pigglawfirm.com; and njames@hfblaw.com.

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Plaintiff-Appellant, Pro Se