# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
### No. 26-10286

**CONGHUA YAN,**

Plaintiff-Appellant,

v.

**THE STATE BAR OF TEXAS, ET AL.,**

Defendants-Appellees.

## BRIEF OF 84 INDIVIDUAL AMICI CURIAE
## A STATEWIDE ALLEGED PATTERN PRESENTS A NATIONWIDE ERISA ACCOUNTABILITY GAP
## IN SUPPORT OF APPELLANT AND VACATUR

*On Appeal from the United States District Court*
*for the Northern District of Texas, Fort Worth Division*
*Civil Action No. 4:23-CV-00758-Y*

Respectfully submitted,
**Amici Curiae**

**SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS**

Pursuant to Fifth Circuit Rules 28.2.1 and 29.2, amici disclose that they are the individuals listed in The signature section. Amici are litigants and former litigants from multiple States who are concerned with the integrity of federally protected rights, retirement security, and the practical availability of meaningful federal review when alleged attorney misconduct, state-court process, and federal statutory or constitutional protections intersect.

# TABLE OF CONTENTS

**SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS**………..3

**TABLE OF AUTHORITIES**………..………..………..………..………..…⋯iii

**STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE**………………………………………………………………………..1

**RULE 29(a)(4)(E) DISCLOSURE**………………………………………..2

**SUMMARY OF THE ARGUMENT**………………………………………..2

**ARGUMENT**……………………………………………………………4

   I. ERISA creates a national pension-protection structure that state labels cannot displace. ……………………………………..…………………………………4

      A. The anti-alienation rule is the default; the QDRO exception is limited. ……………………………………..…………………………………...4

      B. The plan administrator must make an objective qualification determination. ……………………………..…………………………………..6

      C. Separate accounting is a mandatory procedural safeguard while qualification is unresolved.                                                         7

   II. The alleged Texas pattern raises a nationwide institutional accountability concern.…………………………………….. …………….……………9

A. The record identifies an alleged repeatable mechanism extending across years and counties. …………………………………………………….9

B. Institutional reliance can become institutional nonreview…………...11

III. Brown does not authorize institutional nonreview of objective statutory defects………………………………………………………………….13

IV. State-court labels and procedural rerouting cannot create a federal-remedy dead zone.  15

V. Vacatur and remand are the narrow and proper remedy……………………17

CONCLUSION………………………………………………………………....19

CERTIFICATE OF SERVICE……………………………………………….…..36

CERTIFICATE OF COMPLIANCE………………………………………………37

# TABLE OF AUTHORITIES

**Cases:**

*Boggs v. Boggs*, 520 U.S. 833 (1997) …………………………………………4, 5, 16

*Boddie v. Connecticut*, 401 U.S. 371 (1971) …………………………….………15-16

*Brown v. Continental Airlines, Inc.*, 647 F.3d 221 (5th Cir. 2011)………2, 6, 13-15

*Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015) …………………………………16

*Dean v. Phatak*, No. 24-20503, slip op. (5th Cir. Dec. 23, 2025)…………….15-17

*Franks v. Delaware*, 438 U.S. 154 (1978)………………………………………..16

*In re Gault*, 387 U.S. 1 (1967)…………………………………………………...15-16

*Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009) …………………………………………………………………..6, 8

*Napue v. Illinois*, 360 U.S. 264 (1959)…………………………………………17

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014)………………………..16

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) …………………………4, 16

**Statutes:**

29 U.S.C. § 1001(a) …………………………………………………….....4

29 U.S.C. § 1056(d)(1) …………………………………………………………4

29 U.S.C. § 1056(d)(3) …………………………………………………4-8, 13-16

29 U.S.C. § 1056(d)(3)(B)(ii) …………………………………………………..5

29 U.S.C. § 1056(d)(3)(G) …………………………………………………..6

29 U.S.C. § 1056(d)(3)(H)(i) …………………………………………2, 7-8, 12, 16

29 U.S.C. § 1056(d)(3)(K) …………………………………………2, 5, 10, 16

29 U.S.C. § 1132(a)(3) …………………………………………………...16

**Rules:**

Fed. R. Civ. P. 1…………………………………………………………...17

Fed. R. App. P. 29(a) ………………………………………………..1, 19

Fed. R. App. P. 32…………………………………………………...19

5th Cir. R. 29.2…………………………………………………………...1

**Other Authorities:**

U.S. Department of Labor, Employee Benefits Security Administration, QDROs:

The Division of Retirement Benefits Through Qualified Domestic Relations Orders

(2025) …………………………………………………………...........5-8

**STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE**

The 84 individual amici curiae ("amici curiae") are listed in the signature section. They are members of the public, litigants and former litigants from multiple States who are concerned with the practical availability of federal remedies when alleged attorney misconduct, state-court process, and federally protected rights intersect. Some amici and similarly situated citizens are elderly, medically vulnerable, disabled, or financially depleted litigants who lack the resources to endure years of procedural rerouting before any court reaches the federal question. Their interest is not to add facts, prove Appellant's allegations, or ask this Court to supervise state domestic-relations proceedings. Their interest is whether federal courts will decide pleaded federal claims under the governing federal framework, or whether categorical relabeling will make those claims practically unavailable to the people least able to withstand the process.

Amici ask for a narrow disposition: vacatur and remand so that the district court evaluates the pleaded ERISA qualification, alternate-payee, separate-accounting, and freestanding Fourteenth Amendment fabrication theories under the federal frameworks Congress and controlling precedent require. That disposition would not relax Rule 12, expand jurisdiction, defeat immunity, or excuse pleading defects. It would simply require the court to test the pleaded federal theories as federal theories before imposing a dispositive procedural burden.

This brief is submitted pursuant to the Court's leave requested in the accompanying motion.

## RULE 29(a)(4)(E) DISCLOSURE

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting this brief. No person other than the amici curiae or their counsel contributed money intended to fund preparing or submitting this brief.

## SUMMARY OF THE ARGUMENT

This appeal concerns more than one transfer and one litigant. As pleaded, the record identifies an alleged method for routing ERISA-protected retirement assets through domestic-relations paperwork toward attorney-fee or fee-adjacent obligations while the federal qualification inquiry receives no meaningful review. Appellant identifies materials extending across multiple years and Texas counties and alleges that the same basic mechanism recurred: retirement assets were reached through temporary or QDRO-related domestic-relations instruments, while later institutional treatment characterized the transactions as ordinary family-court business.

The amici use the term "accountability gap" deliberately. The concern is not that any one state label, court order, plan-administrator action, or disciplinary decision automatically proves wrongdoing. The concern is cumulative. A state-court label may cause a plan administrator to treat a transfer as routine. The

resulting distribution may then be treated as confirmation that the instrument was valid. Professional-disciplinary review may characterize the matter as an ordinary fee dispute. A federal court may then treat the federal action as dissatisfaction with domestic-relations rulings. If each institution relies on another institution's assumption, no institution reaches the federal question.

ERISA was designed to prevent that result. The anti-alienation rule is the default. A QDRO is a carefully limited exception. A QDRO must create or recognize rights in a statutory alternate payee: a spouse, former spouse, child, or other dependent. The plan administrator must determine whether a domestic-relations order qualifies. And while qualified status is being determined, the administrator must separately account for the disputed amounts. These are not optional formalities. They are the circuit breakers that preserve nationally uniform retirement protection.

The same rule of analysis applies to pleaded Fourteenth Amendment fabrication theories. In re Gault and Boddie v. Connecticut confirm that state procedural categories and family-law settings do not eliminate due-process review. Dean v. Phatak confirms that deliberate fabrication may be pleaded as a freestanding due-process claim. The point is not that any allegation is proven. The point is that federal courts must test pleaded federal injuries under the governing federal framework rather than replace them with a categorical description of state-court dissatisfaction.

For many litigants, procedure is not neutral when it becomes the obstacle that prevents any court from reaching the federal right. Elderly, ill, disabled, or financially exhausted citizens often cannot withstand years of reframing before the merits are reached. That practical reality does not relax Rule 12, expand jurisdiction, or excuse pleading defects. But it makes correct categorization essential. If a pleaded ERISA, RICO, or Fourteenth Amendment claim is legally insufficient, it may be dismissed for that reason. If jurisdiction is absent, the court must say so. But a federal court should not avoid the federal question by recasting the case as ordinary dissatisfaction with a state proceeding.

The requested remedy is limited. The Court need not decide whether Appellant will ultimately prove any allegation. It should vacate and remand so that the district court evaluates the pleaded federal questions rather than treating a disputed domestic-relations label as dispositive.

## ARGUMENT

### I. ERISA CREATES A NATIONAL PENSION-PROTECTION STRUCTURE THAT STATE LABELS CANNOT DISPLACE.

**A. The anti-alienation rule is the default; the QDRO exception is limited.**

Congress enacted ERISA against a national concern for the security of employee benefit plans. The statute declares that employee benefit plans affect "the continued well-being and security of millions of employees and their dependents" and implicate a national public interest. 29 U.S.C. § 1001(a). That national purpose

is implemented through a general anti-alienation rule: benefits provided under a pension plan "may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

Congress created a limited exception for qualified domestic relations orders. 29 U.S.C. § 1056(d)(3). The exception is important, but it is not boundless. In Boggs v. Boggs, the Supreme Court emphasized that QDROs, unlike domestic-relations orders in general, receive special treatment because Congress carefully defined the mechanism and the beneficiary class. 520 U.S. 833, 846-47 (1997). State domestic-relations law remains important, but it does not displace the federal conditions Congress attached to pension distributions.

The statutory recipient limitation is central. A QDRO recognizes or assigns a right to an "alternate payee." ERISA defines that term as a spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic-relations order as having a right to receive plan benefits. 29 U.S.C. § 1056(d)(3)(K). The Department of Labor explains the same point in direct terms: an alternate payee cannot be anyone other than a spouse, former spouse, child, or other dependent. U.S. Department of Labor, QDROs: The Division of Retirement Benefits Through Qualified Domestic Relations Orders, ch. 1, Q1-4 (2025).

That limitation matters here because Appellant alleges that a later "spousal support" label was used as the channel for attorney-fee payments and that private attorney-fee claimants were the intended recipients. Amici do not ask the Court to decide whether that allegation is true. They submit that, at the pleading stage, a

disputed label cannot replace the statutory inquiry. If the alleged transaction routed protected retirement assets toward persons outside the statutory recipient class, the QDRO exception cannot be assumed merely because domestic-relations paperwork exists.

**B. The plan administrator must make an objective qualification determination.**

ERISA assigns a defined role to the plan administrator. Upon receipt of a domestic-relations order, the administrator must notify the affected persons of the plan's procedures, determine within a reasonable period whether the order is qualified, and notify the participant and alternate payee of that determination. 29 U.S.C. § 1056(d)(3)(G). The Department of Labor likewise explains that each plan must establish written QDRO procedures and that the administrator must determine qualified status within a reasonable time after receipt. DOL QDRO Guide, ch. 2, Q2-2 to Q2-3.

The federal inquiry is objective. It does not authorize a plan administrator to roam through subjective motives or retry a domestic-relations case. Kennedy v. Plan Administrator for DuPont Savings & Investment Plan reinforces the importance of administering benefits in conformity with governing plan documents. 555 U.S. 285, 300-01 (2009). But plan-document administration does not eliminate the QDRO determination. It presupposes compliance with the statutory and plan procedures governing qualification.

An objective process protects all sides. It protects a participant from an unauthorized distribution. It protects a genuine alternate payee from delay. It protects plan administrators from being forced to decide broad family-law controversies. And it protects courts from treating payment itself as conclusive proof that the underlying federal requirements were satisfied.

**C. Separate accounting is a mandatory procedural safeguard while qualification is unresolved.**

Congress included a procedural circuit breaker for disputed orders. During any period in which the issue whether a domestic-relations order is qualified is being determined, the plan administrator "shall separately account for" the amounts that would have been payable if the order had been qualified. 29 U.S.C. § 1056(d)(3)(H)(i). The statutory text is mandatory.

The Department of Labor explains the practical consequence: while status is being determined, the administrator must separately account for and preserve the amounts and must take steps to ensure that amounts potentially payable to an alternate payee are not distributed to the participant or any other person. DOL QDRO Guide, ch. 2, Q2-11 to Q2-13. Segregation is therefore not a technical afterthought. It prevents an irreversible fait accompli while qualified status remains unresolved.

Appellant alleges that U.S. Bank acknowledged that the later order appeared to be "in direct conflict" with the April 13 order and nevertheless distributed the

funds without applying the pleaded separate-accounting process. ROA.2034-2035. Appellant further cites plan language requiring separate accounting during a qualification dispute. ROA.1962. The amici do not ask this Court to resolve those allegations. They ask the Court to recognize why they matter: an acknowledged conflict is not a reason to treat distribution as routine; it is the circumstance in which a statutory safeguard warrants analysis.

This safeguard has national importance. Plan administrators process domestic-relations orders across state lines and under a uniform federal framework. If acknowledged conflicts can be bypassed through immediate distribution, the qualification process becomes largely academic. A nationally uniform protection would then depend on whether disputed assets were paid before anyone reached the federal question.

## II. THE ALLEGED TEXAS PATTERN RAISES A NATIONWIDE INSTITUTIONAL ACCOUNTABILITY CONCERN.

**A. The record identifies an alleged repeatable mechanism extending across years and counties.**

Appellant does not frame the alleged transaction as an isolated mistake. His opening brief identifies an alleged statewide pattern extending across years and multiple Texas counties. It cites, among other materials, a 2009 Travis County proposed order seeking 401(k)-sourced interim fees; a 2011-2012 Tarrant County sequence involving an American Airlines SuperSaver 401(k); and a 2014 Tarrant

County matter directing retirement funds toward attorney fees, including payment to counsel's IOLTA account. ROA.2932-2961. The operative pleading also identified a separate 2014 order as alleged evidence of a recurring attorney-fee-through-retirement-account mechanism. ROA.1085; ROA.1203-1204.

These allegations have not been adjudicated. The amici do not present the cited materials as proof of liability, do not ask this Court to find a statewide scandal as fact, and do not add extra-record stories from signers. The point is procedural and institutional: when a complaint identifies a repeatable mechanism involving federally protected retirement assets, multiple years, multiple counties, and a disputed distribution process, the federal statutory question should be analyzed rather than bypassed through a domestic-relations label.

The risk is not confined to Texas. ERISA establishes a national framework because retirement plans and plan administrators operate across state lines. A mechanism that can evade review in one state can be replicated wherever pension assets intersect with domestic-relations process. The question is therefore not whether federal courts should supervise ordinary family-law litigation. They should not. The question is whether the federal safeguards governing pension distributions remain enforceable when the alleged mechanism is embedded in family-law paperwork.

That is the amici's practical interest. Across the country, ordinary state-court litigants who contend that attorney misconduct was carried out through state-court

process often enter any later federal proceeding already depleted by years of litigation, illness, age, disability, or financial exhaustion. Their concern is not that the federal court should credit accusations because the litigants are vulnerable. Their concern is that process itself can become the dispositive burden if the federal court reroutes and reframes independent federal claims instead of deciding whether the pleaded allegations satisfy the governing federal tests.

**B. Institutional reliance can become institutional nonreview.**

The alleged sequence reveals a broader risk: institutional reliance can become institutional nonreview. A state-court instrument may use a familiar label. A plan administrator may treat the instrument as routine. The completed distribution may then be treated as evidence that qualification was resolved. A professional-disciplinary system may view the matter as an ordinary fee dispute. A federal court may characterize the resulting federal action as dissatisfaction with a state-court outcome. Each institution's assumption reinforces the next.

That sequence can create a circular protection problem. The transaction is not reviewed because it is treated as ordinary. It is treated as ordinary because it was not stopped. And it was not stopped because no institution applied the federal circuit breakers before distribution. The amici's concern is not rhetorical. It is structural: the anti-alienation rule, alternate-payee limitation, qualification procedures, and separate-accounting requirement lose practical force if no decision-maker reaches them.

Appellant also alleges that professional-disciplinary review did not lead to correction after the Board of Disciplinary Appeals reversed initial classifications and required further investigation. ROA.1084-1086; ROA.1095; ROA.1097. The amici do not ask this Court to supervise bar discipline or determine whether any disciplinary decision was proper. They cite the alleged sequence only to explain the accountability concern. When retirement-plan safeguards, state-court labels, and professional oversight intersect, a federal court should not assume that another institution has already resolved the federal question.

The institutional-risk analysis is particularly appropriate at the pleading stage. Crediting allegations for purposes of Rule 12 does not prejudge the merits. It preserves the ordinary litigation process: identify the controlling federal framework, test whether the allegations fit within it, permit factual development where required, and decide disputed facts only through proper procedure.

## III. BROWN DOES NOT AUTHORIZE INSTITUTIONAL NONREVIEW OF OBJECTIVE STATUTORY DEFECTS.

Brown v. Continental Airlines, Inc. supplies an important boundary. There, the Fifth Circuit rejected an attempt by a plan administrator to deny QDRO treatment based on alleged subjective bad faith in obtaining divorces. 647 F.3d 221, 226-29 (5th Cir. 2011). The court reasoned that good faith was not an additional statutory criterion and cautioned against requiring plan administrators to make complex inquiries into motives and intent.

The amici do not propose a subjective-motive investigation. The systemic concern identified here rests on objective statutory questions: whether the domestic-relations instrument satisfied the federal framework; whether it recognized rights in a statutory alternate payee; whether the plan administrator completed the required qualification process; and whether disputed amounts were separately accounted for while qualified status remained unresolved. Those questions arise from the statutory checklist itself.

Brown therefore cuts against institutional nonreview. It protects plan administrators from inventing extra-statutory requirements. It does not authorize administrators or courts to omit statutory requirements. A plan administrator need not decide whether a litigant acted with improper intent to ask whether the identified recipient falls within § 1056(d)(3)(K), whether qualified status has been determined under § 1056(d)(3)(G), or whether segregation is required under § 1056(d)(3)(H)(i). Brown itself confirms the limits of its holding. The court expressly emphasized that its decision was "a narrow one" and should not be read to prevent corrective action where a domestic-relations order "is otherwise invalidated by a court or agency of competent jurisdiction." 647 F.3d at 228 n.3. The objective statutory defects identified here—an alleged recipient outside the alternate-payee class, an incomplete qualification determination, and a bypassed separate-accounting requirement—are precisely the kind of court-cognizable defects Brown left open, not the subjective-motive inquiry Brown foreclosed.

The distinction preserves administrability. Motive inquiries can be sprawling and subjective. Checklist inquiries are bounded and objective. An amicus brief focused on institutional safeguards should therefore resist both extremes: neither a free-ranging fraud investigation by plan administrators nor a rule that any domestic-relations label ends the federal inquiry.

## IV. STATE-COURT LABELS AND PROCEDURAL REROUTING CANNOT CREATE A FEDERAL-REMEDY DEAD ZONE.

A federal court need not treat every complaint arising from domestic-relations litigation as a federal case. Ordinary dissatisfaction with a state-court result remains subject to jurisdictional, preclusion, abstention, immunity, and pleading limits. But those doctrines must be applied to the federal claim actually pleaded. They cannot be replaced by a categorical assumption that any injury occurring in family-court process is only a disguised challenge to an unfavorable state proceeding.

That distinction is grounded in due-process doctrine. In re Gault held that a specialized state-court label did not remove the proceeding from the Fourteenth Amendment: the hearing still had to "measure up to the essentials of due process and fair treatment," and "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." 387 U.S. 1, 30-31, 13 (1967). Boddie v. Connecticut likewise held, in the family-law context, that persons forced to settle claims of right and duty through the judicial process must receive "a meaningful opportunity to be

heard," and that the State must afford that opportunity if it is to fulfill the promise of the Due Process Clause. 401 U.S. 371, 377, 379 (1971). Those cases do not convert domestic-relations disputes into federal claims. They show that state labels do not control the existence of federal due-process obligations.

Dean v. Phatak supplies the current Fifth Circuit formulation for fabrication. The court used "fabrication claim" to describe a theory whose "hallmark" is that officials "created evidence that they knew to be false." No. 24-20503, slip op. at 10 (5th Cir. Dec. 23, 2025) (quoting Petty v. City of Chicago, 754 F.3d 416, 423 (7th Cir. 2014)). It explained that "deliberate deception . . . by the presentation of known false evidence is incompatible with 'rudimentary demands of justice'" and works an unacceptable "corruption of the truth-seeking function" of the criminal process. Id. at 10-11 (quotation marks and citations omitted).

Dean then separated "three distinct legal theories" for fabrication claims: a Fourth Amendment Franks theory, a Brady suppression theory, and a freestanding due-process theory. Id. at 11-12. The freestanding theory is the important point here. The Fifth Circuit stated that it has recognized a freestanding "due process right not to have [officials] deliberately fabricate evidence and use it to frame and bring false charges against a person." Id. at 11 (quoting Cole v. Carson, 802 F.3d 752, 771 (5th Cir. 2015)). The court faulted the district court for treating distinct theories as "a single, undifferentiated whole," explaining that this was error

Pg. 20

because "the true nature of the claim matters" and courts must be "precise in [their] terminology." Id. at 12.

Dean also supplies the limiting principle. A freestanding fabrication claim requires knowledge. The court explained that freestanding fabrication theories derive from Napue v. Illinois, and because a Napue violation requires knowledge, "a freestanding fabrication claim does as well." Id. at 15. Thus, "[n]egligence, even gross negligence, is not sufficient." Id. at 16 (quoting Dean v. Phatak, 911 F.3d 286, 290 (5th Cir. 2018)). The required inquiry is whether the pleaded or record-supported facts permit deliberate fabrication, not whether the plaintiff is dissatisfied with the state-court outcome.

Dean also illustrates why delay and procedural misframing matter. The Fifth Circuit noted that the district court first failed to consult the summary-judgment record and later ignored the required intentional-misstatement inquiry; after recounting the age of the underlying events and litigation, the court stated that "justice in this case has been grievously delayed—and thus denied." Id. at 20. Federal Rule of Civil Procedure 1 reflects the same institutional command that the rules be administered to secure the "just, speedy, and inexpensive determination" of every action. The point for amici is not that speed overrides jurisdiction, immunity, or pleading rules. The point is that those rules should identify and decide the actual federal theory, not become a mechanism for indefinite rerouting.

Amici do not ask this Court to find fabrication. They rely on Dean for a narrower appellate point: when a plaintiff pleads deliberate fabrication by state actors or joint participants as the source of a property or liberty deprivation, the federal court must analyze that pleaded Fourteenth Amendment theory as such. The claim may fail for insufficient facts, lack of state action, immunity, causation, preservation, or another governing defect. But it may not be avoided by recasting the claim as a disgruntled challenge to a family-court proceeding or by imposing procedural detours that prevent the actual federal theory from being reached.

The same principle protects the statutory claims addressed above. State domestic-relations terminology may trigger careful federalism review, but it cannot create a federal-remedy dead zone. If a complaint fails under Rule 12, it may be dismissed for that reason. If a claim seeks appellate review of a state judgment, jurisdictional doctrines may apply. But where the pleaded injury arises from alleged independent violations of federal pension, civil-rights, or racketeering statutes, the federal court must test those claims under the governing federal framework rather than dismissing them by category.

## V. VACATUR AND REMAND ARE THE NARROW AND PROPER REMEDY.

The Court can address the institutional concern through a limited disposition. It need not decide whether the alleged statewide pattern is ultimately proven. It need not resolve each defendant-specific issue. It need not determine the final

availability of each requested remedy. And it need not supervise state domestic-relations adjudication.

It is enough to hold that the federal questions cannot be made invisible by characterizing the suit as ordinary domestic-relations dissatisfaction. ERISA supplies a national anti-alienation rule, a limited QDRO exception, an alternate-payee definition, a qualification process, and a separate-accounting safeguard. Boggs, 520 U.S. at 846-47; 29 U.S.C. § 1056(d)(1), (3), (3)(G), (3)(H)(i), (3)(K). Dean likewise confirms that a freestanding due-process fabrication theory must be analyzed on its own terms. Those federal provisions and doctrines warrant first-instance analysis on the allegations actually pleaded.

A remand would also preserve the proper institutional roles. The district court would apply the controlling federal framework. The parties would litigate the sufficiency and truth of the allegations through ordinary procedure. Plan-administration questions would remain bounded by the statutory checklist. State courts would retain authority over ordinary domestic-relations matters. And the federal protection Congress enacted would receive actual review.

The amici respectfully submit that this is the narrowest path that protects both federalism and retirement security. The Court should vacate the judgment and remand for analysis of the pleaded ERISA qualification, alternate-payee, and separate-accounting questions under the correct federal framework.

## CONCLUSION AND PRAYER

The judgment should be vacated and the case remanded so that the district court evaluates the pleaded ERISA questions and freestanding Fourteenth Amendment fabrication theory under the federal frameworks Congress and controlling precedent require, without replacing those theories with a categorical domestic-relations label or a procedural burden that prevents meaningful federal review.

Respectfully submitted,

The Undersigned Amici Curiae,
Each Signing for Himself or
Herself Only.


**Amici Curiae**

*/s/ Claudia Jacobs*
Claudia Jacobs
5943 Brushy Creek Trail
Dallas, Texas 75252
Phone: (312) 590-0634
Email: megilymom@gnail.com

*/s/ Lexter Roberts*
Lexter Roberts
2220 W Mission Lane
Phoenix, AZ 85021
Phone: (313) 424-8568
Email: lextercarl@hotmail.com

*/s/ Jodi Briley*
Jodi Briley
12 Trine AVE
Mt Holly Springs, PA 17062
Phone: (717) 962-1218
Email: 5k4life2011@gmail.com

*/s/ Jason Clayton*
Jason Clayton
2401 W Spring Creek Pkwy
Plano, TX 75023
Phone: (310) 600-4369
Email:
Claytonjason582@hotmail.com

*/s/ Cassandra Kershaw*
Cassandra Kershaw
26622 S 206th Rd
Henryetta, Oklahoma 74437
Phone: (918) 600-4490
Email: cassykershaw85@gmail.com

*/s/ Christopher Kershaw*
Christopher Kershaw
26622 S 206th Rd
Henryetta, OK 74437
Phone: (316) 226-6818
Email: isakershaw@gmail.com

*/s/ Holly Richards*
Holly Richards
1256 Greenville BLVD SW
Greenville, NC 28501
Phone: (252) 560-1774
Email: hrichards752@gmail.com

*/s/ Charles David Hudson*
Charles David Hudson
5315 Oakland St
Philadelphia, Pennsylvania 19124
Phone: (267) 708-3639
Email: Bestdadash68@gmail.com

*/s/ Long Dao*
Long Dao
2403 Jo Lyn Ln
Arlington, TX 76014
Phone: (817) 456-0918
Email: Longngan150714@gmail.com

*/s/ Christopher J Millan*
Christopher J Millan
8763 Buena pl
Windermere, FL 34786
Phone: (407) 994-8023
Email: Millantravel23@gmail.com

*/s/ Jacob M Leary*
Jacob M Leary
1733 Avenue E
Council Bluffs, Iowa 51501
Phone: (712) 355-6055
Email: jleary6946777@gmail.com

*/s/ Cody baker*
Cody baker
1211 6th ave
Council bluffs, Iowa 51501
Phone: (712) 304-9709
Email: bakercody223@gmail.com

*/s/ Aisha Gase*
Aisha Gase
1223 Avenue L
Haines City, Florida 33844
Phone: (863) 801-8280
Email:
Liceclinicscleveland@gmail.com

*/s/ Diverson Charles*
Diverson Charles
317 Craddock Ave
San Marcos, Texas 78666
Phone: (737) 344-8642
Email: cdwayne14@aol.com

*/s/ Fred Moyse*
Fred Moyse
13016 Bloomfield st
Studio city, CA 91604
Phone: (310) 817-1455
Email: Bigefred@hotmail.com

*/s/ Drinda Richard's*
Drinda Richard's
191 smith hill
Cario, WV 26337
Phone: (740) 652-0142
Email: Drindar@yahoo.com

*/s/ Jason E Miller*
Jason E Miller
1301 N Shore Dr
Cisco, TX 76437
Phone: (325) 864-9129
Email: Jason.eu.miller@gmail.com

*/s/ Cherryl D Brenner*
Cherryl D Brenner
519-2 W. Jeansonne St.
Gonzales, Louisiana 70737
Phone: (225) 317-6193
Email: Cherrylbrenner@gmail.com

*/s/ Lawrence j Kopp*
Lawrence j Kopp
2108 woodmont avenue
Arnold, PA 15068
Phone: (469) 325-2651
Email: Lkopp67@icloud.com

*/s/ Mullally Ed*
Mullally Ed
62 S. Phillips Ave
Remsenburg, New York 11960
Phone: (631) 574-0499
Email: Mullallyed@gmail.com

/s/ Dayna Mooney  
Dayna Mooney  
613 N Ponderosa Way  
Mustang, OK 73064  
Phone: (405) 479-5648  
Email: Mooney.dayna@gmail.com  

/s/ Yeng Vang  
Yeng Vang  
1028 W Sierra Ln  
Mequon, WI 53092  
Phone: (414) 388-2666  
Email: yengvnncr@gmail.com  

/s/ Shannon senger  
Shannon senger  
733 mahogany dr  
Anna, Texas 75409  
Phone: (214) 400-8116  
Email: Sengers2005@gmail.com  

/s/ Vem Miller  
Vem Miller  
341 North Montebello Blvd  
Montebello, CA 90640  
Phone: (310) 497-0650  
Email: vemmiller@protonmail.com  

/s/ Rebecca Hobbs  
Rebecca Hobbs  
3934 Roanoke Dr  
Garland, TX 75041  
Phone: (214) 415-2658  
Email: Rebecca@luxegypsie.com  

/s/ Jamie Meade  
Jamie Meade  
1713 Morrison Road  
Fremont, Ohio 43420  
Phone: (419) 307-2324  
Email: Jamiemeade88@iCloud.com

/s/ Nicholas Bolshakov
Nicholas Bolshakov
20 north frazier avenue
Wheeling, WV 26003
Phone: (304) 312-2150
Email: Nbolshakov@hotmail.com

/s/ Christie Story
Christie Story
201 SE Avondale Ave
Bartlesville, OK 74006-2561
Phone: (918) 306-2586
Email: christiestory9@gmail.com

/s/ Roger sean norton
Roger sean norton
5161 trussell ave
Columbus, Georgia 31904
Phone: (706) 566-9131
Email: Seannorton617@gmail.com

/s/ Kim Cline
Kim Cline
264 Lakeview ave
Clifton, NJ 07011
Phone: 862-301-670
Email: Kimmarie829@yahoo.com

/s/ Kari Caudill
Kari Caudill
570 Jefferson Dr Unit 111
Deerfield Beach, FL 33442
Phone: (317) 518-1326
Email: Karijcaudill@outlook.com

/s/ Elizabeth Khumprakob
Elizabeth Khumprakob
829 Glenbrook Rd.
Boardman, OH 44512
Phone: (330) 518-3677
Email: lizkhumprakob@gmail.com

*/s/ Angela Granger*
Angela Granger
1794 Warren Road
Lorena, TX 76655
Phone: (254) 420-4121
Email: Amrgranger@gmail.com

*/s/ Rocco Mantro*
Rocco Mantro
1435 West Duchesne Dr
Florissant, Missouri 63031
Phone: (314) 874-2545
Email: sean19930lay@gmail.com

*/s/ Nicole Amill*
Nicole Amill
538 Washington ave
Lorain, Ohio 44052
Phone: (440) 752-0446
Email: Amillyn111@gmail.com

*/s/ Jennifer Harper*
Jennifer Harper
1701 Thames Dr Apt 119
Corpus Christi, Texas 78412
Phone: (361) 343-1722
Email: harperglow777@yahoo.com

*/s/ Dustin King*
Dustin King
201 east maumee apt 400
Adrian, Michigan 49221
Phone: (517) 276-0215
Email: Dustinking21623@gmail.com

*/s/ Melody*
Melody
111 jonquil dr
Inman, SC 29349
Phone: (719) 582-3415
Email: Melpharmd10@gmail.com

*/s/ Carla Blankenship*
Carla Blankenship
301 West Petty Ln
Winchester, Tennessee 37398
Phone: (931) 967-5086
Email:
Plumbingrepairwork1973@gmail.co
m

*/s/ John Blankenship*
John Blankenship
301 West Petty Ln
Winchester, Tennessee 37398
Phone: (931) 455-6536
Email:
Johnblankenship1968@gmail.com

*/s/ Joseph Montoya*
Joseph Montoya
700 w Asbury Ave
Denver, Colorado 80223
Phone: (719) 937-1600
Email:
Josephmontnewyear@gmail.com

*/s/ Jerod Hollingworth*
Jerod Hollingworth
131 Firman Ave.
Hoquiam, WA 98550
Phone: (360) 388-6076
Email: jerodh_79@yahoo.com

*/s/ Demetrice Inez Gwyn*
Demetrice Inez Gwyn
4806 Legend Creek Dr
Fulshear, TX 77441
Phone: (540) 664-3589
Email: imundymorgan@gmail.com

*/s/ Zakir Sarker*
Zakir Sarker
459 Kingsmere Blvd.
Saskatoon, Saskatchewan S7J 3T9
Phone: (639) 318-0203
Email:
zakir01817516689@gmail.com

*/s/ Melissa Gonzales*
Melissa Gonzales
301 Lakeshore Blvd. N., Apt. 2115
Slidell, Louisiana 70461
Phone: (985) 768-2490
Email: MISSYG2871@gmail.com

*/s/ Yollia Allen*
Yollia Allen
305 Peachtree Village
Hackettstown, NJ 07840
Phone: (973) 932-7188
Email: Yollia.allen@gmail.com

*/s/ Justin McDonald*
Justin McDonald
26586 Joseph Rd
Hockley, Texas 77447
Phone: (979) 277-4187
Email:
Justin.mcdonald13@outlook.com

*/s/ Ahmad Mustafa Farooq*
Ahmad Mustafa Farooq
2616 Winfield Dr
Plano, TX 75023
Phone: (214) 400-4483
Email: mustafa.amf88@gmail.com

*/s/ Muhammad Omar Farooq*
Muhammad Omar Farooq
3248 Steven Dr
Plano, TX 75023
Phone: (903) 900-2166
Email: omarfarooqpsl@gmail.com

*/s/ Hira K. Mahmood*
Hira K. Mahmood
2616 Winfield Dr
Plano, TX 75023
Phone: (903) 900-2166
Email: omarfarooqpsl@gmail.com

*/s/ Amna Ahmad*
Amna Ahmad
2616 Winfield Dr
Plano, TX 75023
Phone: (214) 400-4483
Email: farooq.amf88@gmail.com

*/s/ Amtal Aziz*
Amtal Aziz
3500 S Echo Trl
Plano, TX 75023
Phone: (469) 247-5525
Email: tfmy2k@yahoo.com

*/s/ Abdullah Farooq*
Abdullah Farooq
3500 S Echo Trl
Plano, TX 75023
Phone: (214) 940-8080
Email: tfmy2k@yahoo.com

*/s/ Farkhanda Farooq*
Farkhanda Farooq
413 Colony Dr
Allen, TX 75013
Phone: (214) 906-0423
Email: farkhandaav@gmail.com

*/s/ IbrahimValliani*
IbrahimValliani
413 Colony Dr
Allen, TX 75013
Phone: (214) 416-6049
Email: farkhandaav@gmail.com

*/s/ Abdulkarim Valliani*
Abdulkarim Valliani
413 Colony Dr
Allen, TX 75013
Phone: (469) 740-3815
Email: farkhandaav@gmail.com

*/s/ Anis Valliani*
Anis Valliani
413 Colony Dr
Allen, TX 75013
Phone: (214) 400-4483
Email: farkhandaav@gmail.com

*/s/ Frank Porras*
Frank Porras
15302 Judson Rd
San Antonio, Texas 78247
Phone: (210) 380-0557
Email: frankiedrum_98@yahoo.com

*/s/ Rebekah whitener*
Rebekah whitener
214 Cooper church Rd Lot 32
Leesville, Louisiana 71446
Phone: (337) 208-6164
Email:
rebekahwhitener32@gmail.com

*/s/ Courtney Marchbanks*
Courtney Marchbanks
6802 Gaston Ct
Amarillo, Texas 79119
Phone: (806) 382-3629
Email: Courtney.brook@ymail.com

*/s/ Amir Rahman*
Amir Rahman
8915 Happiness Rd
Haarisburg, NC 28985
Phone: (704) 794-7692
Email: rahman1079@gmail.com

*/s/ Angela Cagwin*
Angela Cagwin
112 Laura Lane
New Lenox, IL 60451
Phone: (815) 955-3092
Email: Angietrend@yahoo.com

*/s/ Amber Timmons*
Amber Timmons
192 kemp cres
Stratford, Ontario N5A5C5
Phone: (437) 328-1639
Email: Timmons33@outlook.com

*/s/ Deanna Leigh Grayston*
Deanna Leigh Grayston
2754 Kumquat Dr
Clearwater, Florida 33759
Phone: (727) 219-8542
Email: Deannagrayston@yahoo.com

*/s/ Nicola James*
Nicola James
12 Fieldon drive
Warwickshire, Warwickshire CV9 2FT
Phone: 07538 880927
Email: Nicolagriffiths11787@icloud.com

*/s/ Paul Wesley Hoehn*
Paul Wesley Hoehn
6474 FM 2722
New Braunfels, Texas 78132
Phone: (830) 660-2645
Email: pkhoehn@gmail.com

*/s/ Terrence Wilson*
Terrence Wilson
8330 Willow Place Dr S #511
Houston, Texas 77070
Phone: (832) 887-6199
Email: Debonaire77@gmail.com

*/s/ Julie Belshe*
Julie Belshe
9505 Grenville Ave
Las Vegas, Nevada 89134
Phone: (702) 502-4033
Email: Nglm24@yahoo.com

*/s/ Steven Ehrgott*
Steven Ehrgott
11 Broad Cove Drive
Cocord, New Hampshire 03303
Phone: (603) 753-1174
Email: sehrg123@gmail.com

*/s/ Erin Christine Ball*
Erin Christine Ball
13110 madrone mountain way
Austin, Texas 78837
Phone: (512) 801-6677
Email: Erinball0925@yahoo.com

*/s/ Joseph J. McKernan CISA CISSP*
Joseph J. McKernan CISA CISSP
7717 Radford Cir
Plano, Texas 75025-2867
Phone: (972) 527-0329
Email: Joe.mckernan@gmail.com

*/s/ Rosa DeCarlo*
Rosa DeCarlo
9934 nw 36th st
Plantation, FL 33324
Phone: (305) 762-0649
Email: Roxylove83@gmail.com

*/s/ William Anthony Springs*
William Anthony Springs
1908 Shooting Star Ln
Southlake, TX 76092
Phone: (571) 748-8248
Email: tony.springs@verizon.net

*/s/ Robin Hackenbruch*
Robin Hackenbruch
2S723 Winchester Cir E Unit 2
Warrenville, IL 60555
Phone: (830) 802-5376
Email: robinh11@live.com

*/s/ Myron Campbell*
Myron Campbell
1499 blake st
Denver, CO 80202
Phone: (479) 879-6933
Email:
Myroncampbell81@gmail.com

*/s/ Idalia Martinez*
Idalia Martinez
26622 Bass Blvd
Harlingen, Texas 78552
Phone: (956) 793-1066
Email:
martinezidalia709@yahoo.com

*/s/ Dana Lynn Foust*
Dana Lynn Foust
3120 North Mockingbird Lane
Midlothian, Texas 76065
Phone: (214) 636-5532
Email: Got2haveOxygen@yahoo.com

*/s/ Marta Bryceland*
Marta Bryceland
502 Livingston Ct
Edgewater, NJ 07020
Phone: (201) 397-8058
Email:
martamsankowska@gmail.com

*/s/ Haywood D. Bradley*
Haywood D. Bradley
3312 McShane way
Dundalk, Maryland 21222
Phone: (443) 760-2516
Email: Waverly1835@gmail.com

*/s/ Anna Jo Delver*
Anna Jo Delver
59 Forest Ridge Circle
Bronston, Kentucky 42518
Phone: (606) 766-7275
Email: annadelver72@gmail.com

*/s/ Tara campbell*
Tara campbell
5420 co rd 20
Leesburg, Alabama 35983
Phone: (256) 523-2832
Email: Taramonteith5@gmail.com

*/s/ David Fleshman*
David Fleshman
912 Thousand Pines Dr
Fenton, MO 63026-6709
Phone: (314) 230-2478
Email:
daveandrayscontractingstl@gmail.com

*/s/ Cailin Doyle*
Cailin Doyle
2410 Great Oaks Drive, #402
Round Rock, Texas 78681
Phone: (512) 947-3893
Email: Cailin.Larissa8@gmail.com

*/s/ Sandra Parker*
Sandra Parker
4502 Corona Dr #23C
Corpus Christi, Texas 78411
Phone: (361) 260-5162
Email:
sandraparker08161958@gmail.com

## CERTIFICATE OF SERVICE

I certify that on July 12, 2026, this motion was served on all counsel of record and

all unrepresented parties through the appellate CM/ECF system or by another

authorized method.

**Amici Curiae**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,752 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

**Amici Curiae**