**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
**No. 25-11370**

CONGHUA YAN, Plaintiff-Appellant,

v.

WILLIAM A. PIGG, in Individual Capacity, as Member of the State of Texas, Defendant-Appellee.

**consolidated with**
**No. 26-10286**

CONGHUA YAN, Plaintiff-Appellant,

v.

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State Bar of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. DeAngelis, in Individual Capacity, as Member of the State Bar of Texas and Official Capacity as Associate Judge; Tarrant County; U.S. Bank, Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
USDC No. 4:23-CV-758

# REPLY BRIEF OF APPELLANT CONGHUA YAN


Conghua Yan
2140 E. Southlake Boulevard, Suite L-439
Southlake, Texas 76092
Telephone: 214-228-1886
arnold200@gmail.com
Plaintiff-Appellant, Pro Se

## Certificate of Interested Persons

Appellant certifies that the following persons and entities have an interest in the outcome of this appeal within the meaning of Fifth Circuit Rule 28.2.1. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1) Plaintiff-Appellant: Conghua Yan.

2) Defendants-Appellees: The State Bar of Texas; The Barrows Firm; Leslie Starr Barrows; William Albert Pigg; Samantha Ybarra; Luis Jesus Marin; Daniel Eulalio Martinez; Rachel Ann Craig; Lori L. DeAngelis; Tarrant County; and U.S. Bank.

3) Persons whom the PFAC proposed to add as defendants and who therefore may have an interest in the Rule 15 issue: William Harris, David Evans, and Tom Wilder. ROA.26-10286.2700–01.

4) Counsel appearing for Appellees: J. Nathaniel James; Roland K. Johnson; Caroline M. Cyrier; Royce A. Lemoine; Michael G. Graham; Amanda M. Kates; Katherine E. Owens; Mallory Ann Schuit; Melvin Keith Ogle; Melissa D. Hill; Tyler J. Hill; Charles L. Woods; and William Albert Pigg, pro se.

Additional interested nonparty: Texas Lawyers' Insurance Exchange, identified by the Barrows Appellees as an interested nonparty.

*/s/ Conghua Yan*
Conghua Yan

**Renewed Statement Regarding Oral Argument**

Yan requests oral argument if the Court reaches disputed merits questions. Oral argument is unnecessary if the Court vacates and remands on threshold framework errors, including the unreviewed PFAC counts, the substituted RICO predicate, the wrong Sherman Act Section 2 offense, and the unaddressed Section 1983 theory. If the Court reaches the merits, oral argument would assist because the consolidated appeal presents questions concerning distinct claims, parties, remedies, alternative grounds, and pleadings.

**Table of Contents**

Certificate of Interested Persons ........................................................................ i

Renewed Statement Regarding Oral Argument...................................................... ii

Table of Authorities ............................................................................................. vii

Introduction ...........................................................................................................1

I. Threshold procedural and framework errors independently require appellate correction..............................................................................................................7

A. Delay and prior opportunities fail; the PFAC counts were never analyzed. ....7

B. *Qureshi* independently requires vacatur of the filing injunction. .....................9

C. Jurisdictional dismissals remain without prejudice. .......................................9

D. *Bhagat* forecloses adoption of the stated RICO rationale. ............................10

II. Alternative grounds cannot switch standards, pleadings, or dispositions...........11

A. Each alternative ground retains its own standard and supports only the disposition it independently establishes...........................................................11

B. Cross-references cannot move grounds across pleadings or parties. .............13

III. The PFAC received no count-specific futility analysis. ..................................15

A. One unreviewed plausible count defeats the global denial. ...........................15

IV. The pleaded alteration and Plan depletion survive appellees' fee account. ......18

A. Two fee awards and later relabeling support the pleaded alteration. ............18

B. The later support recital supports the alteration inference. ............................20

C. The $25,000 depletion presents a separate TAC restoration issue. ................26

V. Section 664 supplies the pleaded RICO predicate. ..........................................28

A. Section 664's four means govern; money laundering does not. .....................28

B. The TAC pleads Section 664, mail-fraud, and wire-fraud predicates. ...........36

C. Common continuity analysis is proper only for a common pattern. ...............50

D. The Barrows brief develops no Section 1962(a) investment-injury ground. .51

E. *D&T* turned on an exhausted target, not one victim; the TAC alleges a repeatable method operating through family-court process. ..............................52

F. Exhibit 9 supports continuity for the relevant enterprise pattern. ...................55

G. The alleged transfer supplies direct property injury and causation. ...............58

H. The TAC alleges agreement under Section 1962(d). .....................................59

I. Each alleged RICO actor has a distinct pleaded role. .....................................60

J. The affected RICO dismissals require vacatur and remand. ............................64

VI. Civil use of deliberate fabrication to obtain retirement property required claim-specific Section 1983 analysis. .........................................................................70

A. The preserved theory required separate analysis of the constitutional deprivation and actor attribution. ....70

B. The TAC alleges notice and coordination beyond *Richard*'s innocent-judge premise. ....75

C. *Lugar* also reaches the alleged state-assisted property deprivation. ....75

D. Texas attorney immunity does not displace federal claims. ....79

E. DeAngelis's immunity defense turns on the challenged function and authority. ....82

F. Standing and immunity reach different remedies and capacities. ....88

G. The State Bar review sequence requires actor-by-actor analysis. ....95

VII. TAC Count Two and PFAC Count Three require separate antitrust analysis. ....108

A. Completed monopolization supplies the governing Section 2 elements. ....108

B. Provider implementation connects the institutional mechanism to distinct consumer injuries. ....112

C. Completed-monopolization law, not generic institutional defenses, governs the TAC. ....114

D. PFAC Count Three requires its own Rule 15 review. ....115

VIII. ERISA's statutory criteria govern U.S. Bank's QDRO duties. ....................116

A. The TAC alleges an antecedent conflict under ERISA's criteria. ................116

B. ERISA interpretation is de novo; U.S. Bank's decision is not conclusive. ..120

IX. *Younger* does not extinguish damages or independent federal claims. ...........126

A. Damages must be preserved, and the exceptional-category gateway is unmet. ..........................................................................................................126

B. Appellees' custody narrative neither answers the federal claims nor converts former-counsel disclosures into pleadings facts. ............................................131

C. Independent federal claims require analysis of each claim despite the domestic-relations setting. ........................................................................132

X. Alternative affirmance requires a complete ground for each dismissal. ..........134

Each ground must satisfy Rule 12 and support the same disposition...............136

XI. The State Bar's embedded sanctions request fails Rule 38. ............................150

XII. No developed ground sustains the judgment as a whole...............................151

XIII. Reassignment, if reached, is a separate final request..................................152

CONCLUSION .....................................................................................154

CERTIFICATE OF COMPLIANCE ................................................................157

CERTIFICATE OF SERVICE .......................................................................157

## Table of Authorities

**Cases**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321 (5th Cir. 2015) .......... 110–111

*Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007).......... 32, 35, 54

*Adams v. McIlhany*, 764 F.2d 294 (5th Cir. 1985) ..........83

*Allstate Indem. Co. v. Bhagat*, 164 F.4th 426 (5th Cir. 2026).......... passim

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) ..........55

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992)..........128

*Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994) (per curiam) ..........149

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........12

*Ashley v. Clay Cnty.*, 125 F.4th 654 (5th Cir. 2025)..........135

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024)..........138

*Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676 (5th Cir. 1985).......... 105–106, 148

*Austin v. Borel*, 830 F.2d 1356 (5th Cir. 1987) ..........73

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) .......... 87–89

*Beck v. Prupis*, 529 U.S. 494 (2000) .......... 36, 59–60, 65

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........12

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) .......... 72, 74

*Bishop v. State Bar of Tex.*, 791 F.2d 435 (5th Cir. 1986) ..........104

*Blue v. UAL Corp.*, 160 F.3d 383 (7th Cir. 1998) ..........118

*Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701 (5th Cir. 2017) ..........136

*Boyle v. United States*, 556 U.S. 938 (2009) .......... 51, 101–102

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1872) ..........84

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631 (5th Cir. 2014)..........55

*Brewer v. Blackwell*, 692 F.2d 387 (5th Cir. 1982)...............................................83

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).................... 28, 41, 48

*Brown v. Cont'l Airlines, Inc.*, 647 F.3d 221 (5th Cir. 2011)....... 117–118, 120, 122

*Brown v. Fullenweider*, 52 S.W.3d 169 (Tex. 2001) (per curiam).........................84

*Brown v. United Parcel Serv., Inc.*, No. 99-10092, 2000 WL 1701739 (5th Cir. Oct. 31, 2000) (unpublished)......................................................................134

*Cain v. White*, 937 F.3d 446 (5th Cir. 2019) ..........................................................93

*Calhoun v. Collier*, 78 F.4th 846 (5th Cir. 2023) ........................................... 5, 8, 71

*Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019)....................................................93

*Callahan v. Callahan*, 247 F. Supp. 2d 935 (S.D. Ohio 2002) ................... 133–134

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ..................................79

*Carden v. Minton, Bassett, Flores & Carsey, P.C.*, No. 24-0834, 2026 WL 1851869 (Tex. June 26, 2026) ......................................................................80

*Carver v. Atwood*, 18 F.4th 494 (5th Cir. 2021)..................................... 2, 6, 9, 149

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ...........................51

*Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*, 951 F.3d 248 (5th Cir. 2020)........................................................................... 88, 138, 141

*CH Offshore, Ltd. v. Mexiship Ocean CCC S.A. de C.V.*, 163 F.4th 171 (5th Cir. 2025)...........................................................................................14

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010) ..........72

*Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651 (5th Cir. 2014)................................148

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)............................................................134

*D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198 (5th Cir. 2024) ........................................................................................ passim

*Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (en banc)............................130

*Deakins v. Monaghan*, 484 U.S. 193 (1988) ............................................... 127, 130

*Dean v. Phatak*, 162 F.4th 555 (5th Cir. 2025) ..................................................5, 71

*Dennis v. Sparks*, 449 U.S. 24 (1980)................................................ 72–73, 76, 87

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ..............................................94

*Doe v. Dynamic Phys. Therapy, LLC*, 607 U.S. 11 (2025) (per curiam) 79, 105, 107

*Doe v. Robertson*, 751 F.3d 383 (5th Cir. 2014) ............................................. 12, 23

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992).................115

*EEOC v. SkyWest Airlines, Inc.*, No. 25-10491, slip op. (5th Cir. July 9, 2026) ....50

*EnvTech, Inc. v. DeBusk*, 178 F.4th 208 (5th Cir. 2026)................................ passim

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ................................ 11, 27, 30

*E-Sys., Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) ...................................... 26–27

*Fairley v. PM Mgmt.-San Antonio AL, L.L.C.*, 724 F. App'x 343 (5th Cir. 2018) .75

*Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Injury, L.L.C.*, 168 F.4th 271 (5th Cir. 2026).........................................................................136

*Feld Entm't, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288 (D.D.C. 2012).........................................................................42

*Fogleman-Laxey v. Guillory*, No. 25-30132, slip op. (5th Cir. Aug. 24, 2026) (Willett, J., dissenting)...........................................................................13

*Foman v. Davis*, 371 U.S. 178 (1962) .......................................................................8

*Forrester v. White*, 484 U.S. 219 (1988) ..................................................................83

*George v. SI Grp., Inc.*, 36 F.4th 611 (5th Cir. 2022) ..............................................12

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975)...................................................111

*Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280 (2d Cir. 2026) ..................................67

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)...................27

*Green v. State Bar of Tex.*, 27 F.3d 1083 (5th Cir. 1994)............................. 105, 111

*Greenlaw v. United States*, 554 U.S. 237 (2008)....................................................148

*Grunewald v. United States*, 353 U.S. 391 (1957) ........................................... 69–70

*Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990) ..... 19–20

*Guzik v. State Bar of Tex.*, 659 F.2d 528 (5th Cir. 1981) .....................................113

*Hafer v. Melo*, 502 U.S. 21 (1991) ........................................................... 70, 90–91

*Hamann v. Charter Twp. of Van Buren*, No. 20-10849, 2021 WL 5312638 (E.D. Mich. Nov. 15, 2021)...........................................................................73

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) ........17

*Haywood v. Drown*, 556 U.S. 729 (2009) ............................................. 79, 105, 107

*Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393 (6th Cir. 2012)...55

*Hernandez v. Causey*, 124 F.4th 325 (5th Cir. 2024) ..................................... 65, 73

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ..............................................52

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)..........................................58

*Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265 (5th Cir. 2007) ........................................................................................105

*Howlett v. Rose*, 496 U.S. 356 (1990) .................................................. 79, 105, 107

*In re Alsenz*, 152 S.W.3d 617 (Tex. App.—Houston [1st Dist.] 2004, orig. proceeding) ...................................................................................85

*In re Bielefeld*, 143 S.W.3d 924 (Tex. App.—Fort Worth 2004, orig. proceeding) ................................................................................................86

*In re Burzynski*, 989 F.2d 733 (5th Cir. 1993)......................................................53

*In re Fredeman Litig.*, 843 F.2d 821 (5th Cir. 1988).............................................67

*In re Great Lakes Dredge & Dock Co., 624 F.3d 201 (5th Cir. 2010) ..................14*

*Inclusive La. v. St. James Parish*, 134 F.4th 297 (5th Cir. 2025)..........................135

*Jennings v. Stephens*, 574 U.S. 271 (2015) ..........................................................148

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam) ........................... 27, 30

*Jones v. State*, 170 Wash. 2d 338, 242 P.3d 825 (2010) (en banc) ................. 72, 74

*Juidice v. Vail*, 430 U.S. 327 (1977)........................................................... 128, 130

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ..............................................................73

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) ........................................................................................... 116, 119

*Kimsey v. Kimsey*, 965 S.W.2d 690 (Tex. App.—El Paso 1998, pet. denied) ........83

*Kousisis v. United States*, 605 U.S. 114 (2025) ....................................................42

*Krempp v. Dobbs*, 775 F.2d 1319 (5th Cir. 1985) ....................................... 104, 113

*Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404 (5th Cir. 1990) ................................................................................................ passim

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) ................. 17, 123

*Liedtke v. State Bar of Tex.*, 18 F.3d 315 (5th Cir. 1994).....................................105

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ...................................................103

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) .....................................................77

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ............................ 72–73, 75–76
*L.W. Laird v. Integrated Res., Inc.*, 897 F.2d 826 (5th Cir. 1990) ..........................66
*Machetta v. Moren*, 726 F. App'x 219 (5th Cir. 2018) (per curiam) (unpublished) ..........................................................................................................89
*Malvino v. Delluniversita*, 840 F.3d 223 (5th Cir. 2016) .......................................60
*Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339 (2026) (per curiam) ................................................................................................... 139–140
*Maria S. ex rel. E.H.F. v. Garza*, 912 F.3d 778 (5th Cir. 2019)............................136
*Marshall v. Marshall*, 547 U.S. 293 (2006)..........................................................128
*Matassarin v. Lynch*, 174 F.3d 549 (5th Cir. 1999) .................................... 118–119
*McKinley v. Abbott*, 643 F.3d 403 (5th Cir. 2011) ................................ 95, 147, 152
*McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411 (5th Cir. 2023)..............................82
*M.D. ex rel. Stukenberg v. Abbott*, 119 F.4th 373 (5th Cir. 2024) ........................152
*Med. Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025) ..............................................58
*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ..................................................118
*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ................................................................................................... 127–128
*Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam)............................................ 87, 91
*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)..................................................134
*Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999)...............................................74
*Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001)..................67
*N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494 (2015) ...........................111
*Neitzke v. Williams*, 490 U.S. 319 (1989)..............................................................12
*N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137 (5th Cir. 1996) .......................................78
*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783 (6th Cir. 2012).............35
*Parker v. Brown*, 317 U.S. 341 (1943) ....................................... 105, 107, 111, 148
*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018)................................8
*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ......................................... 129–130
*Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999)...........................................138
*Pulliam v. Allen, 466 U.S. 522 (1984)* ................................................................*89*

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) .............................. 127, 130
*Qureshi v. United States*, 600 F.3d 523 (5th Cir. 2010) ................................. passim
*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024) ............................................ 89–91
*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ............................................... 60–61
*Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345 (5th Cir. 2003) ........................................................................................................ 67, 75
*Robinson v. Hunt Cnty.*, 921 F.3d 440 (5th Cir. 2019)...........................................93
*Rogers v. Zanetti*, 518 S.W.3d 394 (Tex. 2017) .....................................................16
*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019) ..........................................................................................................85
*Rollins v. Home Depot USA, Inc.*, 8 F.4th 393 (5th Cir. 2021) .............................146
*Salinas v. United States*, 522 U.S. 52 (1997).................................................. passim
*Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247 (7th Cir. 1994) 12
*Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025)....................................... 2, 150
*Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570 (5th Cir. 2020) 149
*Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003) ..............................67
*Schmuck v. United States*, 489 U.S. 705 (1989) ........................................ 41, 43–44
*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)..................................... 50, 150
*Senechal v. Allstate Vehicle & Prop. Ins. Co.*, 127 F.4th 976 (5th Cir. 2025)......147
*Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006) ..................................27
*Singleton v. Wulff*, 428 U.S. 106 (1976) ..............................................................136
*Skinner v. Switzer*, 562 U.S. 521 (2011) ..............................................................132
*Smith v. Hood*, 900 F.3d 180 (5th Cir. 2018).........................................................139
*Smith v. United States*, 568 U.S. 106 (2013) .................................................. 68, 70
*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016) ........................................................................................... 39–40, 42, 99
*Spano v. Whole Foods, Inc.*, 65 F.4th 260 (5th Cir. 2023)....................................135
*Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671 (5th Cir. 2020) ....................106
*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)................................. 127–128

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac., P.C.*, 120 F.4th 59 (2d Cir. 2024) .......... 67–68

*Stephen Allen Lynn, P.C. Emp. Profit Sharing Plan & Tr. v. Lynn*, 25 F.3d 280 (5th Cir. 1994) .......... 86

*Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143 (9th Cir. 2000) .......... 124

*Stump v. Sparkman*, 435 U.S. 349 (1978) .......... 82, 84, 91

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) .......... 93

*T. M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026) .......... 131

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) .......... 79–80, 105

*Thompson v. McGehee*, 183 F.4th 353 (5th Cir. 2026) .......... 6, 72, 114, 146

*Trial v. Trial*, No. 04-05-00448-CV, 2006 WL 1993772 (Tex. App.—San Antonio July 19, 2006, no pet.) (mem. op.) .......... 85

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016) .......... 81

*Turnbull v. Bd. of Dirs. of the State Bar of Tex.*, No. 24-50260, 2024 WL 4903274 (5th Cir. Nov. 27, 2024) (per curiam) (unpublished) .......... 103

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009) .......... 138

*United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-11184, slip op. (5th Cir. Aug. 12, 2026) (en banc) .......... 81

*United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139 (5th Cir. 2017) .......... 136

*United States ex rel. Trinity Energy Servs., L.L.C. v. Se. Directional Drilling, L.L.C.*, 135 F.4th 303 (5th Cir. 2025) .......... 150

*United States v. Andreen*, 628 F.2d 1236 (9th Cir. 1980) .......... 30, 47–48, 101

*United States v. Blackthorne*, 378 F.3d 449 (5th Cir. 2004) .......... 66

*United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991) .......... 46

*United States v. Delgado*, 401 F.3d 290 (5th Cir. 2005) .......... 62

*United States v. Dowl*, 619 F.3d 494 (5th Cir. 2010) .......... 43–44

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) .......... 109

*United States v. Lee*, 427 F.3d 881 (11th Cir. 2005) .......... 40

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) .......... 39–40

*United States v. Perez-Gorda*, 115 F.4th 653 (5th Cir. 2024) ................................43
*United States v. Perry*, 35 F.4th 293 (5th Cir. 2022)....................................... 98–99
*United States v. Ramirez*, 557 F.3d 200 (5th Cir. 2009).......................................141
*United States v. Reagan*, 596 F.3d 251 (5th Cir. 2010)..........................................46
*United States v. Rojas*, 812 F.3d 382 (5th Cir. 2016)...........................................139
*United States v. Sharpe*, 193 F.3d 852 (5th Cir. 1999)...........................................69
*United States v. Strother*, No. 21-40592, 2023 WL 7399550 (5th Cir. Nov. 8, 2023) (per curiam) (unpublished) ........................................................................40
*United States v. Van Elsen*, 652 F.3d 955 (8th Cir. 2011)......................................45
*United States v. Wofford*, 560 F.3d 341 (5th Cir. 2009)..................... 30, 42, 45, 101
*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ................................................ 123, 125
*Warner v. Espitia*, No. S25G1354, slip op. (Ga. June 30, 2026) ................ 132–133
*Warnock v. Pecos Cnty.*, 88 F.3d 341 (5th Cir. 1996)........................ 9, 95, 107, 147
*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021).................................. 87–89
*Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125 (5th Cir. 2022) ........................152
*Wilson v. Falk*, 877 F.3d 1204 (10th Cir. 2017) ..................................................138
*Witherspoon v. White*, 111 F.3d 399 (5th Cir. 1997)..............................................10
*Younger v. Harris*, 401 U.S. 37 (1971)......................................................... passim

**Statutes**

15 U.S.C. § 2........................................................................................... *passim*
18 U.S.C. § 2..............................................................................................48
18 U.S.C. § 664....................................................................................... *passim*
18 U.S.C. § 1341 ..................................................................................... passim
18 U.S.C. § 1343 ..................................................................................... passim
18 U.S.C. § 1961..................................................................................... *passim*
18 U.S.C. § 1962..................................................................................... *passim*
18 U.S.C. § 1964 ..................................................................................... passim

28 U.S.C. § 2111 .......... 150
28 U.S.C. §§ 2201–2202 .......... 92
28 U.S.C. § 2283 .......... 68
29 U.S.C. § 1001(b) .......... 123
29 U.S.C. § 1056 .......... 117–118, 124
29 U.S.C. § 1104 .......... 124
29 U.S.C. § 1109 .......... 16–17
29 U.S.C. § 1132 .......... passim
42 U.S.C. § 1983 .......... *passim*
Tex. Fam. Code § 6.502(a)(2), (4) .......... 84–85
Tex. Fam. Code § 6.708(c) .......... 85
Tex. Fam. Code § 8.057(b) .......... 86
Tex. Fam. Code §§ 8.351–.352 .......... 20, 86
Tex. Fam. Code § 201.007 .......... 86, 94
Tex. Fam. Code § 201.017 .......... 86, 94
Tex. Fam. Code §§ 201.308, .316–.317 .......... 86
Tex. Gov't Code § 81.072(g) .......... 107

**Rules**

Fed. R. App. P. 25 .......... 157
Fed. R. App. P. 28 .......... 139–140, 147
Fed. R. App. P. 32(a)(5)–(6), (f) .......... 157
Fed. R. App. P. 38 .......... 148, 150, 156
Fed. R. Civ. P. 8 .......... 27, 30–31, 37
Fed. R. Civ. P. 9 .......... 37, 42, 138, 142
Fed. R. Civ. P. 12 .......... *passim*
Fed. R. Civ. P. 15 .......... *passim*
Fed. R. Civ. P. 41(b) .......... 77

Fed. R. Civ. P. 54(b) .......................................................................... 95, 148, 153
Fed. R. Civ. P. 58 ............................................................................... 9–10, 95
Fed. R. Civ. P. 59(e)...............................................................................153
Fed. R. Civ. P. 61 .................................................................................150
Texas Rules of Disciplinary Procedure, Preamble and Rules 1.02, 1.03(A), 1.06(C), 2.12–.13, 8.01, and 17.09 ........................................................ passim
Texas Disciplinary Rules of Professional Conduct 1.05(b), 4.01(a) .......................97

**Administrative Materials**

U.S. Dep't of Lab., Advisory Op. 1999-13A (Sept. 29, 1999)..............................122

## Introduction

1. Appellees seek affirmance through delay, prior opportunities, replacement statutory formulations, and alternative grounds. The Court need not decide ultimate liability to remand. Four framework defects independently require first-instance correction: Rule 15 futility was decided against the wrong pleading; RICO was tested under the wrong predicate; antitrust was not tested as the pleaded Section 2 completed-monopolization offense; and no district-court ruling analyzed the preserved Fourteenth Amendment theory that a materially false support recital was deliberately created and used through state process to deprive Yan of identified retirement property. Opening Br. 43–54, 62–72, 72–96.[1] The remaining sections answer appellees' alternatives protectively and confine each to its actual claim and disposition.

2. First, the FCR rejected eight PFAC counts by cross-reference to three TAC analyses without futility review for each count. Second, the RICO rationale substituted money laundering and a freestanding Section 664 remedy for the pleaded Section 664 predicate. Third, the April 2024 ruling never applied completed-

[1]Correction to Opening Br. 54: replace ROA.26-10286.1185 with ROA.26-10286.1198, 1200–02.

monopolization elements to TAC Count Two, and the post-remand FCR instead tested conspiracy to monopolize. Fourth, the district court did not analyze the preserved due-process combination of alleged deliberate fabrication, state-backed use, and deprivation of identified retirement property. ROA.26-10286.2082–93, 2984–91. Each error calls for the correct framework below, not an appellate merits ruling.

3. *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 431–34 (5th Cir. 2026), and *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 431 (5th Cir. 1990), make the preserved RICO framework error concrete. Opening Br. 86–92. *Bhagat* requires analysis of the predicate actually pleaded; *Landry* held Section 664 pleaded where a complaint alleged conversion of plan funds. The district court instead substituted money laundering and rejected a freestanding Section 664 remedy Yan never pleaded. Appellees' replacement theories require analysis of each predicate and actor, but the judgment never performed that work.

4. *Qureshi v. United States*, 600 F.3d 523, 525–26 (5th Cir. 2010), and *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021), supply separate collateral corrections: vacatur of the filing injunction if the required notice and hearing were absent, and without-prejudice treatment of jurisdictional dismissals. Review follows the ground: delay and prior-opportunity findings receive abuse-of-discretion review; futility, Rule 12 sufficiency, and jurisdictional legal conclusions are de novo.

5. Complete affirmance requires a ground sustaining each affected disposition. *Santander v. Salazar*, 133 F.4th 471, 478–83 (5th Cir. 2025). The April 13 report ordered $50,000 from Yan's retirement account and awarded $25,000 in attorney's fees to each lawyer. A later paper instead recited one $25,000 spousal-support obligation and directed payment to Wang "c/o The Barrows Firm P.C." Barrows then wrote that support wording was required "for us to obtain our attorney's fees," while Pigg wrote that the proposed QDRO "would not be true" and "we either have to lie and accept the QDRO." The TAC alleges that the Plan nevertheless paid $25,000 from Yan's account. Barrows Br. 4–6, 21; Pigg Br. 14; ROA.26-10286.1071, 1096, 1139–41, 1198, 1200–02. Appellees dispute legality, intent, attribution, and liability, but their own descriptions reproduce this documentary sequence. The sections below confine each alternative ground to the claims and dispositions it could independently support.

| Threshold path | Why it fails, governing review, and narrow disposition |
|---|---|
| Rule 15 | The FCR's delay and prior-opportunity grounds do not fit the chronology, and its futility branch never analyzes the PFAC counts individually. It instead cross-references three TAC analyses to reject eight materially different proposed counts. Discretionary grounds receive abuse-of-discretion review; futility is de novo. The Court should vacate the global Rule 15 denial and remand the ordinary Rule 15 questions. |
| RICO predicate | The judgment tested money laundering and a freestanding criminal-statute remedy rather than the pleaded Section 664 RICO predicate. Rule 12 legal sufficiency is de novo. *Bhagat* forecloses adoption of that stated rationale; any replacement theory requires predicate-specific, actor-specific, and inference-sensitive analysis the district court never performed. |

| Threshold path | Why it fails, governing review, and narrow disposition |
|---|---|
| Section 2 antitrust | TAC Count Two pleaded completed monopolization, not conspiracy to monopolize. The April 2024 ruling never applied completed-monopolization elements, and the post-remand FCR instead required conspiracy and specific intent. Those are elements of a distinct Section 2 offense. The Court can vacate and remand without deciding ultimate monopoly power, exclusionary conduct, antitrust injury, or causation in the first instance. |
| Section 1983 omitted theory | The TAC alleges deliberate creation and use of a materially false support recital through state process to obtain identified retirement property. Opening Br. 43–54, 72–86, 92–96. *Dean v. Phatak*, 162 F.4th 555, 565–66, 572 (5th Cir. 2025) recognizes the due-process significance of deliberate fabrication. *Calhoun v. Collier*, 78 F.4th 846, 851–52 (5th Cir. 2023) independently confirms the property side of due process: funds in an account can be protected property, and the Constitution |

| Threshold path | Why it fails, governing review, and narrow disposition |
|---|---|
| | generally requires "some kind of a hearing" before state deprivation of property. No district-court ruling analyzed that preserved combination. *Thompson v. McGehee*, 183 F.4th 353, 375 (5th Cir. 2026) declined first-instance resolution of an unaddressed fabrication theory and remanded pleading sufficiency. The Court can take the same restrained course without deciding ultimate liability, leaving attribution, function, capacity, causation, immunity, and remedy for first-instance analysis. |
| Collateral corrections | *Qureshi* supplies an independent notice-and-hearing correction for the sanctions-motion filing injunction, while *Carver* preserves every jurisdictional dismissal as without prejudice. Those issues are legally distinct from the merits and can be corrected separately. Neither requires the Court to decide the private-RICO-injunction circuit split, QDRO validity, ultimate Section 664 liability, or any other unresolved merits question. |

## I. Threshold procedural and framework errors independently require appellate correction.

### A. Delay and prior opportunities fail; the PFAC counts were never analyzed.

6. The FCR used two different Rule 15 rationales: discretionary delay and prior-opportunity grounds, then blanket futility by cross-reference. Opening Br. 41–42. Deference to case-management findings cannot replace de novo review of the PFAC's legal sufficiency.

7. **Delay fails on the record chronology**. The 2023 restriction preceded notice of the later-asserted defects; the first appeal removed district-court authority until October 20, 2025; Yan sought amendment when mandate issued; and the PFAC was tendered before recommendation and final judgment. Opening Br. 62–66; ROA.26-10286.10–11, 2155, 2182–88, 2365–69, 2665–70, 2981, 3064–65.

8. **Prior opportunities likewise do not show repeated failure to cure**. One amendment corrected a name; another restored exhibits under an order barring substantive change; the TAC added U.S. Bank. Opening Br. 62–65. None followed notice of the defects now asserted against the PFAC.

9. Nor do appellees identify a trial, completed discovery, lost evidence, prejudice tied to a particular count, or a supported bad-faith finding caused by the pre-judgment PFAC. Those discretionary grounds therefore do not sustain the blanket denial.

10. Futility presents a different defect. Part III.A analyzed three TAC causes on Pigg's motion; Part III.B then rejected eight materially different PFAC counts "for the same reasons." Opening Br. 62–67; ROA.26-10286.2984–91. No proposed count received its own Rule 12 analysis.

11. *Calhoun* independently reinforces the Rule 15 consequence. Quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962), it instructs that when underlying facts may be a "proper subject of relief," the plaintiff should receive an "opportunity to test his claim on the merits." *Calhoun v. Collier*, 78 F.4th 846, 854 (5th Cir. 2023) (quoting *Foman*, 371 U.S. at 182). *Calhoun* applied that rule after judgment and reversed because amendment was "not necessarily futile." *Calhoun*, 78 F.4th at 854. Yan tendered the PFAC before recommendation and final judgment. ROA.26-10286.2665–70, 2981, 3064–65. *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018), governs only the remaining futility branch. Count Eight was never analyzed and independently defeats global futility; complete affirmance would require a preserved ground defeating every proposed count or the first-instance analysis omitted below. The Court should vacate the global Rule 15 denial and prospective amendment restriction and remand the remaining ordinary Rule 15 questions.

**B. *Qureshi* independently requires vacatur of the filing injunction.**

12. No appellee identifies notice that an immediate filing restriction was under consideration or a hearing on necessity, scope, and tailoring. Opening Br. 96–97 fully presented the *Qureshi* issue. Merits criticism of earlier sanctions motions does not supply the process *Qureshi* requires.

13. The earlier warning addressed possible future sanctions; it did not notify Yan that a present leave requirement was under consideration. Appellees therefore do not answer the preserved distinction between warning of consequences and notice of the injunction actually imposed.

14. *Qureshi* requires vacatur and permits renewed consideration only after notice and a hearing. That disposition is independent of every merits issue.

**C. Jurisdictional dismissals remain without prejudice.**

15. DeAngelis's response confirms the dismissal-type error rather than defeating it. Her substitute authority, *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996), treats sovereign immunity as jurisdictional and permits only dismissal without prejudice. DeAngelis Br. 13 n.3. The March 10 Rule 58 judgment nevertheless says the entire action is dismissed with prejudice. ROA.26-10286.3065. A judgment's label cannot turn a jurisdictional defect into a merits adjudication. Opening Br. 67–68 preserved that issue; *Carver* supplies the same limit.

16. The March 10, 2026 order and judgment are the decisions under review. ECF 224 adjudicated Pigg's Rule 12(c) motion and Yan's motion for leave, yet stated

globally that "this case" was dismissed with prejudice; ECF 225 repeated that disposition. ROA.26-10286.3064–65. The adopted FCR, however, recommended with-prejudice dismissal only of the claims against Pigg and denial of leave, and neither it nor ECF 224 identified or analyzed any change to ECF 148's express without-prejudice dispositions. ROA.26-10286.2981–92. In *Witherspoon v. White*, 111 F.3d 399, 401–03 (5th Cir. 1997), this Court looked beyond a Rule 58 judgment's global language to the motion, adopted recommendation, and record to identify what had actually been adjudicated. Accordingly, if this Court otherwise affirms any jurisdictional dismissal merged into the 2026 judgment, it should modify the 2026 judgment to make that dismissal without prejudice.

17. The Court should therefore modify every jurisdictional dismissal to be without prejudice and address any merits alternative only after jurisdiction, claim by claim. That correction does not depend on Rule 15. Whether the March judgment incorporated the April DeAngelis dismissal cannot alter the lawful consequence of the jurisdictional grounds actually adopted.

**D. *Bhagat* forecloses adoption of the stated RICO rationale.**

18. *Bhagat* closes the easiest route to affirmance of the stated RICO rationale: a court begins "on the wrong foot" when it analyzes a substituted legal claim instead of the pleaded RICO predicate. 164 F.4th at 431–34. Opening Br. 86–92 preserved the substituted-predicate error.

19. Appellees therefore cannot obtain affirmance for essentially the reasons stated below. Any alternative ground must independently apply Section 664's actual means to the TAC under the favorable Rule 12 standard and sustain the same disposition for that claim. Section V answers those new grounds; it does not reopen the opening brief's preserved issue.

**II. Alternative grounds cannot switch standards, pleadings, or dispositions.**

**A. Each alternative ground retains its own standard and supports only the disposition it independently establishes.**

20. Review follows the ground: delay and prior-opportunity grounds receive abuse-of-discretion review; futility, Rule 12 sufficiency, and jurisdictional legal questions are de novo; *Qureshi* constrains filing-injunction discretion. Opening Br. 41–42. U.S. Bank disclaims *Younger v. Harris*, 401 U.S. 37 (1971), as a basis for its dismissal; abstention cannot sustain its with-prejudice Rule 12(b)(6) judgment. U.S. Bank Br. 36–37.

21. **At the Rule 12 stage, whether under Rule 12(b)(6) or Rule 12(c), the Court does not choose between competing plausible explanations of pleaded facts**. Even if appellees' account is equally plausible, a "tie" does not go to the defendant; well-pleaded facts and reasonable inferences are viewed in Yan's favor. *EnvTech, Inc. v. DeBusk*, 178 F.4th 208, 222–23 (5th Cir. 2026). That lens does not shift against Yan because he proceeds pro se. His pleadings are "to be liberally construed," not subjected to an appellee-favoring tie-breaker. *Erickson v. Pardus*,

551 U.S. 89, 94 (2007) (per curiam). Accordingly, appellees cannot obtain affirmance merely by relabeling the pleaded alteration as "clarification," the alleged Plan-directed conduct as ordinary "adversarial litigation conduct," the alleged coordination as innocent advocacy, or post-notice Plan conduct as routine administration; each must identify a defect in an element that remains after the pleaded facts and reasonable inferences are credited. Rule 12 therefore separates legal conclusions from historical facts. *Neitzke v. Williams* holds that Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief" of factual allegations. 490 U.S. 319, 327 (1989). *Bell Atl. Corp. v. Twombly* requires the assumption that pleaded allegations are true "even if doubtful in fact" and, once a claim is adequately stated, gives the plaintiff the "benefit of imagination, so long as the hypotheses are consistent with the complaint." 550 U.S. 544, 555–56, 563 (2007) (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). *Ashcroft v. Iqbal* permits disregard of unsupported legal conclusions, but directs that, for well-pleaded factual allegations, "a court should assume their veracity." 556 U.S. 662, 678–79 (2009). *Doe v. Robertson* accordingly distinguishes historical facts "whose truth we are bound to presume at this stage" and confirms that "our task is not to weigh evidence at the motion to dismiss stage." 751 F.3d 383, 388–89 (5th Cir. 2014). *George v. SI Grp., Inc.* holds that Rule 12 "tests the sufficiency of the pleadings, not the merits of the case" and forbids a court to "recast

the claim as if it were" another claim. 36 F.4th 611, 619–20 (5th Cir. 2022). Opening Br. 41–42, 58–62, 86–92 preserved the same Rule 12 and claim-recasting errors.

22. **An alternative ground may support only the disposition it independently establishes.** A legal ground receives de novo review; a discretionary ground receives no deference for findings or choices the district court never made. Appellees cannot use one standard to enlarge another ground's reach.

23. **Incorporated materials do not authorize adverse factfinding**. An incorporated document may control only when its contents are unambiguous and directly contradict the pleaded inference; a competing interpretation or an appellee's factual account cannot support dismissal. Their document-based grounds remain subject to the same favorable Rule 12 treatment preserved in the opening brief. Judge Willett's recent dissent describes the circular error appellees request: a court "rejects the alleged historical fact" and then dismisses because "the fact it rejected is missing." *Fogleman-Laxey v. Guillory*, No. 25-30132, slip op. at 24–26 (5th Cir. Aug. 24, 2026) (Willett, J., dissenting). Binding Supreme Court and Fifth Circuit majority authority above supplies the rule; the dissent identifies its precise violation.

**B. Cross-references cannot move grounds across pleadings or parties.**

24. The TAC governs the existing merits dismissals; the PFAC governs Rule 15 futility. Opening Br. 38 and 62–67 kept those inquiries separate. Appellees' TAC

arguments may be tested against the TAC, but they cannot establish global PFAC futility by cross-reference.

25. **Rule 12(c) applies the same standard as Rule 12(b)(6)**. The Court reviews the pleadings and properly incorporated materials, accepts well-pleaded facts and reasonable inferences in Yan's favor, and may dismiss only when those facts fail to state a plausible claim. If matters outside the pleadings are considered, Rule 12(d) requires conversion to Rule 56 and a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(c), (d); see *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209–10 (5th Cir. 2010). Pigg's closed-pleadings premise proves only that Rule 12(c) was available. Rule 15(a)(2) separately permits amendment by leave "in all other cases." Yan made that distinction below: the pleadings were closed "for Rule 12(c) purposes," not closed against a motion for leave. ROA.26-10286.2638 ¶ 12; Fed. R. Civ. P. 12(c), 15(a)(2). A Rule 12(c) ground directed at Pigg therefore does not decide the PFAC or other defendants; a jurisdictional ground cannot become a merits dismissal with prejudice; and a defect in one count does not adjudicate a materially different count. *CH Offshore, Ltd. v. Mexiship Ocean CCC S.A. de C.V.*, 163 F.4th 171, 182–85 (5th Cir. 2025), confirms that substance controls over a filing's caption and that futility is tested under Rule 12(b)(6), viewing the proposed pleading favorably and resolving every doubt in the pleader's favor. ECF 181 expressly asked the district court to construe later filings as amendments or

supplements, and ECF 210 formally moved for leave with the PFAC attached. ROA.26-10286.2366–67, 2665–2785.

26. The Court should therefore evaluate each appellee ground under its own standard, against the pleading and defendant it addresses, and confine any affirmance to the exact disposition that ground independently supports.

**III. The PFAC received no count-specific futility analysis.**

**A. One unreviewed plausible count defeats the global denial.**

27. The Barrows brief answers the Rule 15 issue with a global-futility cross-reference. Barrows Br. 50–52. Opening Br. 62–67 preserved the wrong-pleading issue for all proposed counts. Because one plausible count defeats the blanket disposition, this reply addresses Count Eight as dispositive and Count Five only because appellees specifically attack the proposed ERISA theory. The missing work is element specific: the cross-reference never states or applies Count Eight's malpractice elements to Pigg and never applies Count Five's separate ERISA duties, recipient theories, traceability, or remedies. That is the wrong-claim/wrong-elements problem described in Section X, not a developed global-futility ground.

28. **The FCR's structure defeats that cross-reference**. Part III.A identified three TAC causes relevant to Pigg's motion; Part III.B then rejected the PFAC "for

the same reasons set forth above." ROA.26-10286.2984–91. Count Eight was not among those TAC causes, and no PFAC count received its own Rule 12 analysis.

29. Count Eight alleges malpractice by Yan's own lawyer: duty arising from the attorney-client relationship, breach through the pleaded instrument and disclosure conduct, causation, and damages. ROA.26-10286.2705–27, 2775–76; *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). Appellees identify no ruling applying those elements, and nonclient attorney immunity does not answer a client's malpractice count.

30. **Count Eight alone defeats global futility**. Vacatur on that ground does not adjudicate or abandon the other proposed counts; it simply recognizes that the disposition under review cannot stand when one materially different count was never analyzed and is not defeated by appellees' cross-reference.

31. Count Five independently illustrates the defect in the Rule 15 analysis. It invokes Sections 1109(a), 1132(a)(2), and 1132(a)(3), assigns different duties and recipient theories to the alleged actors, and requests Plan restoration and other equitable relief. ROA.26-10286.2763–72, 2778, 2782. Appellees answer the TAC and facial QDRO theory, but they do not analyze Count Five's defendants, property allegations, traceability, or requested remedies. U.S. Bank's facial-QDRO position has the same limited Rule 15 reach: it addresses the TAC and Plan administration, not PFAC Count Five's Sections 1109(a), 1132(a)(2), and 1132(a)(3) theories,

fiduciary and recipient roles, traceability, or restoration remedies. Section X therefore supplies no basis for the Court to construct those missing Count Five analyses.

32. *LaRue v. DeWolff, Boberg & Assocs., Inc.* confirms recovery for fiduciary breaches impairing assets in a participant's individual account. 552 U.S. 248, 256 (2008). *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.* addresses a different route: Section 1132(a)(3) authorizes appropriate equitable relief against a nonfiduciary party in interest to a Section 1106(a) prohibited transaction; it does not create generic nonfiduciary-breach liability. 530 U.S. 238, 245–51 (2000). Count Five therefore requires analysis as to each defendant: for any nonfiduciary defendant, identify the antecedent Section 1106(a) transaction, that defendant's party-in-interest or transferee role and knowledge, and the equitable character of the requested remedy. **The FCR's global TAC cross-reference performed none of that analysis of Count Five**. Appellees' cited plan-document authorities likewise do not establish objective qualification, statutory compliance, tracing, or remedy at the Rule 12 stage.

33. **The reply does not invite eight first-instance appellate rulings**. Count Eight is enough to vacate global futility; Count Five answers the alternative ground based on ERISA that appellees elected to press. The remaining proposed counts retain the preservation and requested disposition stated in the opening brief.

34. The blanket futility ruling therefore requires vacatur, not appellate reconstruction of the PFAC. Any remaining factual, remedial, or discretionary Rule 15 questions belong on remand.

**IV. The pleaded alteration and Plan depletion survive appellees' fee account.**

**A. Two fee awards and later relabeling support the pleaded alteration.**

35. The TAC's comparison begins with four distinct documents. Barrows's certified March 3 motion sought only "interim attorney's fees, costs, and expenses." ROA.26-10286.1157–59. The November 2021 report at ROA.26-10286.1196 left its temporary-support boxes **unmarked**. ROA.26-10286.1198 is the April 13, 2022 report. It states: "Mr. Yan is ordered to withdraw or borrow $50,000 from his retirement account or as much as allowed. Each attorney is awarded $25,000.00 in fees." **It contains no finding that spousal support was requested, heard, awarded, or due.**

36. The TAC alleges that Barrows's $25,000 award combined **three distinct components**: Barrows's incurred dissolution-case fees; Ybarra's charges from Wang's separate Southlake municipal criminal case embedded in Barrows's submission; and a prospective-or-prepayment excess above the approximately $11,000 the TAC alleges remained owing after prior payments. ROA.26-10286.1069–76, 1157–66, 1198. The April report separately originated a $25,000 award to Pigg although he allegedly filed no fee request and presented no testimony,

billing, or other proof. ROA.26-10286.1070, 1198. Thus, Pigg's award was **separate** from the three pleaded components of the Barrows-side award and was not part of the completed Barrows-side Plan transfer.

37. ROA.26-10286.1200–02 is the later instrument. It newly recites that the April 13 hearing concerned a "request for Spousal Support" and that Yan had been "ordered/required to pay spousal support." The TAC alleges that Barrows drafted the later paper and altered the fee award's context, basis, amount, payee structure, and enforcement method. ROA.26-10286.1076–78. **Credited at the Rule 12 stage, those facts support alteration of the fee ruling into a materially different support instrument.** That is a factual inference from the incorporated documents, not a legal conclusion accepted merely because Yan pleaded it. The fuller multiple-order and multiple-writ allegations belong to PFAC futility and are not used to enlarge the TAC.

38. **ERISA's anti-alienation prohibition is the starting rule**. *Guidry v. Sheet Metal Workers Nat'l Pension Fund* found "no meaningful distinction between a writ of garnishment and the constructive trust remedy" before it; both were barred by Section 206(d)(1) absent a statutory exception. 493 U.S. 365, 372 (1990). For Rule 15 only, the PFAC alleges two writs served on U.S. Bank and alleges that the orders supplied purported QDRO authority while the writs supplied restraint and execution. Qualification and causation turn on whether U.S. Bank processed the payment

command as a QDRO, a writ, or both; **the FCR's TAC cross-reference supplied no answer**. *Guidry* further cautions that courts "should be loath to announce equitable exceptions" to an unqualified anti-garnishment rule and that any new exceptions are for Congress. *Id.* at 376. These PFAC allegations do not cure or enlarge the TAC.

**B. The later support recital supports the alteration inference.**

39. The preserved Rule 12 issue is documentary, not a freestanding Texas-maintenance claim. Barrows relies on general QDRO authority to characterize the challenged transaction as lawful. Barrows Br. 30–32. Section 8.351(a) provides a QDRO mechanism to satisfy amounts due under a maintenance order. Citing that mechanism establishes neither that maintenance was requested, heard, or ordered here nor that the later support recital accurately memorialized the April fee award. At Rule 12, that recital cannot be accepted as true against the TAC's well-pleaded alteration allegations. Tex. Fam. Code § 8.351(a); TAC ¶¶ 54, 56, 70–72; ROA.26-10286.1070–71, 1198, 1200–02. This is the pleaded post-hearing alteration issue, not a request for criminal adjudication and not merely a notice objection.

| Core TAC / record allegation | Appellees' own description |
|---|---|
| **Actual controversy.** Yan alleged manipulation of retirement-account papers to obtain attorney fees. The later grievance allegations concerned notice and post-notice conduct, not the original property injury. ROA.26-10286.1056, 1065–78, 1082–84. | The State Bar calls the "central issue" Yan's allegation that Pigg and Barrows "manipulated" the QDRO "to secure the payment of attorney fees" from his "out-of-state retirement accounts." State Bar Br. 25. Pigg describes the "gravamen" as an alleged conspiracy to enter a fraudulent QDRO resulting in Wang obtaining part of Yan's retirement account. Pigg Br. 5. |
| **Original award.** The April 13 report ordered $50,000 from Yan's retirement account, with $25,000 awarded to each attorney. ROA.26-10286.1070, 1198. | The Barrows brief quotes the order: Yan must "withdraw or borrow $50,000 from his retirement account," and "[e]ach attorney is awarded $25,000.00 in fees." Barrows Br. 4. Pigg separately states that he "was awarded $25,000 in attorney fees at a hearing." Pigg Br. 14. |

| Core TAC / record allegation | Appellees' own description |
|---|---|
| **Later paper.** The later QDRO changed the stated amount and structure from two $25,000 attorney-fee awards totaling $50,000 to one asserted $25,000 support obligation; named Wang as alternate payee "c/o The Barrows Firm P.C."; and directed the Plan to pay. ROA.26-10286.1077–78, 1093–94, 1200–02. | The Barrows brief states that the QDRO recites $25,000 in "spousal support" and directs the Plan to pay Wang as alternate payee "**c/o The Barrows Firm P.C.**" Barrows Br. 5. |
| **Purpose of the recital.** Barrows told the participants that support wording was required to obtain the attorneys' fees. ROA.26-10286.1139. | The Barrows brief quotes Barrows's email: "In order for us to obtain our attorney's fees, the order must say the fees are for spousal support. There is no way around it." Barrows Br. 5 (omitting "that"). |

| Core TAC / record allegation | Appellees' own description |
|---|---|
| **Coordination and objection.** Pigg signed the instrument; Yan objected; and the enforcement dispute remained unresolved. ROA.26-10286.1077–78, 1095–97, 1139. | The Barrows brief states that Pigg signed the QDRO "as an agreed order" and that, by late August 2022, "the dispute over enforcement of the QDRO had not been resolved." Barrows Br. 5–6. |
| **Completed injury.** The TAC alleges that the Plan paid $25,000 from Yan's retirement account. ROA.26-10286.1071. | The Barrows brief states: "Payment pursuant to the QDRO, the alleged object of the conspiracy, has already occurred." Barrows Br. 21. |

40. Barrows then insisted after objection that, "[i]n order for us to obtain our attorney's fees, the order must say that the fees are for spousal support" and that "[t]here is no way around it." ROA.26-10286.1139. Read favorably, the statement reaffirmed the challenged support characterization as necessary to the attorneys' fee objective. Together with the fee-motion/report mismatch, it plausibly establishes the pleaded factual basis for falsity, materiality, purpose, and scienter. *Doe* treats a knowledge allegation as sufficient when "supported—though not proven—by the additional factual allegations" and bars evidentiary weighing at dismissal. 751 F.3d

at 389. **Appellees' claimed clarification account is a competing interpretation, not a Rule 12 basis to reject the pleaded inference**.

41. The TAC alleges that Pigg denied signing the original draft and refused to sign an untrue court document. But Pigg limited his refusal to "my 25K," "regardless of Barrows." ROA.26-10286.1077–78, 1140–41. He later assured Barrows that U.S. Bank had approved the QDRO and that she would receive the money, but did not forward that exchange to Yan until November 2. ROA.26-10286.1142; Barrows Br. 5. Those statements did not tell Yan that Barrows's transfer would stop. The sequence supports the pleaded inference that Pigg separated his own payment from Barrows's, assented to her payment, and concealed that assent from Yan until after the fact. Rule 12 cannot choose Pigg's resistance account over that pleaded inference. *EnvTech*, 178 F.4th at 221–23, 230–31.

42. "Agreed order" proves only Pigg's signature, not Yan's consent or fidelity to the April 13 report. **The report itself required submission of a typewritten order "pursuant to this recommendation/report**." ROA.26-10286.1198. Yan preserved below that, once the April 13 ruling was rendered, the parties' posture was nonadversarial and the assigned drafting function was purely ministerial, required no discretion, and served **only to memorialize that ruling, not to create different relief.** ROA.26-10286.1605–06; *see also* Opening Br. 35–38, 97–98. The alteration is an objective documentary fact established by the incorporated instruments

themselves, as the comparison above shows. ROA.26-10286.1157–59, 1198, 1200–02. The "c/o" direction routed the payment through the Firm rather than to Wang's ordinary address and bears on payment path, control, intended recipient, purpose, and knowledge. The TAC alleges that Yan neither knew of nor authorized those changes. ROA.26-10286.1077–78, 1095–97, 1139. **No legal interpretation is required to determine that the text changed.** The TAC further alleges that Barrows deliberately drafted and transmitted the altered instruments, Pigg signed and returned them, and Ybarra received and cooperated in the communications; Rule 12 required the court to credit those allegations together with the incorporated documents. ROA.26-10286.1077–78, 1092–98, 1139–42. Appellees' legal characterization cannot erase the established textual alteration.

*Figure 1 illustrates what field-level alteration of a payment instruction looks like: payee, amount, and memo (stated basis) are discrete fields, each of which can be changed independently of the others. It is an illustrative schematic, not the disputed instrument; the pleaded alteration changed the corresponding fields and the payor on the incorporated court instruments.*




43. **"Clarification" is Barrows's label, not the pleaded function.** On August 5, Barrows said the order had to "say" support to obtain "our attorney's fees." ROA.26-

10286.1139. On August 29, after deployment and U.S. Bank's August 1 conflict notice, she called the existing ruling one "for attorney's fees" and asked to "clarify" it. ROA.26-10286.1142, 2034–35. The August 29 request could not retroactively convert the pleaded attorney-fee-to-support alteration into faithful implementation. At the Rule 12 stage, whether under Rule 12(b)(6) or Rule 12(c), it supports Yan's post hoc concealment inference because it confirmed, rather than cured, the mismatch. Barrows Br. 28–30.

**C. The $25,000 depletion presents a separate TAC restoration issue.**

44. The Barrows brief's recitation confirms that the April report awarded attorney fees, the later paper recited support, Pigg signed, payment followed, and Barrows later sought clarification of the fee ruling. Barrows Br. 4–6. Those facts are credited because the TAC and incorporated documents plausibly allege them, not because Barrows admitted liability.

45. The chronology ended in a completed property injury. The TAC alleges that about $25,000 left Yan's identified Plan account for the Barrows Firm and that he lost access to the account. ROA.26-10286.1071, 1096, 1114–15. It requested injunctive and other equitable relief. Liberally construed and as preserved at Opening Br. 52–54, those allegations present a question about whether identified Plan property must be returned or restored, not money damages in the abstract. *E-Sys., Inc. v. Pogue* states the equitable result directly: "The funds must be returned.

The parties are to be restored to the status quo ante." 929 F.2d 1100, 1104 (5th Cir. 1991). *See also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14 (2002); *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362–63 (2006).

46. The TAC did not separately caption a Section 1132 count, but Rule 8 does not require a pro se litigant to plead the correct legal theory when the facts and requested relief give fair notice. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). TAC Claim Nine separately pleaded U.S. Bank's determination, notice, and separate-accounting duties. ROA.26-10286.1067, 1129–31. PFAC Count Five later formalized and expanded the ERISA causes, roles, and remedies for Rule 15 review; it does not cure or replace the narrower TAC alteration-and-restoration issue.

47. The Court should therefore vacate the affected TAC dismissals and remand so the district court can apply the correct law to each claim and defendant. That analysis must address the pleaded fee source and composition, the alleged alteration, Texas law and ERISA qualification, the completed Barrows-side Plan depletion, and the restoration sought. This narrow disposition neither orders immediate repayment nor assumes that Pigg received the transferred $25,000. PFAC Count Five remains for independent Rule 15 review.

## V. Section 664 supplies the pleaded RICO predicate.

### A. Section 664's four means govern; money laundering does not.

48. Congress defined the predicate; the district court could not replace it. *Bridge v. Phoenix Bond & Indem. Co.* explains that "racketeering activity" is a defined term and that Congress defined the predicate "not as fraud simpliciter, but mail fraud—a statutory offense unknown to the common law." 553 U.S. 639, 652 (2008). Applying *Bridge*, *Allstate Indem. Co. v. Bhagat* held that the district court "began on the wrong foot" by treating common-law fraud as the underlying claim instead of applying the pleaded RICO predicate. 164 F.4th 426, 431–34 (5th Cir. 2026). The same foundational error occurred here: the TAC pleaded acts indictable under Section 664, but the district court tested **unpleaded** money laundering and the absence of a freestanding Section 664 civil remedy. ROA.26-10286.2091–94. The Barrows brief's alternative ground must apply Section 664's actual means (embezzlement, stealing, unlawful and willful abstraction, or unlawful and willful conversion) to the actual TAC. Her truncated formulation and disputed-lawfulness premise supply no independent basis for dismissal.

49. The April 2024 order first rejected a freestanding civil remedy Yan never requested. It stated that Section 664 and other criminal statutes "do not create civil causes of action" and dismissed "those claims" with prejudice. ROA.26-10286.2093. The TAC instead invoked acts indictable under Sections 664, 1341, and 1343 as racketeering activity within civil claims under Sections 1962 and 1964(c).

18 U.S.C. §§ 1961(1)(B), 1962, 1964(c). Because no freestanding criminal-statute claim existed, none could be abandoned. Opening Br. 40, 59, 86–92 preserved the predicate issue.

50. The order then substituted money laundering for the pleaded predicate. **Neither "Section 1956" nor "launder money" appears in the TAC**, and the TAC identifies no federal judge as an enterprise participant. ROA.26-10286.1085–98. **Those features came from the order's description, not the operative pleading**. ROA.26-10286.2091–94. Yan identified that substitution contemporaneously. ROA.26-10286.2124.

51. The order never applied Section 664's four statutory means to the 2014 comparator or the 2022 acts. It analyzed neither embezzlement, stealing, unlawful and willful abstraction, nor unlawful and willful conversion. That omission left no ruling on any of Section 664's means to affirm. The Barrows brief's alternative ground must therefore apply the correct statute to the liberally construed TAC.

52. One sentence alleging conversion of employee-plan funds can plead Section 664. *Landry v. Air Line Pilots Ass'n Int'l* establishes that rule directly. The trial court said Section 664 had not been pleaded; the Fifth Circuit disagreed because one sentence of the amended complaint alleged that defendants "converted money and funds of the TACA pilot's employee benefit plan for their own uses." 901 F.2d 404, 431 (5th Cir. 1990). The TAC alleges substantially more: Yan's ERISA-governed

401(k), the April fee ruling, the later support recital, the instruments and communications, the September transfer, the recipients, and the resulting depletion. ROA.26-10286.1065–81, 1088–98, 1129–31. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam), reinforce *Landry*'s direct Rule 8 holding.

53. *United States v. Wofford* separately confirms that Section 664's "plain language requires" assets from a plan subject to Title I of ERISA. 560 F.3d 341, 347 (5th Cir. 2009). *Wofford* itself involved a 401(k) pension plan. Section 664 applies to "any person" and reaches conversion "to the use of another"; fiduciary status and personal receipt are not elements of that statutory route. *Id.* at 345–47. Replacing Section 664 with money laundering removed the protected-plan element, the ERISA authorization inquiry, and the direct Plan-depletion theory.

54. Section 664 conversion includes unauthorized use of property held for a limited purpose. *Landry* adopts this rule: "The concept of unlawful conversion encompasses the use of property, placed in one's custody for a limited purpose, in an unauthorized manner or to an unauthorized extent." 901 F.2d at 431 (adopting *United States v. Andreen*, 628 F.2d 1236, 1241 (9th Cir. 1980)). Plan assets were held for the limited purposes ERISA and the Plan authorized; the TAC alleges they were instead redirected to private attorney fees through a materially different support recital.

55. Scienter is separately plausible from the contemporaneous emails. *Landry* further holds that "[s]cienter is an essential element of a § 664 violation." *Landry*, 901 F.2d at 431–32. The attached contemporaneous emails are direct documentary evidence supporting scienter at the Rule 12 stage. Barrows wrote: "In order for us to obtain our attorney's fees, the order must say that the fees are for spousal support. There is no way around it." ROA.26-10286.1139. Pigg wrote that the proposed QDRO "would not be true" and that "we either have to lie and accept the QDRO." ROA.26-10286.1140–41. Those writings identify the fee objective, the necessary false characterization, and the participants' contemporaneous knowledge. They supply the factual enhancement Rule 8 requires and foreclose dismissal as a conclusory scienter allegation. *Landry* reversed because fact issues remained concerning mail fraud, wire fraud, and the Section 664 predicate, the same limited disposition Yan seeks here. 901 F.2d at 431–32, 436–37.

56. TAC Section 1962(a). The Barrows brief lists investment injury but develops no ground under Section 1962(a). Barrows Br. 2, 20–32. Section V.D supplies the pleading-stage answer.

57. TAC Section 1962(c). The TAC identifies Barrows as the alleged person conducting the Barrows Firm's affairs, pleads the 2022 mail, wire, and Section 664 sequence, a 2014 method comparator, later protection of the mechanism, and direct property loss. ROA.26-10286.1084–98. Continuity may be shared only when the

asserted routes actually use the same predicate pattern; operation, distinctness, and attribution remain route specific.

58. TAC § 1962(d). For the attorney-defendant extraction sequence, the TAC identifies both the contemplated substantive objective and concrete circumstances supporting agreement. It alleges a Barrows-Firm-centered § 1962(c) endeavor carried out through the pleaded mail, wire, and § 664 Plan-asset sequence; Barrows's mixed fee submission, drafting, and transmission; Pigg's signing and return of the April 26, May 26, and June 21 instruments; Ybarra's participation in the mixed submission and receipt of the instrument and objective communications; Barrows's August 5 statement that the order had to say support "for us to obtain our attorney's fees"; Pigg's August 29 assurance that U.S. Bank had approved the QDRO and Barrows would receive payment; and the September distribution alleged to complete the shared objective. ROA.26-10286.1074–79, 1092–98, 1139–42, 1200–02. *Salinas v. United States* holds that adoption of the goal of furthering or facilitating the endeavor suffices. 522 U.S. 52, 63–66 (1997). *Abraham v. Singh* confirms at Rule 12 that specifically alleged agreement and coordinated predicate conduct state a civil § 1962(d) claim. 480 F.3d 351, 357–58 (5th Cir. 2007). These dated allegations identifying each role plausibly establish agreement and required analysis under the correct endeavor-level standard.

59. Controlling principles. Section 1964(c) requires **one qualifying injury** to business or property proximately caused by the asserted RICO violation; each predicate need not inflict a separate injury. The connection required for an additional defendant depends on the RICO subsection. The table below answers appellees' new RICO shortcuts only; Opening Br. 86–92 supplies the preserved merits theory.

| Appellee shortcut | Reply-specific answer | Disposition affected |
|---|---|---|
| **Pigg: two personal predicates are required.** | That premise does not control Section 1962(d). The governing conspiracy standard asks whether the defendant agreed to further or facilitate the contemplated RICO violation; Opening Br. 86–92 preserved that conspiracy route. | At most, a personal-predicate defect could address a particular Section 1962(c) route. It cannot dispose of the separately pleaded Section 1962(d) agreement theory. |

| Appellee shortcut | Reply-specific answer | Disposition affected |
| --- | --- | --- |
| **Barrows / Ybarra: the Firm actors may be treated collectively.** | Section 1962(c) operation or management and Section 1962(d) agreement are different inquiries, and attribution remains defendant specific. A defect as to one actor or subsection does not migrate to another. | Any affirmance must identify the actor, subsection, enterprise, predicate pattern, and injury the asserted defect actually reaches. |
| **Firm: enterprise status supplies a blanket RICO dismissal.** | Where the TAC uses the Barrows Firm as the Section 1962(c) enterprise, it does not treat that same entity as the same Section 1962(c) person. The conspiracy and agent-attribution questions remain separate. | A distinctness ruling is confined to the route using the Firm as enterprise; it does not decide every RICO defendant, subsection, enterprise, or agreement theory. |

60. Pigg's "one instance" premise omits the TAC's pleaded sequence. TAC ¶¶ 162–164 separately identify the April 26, May 26, and June 21 instruments and allege Pigg's signature or participation in each; the incorporated April instrument bears his signature. ROA.26-10286.1092–94, 1200–02. The TAC further incorporates Barrows's August 5 statement of the common fee objective, sent to Pigg, and Pigg's August 29 assurance to Barrows that U.S. Bank had approved the QDRO and she would receive payment. ROA.26-10286.1139, 1142. Considered cumulatively, those dated allegations plausibly support knowledge, adoption of the objective, and agreement. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 795–96 (6th Cir. 2012); *Abraham v. Singh*, 480 F.3d at 357–58. *Salinas* independently forecloses Pigg's personal-two-predicate premise because § 1962(d) asks whether he adopted the goal of furthering or facilitating the contemplated RICO offense. 522 U.S. at 63–66. His one-instance characterization therefore cannot sustain the Rule 12(c) judgment.

61. Pigg describes "18 U.S.C. § 1962(d)" as "income derived from some generalized racketeering activity." Pigg Br. 12. Section 1962(d) governs conspiracy; the income-derived provision is Section 1962(a). This is the Section X wrong-elements problem in statutory form: Pigg names Section 1962(d), but applies Section 1962(a)'s premise and then adds a two-personal-predicate requirement that does not analyze Section 1962(d)'s agreement inquiry. The alternative ground therefore

cannot be completed by supplying the missing analysis under the correct subsection on appeal.

**B. The TAC pleads Section 664, mail-fraud, and wire-fraud predicates.**

62. The TAC alleges conduct indictable under Section 664 and the federal mail- and wire-fraud statutes. Section 1961(1)(B) defines each qualifying act as "racketeering activity." The judgment had to test whether the pleaded conduct plausibly constituted those enumerated predicate acts. The communications and instruments do not cease to support Section 664 merely because they also support mail or wire fraud. A communication is not a separate Section 664 predicate merely because it furthered a transaction. Communications or instruments alleged to place Plan assets within reach, procure or assert authorization, direct the transfer, conceal the transaction's objective, or position an actor to obtain Plan property may form part of the pleaded conduct surrounding the Section 664 transaction. They separately may establish deception, intent, knowledge, agreement, relatedness, continuity, causation, or mail and wire fraud. The completed Plan depletion remains the TAC's strongest Section 664 predicate.

63. *Beck v. Prupis*, 529 U.S. 494, 505–07 (2000), separately recognizes an injury-causing overt act that is otherwise independently wrongful under RICO, but an act does not enter that category merely because it is wrongful under other law. Nor is an

act a RICO predicate unless Section 1961(1) enumerates the underlying offense and the pleading plausibly alleges an act indictable under it.

64. No appellee completes the alternative ground that the TAC pleaded no Section 664 predicate. **The Barrows brief accepts Section 664 as an eligible RICO predicate and agreed below that Rule 8, not Rule 9(b), governs it**. Its appellate paraphrase lists embezzlement, stealing, and unlawful conversion, but omits abstraction and omits willfulness from conversion. Barrows Br. 30. It then treats the challenged instrument as a lawful civil remedy and disputes criminal intent. *Id.* at 20–32. To affirm on that ground, she must identify a correctly framed defect that defeats the offense as a whole or defeat each statutory type plausibly supported by the liberally construed TAC. The four types have distinct textual and common-law content and cannot be collapsed into one test. Her incomplete paraphrase and disputed premise of lawfulness do neither. That is a narrower Section X mismatch: a no-Section-664-predicate ground must analyze the statute actually pleaded; it cannot omit an expressly invoked statutory type and leave the missing analysis of the omitted statutory type to the Court.

65. **Pigg defines no Section 664 type**; his general implausibility argument and theory that he personally needed two predicates do not govern Section 1962(d). Pigg Br. 9–16. The State Bar likewise defines no type; it argues timing, nonparticipation, and immunity without applying Section 664's text. State Bar Br. 21–30. No appellee

therefore supplies a complete no-predicate ground. *Bhagat* defeats the district court's stated predicate rationale. Sections V.C through V.F address the Barrows brief's continuity ground and undeveloped Section 1962(a) reference. The remaining replacement theories would require the district court to classify predicates, attribute conduct, assess operation and agreement, analyze injury and causation, and determine the proper disposition in the first instance.

66. Barrows asserts that "[a]dversarial litigation conduct is an improper foundation for a civil RICO claim." Barrows Br. 27. That assertion assumes the disputed classification. The TAC does not treat filing a motion, signing an order, or opposing Yan as racketeering merely because those acts occurred in litigation. It alleges that the April report awarded attorney fees; later instruments materially recited support instead; Barrows stated that support wording was required "for us to obtain our attorney's fees"; the alleged altered premise was deployed interstate to a Minnesota Plan administrator; and about $25,000 then left Yan's identified ERISA account for the Barrows Firm. ROA.26-10286.1065–78, 1092–98, 1136, 1139–42, 2030–35. None of Barrows's cited authorities establishes that those alleged acts are merely ordinary adversarial advocacy. They must be tested against Sections 1341, 1343, and 664; the label "adversarial litigation conduct" cannot perform that analysis under each predicate.

67. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524–25 (5th Cir. 2016), creates no categorical litigation immunity. It rejected RICO theories built from the opposing parties' cease-and-desist letters, trademark applications, discovery requests, and lawsuits where the pleading supplied no corruption or other actual criminal activity. Its formulation makes the distinction dispositive: ordinary litigation activity is insufficient "in the absence of corruption" or actual criminal conduct. *Id.* at 525. Here the TAC does not rely on campaign association as the predicate. It identifies the alleged June interstate mailing, later interstate communications, and September Plan depletion under offenses Congress expressly enumerated in Section 1961(1)(B). Whether those facts satisfy each offense is a Rule 12 question under each element; *Snow Ingredients* does not permit the Court to bypass it with a label.

68. *United States v. Pendergraft*, 297 F.3d 1198, 1208–09 (11th Cir. 2002), is narrower still. The mail-fraud convictions failed because the defendants knew their false affidavits could not deceive Marion County: the intended recipient already knew whether its own chairman made the alleged threats, so the required intent to deceive and scheme to defraud were absent. *Id.* at 1208–09. *Pendergraft*'s separate policy discussion did not establish a rule immunizing papers associated with litigation. Its own circuit later called that discussion "simply dicta" and sustained

mail-fraud liability where legal documents were directed to a lender to obtain property. *United States v. Lee*, 427 F.3d 881, 889–91 (11th Cir. 2005).

69. The Fifth Circuit has now drawn the same boundary in a directly responsive application. *United States v. Strother*, No. 21-40592, 2023 WL 7399550, at *4–5 (5th Cir. Nov. 8, 2023) (per curiam) (unpublished), distinguished both *Pendergraft* and *Snow Ingredients* and affirmed mail-fraud convictions based on fraudulent liens and lawsuits intended to induce a clerk's office to file the liens. *Pendergraft* turned on the absence of deceptive intent; *Snow Ingredients* turned on the absence of corruption or criminal activity. *Strother*, 2023 WL 7399550, at *4–5. *Strother* is unpublished and persuasive, but it eliminates the categorical proposition Barrows advances: litigation-associated filings can support mail fraud when the pleaded facts plausibly supply an actual scheme, deceptive intent, a property objective, and a qualifying mailing.

70. Those distinctions fit the TAC. The intended operational recipient was U.S. Bank's Minnesota Plan administration, not merely litigation counsel who already knew the truth of an accusation. The TAC alleges that the administrator had to treat the later instrument as authorizing action against Plan assets; Barrows mailed the instruments interstate; communications continued after Pigg supplied the April fee report and U.S. Bank acknowledged the conflict; and the Plan ultimately distributed the money. ROA.26-10286.1092–98, 1129–31, 1136, 1139–42, 2030–35. Barrows's

August 5 statement that the order had to "say" support to obtain "our attorney's fees," together with Pigg's statement that the proposed QDRO "would not be true" and that counsel would "have to lie," plausibly supports materiality, deceptive purpose, scienter, and agreement. ROA.26-10286.1139–41. Rule 12 cannot replace those pleaded inferences with the premise that every recipient understood and accepted the transaction's true character.

71. The pleading does not depend on treating every alteration, signature, email, or filing as a separate predicate. The alleged alteration and the contemporaneous statements are evidence of the scheme, materiality, intent, knowledge, agreement, relatedness, causation, and the function of later communications. The asserted predicate acts remain the alleged mail fraud, wire fraud, and completed Section 664 transaction. A mailing may be innocent on its face and need not repeat the misrepresentation when it is incident to an essential part of the scheme. *Schmuck v. United States*, 489 U.S. 705, 710–15 (1989). Nor does civil RICO require first-party reliance by the plaintiff. *Bridge*, 553 U.S. at 648–50. The relevant questions are the statutory elements, not whether each instrument independently looks criminal in isolation.

72. Section 664 independently defeats the ordinary-advocacy characterization. The alleged September depletion was an employee-benefit-plan asset transaction, not the defense of a lawsuit. Section 664 reaches any person who unlawfully and

willfully abstracts or converts Plan assets "to the use of another"; it does not require fiduciary status or personal receipt. 18 U.S.C. § 664; *Wofford*, 560 F.3d at 345–47. *Landry* further treats unauthorized use beyond a limited purpose as conversion and reversed where fact issues remained concerning Section 664, mail fraud, and wire fraud. 901 F.2d at 431–32, 436–37. Thus, even if some communications were litigation-adjacent, the separate completed Plan transaction and the communications alleged to deploy it must be tested under the pleaded federal offenses.

73. The Barrows brief's reliance on *Feld Entm't, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318–19 (D.D.C. 2012) does not add a bribery element. *Snow Ingredients* described bribery as the criminal conduct alleged in that case; it did not hold that bribery is the exclusive way litigation-associated acts can constitute racketeering activity. 833 F.3d at 525. Congress enumerated Sections 1341, 1343, and 664 without a bribery proviso. Because the TAC plausibly alleges those offenses through a materially different Plan-directed instrument, interstate deployment, contemporaneous scienter evidence, and completed Plan depletion, the litigation-conduct theory supplies no independently sufficient ground for affirmance.

74. Mail and wire fraud require a scheme to obtain money or property, material deception, specific intent to deceive and cheat, and use of the mail or interstate wires in furtherance, with Rule 9(b)'s required particulars. *Kousisis v. United States*, 605

U.S. 114, 121–35 (2025); *United States v. Perez-Gorda*, 115 F.4th 653, 656 (5th Cir. 2024). The communication itself need not repeat the false recital. A mailing or wire is sufficient when it is incident to an essential part of the scheme or a step in the plot. *Schmuck*, 489 U.S. at 710–15; *United States v. Dowl*, 619 F.3d 494, 499–500 (5th Cir. 2010). The mailing may itself be innocent and contain no misrepresentation if it is incident to an essential part of the scheme. *Schmuck*, 489 U.S. at 710–11. Thus, a signed order, service package, routine administrator exchange, or payment communication may satisfy the communication element when its alleged function is to deploy, sustain, or complete the property objective.

75. The TAC identifies at least two distinct communications-based predicates and a separate Section 664 transaction. First, on June 21, Barrows allegedly caused the challenged writ and order to be mailed to U.S. Bank in Minnesota to restrain and obtain Plan assets. ROA.26-10286.1093–94. Second, from June through August, she allegedly used interstate calls and emails with the Minnesota administrator to overcome Yan's objection, address the documented conflict between the April report and later order, and obtain distribution. ROA.26-10286.1094–95, 1136, 1139–42, 2030–35. Third, the September distribution is separately alleged as unlawful and willful abstraction or conversion under Section 664. ROA.26-10286.1095–98. The June mailing and the later interstate communications are distinct alleged uses of

Sections 1341 and 1343; the completed Plan transaction is a distinct alleged Section 664 predicate.

76. The TAC also supplies the who, what, when, method, and property objective. It alleges April 26 and May 26 electronic transmission and filing of signed instruments containing the disputed support recital; the June 21 interstate mailing to the Minnesota administrator; June-through-August calls and emails concerning enforcement; Barrows's August 5 statement that the order had to say support "for us to obtain our attorney's fees"; and Pigg's August 29 assurance that U.S. Bank had approved the QDRO and payment would follow. ROA.26-10286.1092–95, 1136, 1139–42. U.S. Bank's August 1 letter confirms that communications occurred while the conflict remained unresolved. ROA.26-10286.2034–35. The objection and conflict letter are notice evidence, not fraud predicates against their authors. But the order exchanges, mailing, and administrator communications plausibly furthered an unfinished property objective even when a particular message did not itself contain the false recital. *Schmuck*, 489 U.S. at 710–15; *Dowl*, 619 F.3d at 499–500. The same transmission may therefore be pleaded both as a mail- or wire-fraud use and as implementation evidence for the separate Section 664 transaction; appellees identify no rule requiring Yan to elect one characterization at the Rule 12 stage.

77. Section 1961(1)(B) defines an act indictable under Section 664 as "racketeering activity." Section 664, in turn, defines one offense whose conduct

element contains four alternative statutory types: (1) embezzlement; (2) stealing; (3) unlawful and willful abstraction; and (4) unlawful and willful conversion of employee-benefit-plan assets to the actor's own use or another's use. 18 U.S.C. §§ 664, 1961(1)(B). *United States v. Wofford* states the conduct element as whether the defendant "embezzled, stole, abstracted or converted" plan assets and states criminal intent separately. 560 F.3d 341, 345–46 (5th Cir. 2009). *United States v. Van Elsen*, 652 F.3d 955, 958 (8th Cir. 2011), names them "four types of theft" and explains that each is separated by "or". At minimum, the TAC plausibly alleges unlawful and willful abstraction or conversion; liberally construed, its express theft-or-embezzlement allegations also invoke the remaining alternatives. It invoked Section 664 without narrowing the offense, described the conduct as "theft or embezzlement," repeatedly alleged unlawful and willful abstraction, and alleged intentional unauthorized redirection and receipt into the Firm's account for Barrows's own use, facts that plausibly allege conversion. ROA.26-10286.1055–56, 1095–96.

78. Separately, the PFAC expressly alleged "embezzlement, theft, or unlawful and willful abstraction or conversion." ROA.26-10286.2734. The PFAC governs Rule 15 futility and does not cure the TAC; the TAC plausibly implicates all four types, while the PFAC expressly invokes them in its separate Rule 15 posture. Absent a correctly framed defect that defeats the entire offense, Rule 12 required the

court to keep the four types distinct and test each plausibly invoked route. A court cannot rewrite Congress's alternatives as a single judicially constructed "knowing and willful taking or conversion" test, then dismiss the entire predicate because that reformulation fails.

79. The four types are alternatives within one offense, not four predicate acts: one plausibly pleaded type can support a transaction's Section 664 predicate, and one transaction does not become multiple predicates merely because it may fit more than one type. Separate alleged transactions may proceed under different types; Section 664 does not require one common type for every transaction.

80. In *United States v. Reagan*, the Fifth Circuit cited *United States v. Busacca* for the conclusion that each plan check a defendant caused to issue to himself without authorization and outside established procedures constituted a separate violation. *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (discussing *United States v. Busacca*, 936 F.2d 232, 239 (6th Cir. 1991)). *Busacca* proceeded under embezzlement and required specific intent to deprive the plan; it did not import the textual "unlawfully and willfully" modifier from abstraction and conversion into embezzlement. 936 F.2d at 239. The PFAC's three orders and two writs likewise are not counted by document; their significance is whether the alleged sequence caused one completed depletion and a separate continuing restraint through one repeated Plan-directed mechanism.

81. Section 1964(c) separately asks whether the asserted Section 1962 violation proximately caused Yan's qualifying property injury; each predicate need not cause a separate injury.

82. Whether the challenged instrument lawfully authorized the transfer remains part of the pleaded dispute. Barrows's Section 664 defense assumes that lawfulness. General statutes permitting domestic-relations orders do not establish that this instrument qualified under federal law or that the alleged route to attorney fees was lawful. The TAC alleges that the April report awarded attorney fees, the later instrument recited support instead, and the Plan-directed payment ultimately funded counsel. ROA.26-10286.1065–78, 1093–97, 1198, 1200–02. Section 664 reaches assets of an employee benefit plan regardless of the named payee when the pleaded conduct satisfies one of the statutory means. The Rule 12 question is therefore whether the alleged transaction plausibly fits those means; appellees cannot resolve that question by treating the disputed instrument as lawful at the outset.

83. Barrows's "civil remedy" characterization likewise does not answer the statutory allegations. A family proceeding is the setting, not an exemption from an act indictable under § 664 and enumerated by § 1961(1)(B). *United States v. Andreen* confirms that an attorney's knowing assistance may constitute participation in an underlying § 664 offense without personal receipt of plan assets. The attorney there knew the plan restrictions, proposed a deceptive "deferred compensation" label,

assisted the disbursements and concealment, and was convicted under § 664 and 18 U.S.C. § 2. 628 F.2d 1236, 1244–49 (9th Cir. 1980).

84. The TAC uses § 2 for attribution within the RICO theory. TAC paragraph 167 alleges that Barrows's, Ybarra's, and Pigg's preceding mail, wire, and agreement acts aided completion of the § 664 act; paragraph 182 alleges that Barrows and the Firm aided one another and other defendants; and paragraph 415 makes a parallel allegation as to U.S. Bank. ROA.26-10286.1096, 1099, 1132. Yan also developed facilitation and § 1962(d) agreement in trial responses concerning Ybarra, the State Bar defendants, U.S. Bank, and Pigg. ROA.26-10286.1426–31, 1506–07, 2025–26, 2646–48, 3036–38. Under *Salinas*, a participant who knowingly assists the alleged § 664 act in furtherance of the shared objective may be a § 1962(d) conspirator even without receiving the assets or personally committing two predicates. 522 U.S. at 63–66. Those allegations plausibly show each actor's knowledge, agreement, participation, and causation.

85. The judgment's stated predicate rationale falls under *Bridge* and *Bhagat*. The district court never applied any Section 664 means to the alleged Plan assets, limited-purpose custody, redirection, authorization, scienter evidence, assistance, or injury. ROA.26-10286.2090–95. Barrows's alternative ground still fails to address every statutory means and the TAC's June mailing, later interstate communications, and separate September transaction under the correct Rule 12 standard.

86. For injury and causation, the TAC alleges one completed $25,000 consequence: the September 2022 distribution depleted Yan's retirement account and impaired his access to the account. ROA.26-10286.1097–98. That is not duplicate damages for the attorney-fee obligation. It is the property injury produced by a distinct transaction: Pigg assented to an instrument directing the Plan, rather than Yan personally, to transfer Yan's benefits to another payee. Barrows Br. 5, 21. Pigg's assent supports the Section 1962(d) agreement element and links that agreement to the injury-producing instrument. Issuance and service deployed that instrument against the Plan; the resulting restraint and ultimate $25,000 depletion supply the concrete property injury. That completed injury, together with the TAC's alleged Section 664, mail-fraud, and wire-fraud predicate acts, supplies the factual universe for review of the RICO judgment. The TAC does not depend on a second completed distribution.

87. The TAC alleges a completed September 2022 distribution and a continuing loss of access to Yan's Minnesota retirement account from August 2022 forward. ROA.26-10286.1097–99 ¶¶174–78. Credited at the Rule 12 stage, those allegations plead loss of identified property and loss of access or control without relying on PFAC Exhibit 20, the later July 2023 writ, or any proposed-pleading allegation.

88. The TAC's pleaded September distribution and continuing loss of account access control the Rule 12 injury analysis. Any additional writ or restraint allegation in the PFAC belongs only to Rule 15 futility and cannot be used to cure the TAC.

**C. Common continuity analysis is proper only for a common pattern.**

89. A common continuity analysis is appropriate only when the claims rely on the same pattern and common elements. *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 203–04 & n.5 (5th Cir. 2024), explained: "we analyze them together." That sentence permits a common continuity analysis for a genuinely shared predicate pattern. It does not authorize combining materially distinct patterns tied to different enterprises or importing one person's nonattribution objection into another enterprise theory.

90. Section 1961 separately defines "person," "enterprise," "racketeering activity," and "pattern." 18 U.S.C. § 1961(1), (3)–(5). *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 497 (1985), found "[t]here is no room in the statutory language" for "an additional, amorphous 'racketeering injury' requirement" and directed that "RICO is to be read broadly." *EEOC v. SkyWest Airlines, Inc.*, No. 25-10491, slip op. at 9 (5th Cir. July 9, 2026), likewise forbids courts to "graft an absent provision" onto statutory text. The Barrows brief cannot convert continuity factors into categorical one-victim or one-scheme requirements.

**A continuity ruling cannot supply the distinct RICO, causation, immunity, remedy, or dismissal analyses it does not perform.**

91. Continuity belongs to the alleged predicate pattern, but the pattern must be mapped to the enterprise and substantive RICO route actually pleaded. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–63 (2001), requires "two distinct entities," yet holds that a natural person and a corporate enterprise are distinct. *Boyle v. United States*, 556 U.S. 938, 944–48 (2009), likewise recognizes an association-in-fact enterprise without requiring a formal legal entity. The State Bar and Barrows Firm theories therefore require separate pattern and enterprise analysis. Attribution, operation, and agreement must then be assessed for each alleged person. **The Barrows brief does not perform the required analysis.**

**D. The Barrows brief develops no Section 1962(a) investment-injury ground.**

92. The Barrows brief lists "investment injury" in its issue statement, Barrows Br. 2, but pages 20–32 develop only continuity and predicate-act grounds. Listing an issue does not supply a rule under Section 1962(a), authority, or TAC application.

93. The Barrows brief's investment-injury reference supplies no alternative ground for affirmance. It develops no separate analysis under Section 1962(a). TAC ¶¶ 157–59, 167–70, and 178, read cumulatively and favorably to Yan, permit the inference that the $25,000 entered the Firm and financed continued operations and alleged conduct that prolonged Yan's loss of account access. ROA.26-10286.1092

¶¶ 157–59; ROA.26-10286.1096 ¶¶ 167–70; ROA.26-10286.1099 ¶ 178. The Court should not construct a contrary Section 1962(a) defense in the first instance.

### E. *D&T* turned on an exhausted target, not one victim; the TAC alleges a repeatable method operating through family-court process.

94. **Barrows's one-victim theory converts a continuity consideration into a numerical condition Congress did not enact.** Barrows Br. 21–26; ROA.26-10286.1455–56. Congress said "[a]ny person injured." Congress said "at least two acts." Section 1961(5) counts predicate acts; Section 1964(c) authorizes suit by "**[a]ny person injured** in his business or property." 18 U.S.C. §§ 1961(5), 1964(c). Congress did not say "two victims" or "**at least 2 persons injured**." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–43 (1989) confirms that two predicates are only the statutory minimum because continuity remains separately required. *D&T* says limited victim count is "[t]hough by no means conclusive" and the absence of multiple schemes or victims is "not dispositive." 98 F.4th at 206–07. That cannot become a two-victim prerequisite. Opening Br. 86–92 preserved the pattern issue. Barrows's "no cognizable risk of future harm to Yan" formulation asks the wrong question. Open-ended continuity asks whether the alleged racketeering activity threatens repetition, not whether the same victim will suffer a second transfer. *H.J. Inc.*, 492 U.S. at 242–43.

95. ***D&T*'s own reasoning identifies the material distinction as exhaustion, not victim count.** Global was the "only targeted victim," while the **objective** was

siphoning **Global's trade secrets and assets**. The scheme reached its endpoint only after those assets were transferred, Global became economically defunct, there was "nothing more" to loot, and no other target companies were identified. 98 F.4th at 206–10. *D&T* also relied on the rule that once a scheme reached its logical conclusion the defendants could no longer pose a "continuous threat as RICO persons." *Id.* at 208. Its result therefore rested on exhaustion of the pleaded target and objective, not a rule that one victim ends continuity. The alleged objective of the racketeering scheme is to **unlawfully extract** Texans' ERISA-protected retirement funds to **pay attorneys' fees** by **repeatedly relabeling** those fees as "support." *In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993), supplies no endpoint here because it found no future threat where every alleged predicate belonged to litigation "which has ended." Barrows instead describes Yan's divorce as "ongoing." Barrows Br. 21. That ongoing proceeding, together with the pleaded continuing enterprises and retirement-account-to-fees method, defeats Barrows's effort to transform one completed $25,000 distribution into a Rule 12 finding that the alleged method was exhausted.

96. **The TAC alleges a materially different, nonexhausted structure.** Yan is the alleged victim, not the objective. The Plan assets are the alleged property target; obtaining attorney fees from them is the immediate economic objective; and support relabeling plus Plan-directed process is the alleged method. Barrows's email states

that connection: "for us to obtain our attorney's fees," the order had to say spousal support. Barrows Br. 5; ROA.26-10286.1139. The TAC also alleges family-court process as a recurring platform for obtaining attorney fees from federally protected retirement funds and identifies an earlier family-court victim. ROA.26-10286.1085 ¶125, 1091 ¶155, 1203–04. That alleged method was not exhausted by one $25,000 transfer; continuity asks whether it threatened repetition.

97. **Enterprise mapping keeps the routes separate.** For the State Bar enterprise, the earlier family-court victim and 401(k)-to-fees episode support alleged recurrence without attributing the 2014 actors to the Barrows Firm. ROA.26-10286.1085 ¶125, 1091 ¶155, 1203–04. For the Firm route, paragraphs 157–59 allege continuing operations, marketing, expansion, and solicitation, while paragraphs 168–70 allege the 2022–23 revenue and operations loop. ROA.26-10286.1092 ¶¶157–59; ROA.26-10286.1096–97 ¶¶168–70. *EnvTech*, 178 F.4th at 228–31, applying *D&T* and *Abraham v. Singh*, 480 F.3d 351, 355–56 (5th Cir. 2007), evaluates open-ended continuity cumulatively (the alleged modus operandi, the enterprise's ongoing business, and facts supporting continued use) and holds that an apparent pause does not abate the threat where those allegations plausibly show unchanged practices. The question is whether the alleged method remained repeatable within each enterprise; "singular alleged victim" does not answer it.

98. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 410–11 (6th Cir. 2012) and *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529–30 (9th Cir. 1995) likewise reject hindsight as the continuity measure. Yan does not count the grievance dispositions as predicates or as concealment extending a completed transfer. They bear on whether the alleged State Bar-enterprise mechanism remained intact after notice and capable of repetition. Open-ended continuity rests on the ongoing enterprise and repeatable method, not concealment duration. ROA.26-10286.1084–85, 1088–99, 1130–32, 1146–55. Those allegations require Rule 12 analysis for each enterprise consistent with *D&T* and *EnvTech*.

**F. Exhibit 9 supports continuity for the relevant enterprise pattern.**

99. Barrows's own footnote concedes that Exhibit 9 was attached to the TAC. Barrows Br. 24 n.3. Under *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014), the exhibit is part of the Rule 12 record. Exhibit 9 records a 2014 family-court report authorizing a 401(k) withdrawal and connecting part of it to attorney fees. ROA.26-10286.1085, 1204. Its redactions and silence do not directly contradict the TAC or establish the plan, payment path, authority, Plan-asset status, lawfulness, or intent. The report therefore cannot be rejected at Rule 12 merely because its participants or formal classification differed.

100. Different actors in the 2014 episode affect attribution, while the recorded mechanism still supports enterprise-wide recurrence. For the State Bar enterprise,

cross-case use of a similar 401(k)-withdrawal and fee mechanism supports the pleaded regular method without attributing the earlier event to the Barrows Firm. Formal classification of the report may affect predicate status, but its recorded mechanism still supports the favorable recurrence inference. The TAC separately alleges the 2022 Section 664, mail, and wire acts. The report therefore remains part of the Rule 12 continuity analysis despite differences in participants or form.

101. **Barrows's one-victim/one-transaction argument does not establish finiteness.** *Landry* treats a common objective, common participants, and common victims as evidence of relatedness; continuity remains a distinct inquiry driven by the facts. 901 F.2d at 432–33. The TAC did not offer a bare statewide assertion: it alleged additional family-court victims and incorporated a 2014 report authorizing a $12,000 401(k) withdrawal, with $6,000 tied to counsel's IOLTA pending fees. ROA.26-10286.1085 ¶ 125, 1203–04. The PFAC then supplied concrete recurrence: retirement-account-to-attorney-fee instruments from 2009 through 2014; Yan's separate 2022 order-and-writ sequence; an unexecuted July 2022 writ threatening another $25,000 distribution; and a December 2, 2024 Comal County order requiring another participant to borrow up to $35,000 from his 401(k) for interim attorney fees. ROA.26-10286.2704–08 ¶¶ 47–74; 2717–20 ¶¶ 126–40; 2858–59; 2932–61. **Those pleaded and incorporated documents establish documented recurrence**

**involving multiple participants and counties, not a finite transaction exhausted by the September 2022 distribution.** *D&T*, 98 F.4th at 206–10.

102. **The PFAC's Rule 15 allegations separate four implementation states rather than pleading four completed distributions.** First, the June 16 writ allegedly culminated in the September 2022 $25,000 distribution to Wang and the ensuing attorney-fee payments; that is the pleaded completed implementation. ROA.26-10286.2706–07. Second, the July 14 writ was separately issued and served on U.S. Bank but remained unexecuted; its pleaded implementation is a continuing restraint or encumbrance and threatened second distribution, not a second completed payment. ROA.26-10286.2706–08. Third, U.S. Bank allegedly implemented the disputed instrument set by acknowledging a direct conflict, rejecting Yan's objection within four hours without the pleaded committee review, changing his recorded marital status, and making the one distribution. ROA.26-10286.2710–11. Fourth, the May 2024 motion and alleged refusal to correct the outstanding writ are later-maintenance allegations supporting continuing effect and prospective relief; the PFAC does not plead that episode as another transfer. ROA.26-10286.2713–14. Credited under Rule 15's futility standard, those distinct pleaded acts and effects defeat a single-payment finiteness premise without overstating execution of the second writ or attributing a second distribution to any appellee.

103. Barrows herself recognizes two open-ended routes: ordinary practice or participation in a broader ongoing RICO enterprise. Barrows Br. 24. Her application never performs the TAC's separately alleged State Bar-enterprise pattern mapping; a Firm-centered objection cannot decide that broader Section 1962(d) route. The Firm remains outside the broader State Bar conspiracy route except through the theories expressly pleaded against it.

**G. The alleged transfer supplies direct property injury and causation.**

104. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 600–07 (2025), makes property injury straightforward. Civil RICO requires harm to business or property, not invasion of a separately defined legal right. The TAC alleges that $25,000 left Yan's identified retirement account and that he lost account access. His property itself was harmed.

105. Section 664 makes the directness inquiry under *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268–70 (1992), an affirmative strength. It criminalizes unlawful and willful abstraction or conversion of pension-plan assets "to his own use or to the use of another." 18 U.S.C. § 664. Yan is the participant whose identified Plan assets allegedly funded the challenged legal-fee payment. The transaction allegedly moved $25,000 from his account through the Firm-directed route, with no intervening victim or derivative injury. *Holmes*, 503 U.S. at 268–70. Plaintiff, property, predicate, and loss align directly.

106. The TAC links the alleged Section 664, mail-fraud, and wire-fraud predicates to the completed $25,000 depletion and continuing loss of account access. Section 664 supplies the direct taking; the communications support execution and agreement. No proposed amendment is needed to establish the pleaded injury.

**H. The TAC alleges agreement under Section 1962(d).**

107. A conspirator need not personally commit two predicates. *Salinas* and *Beck* supply the governing agreement rule. Section 1962(d) does not require every conspirator to commit an overt act or two predicates; agreement suffices when the defendant adopts the goal of "furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 63–65 (1997). *Beck* likewise confirms that a civil plaintiff may sue co-conspirators "who might not themselves have violated one of the substantive provisions of § 1962." 529 U.S. 494, 507 (2000). The TAC maps those rules to the drafted papers, Pigg's signatures, Ybarra's receipt, the August 5 solicitation, interstate transmission, and the shared attorney-fee objective. ROA.26-10286.1092–98.

108. The completed Section 664 transfer supplies the independently wrongful injury-producing act *Beck* requires. The injury-causing overt act must be racketeering activity or otherwise independently wrongful under RICO. 529 U.S. at 505–07. Here the alleged injury-producing act is the September 2022 unlawful and willful abstraction or conversion of Plan assets under Section 664, the same

transaction alleged to have depleted Yan's account by $25,000. ROA.26-10286.1092–98, 1139. The material substitution and communications support deception, intent, agreement, and causation; the completed Section 664 transaction supplies the independently wrongful injury-causing act.

109. Operation or management is a Section 1962(c) requirement, while Section 1962(d) turns on agreement. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *Salinas*, 522 U.S. at 63–65. PFAC Count Two therefore need only plausibly allege agreement to facilitate the contemplated Section 1962(c) offense; it need not show that every conspirator operated the enterprise or personally committed the predicates.

110. This appeal need not reach *Beck*'s reserved question about a separately actionable completed substantive violation. 529 U.S. at 506 n.10. That reserved question is not presented: the TAC alleges a completed injury-causing Section 664 predicate within the pattern tied to that enterprise and separately alleges Section 1962(d) agreement. The pattern rule in *Malvino v. Delluniversita*, 840 F.3d 223, 231, 233 (5th Cir. 2016), does not require every conspirator personally to commit the predicates.

**I. Each alleged RICO actor has a distinct pleaded role.**

111. The TAC pleads a three-stage sequence of assent, concealment after objection, and renewed assent before the alleged distribution. ROA.26-10286.1092–

98, 1139–42. The sequence supports a reasonable agreement inference at the Rule 12 stage.

112. The Barrows brief says the alleged conduct was confined to representing Wang in the divorce and that the TAC identifies no particular fraudulent statement. Barrows Br. 18, 28–30. The TAC alleges otherwise. Ybarra represented Wang in municipal criminal cause No. E0129990-1. Yet Barrows swore that the attached invoices reflected work "in this case," even though they included charges from that criminal matter, including a $500 municipal-court hearing. ROA.26-10286.1074–75, 1157–59, 1185. An affidavit cannot change which proceeding generated the billed work. The allegation identifies the speaker, statement, document, date, falsity, and fee objective. Calling the later QDRO lawful leaves that pleaded false-statement theory untouched.

113. The Barrows brief's collective treatment of herself, Ybarra, and the Firm fails to address Ybarra's alleged role. Liberally construed, the TAC alleges more than passive knowledge: the Firm paid Ybarra to operate the challenged activities; she performed the separately billed criminal work; received the mixed submission and related communications; attended the fee hearing after Yan identified the criminal charges; and was copied on the August 5 "our attorney's fees" email. ROA.26-10286.1074–78, 1091–98, 1139. Those allegations plausibly support some part in directing the Barrows Firm enterprise's affairs at the Rule 12 stage. *Reves v. Ernst*

& *Young*, 507 U.S. 170, 179 (1993). They also support Ybarra's own knowledge, assent, participation, and agreement under *United States v. Delgado*, 401 F.3d 290, 296–97 (5th Cir. 2005), and *Salinas*, 522 U.S. at 63–66.

114. Yan preserves the TAC's liberally construed Section 1962(c) allegations against Ybarra because the with-prejudice dismissal must be reviewed on the operative pleading. The PFAC, however, narrows Ybarra's proposed future liability to Count Two under Section 1962(d), and that proposed structure must be tested independently under Rule 15.

115. The Firm's facilities, communications, payment route, benefit, and agents separately support the pleaded attribution and vicarious-liability theories. ROA.26-10286.1087–1100.

116. First, appellees' quoted accounts confirm the fee award, later support recital, signature, and Firm payment route. Barrows Br. 4–5; Pigg Br. 14; ROA.26-10286.1106, 1200–02. Section IV.B sets out their exact words. The pleaded inference of coordination controls at the Rule 12 stage.

117. Second, Pigg's alleged resistance narrative supports concealment after Yan objected. The TAC alleges that he portrayed Barrows as the sole actor he was trying to stop, while his alleged signature, nondisclosure, and later payment assurance support the contrary inference that he participated. ROA.26-10286.1077–78, 1139–42, 1200–02. That is how Pigg allegedly covered for Barrows: not by denying her

conduct, but by concealing their coordination and making Yan believe his own counsel was stopping the transfer. The agency dictum Barrows quotes arose from counsel's procedural failure to appear, not alleged adverse coordination and concealment. Barrows Br. 31, 36. It does not convert Pigg's alleged signature into Yan's consent at the Rule 12 stage.

118. Third, Barrows's August 29 request and Pigg's immediate payment assurance occurred after the alleged alteration, Plan deployment, Yan's objection, U.S. Bank's conflict notice, and Barrows's August 5 statement. ROA.26-10286.1096, 1139, 1142, 2034–35; Barrows Br. 29. Calling the request "clarification" does not determine its function. Credited at the Rule 12 stage, the exchange supports renewed assent and a post hoc cover-up inference before the alleged September distribution.

119. Credited at the Rule 12 stage, the third stage supports an inference of renewed assent after Yan's objection disrupted enforcement. Pigg disputes that the acknowledged coordination was an agreement to facilitate an unlawful endeavor. Pigg Br. 11–13. That dispute concerns the character and purpose of the coordinated conduct. *EnvTech* rejects Pigg's requested tie-breaker: there is no rule that "a tie must go to the defendant"; "the ordinary pleading rules counsel otherwise." 178 F.4th at 222–23.

**J. The affected RICO dismissals require vacatur and remand.**

120. Barrows and Ybarra. The TAC identifies them as alleged Section 1962(c) persons, the Barrows Firm as the enterprise, and the 2022 mail, wire, and Section 664 sequence as the pattern. Its broader Section 1962(d) allegations concern agreement to facilitate the overlapping State Bar enterprise endeavor. ROA.26-10286.1081–84, 1095–98, 1139, 1146–55. A continuity ruling directed to the Firm-centered pattern reaches only that route; the separate agreement theory retains its own enterprise, actors, injury, and causation analysis. Vacatur and remand therefore must remain tied to the claim, person, enterprise, agreement, injury, and dismissal actually at issue. The Firm is not treated as both a Section 1962(c) person and enterprise.

121. Pigg and DeAngelis. The TAC alleges Section 1962(d) agreement to facilitate a contemplated Section 1962(c) violation, not personal commission of two predicates. Pigg's route concerns the Barrows Firm transaction; DeAngelis's route concerns alleged April facilitation and the overlapping State Bar enterprise theory. Opening Br. 86–92. Any remand must remain defendant, capacity, immunity, remedy, and dismissal specific.

122. Marin, Martinez, Craig, and the State Bar present a different Section 1962(d) route. The contemplated substantive violation is the alleged Section 1962(c) conduct of the State Bar enterprise and its pleaded predicate pattern. The individuals are

alleged as persons or conspirators; the State Bar's alleged role as a person or conspirator remains distinct from its role as the enterprise. The TAC alleges that the 2022 predicates caused the original depletion, Yan continued to lose account access, and later institutional conduct protected an unfinished endeavor and recurring mechanism after notice. ROA.26-10286.1084–85, 1098–99. Those later acts support inferences of knowledge, agreement, continuation, concealment in furtherance, later injury, and threatened repetition. Section 1962(d) does not require every conspirator personally to commit the act causing injury. *Beck* requires civil injury from racketeering activity or another act independently wrongful under RICO. Neither the district court nor appellees applied those principles to the later acts and continuing property injury alleged against these defendants. That omission cannot support affirmance with prejudice in the first instance. Any jurisdictional disposition remains without prejudice, and remand remains limited to the capacities and remedies preserved at Opening Br. 77–81.

123. U.S. Bank's appellate account addresses the transaction's origin but not its own affirmative post-notice conduct under the pleaded Section 1962(d) theory. *Salinas* requires agreement to further or facilitate the contemplated criminal endeavor, and *Hernandez v. Causey* recognizes that an explicit or implicit agreement may be inferred from specific allegations and a history of interactions. 522 U.S. 52, 63–65 (1997); 124 F.4th 325, 337–38 (5th Cir. 2024). The TAC identifies the

contemplated substantive violation as the alleged Barrows Firm Section 1962(c) offense through the 2022 mail, wire, and Section 664 pattern and incorporates the preceding allegations into U.S. Bank's Ninth Claim. ROA.26-10286.1088–96, 1130–32. *United States v. Blackthorne*, 378 F.3d 449, 454 (5th Cir. 2004), confirms that a person may join an ongoing conspiracy after earlier acts. The pleaded sequence (Yan's objection, U.S. Bank's direct-conflict acknowledgment, its qualification decision, status alteration, communications, and completed distribution) supports the favorable Rule 12 inference of knowing facilitation and agreement after notice. ROA.26-10286.1130–32, 2030–35. Vacatur and remand are required for agreement, causation, injury, and remedy analysis, while the ERISA qualification and separate-accounting theory remains independent.

124. The Barrows brief's investment-injury reference concerns TAC Section 1962(a); the PFAC instead invokes Sections 1962(c) and (d) and seeks both damages and prospective relief. ROA.26-10286.2724–41, 2781. Any unavailability of a private RICO injunction would limit that remedy alone. The Sections 1962(c) and (d) damages claims under Section 1964(c) and Count Five's independent Section 1132(a)(3) ERISA remedies would remain. *L.W. Laird v. Integrated Res., Inc.*, 897 F.2d 826, 841–42 (5th Cir. 1990). Injunction uncertainty therefore supplies no futility ruling on the pleaded RICO predicates or damages claims.

125. The prospective RICO request also presents an open question that turns on the facts. The Fifth Circuit "has not decided whether equitable relief is available to a private civil RICO plaintiff." *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 354 (5th Cir. 2003). *Richard* requires relief aimed at ongoing or future conduct rather than compensation for completed injury. *Id.* at 354–55. The PFAC alleges an outstanding served writ, continuing account restraint, threatened execution, and corrective notice directed to outstanding process. ROA.26-10286.2697–2727, 2781–82. Those allegations fit *Richard*'s prospective focus.

126. Persuasive authority confirms that the issue cannot be resolved through a global futility label. The Seventh Circuit read Section 1964 to authorize private RICO injunctions, while the Supreme Court reversed on other grounds and expressly declined the question. *Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687, 695–700 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393, 397, 411 (2003). The Second Circuit later authorized injunctions against state proceedings allegedly used to perpetuate ongoing RICO schemes. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac., P.C.*, 120 F.4th 59, 95–99 (2d Cir. 2024); *Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 282–83, 298–99 (2d Cir. 2026). *In re Fredeman Litig.* reserved relief beyond an asset freeze securing a possible money judgment, and *Richard* rejected retrospective disgorgement. 843 F.2d 821, 825–31 (5th Cir. 1988); 355 F.3d

at 354–55. The PFAC's ongoing-process request requires analysis of the proper remedy on remand.

127. The Anti-Injunction Act presents a question about the proper remedy, not global futility. *Tri-Borough* held that RICO falls within the "expressly authorized" exception where state proceedings themselves form a pattern of baseless or repetitive instruments used to perpetuate the RICO violation. 120 F.4th at 95–99. The PFAC alleges that the outstanding writ and related process are implementation instruments maintaining the challenged Plan restraint. ROA.26-10286.2697–2727, 2781–82. Section 2283 may limit withdrawal of that particular writ, but any such limit reaches only that remedy. The Sections 1962(c) and (d) damages claims, pleaded Section 664 predicates, future-conduct relief, and Count Five's independent ERISA remedies remain for their own analysis.

128. Agreement comes first. Silence cannot create original membership, and withdrawal "presupposes" that the defendant already joined the conspiracy. *Smith v. United States*, 568 U.S. 106, 111–14 (2013). Once membership in a continuing Section 1962(d) conspiracy is established, however, "[p]assive nonparticipation" does not sever it. Withdrawal requires "affirmative action" to disavow or defeat the conspiratorial purpose. *Id.* at 112–13. Yan expressly preserved that answer below: "Ms. Ybarra never took affirmative action to withdraw from the conspiracy" and "never communicated her withdrawal to all co-conspirators." ROA.26-10286.1432.

That later response preserves the legal theory and Yan's construction of the TAC; it does not retroactively add facts to the operative complaint. At the Rule 12 stage, whether under Rule 12(b)(6) or Rule 12(c), appellees cannot turn alleged affirmative participation into withdrawal merely by pointing to later inactivity.

129. Later communications support the TAC's pleaded notice, knowledge, agreement, continuity, and concealment inferences. The complete Marin, Martinez, BODA, and Craig sequence appears once in Section VI.G, and the incorporated notices distinguish the initial Inquiry classifications, BODA reversals, antecedent CDC no-Just-Cause determinations, routing, and later panel votes. ROA.26-10286.1146–55. *D&T* and *Grunewald v. United States*, 353 U.S. 391, 401–05 (1957), distinguish concealment after an objectively completed scheme from conduct that furthers an active objective. The TAC alleges continuing loss of account access and post-notice acts protecting enforcement and repetition; *United States v. Sharpe*, 193 F.3d 852, 867 (5th Cir. 1999), recognizes that later falsehoods may further active objectives while the enterprise continues receiving benefits. Credited cumulatively, those allegations support an unfinished objective, continuity tied to the enterprise, and agreement. ROA.26-10286.1084–85, 1130–32.

130. The PFAC allegations govern Rule 15. They allege withdrawal after exposure while a second writ remained served. ROA.26-10286.2697–2727. Yan's judicial-notice filing presents a sheriff's report recording that Pigg said he chose not to sign

and believed no one intended to lie or commit perjury, despite certified orders bearing his alleged signatures. Appellant's Opposed Mot. for Jud. Notice 4–5 & Appx. 016, Doc. 73 (July 7, 2026) (seeking notice of recorded contents, not truth); *compare* ROA.26-10286.2327–37. *Smith* and *Grunewald* make the PFAC sequence relevant: nonparticipation is not withdrawal, concealment may further an active conspiracy, and the served writ supports continuation. The PFAC supports knowledge, agreement, and concealment; the report supplies neither a predicate nor causation.

131. Pigg reasons that because Yan sued him individually, he was acting "in his personal capacity rather than as a state actor." Pigg Br. 15. That conflates suit capacity with the state-action inquiry. Individual capacity identifies the form of liability sought; it does not determine whether the challenged conduct occurred under color of law through joint or state-assisted action. *Hafer v. Melo*, 502 U.S. 21, 25–28 (1991); Opening Br. 81–86.

## VI. Civil use of deliberate fabrication to obtain retirement property required claim-specific Section 1983 analysis.

### A. The preserved theory required separate analysis of the constitutional deprivation and actor attribution.

132. That omitted constitutional theory supplies a short remand route. The TAC alleges that the April 13 report awarded attorney fees from Yan's retirement account; the later instrument recited a $25,000 spousal-support obligation although no

support request, hearing, or ruling occurred; and the altered recital was deliberately used through state process to obtain Plan property. ROA.26-10286.1070, 1076–79, 1198–1202. At the Rule 12 stage, whether under Rule 12(b)(6) or Rule 12(c), those allegations and incorporated documents receive the favorable inference unless an incorporated document directly contradicts them. Appellees' own descriptions reproduce the documentary sequence while disputing its legal significance, intent, attribution, and liability. Barrows Br. 4–6, 21; Pigg Br. 5, 14; State Bar Br. 25. No district-court Section 1983 ruling analyzed the preserved fabrication-and-use property-deprivation theory. ROA.26-10286.2082–93, 2984–89; Opening Br. 43–54, 72–86, 92–96. The preservation record shows that Yan presented the premise below: his DeAngelis opposition argued that no pleaded support claim, hearing, evidence, or notice authorized the later property deprivation and invoked due process, function, and clear absence; his FCR objections distinguished an independent federal fabrication-and-property claim from review of the family judgment. ROA.26-10286.1329–39, 1704–08. That omitted constitutional inquiry is antecedent to, and distinct from, the attribution questions as to each defendant.

133. Appellees' private-actor premise addresses attribution; it does not eliminate the underlying constitutional inquiry. *Dean v. Phatak*, 162 F.4th 555, 565–66, 572 (5th Cir. 2025), recognizes deliberate fabrication and use of false evidence as a due-process injury. *Calhoun v. Collier*, 78 F.4th 846, 851–52 (5th Cir. 2023), confirms

that funds held in an account are protected property and that due process governs deprivation of their use. Civil-proceeding authorities confirm that the same constitutional rule applies when false material is used to obtain deprivation of a protected liberty or property interest. *Costanich v. Dep't of Soc. & Health Servs.* held that deliberately fabricated evidence used in civil proceedings violates due process when a protected liberty or property interest is at stake. 627 F.3d 1101, 1108, 1111–14 (9th Cir. 2010). *Benavidez v. Cnty. of San Diego* applied that rule at Rule 12 and held a deliberate or reckless falsehood material when the civil court plausibly would have declined the order had the actor been truthful. 993 F.3d 1134, 1146–49 (9th Cir. 2021). *Jones v. State* held that the fabrication rule applies "with equal force" in a civil licensing proceeding because the resulting deprivation concerned protected property. 170 Wash. 2d 338, 349–52, 242 P.3d 825, 831–33 (2010) (en banc). The TAC identifies the protected retirement property, the exact false support recitals, the absence of a support request or hearing, deliberate civil use, and the resulting $25,000 retirement-account deprivation. ROA.26-10286.1076–80, 1092–98, 1114–20, 1198–1202. Those allegations state the preserved fabrication-and-property theory and required analysis of each claim. Because the district court omitted that analysis, *Thompson v. McGehee*, 183 F.4th 353, 375 (5th Cir. 2026), requires remand for first-instance consideration of the fabrication claim. *Dennis* and *Lugar* supply the separate attribution rules addressed next.

134. Attribution remains separate. Whether a private defendant is liable under Section 1983 turns on whether the alleged joint participation constitutes action under color of law. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982). *Hernandez* permits an "explicit or implicit" agreement inferred from specific allegations and a history of interactions. *Hernandez v. Causey*, 124 F.4th 325, 337–38 (5th Cir. 2024). The TAC alleges the April fee report, Barrows's April drafted order, Pigg's submission, the May order, the June mailing, and the August 5 statement of the wording required to obtain the attorneys' fees. ROA.26-10286.1070, 1074–79, 1093–95, 1139, 1198–1202. Those dated roles, instruments, and communications supply circumstances for the alleged joint participation. Private status therefore does not answer whether the preserved fabrication-and-property due-process theory is adequately pleaded, and attribution cannot be resolved by assuming the later support recital was true.

135. Immunity follows function and setting. *Kalina v. Fletcher*, 522 U.S. 118, 127, 129–31 (1997), held that a lawyer who personally attests to facts needed to obtain coercive process performs the function of a complaining witness, not an immune advocate: "Testifying about facts is the function of the witness, not of the lawyer." *Austin v. Borel*, 830 F.2d 1356, 1361–63 (5th Cir. 1987), likewise denied absolute immunity for an allegedly false verified complaint that initiated temporary custody. Barrows allegedly vouched for factual averments in the verified motion used to

initiate the fee award. That is the function of a witness. The same functional rule governs sworn material used to obtain civil property relief. In *Hamann v. Charter Twp. of Van Buren*, an unsupported sworn good-cause assertion used to reinstate civil forfeiture, including restraint of property that included a retirement account, placed the prosecutor in the complaining-witness function rather than the absolutely immune advocacy function. No. 20-10849, 2021 WL 5312638, at *3, *9–10 (E.D. Mich. Nov. 15, 2021).

136. The TAC pleads materiality and causation through a specific document-to-deprivation chain. The April report awarded attorney's fees from Yan's retirement account; the later instrument newly recited that support had been requested, heard, ordered, and remained due; Barrows allegedly drafted and transmitted that instrument; Pigg signed it; the instrument was used through state and Plan process; and the TAC alleges that $25,000 was then depleted from the Plan. ROA.26-10286.1076–80, 1092–98, 1139–42, 1198–1202. Those allegations satisfy *Benavidez*'s pleading-stage materiality inquiry because they plausibly allege that a truthful description of the April fee proceeding would not have supplied the stated support predicate for the challenged order. 993 F.3d at 1148–49. They also plead foreseeable causation: *Jones* held that an intervening decisionmaker does not sever the chain when fabricated material foreseeably produces the property deprivation, 170 Wash. 2d at 354–56, 242 P.3d at 834–35, and *Morris v. Dearborne* likewise

rejects treating the tribunal's order as an automatic break when false evidence allegedly compromised the proceeding, 181 F.3d 657, 672–73 (5th Cir. 1999). The pleaded chain therefore required analysis of falsity, scienter, materiality, process, attribution, immunity, and causation.

**B. The TAC alleges notice and coordination beyond *Richard*'s innocent-judge premise.**

137. *Richard*'s innocent-agent result rested on the absence of alleged judicial involvement. *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 353 (5th Cir. 2003). Here the TAC alleges that **DeAngelis heard Yan identify the criminal-case charges** and **issued the April retirement-fund directive**, followed by **private alteration** and **state-process use**. ROA.26-10286.1074–78, 1198, 1200–02. *Richard*'s competing innocent-agent inference cannot control at the Rule 12 stage. U.S. Bank's reliance on *Fairley v. PM Mgmt.-San Antonio AL, L.L.C.*, 724 F. App'x 343, 345 (5th Cir. 2018), fails for the same scope reason. *Fairley* and *Richard* reject state action based only on compliance with a court order; they do not address pleaded participation beyond ministerial obedience after notice of an objective conflict and an independent federal-plan decision.

**C. *Lugar* also reaches the alleged state-assisted property deprivation.**

138. State-assisted deprivation exists when a private party uses state-created procedure and obtains significant official aid. *Lugar*, 457 U.S. at 936–42. The TAC alleges drafting, approval, signature, issuance, service, and use of official

instruments to restrain and transfer retirement property. ROA.26-10286.1076–79, 1093–97, 1139–42, 1198–1202. The later U.S. Bank letter and counsel objection further support notice before the transfer. ROA.26-10286.2020, 2030, 2034–35.

139. U.S. Bank's own account describes an independent Plan function rather than automatic obedience. It evaluated the objections, decided qualification, communicated that decision, and distributed the funds after acknowledging the documentary conflict. Credited favorably, the state process, official aid, actual notice, independent approval, and completed transfer require *Lugar* analysis as to each defendant.

140. U.S. Bank's assertion that the Section 1983 route first appeared on appeal is contradicted by the operative pleading. Claim Nine incorporated the earlier allegations and pleaded a conspiracy to abstract Plan assets. It also alleged U.S. Bank's acknowledgment of the document conflict, its qualification decision after that conflict, Yan's due-process objection, action under color of law, and the resulting transfer. ROA.26-10286.1129–32 ¶¶ 394–411. Opening Br. 92–96 presented the same *Lugar* route. This reply answers U.S. Bank's appellate formulation; it does not amend the TAC.

141. *Dennis* and *Lugar* require willful participation in the deprivation carried out with state assistance, not a personal conversation between every participant and the judge. The TAC alleges that Barrows transmitted the official instrument; U.S. Bank

received Yan's objection and the April fee report, acknowledged conflict, made its own qualification decision, rejected the due-process objection, and completed the $25,000 transfer. ROA.26-10286.1076–81, 1130–32, 2034–35. Those allegations support both joint action and state-assisted deprivation.

142. Barrows's agency-and-no-second-hearing theory does not establish consent or constitutionally sufficient process. It treats Pigg's signature as conclusive proof that Yan authorized the materially different support recital and treats the April 13 fee hearing as notice that the later instrument would impose that recital and operate against Plan assets. The TAC alleges the opposite: Yan did not authorize the changes; Pigg initially transmitted the April attorney-fee report as an objection; U.S. Bank acknowledged the conflict; Pigg's later communications were concealed until after the operative events; and the transfer occurred without Yan's opportunity to contest the substituted premise. ROA.26-10286.1077–78, 1095–97, 1129–31, 1139–42. Those allegations, not the word "agreed" on the challenged instrument, govern Rule 12.

143. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 627–36 (1962), addressed a federal court's Rule 41(b) dismissal after counsel failed to attend a scheduled pretrial conference against a six-year history of delay. Its attribution of counsel's procedural default rested on "all the circumstances" of that record. *Id.* at 633–35. *Link* did not hold that opposing counsel may establish actual authority, consent to a new

substantive obligation, or fidelity to an earlier ruling merely by presenting an instrument bearing counsel's signature. Nor did it authorize a court at Rule 12 to resolve a pleaded conflict between the client's lack of consent, counsel's initial objection, counsel's later alleged assent, and the instruments' materially different terms. The agency question here is part of the alleged deprivation, not an adjudicated fact that defeats it.

144. Barrows's due-process authority affirmatively supports Yan when read through its holding. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996), first recited the ordinary notice rule Barrows quotes, but then held that "the opportunity to be heard is the most fundamental requirement," vacated the judgment as void, and remanded because the party received no notice of the motion that produced judgment. The dispositive point was not that the litigant had already appeared in the civil action; it was that prior participation did not supply notice and an opportunity to oppose a later dispositive submission. *Id.* at 142–43. Here an April hearing on an interim attorney-fee request did not, as a matter of law, notify Yan that a later instrument would recite spousal support, make the Plan the payor, route payment through the Barrows Firm, or include Pigg's own unasserted fee interest.

145. Nor does the availability of mandamus complete the alternative ground. The Barrows brief does not establish when Yan received complete notice, what instrument was then operative, whether mandamus could prevent the September

transfer, or how that remedy could redress the completed Plan depletion, damages, or defendants' independent federal conduct. ROA.26-10286.1095–98, 1136, 1142. A possible state remedy may bear on the process due, but it does not prove consent, cure disputed predeprivation notice, or support a claim-wide with-prejudice merits dismissal without the missing timing, adequacy, claim, and remedy analysis. At minimum, the competing allegations concerning authorization, notice, timing, and documentary meaning foreclose this replacement ground at the Rule 12 stage.

**D. Texas attorney immunity does not displace federal claims.**

146. The Barrows brief invokes Texas attorney immunity because the conduct occurred during representation. Barrows Br. 17–18. The TAC alleges, however, that the fee submission included Ybarra's separate criminal-case charges and that Barrows reaffirmed it after Yan identified those charges. ROA.26-10286.1074–76, 1157–59, 1185. Texas immunity is conduct based; a fee-request label does not resolve the pleaded source or knowledge. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–83 (Tex. 2015). More important, state immunity cannot displace the federal claims.

147. Federal source-of-law authorities foreclose the Barrows brief's broader premise: **a State has "no power to confer immunity" from federal causes of action**. *Doe v. Dynamic Phys. Therapy, LLC*, 607 U.S. 11, 11 (2025) (per curiam) (citing *Howlett v. Rose*, 496 U.S. 356, 383 (1990), and *Haywood v. Drown*, 556 U.S.

729, 740 (2009)); *Taylor v. Tolbert*, 644 S.W.3d 637, 653–56 (Tex. 2022). The April order identified no federal attorney-immunity doctrine governing RICO, antitrust, or Section 1983. ROA.26-10286.2088–93. Barrows concedes the point material to this ground: her brief states that *Taylor* "refused to apply" Texas attorney immunity to a federal wiretap claim and acknowledges that the district court sustained Yan's immunity objection to RICO. Barrows Br. 18–19; ROA.26-10286.2089. That concession removes Texas attorney immunity as an independently sufficient ground for affirming the federal RICO dismissal; it does not concede the merits of RICO or resolve any pleading issue for any claim.

148. Direct-payor fraud and contract claims are not barred for lack of standing when they arise from solicitation, promised services, accounting failures, and allegedly unearned fees. *Carden v. Minton, Bassett, Flores & Carsey, P.C.*, No. 24-0834, 2026 WL 1851869, at *6–7 & n.37 (Tex. June 26, 2026). Seeking fees from alleged victim Yan for representing alleged aggressor Wang in a state-initiated domestic-violence criminal proceeding, and compelling a nonclient Yan to prepay Barrows additional fees, fall within the same category. The fee injury exists regardless of the result of the underlying case: "a client would be injured all the same even if he or she is acquitted." *Carden*, 2026 WL 1851869, at *10. Attorney immunity should not become a safe harbor for independent attorney-fee misconduct. When counsel pursues payment from a nonclient for counsel's own fees, counsel is

advancing counsel's own financial interest, not advocating the client's legal interests.

149. If Texas attorney immunity reaches any qualifying state-law conduct alleged here, it reaches only that conduct. Federal law governs federal statutory defenses and actor attribution, and Rule 15 remains a separate inquiry.

150. Barrows expressly relies on *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346–48 (5th Cir. 2016) to defend the Rule 12(b)(1) dismissal. Barrows Br. 17–18. That reliance fails after *United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-11184, slip op. at 3–5 (5th Cir. Aug. 12, 2026) (en banc). The en banc court dismissed for want of collateral-order jurisdiction, explained that intervening Texas Supreme Court decisions unsettled *Troice*'s Erie guess, and stated that it now "lack[s] confidence in *Troice*" and cannot make the guess that Texas law affords attorneys "the broadest possible protection from suit." *Id.* at 3–4. The court expressly did not decide whether the challenged conduct was substantively immune. *Id.* at 4. Thus, *Doe* is not a merits holding that fraud defeats immunity; it is dispositive of the procedural premise Barrows invokes. A state-law defense to liability does not withdraw federal-question jurisdiction, and after *Doe*, *Troice* cannot supply the contrary immunity-from-suit characterization. Attorney immunity therefore cannot sustain the district court's Rule 12(b)(1) dismissal or independently support affirmance on that disposition.

151. Collateral-order jurisdiction and Rule 12 sequencing independently supply no state-law defense to a federal cause of action. *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023), addresses sequencing; it does not convert a merits defense into a jurisdictional bar. At most, any Texas defense remains specific to the claim and conduct where Texas law governs; it cannot displace federal causes of action. Any ruling must remain confined to the defendant, conduct, count, remedy, and dismissal type it actually reaches.

**E. DeAngelis's immunity defense turns on the challenged function and authority.**

152. DeAngelis's immunity defense must be tested against the acts pleaded, not the label "fee award." *Stump v. Sparkman*, 435 U.S. 349, 356–62 (1978). The TAC separates (1) Barrows's dissolution-case fees and alleged prospective-or-prepayment excess; (2) Ybarra's charges for representing Wang in the separate Southlake municipal criminal case, embedded in Barrows's submission; and (3) a separate $25,000 compelled prepayment to Pigg. The third subject is not collection of an existing debt. The TAC alleges that Pigg presented no fee pleading or fee evidence and appeared as Yan's advocate, not as a fee claimant. TAC ¶¶ 9, 44, 70, 226; ROA.26-10286.1056, 1065, 1070, 1106. In Answer ¶28, Pigg admitted that he submitted no "billable hours or rates" into the second hearing, denied the no-pleading allegation, and identified no pleading asserting his own fee entitlement. ROA.26-10286.1258. That denial cannot be resolved against Yan at Rule 12. The

March 3 motion sought Wang-side fees and stated that $19,135 had been incurred; the TAC approximated the figure as $19,300. ROA.26-10286.1069, 1074, 1157. After Yan identified the criminal-case entries from the stand, DeAngelis allegedly awarded $25,000 to Barrows and separately $25,000 to Pigg, directing Yan to withdraw or borrow $50,000 from retirement, "or as much as allowed." ROA.26-10286.1074–76, 1198. The report names each attorney as an award recipient; it does not adjudicate an unpaid Pigg invoice. The TAC's compelled-prepayment account, not an assumed debt-collection controversy, governs the Rule 12 inquiry.

153. The attorney-client payment subject was preserved in Opening Br. 72–76 and at ROA.26-10286.1330–31, 1338–39. Identifying that subject implements the opening's clear-absence inquiry; judicial form does not establish authority over every subject addressed. *Forrester v. White* requires attention to "the nature of the function performed," not the officer's identity. 484 U.S. 219, 229 (1988). *Adams v. McIlhany*, 764 F.2d 294, 297–98 (5th Cir. 1985), likewise considers whether the precise act is a normal judicial function, whether the controversy centered around a pending case, and whether the act arose from a visit to the judge in an official capacity; *Brewer v. Blackwell*, 692 F.2d 387, 396–97 (5th Cir. 1982), applies the same framework. Those factors are broadly construed in favor of immunity, but they do not permit the subject to be defined simply as "fees in a pending divorce." Texas law confirms the distinction. *Kimsey v. Kimsey*, 965 S.W.2d 690, 694 (Tex. App.—

El Paso 1998, pet. denied), deleted unsupported attorney-against-client judgments while distinguishing spouse-to-spouse fee allocation. *Brown v. Fullenweider*, 52 S.W.3d 169, 170–71 (Tex. 2001) (per curiam), likewise held that allocation between spouses did not award counsel a judgment against his client and that divorce-property enforcement did not encompass counsel's independent fee claim: "An attorney's claim against his client for fees is not such an issue." *Id.* at 171. *Brown*'s post-decree posture does not decide federal immunity or temporary-fee authority. The relevant distinction is that Wang's fee request did not itself present Pigg's entitlement against Yan. The TAC alleges instead that DeAngelis imposed an unsolicited advance payment without a presented claim or fee proof. ROA.26-10286.1065, 1070, 1106, 1157, 1198.

154. The preserved clear-absence inquiry requires the actual statutory basis, not presumed compliance. *Bradley v. Fisher* distinguishes a probate judge trying a criminal case from a criminal judge exceeding jurisdiction within a criminal case. 80 U.S. (13 Wall.) 335, 351–52 (1872); *Stump*, 435 U.S. at 357 n.7. Yan's objection concerns the uninvoked attorney-client payment subject and the associate judge's delegated authority, not an automatic immunity exception for every procedural or evidentiary error. Former § 6.502(a), governing this 2021-filed suit, authorized temporary support under subsection (a)(2) and reasonable attorney's fees and expenses under subsection (a)(4), on a party's motion or the court's own motion

"after notice and hearing." Tex. Fam. Code § 6.502(a)(2), (4) (2022). Thus, the absence of Pigg's collection pleading is not the entire inquiry; own-motion authority must still be applied to the particular relief, notice, hearing, and statutory conditions. The hearing identified in the TAC concerned Wang's request; Pigg presented no fee claim or proof, and the opposition explained that no attorney-client controversy was before DeAngelis. ROA.26-10286.1065, 1070, 1106, 1330, 1338–39. Those allegations cannot be replaced with presumed notice and adjudication of Pigg's payment interest. *In re Alsenz* rejected relabeling a turnover order as § 6.502 temporary relief where the required notice and hearing were absent. 152 S.W.3d 617, 621 (Tex. App.—Houston [1st Dist.] 2004, orig. proceeding). A temporary-litigation-funding label likewise cannot establish those predicates here. Former § 6.708(c)'s direct-payment provision neither merges fees with support nor establishes compliance with § 6.502 for the particular payment ordered. As to the separate criminal-case component, *Trial v. Trial* concerned a spouse's own criminal-defense expenditures in final community-estate division, not an interim shift of another person's criminal invoice. No. 04-05-00448-CV, 2006 WL 1993772, at *2–3 (Tex. App.—San Antonio July 19, 2006, no pet.) (mem. op.). For the unsupported fee-shifting award, *Rohrmoos Venture v. UTSW DVA Healthcare, LLP* requires evidence of services, performer, date, time, and rate. 578 S.W.3d 469, 498, 501–02 (Tex. 2019). That evidentiary requirement does not itself define federal immunity. The

question remains whether DeAngelis possessed jurisdiction and delegated authority over the specific payment subject alleged, rather than merely general authority concerning a pending divorce.

155. Delegated authority and the later retirement instrument cannot be presumed into the April report. Article V, Chapter 201, and § 201.007 define the associate judge's authority; § 201.017 equalizes immunity, not authority. DeAngelis instead cites juvenile-subchapter provisions (§§ 201.308, .316, and .317) without alleging a juvenile appointment or referral. DeAngelis Br. 13–15 & n.4. The April report directed Yan personally to withdraw or borrow retirement funds for attorney's fees; the later Plan-directed support paper was allegedly drafted and circulated by private lawyers and signed by Judge Wells. ROA.26-10286.1076–81, 1198, 1200–02. Paragraph 39 supplies the § 8.351 answer. The separate petition-and-notice objection remains governed by §§ 8.352 and 8.057(b); the later recital does not establish that the required petition, citation, and hearing occurred. *Stephen Allen Lynn, P.C. Emp. Profit Sharing Plan & Tr. v. Lynn*, 25 F.3d 280, 282–85 (5th Cir. 1994), decided a later ERISA § 510 amendment claim; it did not validate the Texas-law order or decide QDRO status. *In re Bielefeld*, 143 S.W.3d 924, 927–31 (Tex. App.—Fort Worth 2004, orig. proceeding), confirms that a later support label does not automatically cure an earlier fee award. The later instrument therefore remains a

separate alleged act relevant to its validity, Plan administration, private-actor liability, and Rule 15 futility.

156. DeAngelis therefore has not carried the Rule 12 burden to establish absolute immunity across all three subjects. *Mireles v. Waco*, 502 U.S. 9, 11–13 (1991) (per curiam), recognizes that judicial conduct may occur in the complete absence of jurisdiction. That is the exception invoked in Opening Br. 74–76; the analysis above identifies the challenged subject without assuming either an accrued Pigg debt or statutory authority to impose the advance payment. Assuming arguendo, without conceding any protected act, even damages immunity for a discrete act would not establish nonparticipation, validate the report or later paper, or sever the private defendants' alleged state-action link. *Dennis* holds that a judge's immunity is "of no consequence" to private co-conspirators because it "does not change the character of the judge's action or that of his co-conspirators." 449 U.S. at 27–29. DeAngelis's alleged official participation therefore remains the pleaded state-process link for Barrows, Pigg, and Ybarra. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39–41 (2021), and *Bauer v. Texas*, 341 F.3d 352, 359–61 (5th Cir. 2003), concern Article III in official-capacity statutory challenges; they do not dismiss individual-capacity damages, which present the distinct immunity question. No immunity ruling can establish QDRO qualification, immunize private actors, defeat ERISA or restoration relief against a proper defendant, or justify defendant-wide affirmance.

**F. Standing and immunity reach different remedies and capacities.**

157. DeAngelis says Yan abandoned standing, Eleventh Amendment immunity, *Younger*, failure to state a claim, and qualified immunity. DeAngelis Br. 17–19. That conflates decided grounds with unadopted defenses. The April order adopted standing and absolute judicial immunity, discussed an Eleventh Amendment rationale, stated *Younger* as an equitable-relief alternative, and noted that RICO "would also be dismissible"; it did not decide qualified immunity or a generic Section 1983 merits defense. ROA.26-10286.2082–85 & nn.2–3. The opening brief challenged the grounds addressed: standing and *Bauer*; *Younger*'s scope, exceptional categories, and damages rule; delegated authority and absolute immunity; the cited Eleventh Amendment source and disposition; and RICO sufficiency and treatment of the remedy. Opening Br. 55–57, 67–68, 72–76, 87–92, 96–97. The opposition and objections also answered both immunities, qualified immunity, and Section 1983's injunction proviso. ROA.26-10286.1325–36, 1704–09. Yan may answer unadopted alternatives renewed on appeal. *Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 274 n.19 (5th Cir. 2020). Failure to challenge a basis of judgment is not failure to anticipate every unadopted motion ground.

158. The no-adversity rule applies when the judge's relevant role is strictly neutral adjudication under an existing statute. *Whole Woman's Health v. Jackson*, 595 U.S.

30, 39–40 (2021) and *Bauer v. Texas*, 341 F.3d 352, 354, 359–61 (5th Cir. 2003) did not decide personal-capacity damages claims based on a judge's own completed directive; *Machetta v. Moren*, 726 F. App'x 219, 220–21 (5th Cir. 2018) (per curiam) (unpublished) likewise involved a statutory challenge and prospective remedies. *Reule v. Jackson*, 114 F.4th 360, 365–70 (5th Cir. 2024), likewise concerned only official- and administrative-capacity defendants; it did not decide a personal-capacity damages claim. The own-creation distinction matters: the Court explained that *Pulliam v. Allen*, 466 U.S. 522, 526 (1984), involved an injunction to stop a judge from enforcing "a rule of her own creation," rather than merely processing cases under statutory law. 595 U.S. at 42. Reule states that if a judge acts as an enforcer or administrator of a challenged statute, a case or controversy may exist; only a strictly adjudicatory role triggers the no-adversity premise. 114 F.4th at 365–66. The distinction therefore turns on capacity, challenged conduct, causation, and requested relief, not merely on whether relief is prospective. Its analysis of each claim supplies the framework. *Reule* applied that framework to an official-capacity facial and as-applied attack on Chapter 11 of the Texas Civil Practice and Remedies Code. It first classified the defendant's role in that statutory scheme and then required standing claim by claim and remedy by remedy. *Id.* at 365–67. Its footnote 3 treats Article III adversity and judicial immunity as distinct inquiries. *Id.* at 367 n.3. Footnote 4 adds that causation and redressability are often "flip sides of the same

coin" and that damages typically redress an injury caused by the defendant's own action. *Id.* at 369–70 n.4. *Reule* also holds that traceability does not require the defendant to be the very last step or the proximate cause, that a defendant's conduct may suffice when it has a determinative or coercive effect, and that redress need only lessen the injury. *Id.* at 368–70. Those ordinary elements are pleaded here. Injury: the TAC alleges approximately $25,000 left Yan's ERISA Plan and that he lost access to and control over the account. ROA.26-10286.1070–71, 1096–98, 1114–16. Traceability: it attributes to DeAngelis the April 13 fee-and-retirement directive commanding use of retirement funds and alleges that the later papers and September transfer implemented that command. ROA.26-10286.1070–71, 1074–78, 1096–98, 1198–1202. At the Rule 12 stage, whether under Rule 12(b)(6) or Rule 12(c), that alleged directive is at minimum a determinative or coercive link; later implementation does not sever Article III causation. Redressability: compensatory damages against DeAngelis personally would lessen the completed property loss, while the requested declarations address the challenged directive's alleged continuing legal effect. ROA.26-10286.1114–16. *Hafer v. Melo*, 502 U.S. 21, 25–31 (1991) confirms that a personal-capacity defendant comes before the court as an individual and that personal liability is distinct from an official-capacity suit against the State. The no-adversity premise therefore cannot be dispensed in gross across capacities and remedies. Yan attacks DeAngelis's own alleged directive, not a

statute that DeAngelis merely adjudicated, and seeks personal-capacity damages for a completed loss. Whether the directive was judicial, administrative, or taken in clear absence of jurisdiction may bear on immunity; it does not replace injury, traceability, and redressability with an identity-based Article III shortcut.

159. *Reule* does not resolve the claim on this record. *Reule*'s Judge Jackson was sued only in his official and administrative capacities in a constitutional challenge to Chapter 11, not personally for damages caused by his own completed directive. *Reule v. Jackson*, 114 F.4th 360, 363–66 (5th Cir. 2024). Here, the TAC alleges completed economic injury caused by DeAngelis's own fee-and-retirement directive and seeks damages from DeAngelis individually. Under *Hafer v. Melo*, a personal-capacity defendant comes to court as an individual. 502 U.S. 21, 25–31 (1991). That damages claim places Yan and DeAngelis in opposed legal and financial positions that *Reule* never considered. Nor may an "adjudicatory" label erase Article III before immunity is analyzed. *Reule* expressly separated adversity from judicial immunity. 114 F.4th at 367 n.3. *Stump v. Sparkman* and *Mireles v. Waco* make immunity functional and tied to the challenged act, including a complete-absence-of-jurisdiction limit. 435 U.S. 349, 356–57 (1978); 502 U.S. 9, 11–13 (1991) (per curiam). A threshold no-adversity shortcut would make that limit unreachable. The Court should apply ordinary injury, traceability, and redressability to the personal-capacity claim, then decide immunity separately under its own elements.

160. The relief record removes any ambiguity. The TAC's caption and opening demand sought declaratory, injunctive, and damages relief, and its jurisdictional allegation invoked 28 U.S.C. §§ 2201–2202. ROA.26-10286.1054, 1058–59. The DeAngelis count alleged continued loss of account access and sought an injunction against continuing ultra vires property deprivation, together with individual-capacity damages. ROA.26-10286.1114–16. More importantly, the FCR itself described the TAC as seeking "injunctive and declaratory relief" against DeAngelis, and the district court twice described Yan's claims as requesting declaratory and injunctive relief. ROA.26-10286.1689 n.3, 2079, 2085 n.3. The PFAC then separated the remedies expressly: § G.2 requested official-capacity declarations that DeAngelis acted ultra vires; §§ G.3–4 requested declarations concerning the continuing legal effect and enforceability of the challenged fee/support instruments and writs; and § H requested injunctions only as further relief implementing those declarations. ROA.26-10286.2781–82. The preservation record is equally direct: Yan's opposition identified declaratory relief while answering standing, quoted § 1983's 1996 proviso in its injunction discussion, and argued that any defect in one form of relief could not justify dismissing DeAngelis entirely. ROA.26-10286.1325–26, 1335–36. Even if the DeAngelis count did not repeat the word "declaratory" in its own heading, the courts below read the TAC's global demand to include it, and Rule 15 futility had to be tested against the PFAC's explicit declaration-first prayer.

161. The declaration cases establish a narrower proposition. *Caliste v. Cantrell*, 937 F.3d 525, 535 & n.7 (5th Cir. 2019) affirmed declaratory relief concerning an ongoing bail practice and treated § 1983's 1996 proviso as a restriction on injunctions. *Robinson v. Hunt Cnty.*, 921 F.3d 440, 450 (5th Cir. 2019) confirms that a declaration is not automatically redundant merely because an injunction is unavailable, and *Cain v. White*, 937 F.3d 446, 448–55 (5th Cir. 2019) likewise concerned an ongoing practice. Those cases prevent a categorical injunction-proviso bar to declaratory relief; they do not make every judge a proper declaratory defendant for a completed order. Article III still requires a live controversy and effectual relief. The PFAC alleges continuing restraint and legal effect, so the question is whether DeAngelis retains an ongoing role capable of redressing that injury, not whether declaratory relief is categorically unavailable. If she has no such role, the declaration fails as to her without erasing claims against actors who allegedly maintain, enforce, or administer the challenged instruments.

162. *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 735–37 (1980) reinforces that limit tied to the defendant's role. The judicial defendants there were proper prospective-relief defendants because state law gave them independent enforcement authority, not merely because they had adjudicative titles. Here, past authorship or signature alone does not establish DeAngelis's present enforcement authority. If no ongoing authority or redressable conduct is pleaded, prospective

relief against her cannot proceed. But that conclusion as to DeAngelis says nothing about the later paper's truth or federal qualification, Plan duties, private-actor liability, or relief against a proper actor. The court must therefore map adversity, redressability, immunity, and § 1983's injunction proviso to each capacity and remedy rather than convert one unavailable DeAngelis remedy into amendment-wide futility.

163. DeAngelis's closing bullets do not answer the dispositive omissions. They never classify the three fee subjects separately under the act-specific inquiry preserved in the opening; identify what pleading, notice, evidence, or referral placed subjects 2 and 3 before her; explain how § 201.017 immunity parity expands § 201.007 authority; or distinguish the April report from the later Plan-directed support instrument. Nor do they map standing, judicial immunity, Eleventh Amendment immunity, qualified immunity, or *Younger* to the particular capacity, claim, act, and remedy each doctrine reaches. Her appellate qualified-immunity bullet identifies no challenged act, asserted constitutional right, or controlling precedent placing that right beyond debate. DeAngelis Br. 18–19; *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). It therefore supplies no developed alternative ground for affirmance. Assuming arguendo, without conceding, that subject 1 is protected, that premise would not establish protection for subjects 2 and 3, validate the later instrument, negate alleged joint participation, or sustain defendant-wide dismissal.

The district court omitted those precise inquiries, and DeAngelis's undeveloped alternatives do not supply them on appeal.

164. As to *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), DeAngelis acknowledges that the opinion "does not contain this quotation." DeAngelis Br. 13 n.3. The district court nevertheless attributed to *McKinley*, 643 F.3d at 406, a state-judge Eleventh Amendment proposition, and DeAngelis treats the error as an inadvertent miscitation cured by *Warnock*. ROA.26-10286.2085. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996), does not cure the blanket disposition: it treats sovereign immunity as jurisdictional, requires dismissal without prejudice, and preserves prospective federal relief from the Eleventh Amendment bar. Rule 54(b) permitted revision, and the March Rule 58 judgment supplies appellate finality. But a global with-prejudice label cannot transform Article III or Eleventh Amendment grounds into merits rulings. Any alternative ground must be confined to the claim, capacity, remedy, and lawful dismissal type it actually supports.

**G. The State Bar review sequence requires actor-by-actor analysis.**

165. The State Bar's own brief supplies the issue and knowledge bridge its grievance-only framing omits. It identifies as the "central issue asserted by Yan" the allegation that Pigg and Barrows manipulated the retirement-account instrument to obtain attorney fees from Yan's out-of-state retirement accounts. State Bar Br. 25. The TAC alleges that the Barrows grievance supplied the court reports, orders, and

emails and that Marin, Martinez, and Craig read Barrows's email during the grievance process. ROA.26-10286.1081–84, 1095–98. The email states that the order had to characterize the fees as spousal support "for us to obtain our attorney's fees" and that there was "no way around it." ROA.26-10286.1139. It was addressed to Pigg, copied to Ybarra, and supplied to the disciplinary process as documentary notice. Rule 12 therefore credits the allegation that all three named disciplinary counsel reviewed the same fee relabeling issue the State Bar now identifies as central. That sequence defeats the premise that they encountered only dissatisfaction with a family-court or grievance outcome and supports inferences of notice and knowledge for each actor.

166. Even that acknowledgment understates the pleaded private transaction. As to Ybarra's separate role, the TAC alleges that the family-court fee submission included charges for Ybarra's representation of Wang in a separate criminal proceeding, although Yan was neither Ybarra's client nor a party there; that Ybarra received the submission and attended the fee hearing; and that she later received the order communications and Barrows's "our attorney's fees" email. ROA.26-10286.1074–78, 1139. Those are allegations of private legal-service fee collection from Yan's property. Appellees' attacks on prayers concerning discipline, prosecution, State Bar or CDC structure, licensing, or a statewide audit do not support claim-wide affirmance. The consequence of any unavailable prayer is

confined to that severable remedy. The grievance sequence remains relevant to notice, knowledge, agreement, continuity, market maintenance, continuing injury, and properly tailored prospective relief.

167. The State Bar's page-21 locator fails before its inference does: ROA.26-10286.1130–31 concern U.S. Bank, not grievance decisions. The actual notices state that Marin and Martinez each concluded that the reported conduct violated no rule, classified the grievance as an Inquiry, and dismissed it. ROA.26-10286.1150–53. BODA reviewed each grievance as filed, reversed both dismissals, identified possible Rules 4.01(a) and 1.05(b) violations, and returned them for investigation and a Just Cause determination. ROA.26-10286.1146–47. The State Bar's district-court motion likewise identified Marin's and Martinez's initial dismissals and Craig's alleged no-Just-Cause and placement acts. ROA.26-10286.228–29. Appellees therefore understood the distinct alleged roles; the record does not reduce all action to the panel's later vote.

168. Craig acted after both reversals. The TAC alleges that she read Barrows's email and made the antecedent no-Just-Cause determinations. ROA.26-10286.1082–84, 1095. Craig signed the May 17 and 18 notices announcing panel placement. ROA.26-10286.1148–49. The July letters, signed by Brady, state that, upon completion of each investigation, the CDC first determined no Just Cause and

then presented the Complaint to the panel. ROA.26-10286.1154–55. The disciplinary rules preserve the same two stages: the CDC investigates and determines Just Cause; after a no-Just-Cause determination, the CDC places and presents the Complaint; the panel makes the later terminal decision. Tex. R. Disciplinary P. 1.06(C), 2.12–2.13. The later vote therefore does not contradict the TAC's attribution of the antecedent decisions and routing to Craig. Nor may the State Bar use its own no-Just-Cause result as conclusive proof that the pleaded alteration did not occur.

169. Section 1962(d) permits agreement to be inferred from the "development and collocation of circumstances." *United States v. Perry*, 35 F.4th 293, 317–18 (5th Cir. 2022). The pleaded collocation includes all three counsel's reading of the same email and documented fee-relabeling issue; Marin's and Martinez's separate threshold dismissals; BODA's reversals and directions to investigate; the completed investigations; and Craig's alleged post-BODA no-Just-Cause and routing acts. ROA.26-10286.1081–84, 1095–98, 1146–55. Agreement arises from the cumulative sequence, not from isolating any single grievance disposition. The inference arises from the pleaded sequence and the actors' repeated handling of the same documented issue. Read cumulatively and favorably, those complementary decisions plausibly support the alleged common objective of shielding the same conduct. The State Bar says "no evidence exists," State Bar Br. 24, but Rule 12 tests

plausibility, not proof. The Court cannot isolate each act, demand direct proof of agreement, or choose the State Bar's competing administrative explanation. *EnvTech*, 178 F.4th at 222–23.

170. The authority Barrows invoked does not transform professional duty or constructive knowledge into the agreement alleged against Marin, Martinez, and Craig. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016) rejected a conspiracy theory alleging only actual knowledge or what attorneys "should have known under their duties to inquire," without facts supporting actual agreement and specific intent. The TAC here does not rely on bar membership, professional duty, or constructive knowledge alone. It pleads the specific fee-relabeling email, each actor's review of the same documented issue, Marin's and Martinez's separate threshold dismissals, BODA's reversals, completed investigations, and Craig's alleged post-reversal no-Just-Cause and routing acts. ROA.26-10286.1081–84, 1095–98, 1139, 1146–55. Read cumulatively under *Perry* and Rule 12, those allegations about each actor supply the agreement inference *Snow* found absent. *Snow* therefore does not support dismissal of the Section 1962(d) allegations against Marin, Martinez, or Craig.

171. The State Bar's five-item RICO paragraph conflates distinct subsections and then demands evidence at the pleading stage. State Bar Br. 25. Whether a disciplinary defendant entered the original QDRO, received its proceeds, personally

crossed state lines, belonged to a formal organization, or personally committed a predicate is not a single composite element of Section 1962(d). The relevant questions are whether the TAC plausibly alleges the contemplated Section 1962 violation, the defendant's knowledge of its essential nature, and agreement to further or facilitate it. *Salinas*, 522 U.S. at 63–66. Each actor's route must be tested separately; an inapplicable element cannot be imported from another subsection to obtain blanket affirmance.

172. Personal receipt of racketeering income is not required for Section 1962(d). Receipt and investment of income belong to Section 1962(a); conspiracy belongs to Section 1962(d). 18 U.S.C. § 1962(a), (d). A no-receipt allegation may narrow a particular income-use theory against a particular actor, but it does not defeat the separately pleaded agreement route. *Salinas* holds that a conspirator need not personally commit two predicates and may be liable by adopting the objective of furthering or facilitating the contemplated endeavor. 522 U.S. at 63–66. The State Bar's assertion that its counsel received no QDRO proceeds therefore cannot dispose of Section 1962(d), and it cannot migrate to Barrows's or the Firm's separately pleaded Section 1962(a) route. The predicate statute confirms the same distinction at the transaction level: Section 664 reaches unlawful and willful abstraction or conversion of Plan assets "to his own use or to the use of another." 18 U.S.C. § 664. Thus, the alleged predicate does not require the assisting actor personally to retain

the money; the pleaded transfer for another's use remains within the statutory text. *Wofford*, 560 F.3d at 345–47; *Andreen*, 628 F.2d at 1244–49.

173. The pleaded Minnesota Plan communications and asset transaction supply the alleged interstate nexus. The TAC alleges interstate mailing of the Plan-directed instruments to Minnesota, June-through-August calls and emails with the Minnesota administrator, and an out-of-state retirement-account distribution. ROA.26-10286.1092–98, 1129–31, 1136, 1139–42, 2030–35. Section 1962(c) asks whether the enterprise is engaged in or affects interstate commerce; Section 1962(d) asks whether the defendant agreed to conspire to violate the substantive provisions. It does not require every alleged conspirator's own later act to cross a state line. The disciplinary defendants' alleged review, knowledge, and protective acts must be connected to the pleaded interstate enterprise and objective, but the State Bar cannot erase that connection by isolating the geographic location of the grievance files.

174. *Boyle v. United States*, 556 U.S. 938, 944–48 (2009), requires an association-in-fact enterprise to have a purpose, relationships among those associated with it, and sufficient longevity to pursue the purpose; it rejects any additional requirement of a formal hierarchy, fixed roles, name, regular meetings, rules, or other structural trappings. The TAC alleges a common objective of obtaining and protecting the challenged fee mechanism, relationships supplied by the shared instruments and documentary notice, and a sequence extending from the 2022 transfer through the

2023 grievance reversals, investigations, no-Just-Cause determinations, and continuing restraint. ROA.26-10286.1081–98, 1146–55. Those allegations may ultimately be disputed, but the State Bar's demand for an "organization" applies a formality *Boyle* rejected.

175. The alleged disciplinary sequence is not pleaded as retroactively causing the original transfer. It is pleaded as evidence about the actors' knowledge and agreement after documentary notice, and about the continuing mechanism, market maintenance, account-access loss, and need for prospective relief. Marin and Martinez allegedly made separate threshold dismissals; BODA reversed and identified possible rule violations; the CDC completed investigations; and Craig allegedly made the antecedent no-Just-Cause determinations and routed the complaints to the panels. ROA.26-10286.1081–84, 1095–98, 1146–55. That sequence and its lawful-or-unlawful character must be evaluated under the particular federal element invoked. An administrative-job label does not itself negate agreement. The Court must credit the pleaded documentary sequence and reasonable inferences; it may not require proof, isolate each act, or choose the State Bar's innocent-administration account. *EnvTech*, 178 F.4th at 220–23.

176. The State Bar invokes sovereign immunity, disciplinary immunity, and the absence of a federal right to compel discipline. State Bar Br. 21–30. Each ground must be applied to the statute, defendant, capacity, function, remedy, and dismissal

type at issue. Its claim that Pittman held immunity applicable to all theories does not match the ruling; its page-26 citation, ROA.26-10286.2087, concerns Tarrant County. State Bar Br. 18, 26. Pittman said the immunity objection to RICO and Sherman Act claims "holds water," that those claims would "ordinarily" survive Rule 12(b)(1), and that he declined a "conclusive determination" before dismissing under Rule 12(b)(6). ROA.26-10286.2089–91. Yan's objections distinguished grievance dispositions from unlawful fee-market conduct and preserved the response. ROA.26-10286.1703–04, 1712–13; Opening Br. 77–81, ¶¶ 107–15. None of the State Bar's alternatives broadens Pittman's ruling. The missing work is likewise concrete. Entity sovereign immunity does not determine the individual disciplinary defendants' capacities; disciplinary immunity does not itself decide the RICO or Sherman Act elements; and the no-right-to-compel-discipline argument does not answer the TAC's different use of grievance conduct as notice, agreement, continuity, or market-maintenance evidence. The State Bar's cited no-cognizable-interest cases do not reach that different theory. *Turnbull v. Bd. of Dirs. of the State Bar of Tex.*, No. 24-50260, 2024 WL 4903274, at *1–2 (5th Cir. Nov. 27, 2024) (per curiam) (unpublished) concerned claims that the Bar's dismissal of grievances against other persons itself violated the complainant's rights. *Linda R.S. v. Richard D.*, 410 U.S. 614, 616–19 (1973) concerned an injunction to force prosecution. State Bar Br. 29. Yan seeks neither prosecution nor an order compelling discipline.

Opening Br. 79–80. The alleged injury is completed loss and continuing restraint of identified ERISA property; the grievance materials are pleaded as evidence of notice and later conduct by those actors bearing on independent federal elements. ROA.26-10286.1081–84, 1095–98, 1146–55. At most, those decisions address a complainant's attempt to obtain relief from the disciplinary choice; they do not erase the pleaded property injury or make the grievance record irrelevant to the RICO and antitrust theories. Nor does the brief map its defenses to damages, prospective relief, or dismissal type. Section X therefore confines any alternative affirmance to the analysis actually developed.

177. Eleventh Amendment immunity and the State Bar's other defenses have different sources and consequences. Eleventh Amendment immunity reaches only the parties and relief governed by that doctrine and results in a jurisdictional dismissal. State-action immunity, federal functional immunity, and TRDP 17.09 require separate applications.

178. *Krempp v. Dobbs*, 775 F.2d 1319, 1321–22 & n.1 (5th Cir. 1985), dismissed antitrust claims because the plaintiffs alleged neither personal antitrust injury nor a specific schedule, mandatory instruction, or injurious act; it separately addressed Title 42 entity damages. *Bishop v. State Bar of Tex.*, 791 F.2d 435, 438 & n.2 (5th Cir. 1986), repeated the entity-damages rule for a Section 1983 disciplinary suit and declined to decide absolute immunity for every individual employee or every form

of relief. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087–88 (5th Cir. 1994), applied state-action immunity to statutorily authorized enforcement against unauthorized practice and separately addressed official-capacity Section 1983 liability; *Parker v. Brown*, 317 U.S. 341, 350–52 (1943). Those decisions leave civil RICO, the completed-monopolization theory, PFAC Count Three, individual conduct, and prospective relief for separate analysis. *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994), concerned an attorney seeking review of his own disciplinary result; Yan was not the respondent and seeks no review of a disciplinary judgment. *Taylor* confirms that Texas common-law immunity cannot itself bar a federal statutory cause of action. 644 S.W.3d at 653–56. The same source-of-law rule governs Texas statutory immunity because a State has "no power to confer immunity" from federal causes of action. *Doe*, 607 U.S. at 11; *Howlett*, 496 U.S. at 383; *Haywood*, 556 U.S. at 740. In contrast, *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 688–92 (5th Cir. 1985), applied federal functional-immunity principles to NASD's adjudicative and prosecutorial functions within a congressionally delegated securities-regulatory regime. It did not confer immunity for every act within "official duties"; it limited immunity and antitrust displacement to conduct within NASD's delegated disciplinary authority. *Id.* at 691–92. Later Fifth Circuit authority explains that *Austin Municipal* rested on Congress's direct delegation of securities-law enforcement authority to NASD. *Houston Cmty. Hosp.*

*v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 271–72 (5th Cir. 2007). *Austin Municipal* therefore does not convert Rule 17.09 into immunity from federal law or, without a comparable federal functional basis, establish State Bar entity immunity, immunity for non-adjudicative conduct, immunity from prospective relief, or independently resolve RICO, Section 2, or PFAC futility.

179. Federal functional immunity reinforces, rather than replaces, that inquiry into the challenged act. *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 677–80 & n.6 (5th Cir. 2020) applied the federal functional factors to the precise claim and the specific facts, protected the acts it classified as quasi-prosecutorial, but reversed absolute-immunity dismissal for alleged concealment and manipulation of information during an investigation. The TAC likewise separates threshold classifications, investigations, no-Just-Cause determinations, routing, and the later panel vote. ROA.26-10286.1081–84, 1095–98, 1146–55. Those acts cannot be merged into one immunized grievance outcome or resolved by the phrase "official duties." Each pleaded act must be classified before any federal functional defense can reach it, and no such defense independently decides RICO, antitrust, entity liability, prospective relief, or amendment-wide futility beyond the precise claim and function it governs.

180. Rule 17.09 must be read within the TRDP's own limits. The Preamble says the Texas Supreme Court promulgated the rules "for lawyer discipline and disability

proceedings" and limits delegated administrative authority to that "expressly delegated." Rule 1.02 says the rules "establish the procedures" for Texas's disciplinary and disability system; Rule 1.03(A) preserves the remaining rules if a court holds a portion unconstitutional. Tex. R. Disciplinary P., Preamble, 1.02, 1.03(A). Rule 17.09 itself conditions staff immunity on "conduct in the course of their official duties." Those provisions neither make a pleading-stage assertion of official duty conclusive nor turn a court-promulgated state rule into a legislative definition of federal defenses. The statutory contrast is exact: the Legislature used "absolute and unqualified" in Tex. Gov't Code § 81.072(g), but granted that statutory immunity only to a complainant or witness for a disciplinary communication. Section 81.072(g) does not grant CDC employees statutory immunity. Staff therefore must rely on Rule 17.09 or an applicable federal functional immunity, each confined to its own source and scope.

181. Federal causes of action remain governed by federal law; TRDP 17.09 supplies no contrary federal defense. *Doe v. Dynamic Phys. Therapy, LLC*, 607 U.S. 11, 11 (2025) (per curiam) (citing *Howlett v. Rose*, 496 U.S. 356, 383 (1990), and *Haywood v. Drown*, 556 U.S. 729, 740 (2009)). Sovereign immunity over State Bar entity damages is jurisdictional and supports only dismissal without prejudice. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996). It leaves merits, *Parker* immunity, individual-capacity immunity, and other defendants for separate analysis.

182. PFAC Count Three names only the State Bar and requests treble damages and prospective antitrust relief. ROA.26-10286.2742, 2754. The State Bar answers Opening Br. 79–80 that "no such inquiry is needed," State Bar Br. 23, but that assertion assumes the disputed conclusion. The pleading and record separate threshold classification, investigation, no-Just-Cause determination, routing, and the panel's later terminal disposition. ROA.26-10286.1081–84, 1095–98, 1146–55. A valid alternative ground therefore must identify the actor, capacity, function, authority, remedy, and current-or-former status it actually reaches. Any entity-immunity or officer-capacity defect reaches that count's defendant and remedies, not the global PFAC denial or prospective amendment restriction. If a current officer with the required enforcement connection had to be named, the cure was a targeted amendment confined to prospective relief; the FCR identified no such defect in Count Three and afforded no such amendment. ROA.26-10286.2984–91.

## VII. TAC Count Two and PFAC Count Three require separate antitrust analysis.

### A. Completed monopolization supplies the governing Section 2 elements.

183. TAC Count Two and PFAC Count Three are pleaded in different complaints against different defendant sets. TAC Count Two names the State Bar, Marin, Martinez, Craig, Barrows, Ybarra, Pigg, and DeAngelis. ROA.26-10286.1102. It attributes institutional monopoly power to the State Bar and distinct implementation or maintenance conduct to the individual defendants. PFAC Count Three names only

the State Bar and governs only Rule 15 futility. ROA.26-10286.2744–52. Neither the PFAC party map nor a claim heading silently deletes parties from the operative TAC. Opening Br. 69–71 and 82–86 preserved the completed-monopolization framework and the need for review of each defendant. The Court should test the TAC allegations and each named defendant's role under that framework, not convert the claim into attempt or conspiracy and not treat an appellee's personal-monopolist premise as a cross-cutting answer. Pigg's name-counting argument disregards Count Two's express incorporation of the Factual Background, the preceding allegations, and paragraphs naming a person or entity "and its attachment" as factual statements. TAC ¶¶ 205–208; ROA.26-10286.1102. Whether those incorporated allegations satisfy completed-monopolization elements requires analysis of the offense actually pleaded; it cannot be answered by reading Count Two as though its incorporation clauses were absent. Pigg Br. 13–14.

184. The pleaded offense is completed monopolization. The TAC repeatedly invokes 15 U.S.C. Section 2. ROA.26-10286.1054, 1058–59, 1102–04, 1110–12. Yan expressly rejected conspiracy to monopolize. ROA.26-10286.1616–17. Yet the post-remand FCR analyzed conspiracy to monopolize and specific intent. ROA.26-10286.2984–91. Completed monopolization instead requires monopoly power in the relevant market and willful acquisition or maintenance of that power, rather than growth through a superior product, business acumen, or historic accident. *United*

*States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 334–35 (5th Cir. 2015). Agreement and intent for conspiracy do not replace those elements.

185. The State Bar reduces the institutional claim to grievance dissatisfaction. State Bar Br. 27–29. Its own cited pages defeat that premise: ROA.26-10286.1110–11 allege lost money, continuing loss of account access, consumer injury, and private damages and injunctive relief. The TAC further alleges a Texas market for legal services, compulsory membership and disciplinary control over provider access, monopoly power, exclusionary maintenance through protection of a compelled-payment mechanism, reduced choice, and causation through the providers who implemented that mechanism. ROA.26-10286.1102–12. Neither Pittman nor the State Bar applied the elements of completed monopolization to that theory. ROA.26-10286.2091–93. That omission warrants remand rather than appellate merits adjudication in the first instance.

186. The relevant market is Texas legal services provided by lawyers whose ability to serve Texas consumers depends on State Bar membership and discipline. The TAC alleges that the State Bar controls continued provider access through compulsory membership and discipline. ROA.26-10286.1102–12. *Abraham & Veneklasen* does not defeat that theory because AQHA did not participate in the

market there, while the TAC alleges that the State Bar's institutional controls structure entry and continued participation in this market. 776 F.3d at 334–35.

187. The TAC pleads monopoly power through compulsory membership and disciplinary authority over the providers who may lawfully serve Texas consumers. ROA.26-10286.1102–12. Read liberally, those allegations concern durable control over market access, not merely the formal issuance of a license by the Texas Supreme Court.

188. The same precision governs state-action immunity. *Green* protected the UPLC's statutorily authorized unauthorized-practice enforcement under *Parker*. 27 F.3d at 1087. *Goldfarb v. Va. State Bar*, 421 U.S. 773, 787–92 (1975), by contrast, held that the State Bar's agency status for limited purposes did not create an antitrust shield for member-benefiting restraints not compelled by sovereign direction. *N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 505–15 (2015), requires active state supervision when controlling decisionmakers are active market participants. The challenged conduct is alleged private fee-market activity, not sovereign grievance adjudication. The State Bar identifies no Texas statute, rule, or Supreme Court directive requiring the alleged relabeling, extraction, or protection of private attorney fees. State Bar Br. 21–30. Nor does it engage *Goldfarb* or *N.C. Dental*. Its generic agency label therefore does not perform the required analysis of the

challenged act, asserted function, sovereign command, decisionmaker, and supervision.

**B. Provider implementation connects the institutional mechanism to distinct consumer injuries.**

189. The TAC plausibly connects the alleged exclusionary maintenance to distinct actor roles. Barrows, Ybarra, and Pigg allegedly implemented the compelled-fee channel; DeAngelis allegedly supplied the state-authority step; and Marin, Martinez, and Craig allegedly protected the mechanism after documentary notice. ROA.26-10286.1076–78, 1082–86, 1102–10. Those allegations connect institutional market control to increased consumer costs, depleted resources, reduced bargaining power, and diminished consumer choice. They do not require recasting completed monopolization as attempt or conspiracy. Barrows's and Pigg's arguments that they did not personally form or possess the monopoly do not address the pleaded maintenance and implementation route. Any disposition must remain defendant specific.

190. The alleged competitive injury is not the fee obligation alone. The TAC alleges depletion of funds, reduced bargaining power, additional costs from compelled payment and diminished consumer choice through the challenged payment channel. ROA.26-10286.1071, 1096, 1103–10. Those are the asserted market effects and consumer injuries. They must remain distinct from ERISA restoration, RICO injury, and malpractice damages.

191. Liberally construed, the TAC alleges that the September 2022 transfer occurred within a preexisting, decades-long mechanism maintained through exclusive State Bar licensing, court-access authority, continued licensing of participating providers, and institutional protection of the alleged compelled-fee practice. ROA.26-10286.1086–91, 1103–10. The 2014 comparator supports the pleaded inference that the alleged method predated Yan's injury. The 2023 grievance sequence reinforces the pleaded inferences of continued maintenance, institutional knowledge, protection of the mechanism's consequences, threatened recurrence, continuing injury, and prospective relief. Its later date does not sever causation from the preexisting mechanism or Yan's continuing deprivation.

192. The TAC, not the PFAC, governs Rule 12 merits review. The TAC alleges the market, monopoly power, exclusionary maintenance, competitive injury, and a causal chain from institutional control through provider implementation to Yan's completed loss. ROA.26-10286.1071, 1085–86, 1096, 1102–12. PFAC Count Three and ROA.26-10286.2708–09, 2742–52 belong only to the separate Rule 15 futility analysis below and do not support this TAC paragraph.

193. *Guzik v. State Bar of Tex.*, 659 F.2d 528, 531–32 (5th Cir. 1981), involved optional forms, no sanction for nonuse, no Bar position on the fee term, and no forced signature; *Krempp* identified no specific fee schedule, mandatory instruction, injurious act, or personal antitrust injury. 775 F.2d at 1321–22. Those optional forms

and unforced terms distinguish both cases from the compulsory mechanism alleged here. The TAC identifies an alleged compelled-payment mechanism, state-backed instruments acting on retirement assets, provider benefit, diminished consumer choice, and Yan's direct property loss. ROA.26-10286.1085–86, 1103–10. Those cases do not decide whether the pleaded State Bar structure willfully maintained monopoly power.

### C. Completed-monopolization law, not generic institutional defenses, governs the TAC.

194. The district court and State Bar left the TAC's Section 2 consumer-injury theory unaddressed. ROA.26-10286.1349–72, 2091–93. That omission was procedural as well as substantive: the State Bar did not seek Rule 12(b)(6) adjudication of TAC Count Two on any antitrust ground; the FCR recommended jurisdictional dismissal; and the April 2024 order itself supplied the merits disposition after recognizing that the claim ordinarily would survive Rule 12(b)(1). ROA.26-10286.1350, 1365–70, 1691–93, 2090–93; Opening Br. 69–72. Section X applies the governing notice and party-presentation limits to that court-supplied merits disposition. *Thompson* declined first-instance review of a preserved theory not addressed below. *Thompson*, 183 F.4th at 375. That omission warrants remand; it cannot establish a TAC defect.

**D. PFAC Count Three requires its own Rule 15 review.**

195. PFAC Count Three alone governs its futility inquiry. The proposed count pleads its own market, monopoly power, exclusionary maintenance, lock-in, injury, and causation allegations against the State Bar. ROA.26-10286.2742–52. It does not cure the TAC. It instead confirms why reasoning directed to Pigg under the TAC cannot establish futility for the proposed antitrust count.

196. Count Three alleges that compelled, practically nonrecoverable prepayments deplete resources, discourage counsel changes, and increase switching costs after representation begins. ROA.26-10286.2744–52. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 473–78, 481–86 (1992), recognizes that information and switching costs may eliminate practical alternatives.

197. The proposed causal chain runs from State Bar market-access and disciplinary control, through provider implementation, to the compelled payment, resource depletion, reduced bargaining power, lock-in, and switching costs. ROA.26-10286.2708–09, 2742–52. Pigg's alleged implementation supports the chain without making him a Count Three defendant.

198. Count Three distinguishes ordinary spouse-to-spouse fee allocation from compelled prepayment to the consumer's own provider without an asserted provider claim or ordinary contract defenses. ROA.26-10286.2742–43, 2752. Pigg's alleged

concealment and separate payment remain factual support, not personal Count Three liability. ROA.26-10286.2708–09.

199. The completed payment predates the grievance dispositions; the later sequence supports alleged continuation, notice, protection, recurrence, and prospective relief. Count Three requests damages and prospective antitrust relief only from the State Bar. ROA.26-10286.2742, 2754.

200. The FCR's TAC analysis focused on Pigg did not adjudicate PFAC Count Three's own elements, defendant, allegations, or remedies. ROA.26-10286.2984–91. Opening Br. 62–72 preserved the separate PFAC review question.

201. The Court should vacate TAC Count Two for all eight named defendants under the limits applicable to each defendant stated above. It should independently vacate the global Rule 15 denial and remand PFAC Count Three for its own review. Any sovereign-immunity or officer-capacity limit on Count Three as presently framed remains confined to Count Three's defendant and remedies. It cannot defeat the materially different PFAC counts or justify a prospective amendment restriction.

**VIII. ERISA's statutory criteria govern U.S. Bank's QDRO duties.**

**A. The TAC alleges an antecedent conflict under ERISA's criteria.**

202. QDRO qualification follows "specific and objective criteria" amounting to a "statutory checklist." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301–02 (2009). First, the paper must be a domestic-relations order within

Section 1056(d)(3)(B)(ii) and create or recognize an alternate payee's right within Section 1056(d)(3)(B)(i). Second, it must satisfy Section 1056(d)(3)(C)'s required information. Third, it must satisfy Section 1056(d)(3)(D)'s substantive limitations. Fourth, Section 1056(d)(3)(G)(i)(I) requires prompt notice of receipt and procedures, while (G)(i)(II) requires a qualification decision within a reasonable time and notice to the participant and each alternate payee. Section 1056(d)(3)(H)(i) separately requires the administrator to account separately for amounts that would have been payable to the alternate payee while qualification is being determined.

203. U.S. Bank turns that segregation duty into a duty merely to furnish an accounting to the alternate payee; the statutory text does not. 29 U.S.C. § 1056(d)(3)(H)(i); Plan App. C § 2.1, ROA.26-10286.1879. *Brown v. Cont'l Airlines, Inc.*, 647 F.3d 221, 223–24 (5th Cir. 2011), identifies the same federal sequence. TAC paragraph 58 quoted the determination and notice duty. ROA.26-10286.1068. That duty expressly protects the participant. *Kennedy*'s plan-document rule presupposes a qualifying QDRO; a QDRO label does not make the paper self-qualifying. Compliance with internal Plan procedure likewise does not replace the statutory checklist.

204. The later order identifies Wang as alternate payee but directs payment to Wang "c/o The Barrows Firm P.C." at the Firm's address. ROA.26-10286.1200–02. That routing does not alone defeat Wang's designation, but it does not establish that

she was the unrestricted final recipient; it bears on purpose, control, the payment path, and the attorneys' alleged ultimate receipt. Objective qualification still turns on ERISA's checklist and the Plan terms, not the paper's title.

205. Federal statutory criteria and ERISA-consistent Plan terms control qualification. 29 U.S.C. § 1056(d)(3)(B)–(D). *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259 (1993), cautions that federal common-law authority under ERISA "is not the authority to revise the text of the statute." The TAC's report-versus-recital conflict, addressed in Section IV.B, bears directly on § 1056(d)(3)(B)(ii)'s state-law and qualifying-purpose requirements. ROA.26-10286.1065–78, 1198, 1200–02. Treating the challenged recital as conclusive at Rule 12 would assume the statutory compliance the TAC contests.

206. Barrows invokes *Blue v. UAL Corp.*, 160 F.3d 383, 385–86 (7th Cir. 1998), for the proposition that a Plan may not "look beneath the surface" of an order. Barrows Br. 51. But *Blue* first rejected a Rooker–Feldman dismissal because deciding whether ERISA permitted payment from Plan assets could leave the underlying support judgment enforceable. Its merits holding excludes subjective inquiries into hidden motives or the genuineness of a facial divorce; it does not excuse the federal qualification determination or Plan compliance. Yan alleges objective documentary and checklist conflicts already before U.S. Bank, not a sham-divorce investigation. *Cont'l Airlines* and *Matassarin v. Lynch* supply the same limit.

*Cont'l Airlines*, 647 F.3d at 227–29; *Matassarin v. Lynch*, 174 F.3d 549, 568–69 (5th Cir. 1999). But *Matassarin* also holds that a QDRO, unlike the Plan, is a separate judicially approved contract that the administrator has "no special discretion to interpret"; legal conclusions concerning a contract or statute are reviewed de novo, although the administrator may retain discretion in applying Plan terms and determining qualification under the Plan. *Id.* at 563–64. *Kennedy* did not adjudicate a fiduciary-breach claim or make an administrator's processing decision conclusive. It resolved a non-QDRO waiver that conflicted with the participant's beneficiary designation and held that the administrator properly followed Plan documents in that setting. 555 U.S. 285, 288, 300–02 (2009).

207. Yan's pleaded theory does not require U.S. Bank to investigate private motives or decide whether a divorce was genuine. It alleges objective documentary conflict: U.S. Bank possessed the April attorney-fee report and later support order, acknowledged that they appeared directly conflicting or imposed separate obligations, and nevertheless approved and distributed. ROA.26-10286.1129–31, 1198, 1200–02, 2034–35. The face-value cases do not make U.S. Bank's qualification decision conclusive when the pleaded dispute concerns the statutory checklist, Plan terms, and its response to objective conflicting documents already before it.

208. Facial-reliance decisions do not make the support recital true for other claims. The Barrows brief's mandamus authorities likewise do not establish Yan's timely knowledge of complete documents, authorize an unlawful instrument, negate completed injury, or supply damages and restoration against the private actors. The TAC alleges concealment, Pigg's denial that he signed the original draft, and refusal to sign an untrue court document. ROA.26-10286.1076–78, 1140–41. Mandamus availability therefore cannot resolve the disputed knowledge, authority, or qualification predicates.

**B. ERISA interpretation is de novo; U.S. Bank's decision is not conclusive.**

209. Federal courts review ERISA and domestic-relations-order interpretation without deference to the administrator. *Cont'l Airlines* states that courts "do not owe deference" to that legal interpretation. 647 F.3d 221, 226 (5th Cir. 2011). U.S. Bank nevertheless converts an allegation about Pigg into a concession by Yan. It asserts that "Yan . . . concedes" that Pigg "consented to the U.S. Bank dispensing fund." U.S. Bank Br. 7. But TAC paragraph 104 alleged Pigg's later consent as part of Pigg's challenged conduct. ROA.26-10286.1077–78. An allegation that Pigg consented is not a concession that Yan consented, authorized the transfer, waived his objection, or accepted the order's validity. The TAC instead alleges that Pigg first objected on Yan's behalf and attached the April fee ruling, Yan separately concurred, U.S. Bank acknowledged conflict between the instruments, and U.S.

Bank later distributed the funds. ROA.26-10286.1077–78, 1129–31, 1140–42, 2034–35. U.S. Bank's legal conclusion and factual characterization are not findings and cannot become conclusive at the Rule 12 stage.

210. U.S. Bank's factual presentation repeatedly converts disputed allegations into concessions Yan never made. The later instrument calls Wang the "ALTERNATE PAYEE (SPOUSE)" and recites support, but it nowhere states that a divorce decree existed or that Yan's marital status had changed. ROA.26-10286.1200–02. Pigg's July 21 objection stated that the April 13 order concerned attorney's fees, not child support, and asked U.S. Bank not to deem the proposed garnishment a QDRO; it likewise said nothing about a divorce or authorized any status change. ROA.26-10286.2030–31. The TAC alleged that U.S. Bank nevertheless changed Yan's internal status from "married" to "single" without his knowledge to make the transaction appear to involve a post-divorce-decree QDRO, and that Yan learned of the change in November and had to request a correction. ROA.26-10286.1131–32.

211. U.S. Bank's motion recast that allegation as an "error" that it corrected. ROA.26-10286.1766. But the TAC conceded neither mistake nor completed correction. Read with the pleaded document conflict in TAC paragraph 190, the unexplained alteration plausibly supports concealment or damage control; U.S. Bank's clerical-error account is a competing inference. *EnvTech* rejects that tie-breaker: no rule says "a tie must go to the defendant," and "the ordinary pleading

rules counsel otherwise." 178 F.4th at 222–23. Whatever U.S. Bank asserts about the transaction's origin, the TAC alleges its own affirmative status alteration, qualification decision, and distribution after documented notice of the conflict.

212. DOL Advisory Opinion 1999-13A provides persuasive agency guidance concerning a fiduciary's response to objectively questionable domestic-relations orders. An administrator receiving evidence that calls an order's validity into question is "not free to ignore" it; the administrator must take reasonable steps to assess credibility and may present credible evidence to the issuing court because the response may affect qualification. U.S. Dep't of Lab., Advisory Op. 1999-13A (Sept. 29, 1999). If the court supplies no timely response, the administrator continues the federal qualification determination rather than independently invalidating the order under state law. Yan quoted the opinion and supplied it as an exhibit. ROA.26-10286.2022–23, 2040–45.

213. The TAC maps that rule to U.S. Bank's affirmative conduct after notice. U.S. Bank allegedly possessed the April attorney-fee report and later support instrument, received Yan's objection, acknowledged that the instruments appeared to conflict or imposed separate obligations, made its own qualification decision, and distributed the funds. ROA.26-10286.1129–31, 2030–35. The qualification and distribution, considered with the pleaded communications, documentary notice, and shared fee objective, support the inference of knowing facilitation and agreement. *Cont'l*

*Airlines* bar on subjective sham-divorce investigations and the Department's rule that an administrator may not ignore objectively questionable evidence address different questions. The pleaded issue is whether U.S. Bank satisfied the federal checklist and its duties of credibility response, determination, notice, and separate accounting before distribution.

214. ERISA's governing purpose is participant protection. Congress declared a national policy to protect participants and beneficiaries through federal standards, fiduciary duties, remedies, sanctions, and ready access to federal courts. 29 U.S.C. § 1001(b). That protection does not weaken when Plan assets are targeted through family-court process or directed to legal fees. Yan invokes his own status as the participant whose identified account was allegedly depleted and whose Plan rights were allegedly misadministered. U.S. Bank's alternate-payee premise overlooks that Congress authorized participants to enforce ERISA.

215. Section 1132(a)(3) authorizes a participant to obtain appropriate equitable relief "to redress such violations" or "to enforce any provisions" of ERISA or the Plan. 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe* calls that provision a "catchall" and "safety net." 516 U.S. 489, 512 (1996). *LaRue v. DeWolff, Boberg & Assocs., Inc.* further holds that Section 1132(a)(2) authorizes recovery for fiduciary breaches impairing Plan assets in one participant's defined-contribution account. 552 U.S.

248, 256 (2008). The TAC alleges that precise depletion of that account and equitable injury.

216. The absence of a separately captioned ERISA count (imperfect labeling) cannot erase duties embedded in Claim Nine or the requested equitable relief. PFAC Count Five separately formalizes broader ERISA claims for Rule 15 review; it does not cure the TAC. The TAC also alleges that qualification and finality remained disputed; U.S. Bank cannot assume finality to defeat separate accounting.

217. ERISA conditions QDRO-related discharge on fiduciary compliance. Section 1056(d)(3)(I) protects only a fiduciary that "acts in accordance with the provisions of part 4" when treating an order as qualified or using separate accounting. 29 U.S.C. § 1056(d)(3)(I). Part 4 requires fidelity to Plan documents only "insofar as such documents and instruments are consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D). U.S. Bank's briefs are not qualification findings. Internal processing alone cannot establish statutory discharge, objective qualification, compliance with Section 1056(d)(3)(G)(i) and (H)(i), or fidelity to ERISA-governed Plan terms. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1152–57 (9th Cir. 2000), applies Sections 1056(d)(3)(G)(i)–(H)(i) as fiduciary duties governed by Section 1104's prudence standard. Those remain statutory and factual questions under the favorable Rule 12 standard.

218. U.S. Bank allegedly exercised the Plan function ERISA regulates. Under *Varity Corp. v. Howe*, fiduciary status attaches "to the extent" discretionary authority is exercised over that function. 516 U.S. 489, 498, 502–03 (1996). The TAC alleges that U.S. Bank evaluated the conflicting instruments and objection, decided qualification, and authorized distribution. Those are discretionary acts of Plan administration. It also alleges fiduciary status, duties to determine and notify, a failure to account separately, documentary conflict, rejection within four hours, alteration of marital status, a completed $25,000 depletion, loss of account access, and equitable relief. ROA.26-10286.1061, 1067, 1071, 1096, 1114–15, 1129–31.

219. PFAC Count Five applies the same distinctions to U.S. Bank. It alleges one completed $25,000 distribution and one different writ that was served but remained unexecuted. ROA.26-10286.2706–08. It further alleges that U.S. Bank acknowledged the instruments' direct conflict, made its own qualification and objection decisions, changed Yan's recorded marital status, and authorized the one payment without the pleaded committee process. ROA.26-10286.2710–11. Those allegations concern U.S. Bank's own classification and handling of distinct Plan-directed instructions; they do not depend on an allegation that the second writ produced another distribution. The later state-court refusal to correct the outstanding writ is pleaded only as notice, continued effect, and prospective injury, not as an additional U.S. Bank payment. ROA.26-10286.2713–14. At futility review,

qualification, causation, fiduciary process, and remedy therefore turn on which instrument U.S. Bank processed, how it classified the others, and why the first writ produced payment while the second remained outstanding. Appellees' neutral-processing characterization cannot displace those well-pleaded facts or the favorable inferences they support.

220. The TAC also alleges that U.S. Bank acted through its Board, appointed the Benefits Administration Committee fiduciaries, and owed monitoring and supervision duties. ROA.26-10286.1061; U.S. Bank Br. 2–4. The Committee's formal identity does not resolve whether U.S. Bank itself acted as a functional fiduciary when it allegedly altered status, decided qualification, and authorized distribution. Any limit arising from the Committee's separate identity must be tied to the function and remedy it actually affects. Rule 12 governs the TAC's alteration and restoration theory; Rule 15 separately governs PFAC Count Five.

## IX. *Younger* does not extinguish damages or independent federal claims.

### A. Damages must be preserved, and the exceptional-category gateway is unmet.

221. U.S. Bank removes *Younger* from its own affirmance theory: it says the doctrine "played no role" in its dismissal, U.S. Bank never invoked it, and the district court granted its motion solely under Rule 12(b)(6). U.S. Bank Br. 36–37. *Younger* therefore supplies no alternative basis for affirming U.S. Bank's with-prejudice merits dismissal.

222. For appellees who invoke abstention, its application to particular equitable relief still cannot support the disposition entered. *Deakins v. Monaghan*, 484 U.S. 193, 202–04 (1988) holds that a district court has no discretion to dismiss cognizable damages unavailable in the state proceeding; those claims must be retained and, if adjudication would interfere, stayed. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719–21, 730–31 (1996). Noninterfering claims proceed. Plan restoration requires separate classification and interference analysis: if equitable and interfering, it may be dismissed or denied on a nonmerits abstention basis; if legal monetary relief, it must be retained and, if necessary, stayed; and if directed to the Plan or private actors without interfering with a qualifying proceeding, *Younger* does not reach it. A narrower equitable defect therefore cannot support the claim-wide merits disposition entered.

223. Federal courts ordinarily have a "virtually unflagging obligation" to exercise the jurisdiction Congress gave them. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). *Sprint* supplies the gateway. *Younger* extends beyond criminal prosecutions only to three exceptional categories, and the considerations described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), are not a free-standing test; they apply only after a proceeding fits one of those categories. *Sprint*, 571 U.S. at 73, 78–81. The district court identified no

category. ROA.26-10286.2085 n.3. A divorce is not a fourth category, and appellees cannot replace *Sprint*'s threshold with the three *Middlesex* factors.

224. The TAC alleges restraint and depletion of ERISA Plan assets by attorneys, a Plan administrator, and other actors, not a request for appellate correction of a divorce decree. ROA.26-10286.1054–56, 1065–78, 1092–98, 1129–31. Yan seeks no divorce, alimony, or child-custody decree; *Ankenbrandt v. Richards*, 504 U.S. 689, 703–04 (1992), and *Marshall v. Marshall*, 547 U.S. 293, 307–08 (2006), confine the domestic-relations exception to those decrees. The domestic setting therefore cannot replace element-by-element review of the independent federal injuries.

225. Appellees identify no qualifying *Sprint* proceeding whose adjudication would be displaced by deciding these federal claims. The divorce case did not include the attorneys, State Bar actors, and Plan administrator in the liability roles alleged here, and it could not award the pleaded federal damages, Plan restoration, or relief against those defendants. *Younger* cannot affect relief that does not interfere with a qualifying proceeding, and it cannot convert independent damages claims into a with-prejudice merits dismissal.

226. The two third-category examples identified in *Sprint* confirm the boundary rather than enlarge it. *Juidice v. Vail*, 430 U.S. 327, 330, 335–36 (1977), involved a federal class injunction against New York's statutory contempt procedures, the

process by which state courts compelled compliance with their orders. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10–14 (1987), involved an injunction preventing enforcement of a state judgment through Texas's lien and supersedeas-bond procedures. Both cases directly disabled machinery necessary to enforce state-court orders. Neither held that every federal claim arising from facts once presented in a state case falls within *Younger*'s third category.

227. The core claims here do not ask the federal court to abolish contempt, supersedeas, judgment liens, or Texas's general power to enforce judgments. They seek damages, Plan restoration, ERISA relief, and relief as to each defendant for the alleged alteration, interstate deployment, qualification, distribution, and later institutional conduct of attorneys, a Plan administrator, and disciplinary actors. ROA.26-10286.1054–56, 1065–78, 1092–98, 1129–31. Those defendants and remedies were not before the family court in the liability roles pleaded here, and the state proceeding could not award the federal RICO damages or ERISA restoration sought. The third-category cases therefore do not supply a claim-wide gateway.

228. Some prayers were broader. A request to enjoin a particular writ or constrain a state-court remedy may require narrowing, severance, a stay, or denial if it would interfere with a qualifying proceeding. But a defect in one remedy cannot transform damages and noninterfering federal claims into an action against Texas's enforcement machinery, and it cannot support the global with-prejudice disposition

entered. *Deakins*, 484 U.S. at 202–03; *Quackenbush*, 517 U.S. at 719–31. *Juidice* and *Pennzoil* thus reinforce the disposition rule already controlling this appeal: identify the proceeding, category, challenged relief, actual interference, adequate state opportunity, defendant, claim, and proper dismissal or stay. The Barrows brief's reliance on broad prayers does not perform that required claim-by-claim analysis.

229. Adequacy requires a fair opportunity to present the federal claim. *Daves v. Dallas Cnty.*, 64 F.4th 616, 629, 632–33 (5th Cir. 2023) (en banc). The State Bar admits that discipline "does not provide remedies to a complainant," State Bar Br. 34, and appellees identify no grievance proceeding in which Yan, as complainant rather than respondent, could submit his federal claims for adjudication. That is not merely a demand for identical relief; on the pleaded record, it is the absence of an adjudicatory vehicle. If appellees instead rely on the divorce proceeding, adequacy and interference must be tested there, claim and remedy specifically. In all events, the absence of a state damages remedy controls disposition: cognizable damages may not be dismissed under *Younger* and, if overlapping adjudication would interfere, must be retained and stayed under *Deakins v. Monaghan*, 484 U.S. 193, 202–03 (1988). Appellees still must identify a qualifying proceeding and actual interference with each equitable prayer.

**B. Appellees' custody narrative neither answers the federal claims nor converts former-counsel disclosures into pleadings facts.**

230. Appellees' custody narrative rests on materials outside the TAC. Yan filed this federal action on July 21, 2023, before the September 30, 2024 divorce decree. ROA.26-10286.31, 2562 n.1. Barrows's later post and Pigg's Rule 12(c) assertions do not become TAC allegations or admissions, and none adjudicated an element of the pleaded Plan transfer, RICO predicates, or state-action theories. ROA.26-10286.2147, 2562–64, 2619–23, 3060.

231. Rule 12 supplies the boundary. A former lawyer's assertions in an answer or motion cannot override well-pleaded allegations unless a properly considered central instrument directly contradicts them. The Court need not decide custody, parentage, mental-health, CPS, counseling, or settlement disputes. It need only decline to treat Pigg's extrinsic account as adjudicative fact or as a jurisdictional answer to the earlier federal claims.

232. Timing defeats any Rooker–Feldman premise based on the September 2024 decree. *T. M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1753–54 n.10 (2026), confirms that a federal action commenced before the relevant state judgment is not barred and that shared parties and facts do not suffice when the federal claim does not seek review and rejection. This July 2023 action preceded that decree. The TAC seeks relief for defendants' own alleged drafting, transmission, qualification,

concealment, distribution, and receipt conduct, not custody modification or appellate review of the later decree. *Skinner v. Switzer*, 562 U.S. 521, 532–33 & n.11 (2011).

233. The TAC alone governs Rule 12 sufficiency. At most, the later materials bear on the separately preserved Rule 15(d) request; they neither cure the TAC nor make custody a RICO business-or-property injury. Opening Br. 55–58, 62–66; ROA.26-10286.2367 ¶ 4. Assuming arguendo, without conceding, that one prayer requires review and rejection of a qualifying state judgment, that remedy may be narrowed without extinguishing claims for damages caused by defendants' own conduct, Plan restoration, restitution, federal statutory relief that does not require such review, or otherwise valid prospective relief.

**C. Independent federal claims require analysis of each claim despite the domestic-relations setting.**

234. The domestic-relations exception does not eliminate federal-question jurisdiction merely because family litigation supplies background facts. It applies when the requested relief requires issuance or control of a divorce, alimony, or custody decree. Opening Br. 49–51.

235. *Warner v. Espitia* rejects a categorical domestic-dispute exclusion from RICO analysis. Construing the Georgia RICO Act, the court held that the Act "does not exclude from its reach individuals who have engaged in racketeering activity within the context of a 'domestic dispute'" and that this was "the only plausible construction of the plain language of the Act." No. S25G1354, slip op. at 2, 17–18

(Ga. June 30, 2026). The court further explained that the federal decisions cited below did not categorically exclude domestic cases from federal RICO; those decisions analyzed whether the plaintiffs had pleaded the required federal elements. *Id.* at 14–15. That reasoning is persuasive here. The domestic setting could not replace element-by-element analysis of Yan's federal RICO claims arising from the alleged diversion of ERISA plan assets. The district court therefore erred by using a domestic-dispute characterization instead of testing the pleaded predicate acts, enterprise, pattern, agreement, injury, and causation.

236. Attacks on broad prayers reach only those prayers. If a court cannot order third-party discipline or prosecution, restructure the State Bar or CDC, alter licensing rules, or conduct a statewide audit, it can sever or deny that remedy without extinguishing damages, restoration against a proper recipient, declarations, notice to Yan, or a properly tailored injunction against an ongoing federal violation. ROA.26-10286.1099–1101, 1111–13. The PFAC likewise requests notice to members and corrective notice to recipients of challenged process. ROA.26-10286.2779, 2781. Each remedy must be matched to its statutory source, defendant, capacity, ongoing violation, traceability, and redressability. None asks the federal court to issue a divorce, support, custody, or property-division decree.

237. The essence of the ERISA claim controls over a state contempt-and-enforcement label. *Callahan v. Callahan*, 247 F. Supp. 2d 935, 943 (S.D. Ohio

2002), looked to "the essence of this action": a claim to recover, enforce, or clarify ERISA benefits under Section 1132(a)(1)(B). *Brown v. United Parcel Serv., Inc.*, No. 99-10092, 2000 WL 1701739, at *1–2 (5th Cir. Oct. 31, 2000) (unpublished), likewise held that a state "motion . . . for enforcement and clarification of the divorce decree and the QDRO" asserted a benefit claim completely preempted under Section 1132(a)(1)(B), "regardless of how [she] characterizes her claims." *United Parcel Serv.*, 2000 WL 1701739, at *1–2.

238. After establishing jurisdiction, *Callahan* held "abstention is likewise inappropriate" because "this claim is federal in nature" and resolution would not "interfere with state domestic relations policies." 247 F. Supp. 2d at 945. Yan likewise seeks no divorce, support, custody, property-division, or QDRO-enforcement decree. He seeks adjudication of defendants' statutory conduct involving ERISA assets. Defeating those barriers requires adjudication of each claim; it does not predetermine the merits.

**X. Alternative affirmance requires a complete ground for each dismissal.**

239. Undeveloped factual and remedial questions belong to the district court in the first instance. *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), confirms that appellate courts are courts of review, and *Moody v. NetChoice, LLC*, 603 U.S. 707, 725–26 (2024), requires claims to be analyzed individually. Those principles limit first-instance appellate resolution and preserve favorable Rule 12 treatment.

240. U.S. Bank's assertion that "premise substitution" is not a separately named doctrine misses the preserved legal errors. The district court tested unpleaded money laundering, rejected a freestanding Section 664 remedy Yan did not request, and treated disputed QDRO lawfulness as established instead of applying Section 664, ERISA, and Rule 12 to the pleaded facts. ROA.26-10286.2088–94; Opening Br. 86–96. The label describes those errors; it does not supply the rule. *EnvTech* reached continuity because the same issue was presented below and connected to relatedness. 178 F.4th at 227–28. Here Yan received no ruling identifying predicate, continuity, attribution, qualification, or investment-injury defects to object to or cure.

241. Appellees' replacement grounds would require the Court to identify the predicates, attribute the communications, define the pattern alleged for each enterprise, choose among competing Rule 12 inferences, and assign a result to each defendant and disposition. *Bhagat* declined unaddressed privilege defenses while deciding the properly framed causation and pleading issues necessary to review the RICO dismissal. 164 F.4th at 431 n.1, 431–34. *Spano v. Whole Foods, Inc.*, 65 F.4th 260, 265 n.7 (5th Cir. 2023); *Ashley v. Clay Cnty.*, 125 F.4th 654, 662 n.5 (5th Cir. 2025); and *Inclusive La. v. St. James Parish*, 134 F.4th 297, 307 n.8 (5th Cir. 2025), likewise declined additional grounds that would require a record or analysis not developed below.

242. Purely legal grounds may be resolved on appeal without first-instance factual work. *Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701, 706–08 (5th Cir. 2017), illustrates that limited category. The instrument, attribution, and pattern grounds here depend on favorable Rule 12 treatment of documentary meaning, predicate classification, actor attribution, and claim scope. If the Court reaches those grounds, it cannot sustain the judgment by choosing appellee-favoring inferences. The Court should reject the substituted rationale and remand the omitted applications.

**Each ground must satisfy Rule 12 and support the same disposition.**

243. If the Court considers an alternative ground omitted from the district court's opinion, *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Injury, L.L.C.*, 168 F.4th 271, 279 (5th Cir. 2026), limits affirmance to grounds "supported by the record and argued in the court below" (quoting *Maria S. ex rel. E.H.F. v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019)). *United States ex rel. Solomon v. Lockheed Martin Corp.* likewise permits affirmance only on a ground presented to the trial court, and *Singleton v. Wulff* confirms that reaching a new issue remains discretionary. 878 F.3d 139, 146 (5th Cir. 2017); 428 U.S. 106, 121 (1976). The ground must also be suitable for appellate resolution and sustain the same disposition without factfinding or adverse Rule 12 inferences. Appellees' newly developed theories about instrument classification, counsel's authority, litigation conduct, constructive

knowledge, and the PFAC do not satisfy that standard. No curable pleading defect can sustain the with-prejudice dismissal or the global Rule 15 denial.

244. Legal alternative grounds receive de novo review; discretionary Rule 15 factors remain distinct. The FCR actually invoked generic delay and prior opportunities; Section I.A answers those grounds under abuse-of-discretion review. Pigg's Rule 12(c), DeAngelis's standing and immunity, the State Bar Appellees' jurisdictional and Rule 12 grounds, U.S. Bank's TAC-sufficiency and PFAC-futility grounds, and the Barrows brief's legal theories remain subject to de novo review.

245. An ample and obvious alternative ground still must apply the governing standard to the correct pleading and support the disposition under review. It cannot rest on appellee characterizations as proof or on factual conflicts resolved against Yan. Nor does the proponent receive deference for findings the district court never made.

246. U.S. Bank likewise invokes prior amendments, the extraordinary-circumstances restriction, repackaging, repeated cure opportunities, and prejudice. U.S. Bank Br. 37–39. Section I.A answers the overlapping delay and prior-opportunity rationales. Its additional repackaging and prejudice theories cannot receive deference for findings the district court did not make; the separate discretionary and de novo inquiries remain distinct.

247. The FCR identified no RICO predicate, continuity, attribution, or investment-injury defect, and the district court supplied a new money-laundering rationale. ROA.26-10286.2088–94. Unlike *EnvTech*, Yan had no merits ruling to object to or cure. Replacement grounds require first-instance predicate, inference, attribution, pattern, and disposition work.

248. Briefing and scope matter too. The asserted ground must be developed enough to decide the particular count and disposition it invokes. *Certain Underwriters* distinguishes sufficient alternative-ground briefing from an argument made only by a "conclusory statement." 951 F.3d at 274 n.19. *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 393–94 (5th Cir. 2024), declined to decide state action despite considerable appellate briefing because the district court had not addressed it; *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 381 (5th Cir. 2009), likewise remanded rather than decide alternative public-disclosure and Rule 9(b) grounds in the first instance. *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999), gives the closest wrong-elements rule: although an appellee may defend on a record-supported ground, the court "will not craft a party's arguments"; because the appellees analyzed discrimination elements rather than retaliation elements, they supplied no relevant alternative-ground analysis. *Wilson v. Falk*, 877 F.3d 1204, 1211–12 (10th Cir. 2017), similarly declined an alternative ground neither decided below nor developed

on appeal. The rule is selective: Barrows's continuity ground is developed and is answered on the merits; these authorities apply only where the asserted ground omits the analysis needed for the disposition it seeks.

249. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 343 (2026) (per curiam), supplies the controlling party-presentation boundary: it summarily reversed because the court of appeals transformed the narrow question the parties briefed into a materially broader one sua sponte and gave neither side a chance to address the new theory. The Supreme Court held that this "drastic" departure was an abuse of discretion. *Margolin* does not eliminate affirmance on a fully presented, record-supported alternative ground. It marks the boundary: a reviewing court should not convert an incomplete ground into a materially different theory, supply the omitted predicate, attribution, capacity, remedy, or disposition analysis, and decide that court-created theory without notice and adversarial presentation. The panel may decide appellees' developed grounds as briefed; it should not construct the missing analysis needed to make an incomplete ground sustain a dismissal it does not reach. Rule 28(i) permits, but does not presume, cross-party adoption. No appellee brief invokes Rule 28(i) or adopts another appellee's brief by reference. Even express adoption reaches only an argument "equally applicable" to the adopting party. *Smith v. Hood*, 900 F.3d 180, 184 n.4 (5th Cir. 2018). Grounds tied to one party's facts cannot be adopted for a different party whose conduct and posture differ. *United*

*States v. Rojas*, 812 F.3d 382, 413 (5th Cir. 2016). The separate briefs therefore do not create a pooled defense. A ground developed for one appellee remains confined to that appellee unless adopted and equally applicable. The Court should not extend it sua sponte without notice and the separate analysis of each defendant that *Margolin* requires.

250. *Landry* supplies a Fifth Circuit notice barrier. On rehearing, this Court withdrew two affirmative determinations after stating that it "went too fast": the defendants had faced no cross-motion and had "never been placed on notice" that nonresponse could yield adverse factual findings or legal determinations predicated on them. 901 F.2d at 437–38.

251. That warning reaches two distinct substitutions here. First, Barrows's one-victim/one-transaction continuity theory addressed the alleged Barrows Firm enterprise; the State Bar Appellees neither adopted it under Rule 28(i) nor applied continuity to the distinct State Bar enterprise. Barrows Br. 21–26; State Bar Br. 27–29. Second, the State Bar did not move under Rule 12(b)(6) to adjudicate TAC Count Two on any antitrust ground: its Rule 12(b)(6) section addressed only § 1983, the Texas Constitution, and RICO. ROA.26-10286.1350, 1365–70. The FCR recommended jurisdictional dismissal, and the April 2024 order itself supplied the merits disposition after recognizing that the antitrust claim ordinarily would survive Rule 12(b)(1). ROA.26-10286.1691–93, 2090–93; Opening Br. 69–72. **The panel**

**may not transfer Barrows's continuity theory for the Barrows Firm enterprise to the State Bar Appellees or affirm the sua sponte Count Two merits disposition on a ground the State Bar never moved to adjudicate without first giving Yan notice and a fair opportunity for supplemental briefing.**

252. An appellant may answer in reply an alternative ground first invoked by an appellee. *Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 274 n.19 (5th Cir. 2020); *United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009). Those decisions authorize Yan's answers to appellees' alternative grounds and record characterizations.

253. Preservation turns on the argument actually presented below and must be assessed ground by ground. Barrows and Ybarra raised continuity objections to the TAC patterns asserted in the claims against them. ROA.26-10286.1288–90, 1454–57, 1561. Yan answered that those alleged acts, the earlier family-court episode, and continued enterprise use supported both closed- and open-ended continuity. ROA.26-10286.1607–10. The TAC itself expressly pleaded open-ended continuity. ROA.26-10286.1097–98. Even treating their objections as preserved, neither they nor the State Bar Appellees developed a separate application of Exhibit 9 to the alleged State Bar enterprise pattern. ROA.26-10286.1349–72, 1567–76. The six alternative applications identified below first appeared in Barrows's appellate brief

and were not decided below. *EnvTech* does not transform those unpresented applications into grounds for complete affirmance.

254. First, the Barrows brief developed the lawful-QDRO Section 664 theory on appeal. Below, Barrows stated that the TAC lacked facts showing violations of Sections 1341, 1343, or 664 and then developed Rule 9(b) only for mail and wire fraud. ROA.26-10286.1461–62. The Barrows brief newly invokes federal and state QDRO provisions, counsel's signature, and mandamus availability to characterize the transaction as lawful. Barrows Br. 30–31. Sections IV.B, V.A–B, and VIII explain why this newly developed ground does not support affirmance on the pleadings.

255. Second, the Barrows brief developed a separate federal litigation-conduct limitation on appeal. Her district-court filings relied on Texas attorney immunity and ordinary Rule 12 pleading objections. They did not argue that federal RICO categorically excludes the alleged Plan transaction, instrument transmissions, and related communications as litigation conduct absent corruption. Barrows Br. 27–28. That new ground depends on first characterizing the pleaded acts as ordinary advocacy rather than testing whether the TAC plausibly alleges enumerated federal predicates. Section V.B explains why the statutory predicates, not the Barrows brief's characterization, control.

256. Third, the Barrows brief developed the counsel-agency and no-second-hearing chain on appeal. Below, she argued private-actor status and general constitutional insufficiency. The Barrows brief newly contends that Pigg's signature bound Yan to the later support recital and that due process required no additional hearing. Barrows Br. 35–37. The TAC alleges no consent, a material mismatch between the April report and later instrument, and deprivation through state process without an opportunity to contest the substituted premise. The new ground therefore requires first-instance decisions about authority, consent, documentary meaning, timing, and the process due. Section VI supplies the protective merits answer.

257. Fourth, the Barrows brief first presented the theories that the documents were public, Yan constructively knew of them, his delay was strategic, and the parallel lawsuit caused duplication. The Barrows Appellees filed no response to Document 210. The Barrows brief now says Yan should have discovered the additional instruments earlier through diligence and that his request after mandate reflected strategic delay. Barrows Br. 45–50 & n.5. Those theories depend on factual and state-of-mind findings the district court never made.

258. The TAC alleges that Pigg concealed the challenged instruments, denied signing the original draft, refused to sign an untrue court document, and portrayed himself as opposing Barrows; the incorporated communications support the inference that he had signed the papers and later assured Barrows that payment

would follow. ROA.26-10286.1077–78, 1139–42. Yan further alleges that Barrows obtained the benefit of the resulting Plan transfer. ROA.26-10286.1071, 1096. Public docket availability does not establish what Yan actually knew, when he knew it, whether he possessed complete copies, or whether he strategically withheld anything. On the pleaded account, Yan relied on his own counsel's alleged denials and discovered the additional instruments later. The Barrows Appellees cannot obtain affirmance in the first instance by assuming knowledge that the alleged concealment itself placed in dispute.

259. The district court received no adversarial presentation and made no findings concerning when each instrument became accessible, when Yan learned of it, what Pigg disclosed, the effect of the first appeal, post-mandate diligence, overlap between the actions, prejudice, or bad faith. Section I.A answers the chronology protectively, but the Barrows brief's unsupported knowledge-and-motive theory is not a clean ground for affirming the global leave denial. Because the district court made none of those findings, those appellate factual theories receive no abuse-of-discretion deference.

260. The Barrows brief first developed the proposed ERISA theory in Count Five on appeal. The Barrows Appellees filed no response to Document 210, and U.S. Bank's one-page filing declined merits briefing unless requested. ROA.26-10286.2980. The Barrows brief now argues that U.S. Bank committed no fiduciary

breach under the facial-QDRO and Plan authorities and that the Barrows Appellees therefore lacked the knowledge or status required for participant, recipient, or transferee liability. Barrows Br. 50–52. The FCR's global TAC cross-reference never applied Count Five. ROA.26-10286.2984–91. The proposed count instead alleges documentary conflict, rejection without required committee review, a marital-status change, distribution, distinct defendants, duties, knowledge, traceability, property, and remedies. ROA.26-10286.2710–11. Sections VIII and III.A supply the governing framework; application to that count belongs below.

261. Any Plan venue-clause theory concerns forum rather than merits. Its text, mandatory or permissive character, claim scope, preservation, waiver, and transfer-or-dismissal remedy were never decided. It therefore supplies no with-prejudice disposition for RICO or Section 1983 and no global PFAC futility ruling. The same first-instance review must address whether the status alteration and selective treatment of three orders and two writs reflected lawful administration, clerical error, or damage control. ROA.26-10286.2697–2727, 2710–11.

262. Sixth, *Younger* was presented below, but the Barrows brief's application of it to the PFAC's later actors and requested relief was not. The Barrows Appellees filed no response to Document 210, and the Barrows brief now uses proposed allegations and remedies to expand the abstention ground. Barrows Br. 44–45; ROA.26-10286.2665–2785. That does not make *Younger* wholly new, but the new PFAC

application was never adversarially developed and cannot retroactively sustain the TAC merits rulings or the global futility conclusion. Section IX answers the specific-proceeding, interference, adequacy, remedy, and disposition limits.

263. These new grounds first appeared on appeal, which independently weighs against reaching them. Any ground the Court reaches must apply the correct pleading, credit Yan's well-pleaded facts and favorable inferences, and stop at the claim and disposition it actually supports. The ordinary disposition is remand for the district court to conduct the omitted first-instance analysis.

264. Waiver is intentional relinquishment; forfeiture is failure to assert a position in time. The distinction governs appellees' alternative grounds.

265. A ground not presented below is ordinarily forfeited, especially when it requires factual development. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021).

266. An appellant forfeits a claim "not meaningfully briefed" on appeal. *Thompson*, 183 F.4th at 375. Yan's opening brief meaningfully challenged the blanket judgment, Rule 15 denial, governing pleading, substituted ERISA and Section 664 premises, RICO standards, immunity, state action, *Younger*, antitrust, sanctions, filing restriction, and reassignment. The citations below identify each ground's preservation. Appellees cannot erase those arguments by labeling entire subjects abandoned.

267. Rule 28(b) incorporates Rule 28(a)(8)(A). *Senechal v. Allstate Vehicle & Prop. Ins. Co.* treated a proposition mentioned only in a conclusory footnote as abandoned and declined to resolve the issue in the first instance. 127 F.4th 976, 981 n.7 (5th Cir. 2025). DeAngelis's one-line RICO, Section 1983, and qualified-immunity bullets likewise apply no governing element, asserted right, or claim-specific analysis. The Court should follow *Senechal* and decline first-instance adjudication of those skeletal alternatives.

The following roadmap is a locator to arguments developed in the identified sections, not a substitute for argument, and it does not itself preserve an otherwise undeveloped contention. DeAngelis: standing and redressability; absolute judicial immunity; Article V and Chapter 201 authority; Eleventh Amendment immunity; *Younger*; RICO and Section 1983 sufficiency; qualified immunity; and the *McKinley*/*Warnock* substitute-authority theory. Pigg: Rule 12(c); personal-predicate and agreement theories under Sections 1962(c) and (d); the Section 1962(a)/(d) mismatch; Section 664 predicate and attribution; and private-actor/Section 1983 liability. Barrows appellees: continuity in the Firm enterprise; Section 664 and mail- and wire-fraud predicates; RICO person, enterprise, and attribution; Texas attorney immunity; private-party state action; and Rule 15 delay, PFAC/ERISA, and *Younger* theories. U.S. Bank: TAC QDRO/ERISA interpretation, fiduciary

discharge and committee identity, state action, Rule 15 delay and futility, and venue; its brief disclaims *Younger* as a basis for its dismissal. State Bar appellees: entity and official-capacity sovereign immunity; individual disciplinary immunity, including *Austin Municipal*; TRDP 17.09; the grievance remedy; RICO conspiracy and predicates; completed monopolization and *Parker* immunity; PFAC Count Three and prospective relief; and Rule 38. Sections VI.E–G, VII, and XI supply the developed answers and confine each ground to the defendant, capacity, function, claim, remedy, and disposition it can lawfully reach.

268. The any-ground rule permits an appellee to defend the same lawful disposition on an adequately presented alternative; it does not authorize enlargement of the judgment or first-instance resolution of fact-bound gaps. *Jennings v. Stephens*, 574 U.S. 271, 276–77 (2015); *Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008). Rule 54(b) permitted revision of the interlocutory April order, but neither that permission nor the March judgment's generic label changes the legal consequence of the jurisdictional grounds actually adopted. Preservation, adequate briefing, record support, and lawful disposition remain independent limits.

269. *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651, 655–56 (5th Cir. 2014), considered an alternative because the requested result was identical. Here it is not: Article III and

Eleventh Amendment dismissals are without prejudice, while the March judgment recites a global merits disposition with prejudice. *Carver v. Atwood*, 18 F.4th 494, 497–98 (5th Cir. 2021). *Arvie v. Broussard* supplies the exact limit tied to the remedy: because the April disposition as to each defendant remains without prejudice, an appellee may defend it on another ground but, absent a cross-appeal, may not convert it into a dismissal with prejudice. 42 F.3d 249, 250–51 (5th Cir. 1994) (per curiam); *accord Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 575 n.2 (5th Cir. 2020). A merits alternative can sustain with-prejudice dismissal only for the claim it defeats; a jurisdictional alternative requires vacatur or modification to the lawful disposition. The any-ground rule cannot convert the former into the latter.

270. Sequence and scope control. If Article III is absent, dismissal must be without prejudice. If jurisdiction exists, judicial immunity reaches personal damages only after DeAngelis establishes, act by act, that the challenged function was judicial and not taken in clear absence of jurisdiction; the civil-RICO label neither supplies nor defeats those predicates. Qualified immunity concerns personal-capacity Section 1983 damages, and Rule 12(b)(6) reaches only the count and element defeated. *Younger* may support nonmerits treatment of interfering equitable relief, while cognizable damages must be retained and, if necessary, stayed. Reasoning directed only to Pigg cannot decide other defendants or PFAC futility.

271. Harmlessness follows the asserted ground's actual reach. Alternative affirmance requires review of the actual complaint under the correct framework, claim by claim. *Santander v. Salazar* supplies that model. After holding that the district court used the wrong pleading method, the Fifth Circuit reviewed the actual complaint under the correct standard, claim by claim, reversing one dismissal and affirming two. 133 F.4th 471, 478–83 (5th Cir. 2025). Rule 61 and 28 U.S.C. Section 2111 require analysis, not a presumption that omitted work would produce the same judgment. *Santander* does not supply the Barrows brief's missing analysis of PFAC Counts Six and Seven or convert the TAC's pleaded communications and Section 664 transaction into one predicate by characterization.

**XI. The State Bar's embedded sanctions request fails Rule 38.**

272. The State Bar requests Rule 38 sanctions only within its merits brief, which is procedurally insufficient. State Bar Br. 30–36; *United States ex rel. Trinity Energy Servs., L.L.C. v. Se. Directional Drilling, L.L.C.*, 135 F.4th 303, 310–11 (5th Cir. 2025). Its premises also fail. Civil RICO requires no prior conviction. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488–93 (1985). Part VIII makes compulsory discipline "not exclusive" and permits discipline for underlying facts. Tex. R. Disciplinary P. 8.01. And ROA.26-10286.2691, cited to accuse Yan of AI drafting, states that he drafted the substantive content and used AI only for proofreading, formatting, and readability. State Bar Br. 33–34. The request should be denied.

## XII. No developed ground sustains the judgment as a whole.

273. The errors developed in Sections I–X require targeted correction: review of the actual PFAC under Rule 15; application of the pleaded RICO statutory theory and completed-monopolization theory; and consideration of the preserved Section 1983 fabrication-and-property theory. U.S. Bank's ERISA/QDRO disposition, the TAC's $25,000 restoration request, the filing restriction, and the jurisdictional dismissal types remain distinct. PFAC Counts Three and Five remain in the Rule 15 inquiry.

274. Any continuity ground must address the relevant State Bar or Barrows Firm enterprise pattern; it cannot dispose of claims that do not require RICO continuity. Each alternative ground must be tested against the particular pleading, claim, defendant, capacity, remedy, and dismissal it addresses. None of appellees' alternative grounds independently addresses both the pleaded completed $25,000 Plan depletion and the preserved request to restore identifiable Plan property to the status quo ante. ROA.26-10286.1071, 1096, 1114–15; Opening Br. 52–54. A ground directed to continuity, immunity, abstention, attribution, or another remedy therefore cannot by itself sustain the judgment as a whole without the missing claim- and remedy-specific Rule 12 analysis. For the reasons developed above, Yan requests the targeted vacatur, modification, and remand specified in the Conclusion, without an appellate determination of ultimate liability.

**XIII. Reassignment, if reached, is a separate final request.**

275. Reassignment rests on the cumulative post-mandate sequence, not adverse rulings alone. The governing factors ask whether the original judge would have substantial difficulty putting aside previously expressed views, whether reassignment would preserve the appearance of justice, and whether resulting duplication would be disproportionate. *M.D. ex rel. Stukenberg v. Abbott*, 119 F.4th 373, 386–87 (5th Cir. 2024); *Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125, 1137–38 (5th Cir. 2022).

276. First, the amendment restriction preceded notice of the later-asserted deficiencies and was later used against the PFAC. ROA.26-10286.10–11, 2990–91. No post-notice amendment was granted. Opening Br. 62–66.

277. Second, the court separately imposed the sanctions-motion filing injunction without notice that an immediate filing restriction was under consideration or a hearing on necessity, scope, and tailoring. ROA.26-10286.1643–50, 1667–74; Opening Br. 96–97. *Qureshi* treats that process as independently material.

278. Third, the decisional record contains two source and framework mismatches that Yan expressly raised. The April 2024 order attributed to *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), a state-judge Eleventh Amendment proposition that the cited opinion does not contain; DeAngelis calls the citation an "inadvertent miscitation." DeAngelis Br. 13 n.3; ROA.26-10286.2085. The same order

substituted money laundering for the pleaded Section 664 RICO predicate and rejected a freestanding Section 664 remedy Yan did not plead. ROA.26-10286.2091–94; Opening Br. 86–92.

279. Fourth, Yan's Rule 59(e)/54(b) motion expressly identified that Pigg remained unadjudicated. ROA.26-10286.2097–2104. The district court denied correction, and this Court later held that Pigg's liability "was not adjudicated, or even addressed" and that the purported final judgment was not final. ROA.26-10286.2186–88.

280. Fifth, the first remand did not produce fresh review of each claim. The post-remand FCR incorporated the prior RICO and antitrust reasoning against Pigg and rejected the materially different PFAC "for the same reasons"; the successor district judge adopted the result and entered the blanket judgment. ROA.26-10286.2981–92, 3064–65.

281. Taken together, those five objective features bear on the appearance of justice because they concern reliability of the decisional process, not the correctness of any one adverse ruling. No merits discovery or trial occurred, so reassignment would impose limited duplication. An objective observer could reasonably question whether another remand through the same decisional path would provide the fresh review of each claim the case has not yet received.

282. This request is independent and severable. The Court may vacate the *Qureshi* injunction, preserve the jurisdictional dismissals as without prejudice, vacate the global Rule 15 denial, and grant all other relief, claim by claim without reaching reassignment. A decision not to reassign would not affect any narrower ground for vacatur, modification, or remand.

## CONCLUSION

283. The shortest lawful disposition begins with four framework corrections that do not require resolution of ultimate liability. First, vacate the denial of ECF No. 181 to the extent it rejected amendment or supplementation, vacate the global denial of ECF No. 210 and the prospective amendment restriction, and remand those requests for ordinary treatment under Rules 15(a)(2) and 15(d). Opening Br. 62–68 preserved those Rule 15 issues. The PFAC then returns through Rule 15 rather than first-instance appellate merits rulings. Separately, *Qureshi* requires vacatur of the sanctions-motion filing injunction, and the earlier Rule 12(b)(1) dismissals must remain without prejudice. Opening Br. 67–68, 96–97.

284. Second, vacate the affected TAC RICO dismissals. Opening Br. 86–92 preserved the substituted-predicate error; *Bhagat* forecloses adoption of the stated rationale, and appellees' replacement theories do not independently apply Section 664's actual means to sustain dismissal of the same claims under the correct Rule 12 standard.

285. Third, vacate TAC Count Two's Sherman Act Section 2 dismissal and remand the completed-monopolization consumer-injury theory preserved at Opening Br. 68–72. The April 2024 ruling never applied completed-monopolization elements, and the post-remand FCR tested conspiracy-to-monopolize elements instead. PFAC Count Three returns separately through Rule 15; it does not cure or replace TAC Count Two.

286. Fourth, vacate and remand the affected TAC Fourteenth Amendment and Section 1983 dismissals for first-instance analysis of the preserved fabrication-and-property due-process theory. Opening Br. 43–54, 72–86, and 92–96 preserved the alteration, property deprivation, state-action, joint-action, function, authority, causation, and U.S. Bank attribution issues. Section VI identifies the TAC allegations and governing authorities. On remand, attribution, joint action, function, immunity, causation, capacity, and remedy remain specific to each defendant; the panel need not decide ultimate Section 1983 liability.

287. Fifth, vacate and remand the affected U.S. Bank disposition insofar as it rejected the TAC's ERISA/QDRO determination, notice, separate-accounting, restoration, and equitable-relief theories preserved at Opening Br. 92–96. PFAC Count Five returns separately through Rule 15 and does not cure the TAC.

288. Sixth, confine *Younger*, standing, Eleventh Amendment immunity, judicial immunity, disciplinary immunity, and similar grounds to the claim, capacity,

remedy, and dismissal type each independently reaches. Jurisdictional and standing grounds remain without prejudice. Immunity from personal-capacity damages does not erase preserved prospective relief against officials. Assuming arguendo, without conceding, that *Younger* reaches particular equitable relief, damages unavailable in the state proceeding must be stayed rather than converted into a with-prejudice merits dismissal.

289. Seventh, deny the State Bar's embedded Rule 38 request.

290. Finally, reassignment remains a separate and severable request. Yan requests reassignment on remand to a different Article III district judge and, if the matter is referred, a different magistrate judge. The Court may grant every preceding form of relief without reaching reassignment, and declining reassignment would not affect any narrower vacatur, modification, or remand ordered above.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan
Plaintiff-Appellant, Pro Se

## CERTIFICATE OF COMPLIANCE

This brief contains 33,739 words, including the text in Figure 1 and excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), and does not exceed the 34,439-word limit authorized by the Court.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word-compatible software.

*/s/ Conghua Yan*
Conghua Yan

## CERTIFICATE OF SERVICE

I certify that, on September 9, 2026, this Reply Brief and its Statutory Addendum was served on all registered counsel of record on the date it was filed through the Court's CM/ECF system or by another method permitted by Federal Rule of Appellate Procedure 25.

*/s/ Conghua Yan*
Conghua Yan