U.S. COURT OF APPEALS
RECEIVED
Oct 02, 2026
FIFTH CIRCUIT

October 2, 2026

Clerk of Court

United States Court of Appeals for the Fifth Circuit

**Re: Nos. 25-11370 c/w 26-10286**

**Conghua Yan v. William A. Pigg;**

**Conghua Yan v. State Bar of Texas, et al.**

**Supplemental Authorities Under Rule 28(j)**

Dear Clerk:

Under Federal Rule of Appellate Procedure 28(j), Yan submits two authorities unavailable to him when he filed his consolidated reply brief.

The RICO and antitrust claims against the State Bar defendants were not dismissed on immunity grounds. The April 23, 2024 order stated that Yan's objection "holds water" and characterized threshold survival as a "Pyrrhic victory" before dismissing under Rule 12(b)(6). ROA.2088–91; Opening Br. 78, ¶ 110; Reply Br. 78, ¶ 162. These authorities reinforce that favorable threshold treatment and the challenges to the remaining immunity rulings.

*Erwine v. Westbrook*, No. 25-3136, slip op. at 20–25 (9th Cir. Sept. 11, 2026), rejected absolute immunity for individual-capacity federal claims under a federal functional analysis. At page 24, it applied *Doe v. Dynamic Physical Therapy, LLC*, 607 U.S. 11, 11 (2025): "[A] State has no power to confer immunity from federal causes of action." This reinforces Yan's arguments against using Texas attorney

immunity, TRDP 17.09, or Texas Family Code § 201.017 to supply an automatic defense to federal claims, including § 1983. Opening Br. 72–80; Reply Br. 68–71, 79–80, ¶¶ 143, 149–150, 164. DeAngelis's Family Code immunity theory cannot substitute for the required federal inquiry into the challenged function and jurisdiction. Section 201.017 supplies immunity parity, not expanded authority.

*Eriakha v. University of Mississippi*, No. 26-60007, slip op. at 9–11, 21 (5th Cir. Sept. 9, 2026), separately analyzed defendants, capacities, claims, and remedies. It applied *Ex parte Young* to prospective-relief claims against officials connected to an alleged ongoing federal violation and modified sovereign-immunity dismissals to be without prejudice. This supports Yan's demand for separate treatment of the remaining § 1983 claims and remedies, rather than a blanket immunity disposition. Opening Br. 78–81, ¶¶ 110–115; Reply Br. 78–80, ¶¶ 162–164.

Yan requests the targeted vacatur, modification, and remand specified in his briefs. Relevant opinion excerpts are appended.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan, Appellant, Pro Se
2140 E. Southlake Boulevard, Suite L-439
Southlake, Texas 76092
214-228-1886 | arnold200@gmail.com

**Certificate of Word Count**

The body of this letter contains 304 words, including citations, and complies with the 350-word limit in Federal Rule of Appellate Procedure 28(j).

## Certificate of Service

I certify that on October 2, 2026, I served this letter and attached appendix on all counsel of record by email.

*/s/ Conghua Yan*
Conghua Yan

**APPENDIX: SUPPLEMENTAL AUTHORITIES**

Original opinion-page excerpts; original pagination retained.

A. Erwine v. Westbrook, No. 25-3136
(9th Cir. Sept. 11, 2026), slip opinion pages 20-25.

B. Eriakha v. University of Mississippi, No. 26-60007
(5th Cir. Sept. 9, 2026), slip opinion pages 9-11 and 21.

The following pages are reproduced from the courts' official opinions.

officials to apply, the specific immunity conferred by tribal law must be consistent with the law under which the cause of action arises. Thus, our analysis of Erwine's federal civil rights claims is somewhat different than our analysis of his Nevada tort claim. But we reject the Tribal Officers' assertion of absolute immunity as to both.

**1**

We begin with Erwine's federal civil rights claims against the Tribal Officers. Recall that Erwine brings claims under 42 U.S.C. §§ 1981, 1985(2), and 1985(3) and brings a *Bivens* claim for discrimination under *Davis v. Passman*.

"The elements of, and the defenses to, a federal cause of action," the Supreme Court has emphasized, "are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990); *see also Chesapeake & Ohio Ry. Co. v. Kuhn*, 284 U.S. 44, 46–47 (1931). So determining whether an immunity defense applies here is "a question of federal law." *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) (quoting *Hampton v. City of Chicago*, 484 F.2d 602, 607 (7th Cir. 1973)).

The Supreme Court has not resolved whether, in an individual-capacity action arising under federal law, an Indian tribe may confer on its officials absolute immunity from damages liability—beyond what federal law provides. And the parties have identified no case, and we have found none, in which a federal court of appeals concluded that a tribe could do so.

*Davis* also does not guide our inquiry. In *Davis*, we considered a tribal official's immunity from only a state tort claim; the plaintiff's suit had no federal cause of action. *See* 398 F.2d at 83–84. And our holding did not purport to rest on the basis that federal common law entitled the tribal

official to immunity. To the contrary, our bottom-line conclusion relied on a "prediction" about whether the Navajo Tribe's conferral of absolute immunity on its officials would apply in Arizona state court. *See id.* at 84–86. As the Tribal Officers concede, *Davis* answered this question "on state law grounds" by making a "prediction . . . that an Arizona court, as a matter of comity, would likely choose to honor the immunity the Navajo Nation had bestowed." But the Tribal Officers do not contend that federal law should merely recognize the Tribe's conferral of absolute immunity out of comity. They instead claim that such a conferral *entitles* them to absolute immunity by its own force. Because *Davis* did not address whether a tribe's immunity statute controls when a plaintiff brings a federal cause of action, this precedent does not, as the Tribal Officers urge, "resolve this case."

That returns us to the proper test for evaluating an absolute immunity defense to a federal cause of action. "We are 'bound not only by the holdings of [the Supreme Court's] decisions but also by their mode of analysis.'" *United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009) (alteration in original) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). When a defendant claims absolute immunity and no "express constitutional or statutory enactment" provides otherwise, *see Forrester*, 484 U.S. at 224, the Supreme Court has instructed us to take a "functional approach" in which we "conduct 'a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it,'" *see Rehberg*, 566 U.S. at 363 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421 (1976)). That mode of analysis governs the inquiry for each of Erwine's federal claims. *See Acres Bonusing*, 17 F.4th at 906, 915–16 (finding tribal official

defendants were entitled to absolute immunity because they performed judicial or quasi-judicial functions, when the suit included a federal cause of action); *Fry v. Melaragno*, 939 F.2d 832, 834–36, 835 n.6 (9th Cir. 1991) (employing the functional approach in a *Bivens* action); *see also Savage v. Maryland*, 896 F.3d 260, 267–70 (4th Cir. 2018) (applying the functional approach to claims brought under 42 U.S.C. §§ 1981 and 1985); *Runs After v. United States*, 766 F.2d 347, 354–55 (8th Cir. 1985) (employing the functional approach in an action against tribal officials under 42 U.S.C. § 1985).

Applying the functional approach, the Tribal Officers are not entitled to absolute immunity. The Tribal Officers recognize that Erwine's claims challenge their conduct involving "personnel management actions, including supervising [Erwine], investigating his misconduct, and terminating his employment." But the Tribal Officers do not develop, or support with authority, any argument that courts historically recognized these functions as absolutely immune from civil liability at common law. Nor could they. The Supreme Court has explained that "personnel decisions" do not give rise to absolute immunity because officials act "in an administrative capacity" when they demote or discharge an employee. *See Forrester*, 484 U.S. at 229. Thus, under the functional approach, absolute immunity does not bar Erwine's federal claims against the Tribal Officers in their individual capacities.

The Tribal Officers urge an altogether different analysis. As noted, they contend that the functional approach does not govern here. Their argument relies on *Davis*, and specifically on our observation there that tribes as "sovereign[s]" can "bestow" absolute immunity on their officials. 398 F.2d at 84. Because Congress has not

diminished tribes' sovereign ability to confer immunity, the Tribal Officers press that tribes retain authority to bestow absolute immunity on their officials from *any and all claims* implicating areas of tribal control. It is true that "unless and 'until Congress acts, the tribes retain' their historic sovereign authority." *Bay Mills*, 572 U.S. at 788 (quoting *Wheeler*, 435 U.S. at 323). But tribal sovereignty reflects "the power of regulating their internal and social relations," *Santa Clara Pueblo*, 436 U.S. at 55 (quoting *United States v. Kagama*, 118 U.S. 375, 381–82 (1886)), including the "power to make their own substantive law in internal matters" and "to enforce that law in their own forums," *id.* at 55–56. Retained tribal sovereignty does not include the power to immunize tribal employees from liability for violations of *federal law*—whether in connection with suits expressly authorized by Congress or a *Bivens* cause of action implied under the Constitution.

Our conclusion on this point is reinforced by the Supreme Court's decision in *Lewis*, which teaches that a "tribe's sovereign immunity is not implicated" in suits brought against tribal employees in their individual capacities. *See* 581 U.S. at 158. Because a tribe's retained sovereignty does not shield tribal employees from liability in individual-capacity actions, we fail to see how a tribe could nevertheless invoke its sovereignty to enact a statute that accomplishes the same end. Accepting the Tribal Officers' position would undermine *Lewis*'s holding by allowing a tribe to effect indirectly through tribal law—by bestowing absolute immunity on all its officials—what the Court has instructed its sovereign immunity does not afford. And the Tribal Officers provide no authority to support the proposition that a tribe may unilaterally create a defense to a federal cause of action for tribal officers.

Our conclusion is also in harmony with the rule that States cannot confer immunity on their employees so as to shield them from liability in federal civil rights actions. *See Doe v. Dynamic Physical Therapy, LLC*, 607 U.S. 11, 11 (2025) (per curiam) ("[A] State has no power to confer immunity from federal causes of action."). "Congress," the Supreme Court has explained, "surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Howlett*, 496 U.S. at 378 (quoting *Wilson v. Garcia*, 471 U.S. 261, 269 (1985), *superseded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 378–80 (2004)). So "a state law that immunizes government conduct otherwise subject to suit under [a federal statute] is preempted . . . because the application of the state immunity law would thwart the congressional remedy." *Felder v. Casey*, 487 U.S. 131, 139 (1988); *see also Martinez*, 444 U.S. at 284 n.8. Tribes are, of course, differently situated than States in our constitutional order. But the Tribal Officers have not shown that a tribe's retained sovereignty empowers the tribe to do something that the Supreme Court has said a State cannot: immunize conduct wrongful under federal law.

The Tribal Officers also assert that "the balance of policy considerations weighs definitively in favor of tribal absolute immunity." But the Supreme Court "ha[s] made it clear that it is not our role 'to make a freewheeling policy choice,' and that we do not have a license to create immunities based solely on our view of sound policy." *Rehberg*, 566 U.S. at 363 (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). "Instead, we conduct 'a considered inquiry into the immunity historically accorded the relevant official at

common law and the interests behind it.'" *Id.* (quoting *Imbler*, 424 U.S. at 421). Because the Tribal Officers have not shown that courts recognized personnel management functions as absolutely immune at common law, absolute immunity does not apply. *See Miller*, 335 F.3d at 897 ("[B]eyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists.").

In sum, we conclude that the functional approach governs when a tribal employee raises absolute immunity as a defense in an individual-capacity action arising under federal law. The Tribal Officers failed to meet their "burden of showing that [absolute] immunity is justified for the function in question." *See Burns*, 500 U.S. at 486. Thus, the district court erred by dismissing Erwine's federal claims on absolute immunity grounds.

**2**

We turn next to the Nevada tort claim. Erwine brings a claim for intentional interference with contractual relations against Burke, the Tribe's general counsel. This claim, like the one in *Davis*, does concern state tort liability regarding acts committed in the scope of a tribal official's employment. But again, *Davis* relied on principles of comity to "predict[]" that Arizona courts would recognize the tribal official's assertion of immunity, *see* 398 F.2d at 85–86; we did not conclude that a state court *must* recognize personal immunity defenses conferred by a tribe.

Perhaps Nevada courts would afford comity and give effect to the Tribe's conferral of absolute immunity on its officials via the Tribe's Law and Order Code. But the Tribal Officers have not advanced such an argument. And *Davis*'s conclusion that *Arizona* courts would recognize the Navajo

## III. Bennard Has Not Shown Reversible Error

With those standards in mind, we take Bennard's arguments in order, beginning with the threshold question of sovereign immunity.

### A. Sovereign Immunity Bars Some Claims

Bennard's claims against the University, his official-capacity claims against Huang, and his state-law contract claims against the named Defendants in their official capacities are barred.

Under the Eleventh Amendment, states are immune from being sued in federal court by their own citizens or citizens of other states.[22] That immunity extends to public universities, such as the University of Mississippi, since they are "arms of the state."[23] Because an official-capacity claim is "a suit against the official's office," it is "no different from a suit against the State itself."[24] And federal courts lack jurisdiction over suits against a state, state agency, or state official in his or her official capacity, "unless that state has waived sovereign immunity from suit or Congress has clearly abrogated it."[25] Here, no Defendant waived sovereign immunity.

But Bennard argues that an exception to sovereign immunity allows him to sue the Defendants in their official capacities. Under *Ex parte Young*,[26] "a litigant may sue a state official acting in his official capacity as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal

---

[22] *See* U.S. Const. amend. XI; *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002).

[23] *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020).

[24] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[25] *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (quotation omitted).

[26] 209 U.S. 123 (1908).

law."[27] To invoke that exception, "a plaintiff must demonstrate that the state officer has 'some connection' with the enforcement of the disputed act."[28]

The district court correctly held that the *Young* exception to sovereign immunity permits Bennard's federal official-capacity claims against Yang, Barnard, and Kluck because those Defendants are closely connected to the conduct Bennard challenges. Yang, Barnard, and Kluck had a hand in Bennard's downgrade to provisional-student status, and he alleges that the sanction reflects an ongoing violation of his rights. But Huang neither initiated nor ratified Bennard's change in status. Nor could she provide Bennard's requested relief. Thus, sovereign immunity forecloses Bennard's claims against the University and Huang in her official capacity.

Importantly, however, the *Young* exception to sovereign immunity does not apply to state-law claims against the state or state officials sued in their official capacities.[29] Recognizing that rule, Bennard concedes that "[t]he sovereign-immunity dismissal of the contract claim[s] against the University and the official-capacity defendants is correct" because those claims arise under Mississippi law. That concession is correct.[30]

In sum, sovereign immunity precludes Bennard's claims against the University, his official-capacity claims against Huang, and his state-law claims against the Defendants in their official capacities. Because those

---

[27] *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020).

[28] *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (quoting *Young*, 209 U.S. at 157).

[29] *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020).

[30] *See, e.g.*, *Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 604–05 (S.D. Miss. 2019) (applying sovereign immunity to § 1983 and contract claims against the University and its officials).

dismissals are jurisdictional, however, they must be without prejudice.[31] That leaves Bennard's federal official-capacity claims against Yang, Barnard, and Kluck; his personal-capacity constitutional claims against the faculty defendants; and his individual-capacity contract claims.

Sovereign immunity narrows the field. The surviving federal claims fare no better on the merits.

## B. The Constitutional Claims Are Not Plausibly Alleged

Bennard fails to state a First or Fourteenth Amendment claim against Yang, Barnard, or Kluck in their official capacities.

### 1. The Retaliation Claim Lacks Causation

Bennard asserts that the Defendants retaliated against him because he challenged his change in mentorship structure and his brother complained about the Department's failure to accommodate his disability. Bennard argues that the court improperly discounted both his own objections to the revised mentorship arrangement and his theory that the Defendants retaliated against him because of his association with Alfred.

To prove First Amendment retaliation, a plaintiff must show that his "speech was constitutionally protected and that it was a 'substantial' or 'motivating' factor in the defendant's decision."[32] If the plaintiff makes this showing, the burden shifts to the defendant to show that it would have made the same decision even in the absence of protected speech.[33]

---

[31] *See Warnock v. Pecos Cnty.,* 88 F.3d 341, 343 (5th Cir. 1996).

[32] *Kelleher v. Flawn*, 761 F.2d 1079, 1083 (5th Cir. 1985) (quoting *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

[33] *Id.*

no merits claim remained pending, those requests no longer presented a live controversy. [60]

## IV. The Judgment Requires One Jurisdictional Correction

That leaves one loose end—not whether Bennard's claims fail, but how some of them must be dismissed. The district court dismissed Bennard's federal claims against the University and Huang in her official capacity, as well as his state-law official-capacity claims, with prejudice. But sovereign-immunity dismissals are jurisdictional and therefore must be without prejudice.[61] We MODIFY the judgment accordingly.

The rest of the judgment stands. Bennard has not plausibly alleged a First or Fourteenth Amendment violation; the faculty defendants are independently entitled to qualified immunity; and the district court acted within its discretion in declining supplemental jurisdiction, consolidating the related cases, and dismissing the preliminary-relief motions as moot. Nor did it abuse its discretion by dismissing the remaining federal claims with prejudice: Bennard never sought leave to amend below and repeatedly defended his complaint as adequate.[62]

* * *

Academic disputes may carry serious consequences. But serious consequences do not transform academic disputes into constitutional ones.

The judgment is AFFIRMED AS MODIFIED.

---

[60] *See Koppula v. Jaddou*, 72 F.4th 83, 84–85 (5th Cir. 2023).

[61] *See John Gannon, Inc. v. Tex. Dep't of Transp.*, 178 F.4th 906, 912 (5th Cir. 2026) (citation omitted).

[62] *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).